IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH; NATHANIEL FISCHER; PHILLIP ARONOFF,

*Petitioners,*

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

No. 23-____

*U.S. COURT OF APPEALS RECEIVED Apr 28, 2023 FIFTH CIRCUIT*

**PETITION FOR REVIEW**

Petitioners intend to seek emergency relief in this case, with a ruling requested by **May 7, 2023**. The basis of that date is explained in the accompanying emergency motion.

Pursuant to Section 25(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78y(a), and Rule 15 of the Federal Rules of Appellate Procedure, Petitioners National Center for Public Policy Research ("NCPPR"), Nathaniel Fischer, and Phillip Aronoff petition this Court for review of the unnumbered final order of the Securities and Exchange

Commission entitled "*The Kroger Co. (the 'Company') Incoming letter dated February 16, 2023*" (Apr. 12, 2023). A copy of the final order is attached. *See* Attachment A.

In advance of annual shareholder meetings, public companies generally distribute proxy materials to shareholders eligible to vote at the meeting.[1] The ability to "[v]ote by proxy has become an indispensable part of corporate governance." *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 334 (3d Cir. 2015) (quotations omitted). Those proxy materials include items and initiatives on which shareholders are asked to vote.

By enacting the Securities Exchange Act of 1934 (the "Exchange Act"), "Congress intended … to give true vitality to the concept of corporate democracy." *Med. Comm. for Human Rights v. SEC*, 432 F.2d

---

[1] "A proxy statement is a document containing the information the [SEC] requires companies to provide to shareholders so they can make informed decisions about matters that will be brought up at an annual or special stockholder meeting." Alicia Tuovila, *What Is a Proxy Statement?*, Investopedia (Aug. 8, 2021), https://bit.ly/3LEhGPM. "Proxy statements are typically sent in the spring, indicating the start of 'proxy season'— when most public companies prepare to hold their annual shareholders' meetings." *Prepping for Proxy Season: A Primer on Proxy Statements and Shareholders' Meetings*, FINRA (Feb. 6, 2023), https://bit.ly/3NltGH6.

659, 676 (D.C. Cir. 1970), *vacated on mootness grounds*, 404 U.S. 403 (1972). Under Rule 14a-8, issued by the Securities and Exchange Commission ("SEC") under the Exchange Act, companies must include the proposals of certain shareholders in their proxy materials to be considered by shareholder vote. *See* 17 C.F.R. § 240.14a-8. But under Rule 14a-8, the company can also seek to exclude certain proposals from the proxy materials. *See Trinity*, 792 F.3d at 335–37. One such basis is when the proposal "deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7). If the company believes a proposal falls within that exclusion, the company "must file with the [Division of Corporation Finance] staff the reasons why it believes the proposal is excludable." *Trinity*, 792 F.3d at 336. The Division then issues a letter either agreeing or disagreeing that the proposal is excludable. When the Division agrees there is a basis for excluding the proposal, the Division issues a "no-action" decision, typically in the form of a letter.

Petitioner NCPPR sought to have Kroger include the following proposal in its proxy materials for its upcoming shareholder meeting:

> Shareholders request the Kroger Company ("Kroger") issue a public report detailing the potential risks associated with omitting "viewpoint" and "ideology" from its written equal employment opportunity (EEO) policy. The report should be available within a reasonable timeframe, prepared at a reasonable expense and omit proprietary information.

On February 16, 2023, Kroger asked the Staff of the SEC's Division of Corporation Finance to concur in Kroger's intention to omit the Proposal from the proxy materials for shareholders. The Division agreed with Kroger that the Proposal "relates to, and does not transcend, ordinary business matters" and thus agreed that Kroger could exclude the Proposal from its proxy materials.

Petitioner NCPPR sought reconsideration from the Division and review by the Commission itself. The other Petitioners participated in the proceedings before the Commission and requested that the Commission grant NCPPR's request for review and reverse the Division so they could vote on NCPPR's proposal. The Commission recently declined review, although no written memorialization has yet been provided.

Petitioners all own Kroger stock, participated in the agency proceedings below, and are aggrieved by the Commission's decision. NCPPR has submitted both similar and identical shareholder proposals under SEC Rule 14a-8 during prior "proxy seasons," and NCPPR intends to continue submitting such proposals in the future, including to Kroger. Petitioners Nathaniel Fischer and Phillip Aronoff, who urged the Commission to review NCPPR's petition, likewise intend to participate in such future proceedings (including involving Kroger) to vindicate their right to vote on such proposals. And venue is proper because Nathaniel Fischer and Phillip Aronoff both reside in Texas. *See* 15 U.S.C. § 78y(a).

By statute, the challenged SEC no-action decision is deemed a final order of the Commission and thus reviewable under the Securities Exchange Act. *See id.* Pursuant to 15 U.S.C. § 78d-1(a), the Commission has delegated authority over Rule 14a-8 to the Staff of the agency's Division of Corporation Finance. *See* 17 C.F.R. § 200.30-1(f)(4). For such delegated authority, Congress provided that "the Commission shall retain a discretionary right to review the action" of the delegee. 15 U.S.C. § 78d-1(b). If the Commission does not exercise this right of review, the Staff's decision becomes final by operation of law. The very next

subsection, 15 U.S.C. § 78d-1(c), titled "[f]inality of delegated action," provides that "[i]f the right to exercise such review is declined, or if no such review is sought within the time stated in the rules promulgated by the Commission, then the action of any such division of the Commission, individual Commissioner, administrative law judge, employee, or employee board, shall, *for all purposes, including appeal or review thereof, be deemed the action of the Commission.*" *Id.* (emphasis added); *see* 17 C.F.R. § 201.430. That is the end of the matter.

The Supreme Court itself recently confirmed that under this provision, "if no such review has occurred [by the Commission], the [delegee's] ruling itself becomes the decision of the Commission." *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 898 (2023) (citing 15 U.S.C. § 78d–1(c)). This statutory requirement ensures that judicial review remains available for SEC actions even when they were delegated or where the Commissioners decline to review them.

Petitioners sought Commission review of the Division's no-action letter here, but review was recently declined. Thus, by act of Congress, the no-action letter issued by the Staff is "deemed" the "[f]inal[]" action "of the Commission" for "all purposes" and is therefore reviewable in this

Court. 15 U.S.C. § 78d-1; *accord Med. Comm.*, 432 F.2d at 667 ("[Courts] need not pause long over the question of [a no-action] decision's final effect upon petitioner. Here the administrative process had run its course with respect to petitioner's proxy proposal, and there can be no basis for any fear that review of the decision would cause the courts 'to interfere in matters yet within the consideration of the Commission.'").

Accordingly, this Court has jurisdiction over the final Commission order.

In some cases, however, the SEC has argued that courts lack authority to review such actions, on the theory that there was no final Commission order. That is wrong. Finality is a statutory requirement, not a constitutional one. Thus, it is dispositive that Congress has expressly deemed decisions like the one challenged here to be final for *all purposes*, including judicial review, under the special review provisions of the Exchange Act. That confers this Court with jurisdiction, and no other finality requirements need be satisfied. *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (noting finality as defined by the Administrative Procedure Act ("APA") is required only when review is

*not* sought "pursuant to specific authorization in the substantive statute" at issue—here, the Exchange Act).

But even if Petitioners need to demonstrate that the SEC action is "one by which rights or obligations have been determined, or from which legal consequences will flow," *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations emitted), they have done so. The Supreme Court has interpreted this so-called "second prong" of *Bennett* finality "as 'flexible' and 'pragmatic.'" *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967)). Courts thus reject a "hypertechnical" approach. *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 n.7 (D.C. Cir. 1986).

The Exchange Act's broad pronouncement of "[f]inality" "for all purposes" explicitly includes "appeal or review thereof," 15 U.S.C. § 78d-1(c), is directly relevant to that pragmatic and flexible finality inquiry under *Bennett'*s second prong (again, even assuming it is required). The statute is designed to ensure judicial review of SEC components' and divisions' decisions even when the Commission has not elected to review a decision. This ensures that the agency is not tempted to engage in gamesmanship by trying to shield certain actions from judicial review by

claiming that they were delegated or not made by the Commissioners themselves.

Under that pragmatic and flexibility inquiry, the challenged decision here is final even under the general APA test. This Court held in *Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019), that an agency guidance document "is 'binding as a practical matter'"—and thus "final" for purposes of the second prong of *Bennett*—where "'private parties can rely on it as a norm or safe harbor by which to shape their actions.'" *Id.* at 443–44. A key "indication that an agency's action binds it and thus has legal consequences or determines rights and obligations is whether the document creates safe harbors protecting private parties from adverse action." *Id.* at 442. Likewise relevant is whether the decision "binds [the agency's] *staff*," even if it doesn't bind the staff's bosses. *Id.*

As discussed above, a Division "no-action" letter does all these things. Receiving the Division's assurance that the company's actions are supported by the Division is precisely why parties seek no-action relief from the SEC in the first place—it creates a safe harbor for them, and at the very least "binds [the agency's] staff." *Id.* The "practical" binding nature of these decisions is confirmed by the fact that companies almost

invariably follow the Division's decisions regarding exclusion of proposals, *see KBR Inc. v. Chevedden*, 776 F. Supp. 2d 415, 420 (S.D. Tex. 2011), and the SEC itself acknowledges that "most managements … will delay their printing schedules, if necessary, in order to consider" those decisions. *Adoption of Amends. Relating to Proposals by Sec. Holders*, Release No. 12999, 1976 WL 160347 (Nov. 22, 1976). Thus, as scholars have long noted—in language that almost directly tracks this Court's decision in *EEOC*: "For all practical purposes, the Staff's decision with respect to any particular proposal is final." Lewis S. Black, Jr. & A. Gilchrist Sparks III, *The SEC as Referee—Shareholder Proposals and Rule 14a-8*, 2 J. Corp. L. 1, 10 (1976). That makes it reviewable even under the ordinary APA test.

Moreover, it is not necessary that the Division decision formally state that a company will or won't face liability. This Court has made clear that "[j]udicially reviewable agency actions" are those that "*tend to expose* parties to civil or criminal liability for non-compliance with the agency's view of the law." *La. State v. U.S. Army Corps of Engineers*, 834 F.3d 574, 583 (5th Cir. 2016) (emphasis added). A party that declines to follow the Division's "view" will, at the very least, "tend to expose" itself

to private liability or SEC enforcement action. And, as noted above, action that binds even "staff" is final, even if it doesn't bind the Commissioners. *EEOC*, 933 F.3d at 442.[2]

As the D.C. Circuit explained decades ago in the context of challenging no-action decisions, "we cannot see any merit in the

---

[2] Nor does *Heckler v. Chaney*, 470 U.S. 821 (1985), bar review. That case dealt solely with the APA's express bar on review of actions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), but the Exchange Act contains no such provision. Thus, as the D.C. Circuit has held, courts have jurisdiction "to examine th[e Rule 14a-8 decision's] allegedly erroneous legal premise and return the controversy to the Commission so that it may properly exercise its further discretion regarding the propriety and desirability of enforcement activity." *Med. Comm.*, 432 F.2d at 674–75.

In any event, *Heckler* does not apply where "the Congress or the agency itself has provided a meaningful standard for the agency to follow in exercising its enforcement power," meaning this Court can measure the decision here against the SEC's own standards. *Block v. SEC*, 50 F.3d 1078, 1082 (D.C. Cir. 1995); *N. Indiana Pub. Serv. Co. v. FERC*, 782 F.2d 730, 745 (7th Cir. 1986). As the merits briefing will demonstrate, the SEC has failed to follow its own detailed standards.

And finally, *Heckler* does not apply where a "colorable claim is made" that the agency "violated any constitutional rights." 470 U.S. at 838. As the merits briefing will show, Petitioners here raise a more-than-colorable claim that the SEC has engaged in First Amendment viewpoint discrimination, and thus at the very least that claim would survive. *See, e.g., Smith v. Meese*, 821 F.2d 1484, 1489–93 (11th Cir. 1987) (permitting judicial review of alleged racial discrimination by Department of Justice in selecting targets for investigation of electoral misconduct).

Commission's contention that the petitioner has not suffered any 'aggrievement' under the jurisdictional statute." *Med. Comm.*, 432 F.2d at 667. The D.C. Circuit provided a litany of rights and obligations affected by the SEC's no-action decision. "For present purposes, it is sufficient to note that the [petitioner] has been forced to undergo a two-stage administrative proceeding, compelled by the risk that failure to do so would preclude any judicial relief by virtue of the exhaustion doctrine; its recourse to an authoritative judicial determination of the merits of its proxy proposal has been substantially delayed because of the administrative proceeding, whereas time is clearly of the essence in proxy contests; and not only has the Medical Committee lost the potential benefit of the Commission's resources and expertise as an ally in compliance litigation against the company, it has also had imposed upon it the added burden in a private action of overcoming an adverse Commission determination in face of the principle that the agency is entitled to judicial deference in the construction of its proxy rules." *Id.*; *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 110 (2015) (Scalia, J., concurring) ("After all, if an interpretive rule gets deference, the people

are bound to obey it on pain of sanction, no less surely than they are bound to obey substantive rules, which are accorded similar deference.").

The same logic applies here to Petitioners and establishes finality even under *Bennett*'s second prong.

Although some courts have concluded that no-action letters are not final, it appears none of those decisions cited or even was aware of 15 U.S.C. § 78d-1(c), which expressly establishes "[f]inality" for decisions made pursuant to delegated authority, as demonstrated above. *See, e.g.*, *Missud v. SEC*, No. C-12-0161-DMR, 2012 WL 1225858, at *3 (N.D. Cal. Apr. 11, 2012) (erroneously concluding that a no-action letter could not be reviewed by the Court because the letter was not prepared by the Commission itself). Those decisions also pre-date the Supreme Court's recent pronouncement that under § 78d-1(c), "if no such [Commission] review has occurred, the [delegee's] ruling itself becomes the decision of the Commission." *Axon*, 143 S. Ct. at 898 (citing 15 U.S.C. § 78d–1(c)).

*Axon* is conclusive: when the Commission does not review a challenged delegated decision (as is the case here), that delegated decision "itself becomes the decision of the Commission," *id.*, and Congress has expressly dictated that such actions are "[f]inal[]" for "all

purposes" including "appeal or review thereof," 15 U.S.C. § 78d-1(c). There is accordingly a final order of the Commission for purposes of judicial review. *Id.* § 78y(a).

Accordingly, all requirements for jurisdiction are satisfied.

Dated: April 28, 2023                    Respectfully submitted,

<u>/s/ R. Trent McCotter</u>
R. TRENT MCCOTTER
  *Counsel of Record*
JONATHAN BERRY
MICHAEL BUSCHBACHER
JARED M. KELSON
BOYDEN GRAY & ASSOCIATES
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com

GENE P. HAMILTON
REED D. RUBINSTEIN
AMERICA FIRST LEGAL FOUNDATION
300 Independence Avenue S.E.
Washington, D.C. 20003
(202) 964-3721
gene.hamilton@aflegal.org

*Counsel for Petitioners*

# CERTIFICATE OF SERVICE

I hereby certify that that on April 28, 2023, I caused a true and correct copy of the Petition for Review to be served on the following by Certified Mail and email.

    Ms. Vanessa A. Countryman
    Secretary
    Securities & Exchange Commission
    100 F. Street, N.E.
    Washington, D.C. 20549
    (202) 551-5400
    Secretarys-Office@sec.gov

    Lyuba Goltser
    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, NY 10153
    Lyuba.goltser@weil.com

Given the urgent nature of this case, a copy is also being emailed to the following SEC attorneys who will be handling this case:

    Tracey A. Hardin
    202-551-5048
    hardint@sec.gov

    Theodore J. Weiman
    weimant@sec.gov

Dated: April 28, 2023

    /s/ R. Trent McCotter
    R. Trent McCotter
    Boyden Gray & Associates
    801 17th St NW, #350
    Washington, DC 20006

(202) 706-5488

# ATTACHMENT A



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

DIVISION OF
CORPORATION FINANCE

April 12, 2023

Lyuba Goltser
Weil, Gotshal & Manges LLP

Re: The Kroger Co. (the "Company")
Incoming letter dated February 16, 2023

Dear Lyuba Goltser:

This letter is in response to your correspondence concerning the shareholder proposal (the "Proposal") submitted to the Company by the National Center for Public Policy Research for inclusion in the Company's proxy materials for its upcoming annual meeting of security holders.

The Proposal requests the Company issue a public report detailing the potential risks associated with omitting "viewpoint" and "ideology" from its written equal employment opportunity policy.

There appears to be some basis for your view that the Company may exclude the Proposal under Rule 14a-8(i)(7). In our view, the Proposal relates to, and does not transcend, ordinary business matters. Accordingly, we will not recommend enforcement action to the Commission if the Company omits the Proposal from its proxy materials in reliance on Rule 14a-8(i)(7).

Copies of all of the correspondence on which this response is based will be made available on our website at https://www.sec.gov/corpfin/2022-2023-shareholder-proposals-no-action.

Sincerely,

Rule 14a-8 Review Team

cc: Sarah Rehberg
National Center for Public Policy Research