No. 23-60230

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH; NATHANIEL FISCHER;
PHILLIP ARONOFF,
*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,
*Respondent*.

OPPOSITION OF THE SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT, TO PETITIONERS' EMERGENCY MOTION
FOR A STAY AND EXPEDITED CONSIDERATION

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
Assistant General Counsel

THEODORE J. WEIMAN
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5167 (Weiman)

**CERTIFICATE OF INTERESTED PERSONS**

*National Center for Public Policy Research v. SEC*, No. 23-60230

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. America First Legal Foundation

2. Phillip Aronoff, Petitioner

3. Megan Barbero, General Counsel, Securities and Exchange Commission

4. Jonathan Berry, Counsel for Petitioners

5. Boyden Gray & Associates PLLC, Counsel for Petitioners

6. Michael Buschbacher, Counsel for Petitioners

7. Michael A. Conley, Solicitor, Securities and Exchange Commission

8. Nathaniel Fischer, Petitioner

9. Gene P. Hamilton

10.    Tracey A. Hardin, Assistant General Counsel, Securities and Exchange Commission

11.    Jared M. Kelson, Counsel for Petitioners

12.    The Kroger Co.

13.    R. Trent McCotter, Counsel for Petitioners

14.    National Center for Public Policy Research, Petitioner

15.    Reed D. Rubinstein

16.    Theodore J. Weiman, Senior Appellate Counsel, Securities and Exchange Commission

/s/ Theodore J. Weiman

*Attorney of Record for Respondent*
*Securities and Exchange Commission*

# TABLE OF CONTENTS

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS ......................................................i

TABLE OF AUTHORITIES ........................................................................ vi

INTRODUCTION ......................................................................................1

BACKGROUND ........................................................................................3

A.    Statutory and Regulatory Framework ...........................................3

B.    Factual background ........................................................................6

DISCUSSION ...........................................................................................8

I.    Petitioners are not likely to succeed on the merits. .................8

    A.    The Kroger letter is not a "final order of the Commission." ........9

    B.    The letter was not issued pursuant to authority delegated by the Commission. ..............................................................................14

    C.    The letter was not otherwise a "final" agency action. ...............16

    D.    Petitioners are unlikely to succeed on their claims of arbitrary or discriminatory agency action....................................................20

    E.    The petition as filed is not properly before this Court. .............21

II.    Petitioners will not be irreparably injured without a stay. ..................24

III.    The remaining factors weigh against a stay. .........................................25

CONCLUSION ........................................................................................26

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                     <u>Page(s)</u>

*Amalgamated Clothing & Textile Workers Union v. SEC*,
    15 F.3d 254 (2d Cir. 1994) ................................ 10, 12, 15, 17, 18, 19, 20, 21

*Amerada Petroleum Corp. v. Fed. Power Comm'n*,
    338 F.2d 808 (10th Cir. 1964) ...................................................................23

*Apache Corp. v. Chevedden*,
    696 F. Supp. 2d 723 (S.D. Tex. 2010) .........................................................4

*Axon Enterprise, Inc. v. FTC*,
    143 S. Ct. 890 (2023) ................................................................................17

*Bebchuk v. Elec. Arts, Inc.*,
    2013 WL 1777222 (S.D.N.Y. Apr. 25, 2013).............................................20

*Block v. SEC*,
    50 F.3d 1078 (D.C. Cir. 1995) ...................................................................14

*Bd. of Trade of Chicago v. SEC*,
    883 F.2d 525 (7th Cir. 1989)...............................................10, 12, 13, 18, 26

*Dornbusch v. Comm'r*,
    860 F.2d 611 (5th Cir. 1988).....................................................................24

*Fed. Power Comm'n v. Texaco*,
    377 U.S. 33 (1964) ....................................................................................24

*Georgia Repub. Party v. SEC*,
    888 F.3d 1198 (11th Cir. 2018)..................................................................24

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ..................................................................................13

*Int'l Tel. & Tel. Corp. v. Local 134*,
    419 U.S. 428 (1975) ..................................................................................10

# TABLE OF AUTHORITIES (cont'd)

Page(s)

*KBR v. Chevedden*,
  478 F. App'x 213 (5th Cir. 2012) ...................................................6

*Kixmiller v. SEC*,
  492 F.2d 641 (D.C. Cir. 1974) ...................................... 10, 11, 12, 13, 14, 15

*La. State v. U.S. Army Corps of Eng'rs*,
  834 F.3d 574 (5th Cir. 2016).........................................................21

*Martin v. U.S. Equal Emp. Opportunity Comm'n*,
  19 F. Supp. 3d 291 (D.D.C. 2014) .................................................24

*Medical Committee for Human Rights v. SEC*,
  432 F.2d 659 (D.C. Cir. 1970), *vacated as moot*, 404 U.S. 403 (1972).......14

*Merchants Fast Motor Lines, Inc. v. ICC*,
  5 F.3d 911 (5th Cir. 1993).............................................................24

*Nat'l Fam. Farm Coal. v. EPA*,
  966 F.3d 893 (9th Cir. 2020).....................................................23, 24

*N.Y.C. Emps.' Ret. Sys. v. SEC*,
  45 F.3d 7 (2d Cir. 1995).......................................................10, 12, 20

*N. Indiana Pub. Serv. Co. v. FERC*,
  782 F.2d 730 (7th Cir. 1986).........................................................14

*Peoples Nat'l Bank v. Comptroller*,
  362 F.3d 333 (5th Cir. 2004).........................................................17

*Piper v. Chris-Craft Indus., Inc.*,
  430 U.S. 1 (1977) .........................................................................5

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
  958 F.2d 416 (D.C. Cir. 1992) .............................................4, 5, 6, 12

# TABLE OF AUTHORITIES (cont'd)

Page(s)

*Rosenthal & Co. v. Commodity Futures Trading Comm'n,*
658 F.2d 278 (5th Cir. 1981)...........................................................................24

*Schmidt v. Delta Airlines, Inc.,*
1999 WL 179469 (E.D. La. Mar. 31, 1999)..................................................24

*Sierra Club v. Peterson,*
185 F.3d 349 (5th Cir. 1999)...........................................................................10

*Texas v. EEOC,*
933 F.3d 433 (5th Cir. 2019).....................................................................18, 19

*Texas v. EPA,*
2011 WL 710598 (5th Cir. Feb. 24, 2011) ....................................................24

*Tosdal v. Nw. Corp.,*
440 F. Supp. 3d 1186 (D. Mont. 2020).........................................................20

*Trinity Wall St. v. Wal-Mart Stores, Inc.,*
792 F.3d 323 (3d Cir. 2015)...........................................................3, 6, 19, 22

*Wages & White Lion Invs., L.L.C. v. FDA,*
16 F.4th 1130, 1135 (5th Cir. 2021) ................................................................8

**Statutes, Laws, Regulations, and Rules**

42 U.S.C. § 1983................................................................................................14

Administrative Procedure Act, 5 U.S.C. § 551 ..................................................10

Rule 200.30-1, 17 C.F.R. § 200.30-1 ..................................................................16

Rule 202.1, 17 C.F.R. § 202.1.............................................................6, 11, 15, 17, 22

Rule 202.2, 17 C.F.R. § 202.2..............................................................................6

# TABLE OF AUTHORITIES (cont'd)

<u>Page(s)</u>

Rule 14a-8, 17 C.F.R. § 240.14a-8 ...............................................2, 3, 4, 5, 8, 12, 22

Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*

    Section 3, 15 U.S.C. § 78c ...............................................................................9

    Section 4, 15 U.S.C. § 78d ...............................................................................9

    Section 4A, 15 U.S.C. § 78d-1 ........................................................15, 16, 17

    Section 14(a), 15 U.S.C. § 78n(a) .................................................................4

    Section 21, 15 U.S.C. § 78u .....................................................................5, 13

    Section 25(a), 15 U.S.C. § 78y(a)................................................9, 13, 22, 24

## <u>Other Authorities</u>

2 James Cox & Thomas Lee Hazen,
    *Treatise on the Law of Corporations* (3d ed. 2022) .......................................3

Division of Corporation Finance:  Informal Procedures Regarding
    Shareholder Proposals ................................................................................11

Statement of Informal Procedures for the Rendering of Staff
    Advice With Respect to Shareholder Proposals,
    Rel. No. 34-12599, 41 Fed. Reg. 29,989, 1976 WL 160411
    (July 7, 1976)........................................................5, 6, 11, 12, 16, 26

**INTRODUCTION**

Petitioners seek an emergency stay of a non-binding, non-precedential, informal letter from staff at the Division of Corporation Finance ("Division") of the Securities and Exchange Commission ("Commission") stating that staff would not recommend that the Commission exercise its discretion to pursue an enforcement action. This Court should deny the motion because petitioners have established none of the factors warranting such relief.

Petitioners challenge an April 12, 2023 letter sent by Division staff to The Kroger Co. ("Kroger"). In the letter ("Kroger letter"), staff said they would not recommend an enforcement action concerning Kroger's decision to exclude from its proxy materials a shareholder proposal submitted by petitioner National Center for Public Policy Research ("NCPPR"). But petitioners cannot establish the likelihood of success on the merits needed for a stay. Decades of case law establish that staff "no-action" letters—particularly letters that, as here, the Commission has not reviewed—are not "final orders" of the Commission reviewable in this Court.

Petitioners nonetheless contend that staff no-action letters should be viewed as final Commission orders because they are issued, petitioners

claim, pursuant to a formal delegation of Commission authority.  But that
novel contention is squarely foreclosed by the governing regulations and
mischaracterizes staff's role in the process for reviewing shareholder
proposals under Commission Rule 14a-8.  This fatal jurisdictional defect is
compounded by venue and justiciability issues that likewise undercut
petitioners' likelihood of success.

Nor can petitioners show that they will be irreparably harmed if a
stay is denied.  Their claim of irreparable harm—indeed their entire basis
for invoking this Court's emergency procedures—is premised on the
notion that, without a stay, they will lose the ability to have NCPPR's
proposal included in this year's proxy materials.  But Kroger's ability to
exclude the proposal and send out its proxy materials is unaffected by
staff's no-action letter, with or without the requested stay.

Under settled law, no Commission or staff action is required for
Kroger to exclude NCPPR's proposal, and the staff letter is not a
determination that the company may lawfully do so.  Accordingly, a "stay"
of that letter would neither preclude Kroger from sending out its proxy
materials by May 7 nor require it to include NCPPR's proposal.  The only
way for petitioners to require Kroger to include NCPPR's proposal is to

follow the well-established path of filing a district court action alleging a violation of Rule 14a-8—an option it appears they have inexplicably elected not to pursue.

Finally, because petitioners' motion rests on a fundamental misunderstanding of the staff no-action letter process in the Rule 14a-8 context, the balance of equities and the public interest weigh against a stay. Petitioners' request should be denied.

## BACKGROUND

### A.    Statutory and Regulatory Framework

The right for shareholders to vote by proxy instead of in person is now "universal in stock corporations" under state law (2 James Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* § 13:26 (3d ed. 2022)) and "has become an indispensable part of corporate governance." *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 334 (3d Cir. 2015) (punctuation omitted).

Before shareholder meetings, companies distribute proxy materials informing shareholders about items or initiatives on which the shareholders are asked to vote." *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 727 (S.D. Tex. 2010). Shareholders may also present proposals for a

vote and can solicit proxies either by "pay[ing] to issue a separate proxy statement" or seeking the inclusion of their "proposal in management's proxy statement, along with a statement supporting the proposal, at the company's expense." *Id.* at 727-28. This case involves an attempt by petitioner NCPPR to do the latter.

The Commission has exercised its authority under Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a), to prescribe rules relating to the solicitation of proxies. Under one of those rules, Rule 14a-8(i), 17 C.F.R. 240.14a-8(i), a company may omit a shareholder-submitted proposal from its proxy materials if any of thirteen substantive exclusions apply.

If a company decides to exclude a shareholder proposal, the company must notify both the Commission and the proponent of its reasons for believing the omission proper. Rule 14a-8(j), 17 C.F.R. 240.14a-8(j). But the notification requirement "is informational only" and "[n]o response by the Commission or its staff is required." *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 423 n.13 (D.C. Cir. 1992) (quoting Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals ("Informal Procedures"), Rel. No. 34-12599, 41 Fed. Reg. 29,989,

4

1976 WL 160411 (July 7, 1976)).  Rather, its purpose is to bring the matter to the Commission's attention in case "enforcement action may be appropriate" and to "alert the shareholder proponent … so that the shareholder can pursue any remedy believed available in federal court." Informal Procedures, 1976 WL 160411, at *4.

Although no Commission or staff response is required, the Commission may, in its discretion, investigate and bring an injunctive action pursuant to Exchange Act Sections 21(a) and 21(d)(1), 15 U.S.C. §§ 78u(a) and (d)(1), for violation of Rule 14a-8 if a company omits from its proxy materials a shareholder proposal that the Commission believes was required to be included.  Informal Procedures, 1976 WL 160411, at *1.

But there are significant practical limitations on the Commission's enforcement capabilities in this area, and "private enforcement [of the proxy rules] provides a necessary supplement to Commission action." *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 25 (1977) (punctuation omitted); *Roosevelt*, 958 F.2d at 423-24 (SEC has historically received "'hundreds of shareholder proposals'" "concentrated … during the few months preceding the peak annual meeting season" (punctuation omitted)).  For a shareholder aggrieved by a company's decision to exclude its proposal, the

ability to "pursue its rights against the company in federal court"
represents an effective and direct remedy. *Trinity Wall St.*, 792 F.3d at 337;
*see also KBR v. Chevedden*, 478 F. App'x 213, 215 (5th Cir. 2012) (per curiam).

The Commission's staff have also developed a practice of rendering
informal advice on whether a particular shareholder proposal is
excludable. Informal Procedures, 1976 WL 160411, at *1; 17 C.F.R. §§
202.1(d), 202.2. When a company decides to exclude a shareholder
proposal, it may ask Division staff for a "no-action" letter stating that staff
will not recommend enforcement action if the company follows through.
Alternatively, staff may send the company a letter disagreeing with its
view and declining to issue a no-action letter, or staff may express no
position. Further, the Commission may issue its own "informal statement"
regarding a staff position, but that is "entirely" a matter of discretion. 17
C.F.R. § 202.1(d).

### B.    Factual Background

Petitioner NCPPR has submitted a number of proposals for inclusion
in the proxy materials for various public companies. Some companies have
decided to exclude NCPPR proposals and requested no-action letters from
Division staff. In many such instances, staff issued a letter stating that it

was "unable to concur" with the company's view.  *See, e.g.*, Letter, PayPal Holdings, Inc., 2023 WL 385338 (Apr. 10, 2023); Letter, Eli Lilly & Co., 2023 WL 2524430 (Mar. 8, 2023); Letter, CVS Health Corp., 2022 WL 110303 (Mar. 17, 2022); Letter, Levi Strauss & Co., 2021 WL 5918662 (Feb. 10, 2022); Letter, The Walt Disney Co., 2021 WL 5052838 (Jan. 19, 2022).

As relevant here, NCPPR submitted a proposal to Kroger on December 21, 2022.  Motion for Stay ("Mtn.") Ex. A.  On February 16, 2023, Kroger sent a letter to Division staff stating its intention to omit the proposal from its proxy materials and asking staff for a no-action letter. Mtn. Ex. B.  NCPPR submitted response letters stating that the proposal should not be excluded.  Mtn. Exs. C, E.

Staff sent Kroger a no-action letter on April 12, 2023, opining that "[t]here appears to be some basis for your view that the Company may exclude the Proposal under Rule 14a-8(i)(7)" because "the Proposal relates to, and does not transcend, ordinary business matters."  Mtn. Ex. F.

NCPPR requested that staff reconsider its views or present the matter to the Commission, and it also directly asked the Commission for review. Mtn. Exs. G, H.  Petitioners Nathaniel Fischer and Phillip Aronoff sent

letters in support to the Commission.  Mtn. Exs. I, J.  The Commission did

not conduct any such review or express any views on the matter.

## DISCUSSION

This Court "must consider four factors" in determining whether to

grant a stay pending review:  "(1) whether the requester makes a strong

showing that it's likely to succeed on the merits; (2) whether the requester

will be irreparably injured without a stay; (3) whether other interested

parties will be irreparably injured by a stay; and (4) where the public

interest lies."  *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1135

(5th Cir. 2021).  "The first two factors are the most critical," and "[t]he party

seeking the stay bears the burden of showing its need."  *Id.* (punctuation

omitted).  Petitioners' motion meets none of these requirements.

## I.    Petitioners are not likely to succeed on the merits.

Petitioners cannot establish that they are likely to succeed on the

merits because their petition is not properly before this Court.  They invoke

Exchange Act Section 25(a), 15 U.S.C. § 78y(a), as the basis for this Court's

jurisdiction.  Petition 1 ("Pet.").  But the no-action letter they challenge is

not a reviewable "final order of the Commission" as required by that

provision.  Nor is venue proper for the petition as filed pursuant to that provision.

## A.    The Kroger letter is not a "final order of the Commission."

Section 25(a) authorizes "[a] person aggrieved by a final order of the Commission" to obtain review in the U.S. Court of Appeals.  15 U.S.C. § 78y(a).  But the Commission—which acts through a vote of the majority of its five commissioners—has issued no order in this matter, final or otherwise.  15 U.S.C. §§ 78c(a)(15), 78d(a) (defining "Commission").  Nor are the informal staff views in the Kroger letter such an order.

Every court of appeals to consider the question has held that courts lack jurisdiction to review staff no-action letters because they are not "final order[s]" of the Commission "within the meaning of section 25(a)(1) of the Act."  *Amalgamated Clothing & Textile Workers Union v. SEC*, 15 F.3d 254, 257 (2d Cir. 1994); *Bd. of Trade of Chicago v. SEC*, 883 F.2d 525, 529-30 (7th Cir. 1989); *Kixmiller v. SEC*, 492 F.2d 641, 644 (D.C. Cir. 1974) (per curiam); *see also N.Y.C. Emps.' Ret. Sys. v. SEC*, 45 F.3d 7, 13-14 (2d Cir. 1995) (no-action letter that "went further" than "most no-action letters" by "expressly abandon[ing] a previous SEC rule" was purely "interpretive").

9

The Administrative Procedure Act ("APA") defines an "order" as "the whole or a part of a final disposition … of an agency in a matter other than rule making" and as the product of an agency "adjudication." 5 U.S.C. § 551(6), (7).  An agency decision that does "not order anybody to do anything" and "binds no one" is "not itself a 'final disposition' within the meaning of 'order' and 'adjudication.'" *Int'l Tel. & Tel. Corp. v. Local 134*, 419 U.S. 428, 443-44 (1975) (punctuation omitted).  Those terms likewise exclude "the investigation and information gathering aspects of an agency's functioning." *Sierra Club v. Peterson*, 185 F.3d 349, 366 n.25 (5th Cir. 1999).

The Kroger letter does not meet this definition.  First, the staff letter was not issued by the Commission, but by staff on the "Rule 14a-8 Review Team."  Mtn. Ex. F.  Such staff statements "do not constitute an official expression of the Commission's views," but only the informal, non-binding "opinions" of staff in one division.  17 C.F.R. 202.1(d).  "[M]embers of the Commission's staff, like staff personnel of other agencies, have no authority individually or collectively to make orders."  *Kixmiller*, 492 F.2d at 644 (punctuation omitted).

Nor are staff no-action letters adjudicatory. Staff reviews proxy materials to gather information that could indicate whether an "enforcement action may be appropriate." Informal Procedures, 1976 WL160411 at *4. No-action letters are available on request to advise companies of staff's informal view; they "do not adjudicate the merits" of any matter, represent "rulings" or "decisions" in an adjudicated matter, or "have precedential value." *Id.* at *3-5; *see also* Division of Corporation Finance: Informal Procedures Regarding Shareholder Proposals, http://sec.gov/corpfin/informal-procedures-regarding-shareholder-proposals.[1] When sent, such a "letter does not bind" any party or the Commission "and does not fix any legal relationship among them." *Amalgamated Clothing*, 15 F.3d at 257; *Roosevelt*, 958 F.2d at 423 (no-action process is "quick and informal" and "any advice given … is nonbinding for all concerned"); Informal Procedures, 1976 WL 160411 at *4 ("advisory only" and "not binding").

---

[1] This statement on the Commission's website describing and providing instructions for the no-action process states that in every case, a "staff's no-action responses to Rule 14a-8(j) submissions reflect only informal views" of those staff members and "do not and cannot adjudicate the merits of a company's position with respect to the proposal." *Id.*

Every circuit that has reached the issue agrees that courts—not the Commission or its staff—adjudicate the application of Rule 14a-8's exclusions. *See Amalgamated Clothing*, 15 F.3d at 257 (shareholders' "proper course [is] to seek a judicial determination … in the district court"); *N.Y.C. Emps.*, 45 F.3d at 13 (same); *Bd. of Trade*, 883 F.2d at 531 ("aggrieved party can file its own suit" against the company); *Kixmiller*, 492 F.2d at 645-46 ("a dissatisfied stockholder is free to litigate proxy-solicitation questions judicially, with or without prior administrative resort to the staff or the Commission").

Moreover, a "decision to refrain from an investigation or an enforcement action is," under the Exchange Act, an "unreviewable" discretionary decision. *Kixmiller*, 492 F.2d at 645; *see also Bd. of Trade*, 883 F.2d at 529-30 (SEC's decision not to bring an enforcement action "is a classic illustration of a decision committed to agency discretion" (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985))).  This principle applies with even greater force to a mere staff-level decision not to *recommend* to the Commission that it take action.

Petitioners contend (Pet. 11 n.2) that the rule against review of agency enforcement decisions applies only to actions under the APA, not the

Exchange Act.  But the Exchange Act expressly commits investigations and enforcement actions to the Commission's "discretion" (Sections 21(a)(1), (d), 15 U.S.C. § 78u(a)(1), (d)), and its limitation of review to "final orders of the Commission" is "a narrower concept than that of 'agency action'" under the APA.  *Kixmiller*, 492 F.2d at 645 n.24; *Bd. of Trade*, 883 F.2d at 530-31 ("[n]othing in the Act suggests that the SEC is subject to greater judicial review" of enforcement decisions than other agencies).[2]

Finally, petitioners rely heavily on the D.C. Circuit decision in *Medical Committee for Human Rights v. SEC*, 432 F.2d 659 (D.C. Cir. 1970), *vacated as moot*, 404 U.S. 403 (1972), to support reviewability.  Pet. 11-13.

---

[2]    Petitioners also contend that prosecutorial discretion does not shield an agency from constitutional claims directed at the use of such discretion. But such claims cannot convert a staff no-action letter into an "order of the Commission" reviewable by petition under Section 25(a)(1).  Rather, the decision on which petitioners rely permitted constitutional claims to be brought in a lawsuit against the agency under 42 U.S.C. § 1983.

Petitioners also argue that the Court can review the Commission's application of its own standards for enforcement in a particular case.  But they rely on a decision that *rejected* the applicability of this exception to Commission enforcement decisions (*Block v. SEC*, 50 F.3d 1078, 1082-83 (D.C. Cir. 1995)) and an inapposite decision involving a final order issued by the agency (not a staff opinion) on review of an adjudication by an administrative law judge with "full evidentiary hearing" (*N. Indiana Pub. Serv. Co. v. FERC*, 782 F.2d 730, 735-39 (7th Cir. 1986)).

Even putting aside that the opinion in that case was vacated, *Medical Committee* is distinguishable:  unlike here, the Commission itself had reviewed and "approved" a no-action position.  432 F.2d at 663.  The D.C. Circuit has since held that this distinction is determinative.  *Kixmiller*, 492 F.2d at 644 ("[V]ery different jurisdictional consequences flow" when the Commission does not "in any way probe or pass on the staff's no-action position.").  And the Second Circuit has held that even a no-action decision by the Commission itself is unreviewable.  *Amalgamated Clothing*, 15 F.3d at 257.[3]

**B.    The letter was not issued pursuant to authority delegated by the Commission.**

In an effort to overcome courts' longstanding refusal to review staff no-action letters, petitioners contend that the letter was issued under

---

[3]    To the extent petitioners are actually challenging the absence of Commission review of the Kroger letter, there is likewise no agency action (final or otherwise) permitting review.  Whether to review informal staff advice is, by rule, "entirely" a matter of "discretion."  17 C.F.R. 202.1(d); *Kixmiller*, 492 F.2d at 644.  Were it otherwise, the SEC would be overwhelmed by the sheer number of proxy material submissions and the potential for judicial review of the Commission's "inaction" on each one.  And even if the Commission had opined on the matter, it would have been an unreviewable "informal statement."  17 C.F.R. 202.1(d); *Amalgamated Clothing*, 15 F.3d at 257.

authority delegated by the Commission pursuant to Section 4A of the

Exchange Act and can therefore be deemed final pursuant to the terms of

that provision.  But the Kroger letter was not issued pursuant to any such

delegation.  Section 4A states that the Commission:

> shall have the authority to delegate, by published order or rule, any of its functions to a division of the Commission, an individual Commissioner, an administrative law judge, or an employee or employee board, including functions with respect to hearing, determining, ordering, certifying, reporting, or otherwise acting as to any work, business, or matter.

15 U.S.C. § 78d-1(a).  None of the rules adopted to effectuate such

delegations encompasses the staff no-action process at issue here.

Petitioners claim that the Commission delegated authority to the

Division "to review requests to exclude shareholder proposals."  Mtn. 9;

Pet. 5.  But the only delegation made in the rule they cite—and the only

delegation regarding Rule 14a-8 altogether— is to authorize the use or

filing of proxy materials within "periods of time" less than those prescribed

by other Commission rules.  17 C.F.R. 200.30-1(f)(4).

Nor is it surprising that the no-action process is not encompassed in

any of the delegations made pursuant to Section 4A, as "Congress made no

provision for the Commission to initiate formal administrative procedures

to prevent violations of the proxy rules." Informal Procedures, 1976 WL 160411 at *1. Accordingly, "the Commission does not engage in any formal proceedings in connection with shareholder proposal matters, nor has it adopted any formal procedures in that regard." *Id.* at *4. The no-action process is instead part of a distinct category of informal procedures "largely concerned with the rendering of advice and assistance by the Commission's staff to members of the public dealing with the Commission." 17 C.F.R. 202.1. And, as discussed, no-action letters are non-binding, are non-precedential, have no legal effect, and represent only the informal opinions of staff, not the Commission. *See supra* at 11-12.

Thus neither Section 4A's delegation provision nor the Supreme Court's decision in *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890, 898 (2023), which cites that provision, is applicable here.

**C.    The letter was not otherwise a "final" agency action.**

"As a general matter, two conditions must be satisfied for an agency action to be final:  (1) the action must mark the consummation of the agency's decision-making process; (2) the action must be one by which rights or obligations have been determined or from which legal

16

consequences will flow." *Peoples Nat'l Bank v. Comptroller*, 362 F.3d 333, 337 (5th Cir. 2004). Neither element is met.

The letter does not mark any part of the Commission's "decision-making process," let alone its "consummation." *See supra* at 16-17. Nor does the letter impose any obligations, deny any rights, or have any legal consequences. *See supra* at 11-12. It merely advised Kroger of staff's non-binding views and that they would not recommend an enforcement action. *See supra* at 7-8. Even if the letter had been issued by the Commission itself, a mere announcement of an intention not "to bring an enforcement action … in no way 'imposed' or 'fixed' a legal relationship upon [the company, the proponent,] or the SEC." *Amalgamated Clothing*, 15 F.3d at 257.

Relying on *Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019), petitioners argue that the letter is "binding as a practical matter" because it "binds [the agency's] staff'" and "creates safe harbors protecting private parties from adverse action." Pet. 9. But neither is true. As courts have recognized, while a no-action letter informs a company of staff's current views, staff or the Division "could change [their] mind tomorrow, or the Commissioners might elect to proceed no matter what [staff] recommends." *Bd. of Trade*, 883 F.2d at 529; *Amalgamated Clothing*, 15 F.3d at 257 (letter "does not

bind"). And the letter does not purport to speak for staff of the separate Division of Enforcement.

Nor does the letter create any "safe harbors" in the way the Court discussed in *Texas*. There, the EEOC issued an enforcement guidance manual that bound staff in their investigations. 933 F.3d at 442-44. This Court held that the guidance had legal consequences because staff were bound to follow its terms, effectively precluding enforcement actions for certain conduct. *Id.* This case involves the opposite situation: the Commission has taken no action limiting staff's ability to recommend enforcement actions; staff in one division merely reached their own, non-binding decision not to recommend that the Commission take action. And because courts are not bound to afford the no-action position any deference (*Amalgamated Clothing*, 15 F.3d at 257 & n.3), it does not create any legal safe harbors in private litigation against the company.

Petitioners nonetheless suggest (Pet. 10) that a staff no-action letter is "final" as a practical matter because it can influence management's decisions and shareholders may opt not to bring private actions. But neither possibility makes those decisions "binding" as a legal or practical matter. Petitioners do not dispute that management is free to ignore a staff

letter. *Amalgamated Clothing*, 15 F.3d at 257. Nor does a no-action letter have any effect on a shareholder's ability "to seek a judicial determination of the propriety of [Kroger's] actions in the district court," which is the "proper course" of action for a shareholder in petitioners' position. *Id.*

Contrary to petitioners' suggestion, shareholders do bring such suits. *See, e.g.*, *Trinity Wall Street*, 792 F.3d 323; *Tosdal v. Nw. Corp.*, 440 F. Supp. 3d 1186 (D. Mont. 2020); *Bebchuk v. Elec. Arts, Inc.*, 2013 WL 1777222 (S.D.N.Y. Apr. 25, 2013). Indeed, in *New York City Employees*, the Second Circuit cited an instance where a district court "found a Rule 14a-8 violation and then issued a preliminary injunction in the face of an SEC no-action letter opining to the contrary," and it explained that "[e]ven when district courts have ruled in accord with no-action letters, they almost always have analyzed the issues independently of the letters." 45 F.3d at 13.

Finally, there is no merit to petitioners' argument (Pet. 10) that the order is reviewable because it will "tend to expose" Kroger to "civil or criminal liability for non-compliance with the agency's view of the law." As discussed, management is subject to no liability for failing to act in accordance with a no-action letter, whether it is issued by staff or the Commission itself. *Amalgamated Clothing*, 15 F.3d at 257. Indeed, the case

on which petitioners rely for this argument holds that an agency action that "may have put pressure on [a party] to comply or else risk protracted negotiations" merely has "consequences [that] are practical, as opposed to legal," and thus "differs significantly from the legal consequences that typify final agency action reviewable under the APA." *La. State v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 583 (5th Cir. 2016).

### D. Petitioners are unlikely to succeed on their claims of arbitrary or discriminatory agency action.

Petitioners contend (Mtn. 13-26) that staff's view of their proposal is incorrect, arbitrary and capricious, and part of a pattern of unconstitutional viewpoint discrimination. While the Commission does not concede any of their claims, the absence of a reviewable final order of the Commission is a fatal jurisdictional defect that precludes litigating them in this proceeding. But petitioners have multiple other routes to pursue their claims.

As discussed (*see supra* at 12), petitioners' "proper course" for relief regarding Kroger's exclusion of their proposal is a private action against Kroger "in the district court." *Amalgamated Clothing*, 15 F.3d at 257. Although a district court may consider the no-action letter, "such positions

are not binding on the district courts" and petitioners are free to argue, as they have here, that staff was wrong. *Id.*

Petitioners also have several options to seek Commission involvement regarding their concerns about the process or standards for review of proxy materials. They have already pursued one option: an informal request for discretionary review by the Commission of Kroger's proxy materials. 17 C.F.R. 202.1(d). More generally, the Commission has changed the approach to the "ordinary business operations" exclusion several times over the years. *Trinity Wall St.*, 792 F.3d at 337-40 (outlining history of actions through notice-and-comment). Petitioners may seek to have the Commission exercise its discretion to do so again or even to change Rule 14a-8(i)(7) itself. And, as petitioners themselves note (Pet. 11 n.2), routes exist to bring constitutional claims against an agency in district court in appropriate cases.

### E.     The petition as filed is not properly before this Court.

Petitioners also cannot establish a likelihood of success because the petition, in its current form, is not properly before this Court.

Exchange Act Section 25(a)(1), under which petitioners seek review, provides that "a person aggrieved by a final order of the Commission …

may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit." 15 U.S.C. § 78y(a)(1). Accordingly, the only venue in which petitioners from different circuits can file a joint petition is the D.C. Circuit.

Petitioner NCPPR—the proponent of the shareholder proposal at issue—does not even claim to reside or have a principal place of business in this Circuit. Rather, it appears to be a Delaware corporation based in Washington, D.C. *See* Complaint at 3, *NCPPR v. Howard Schultz*, No. 22-2-02945-32 (Wash. Sup. Ct. 8/30/22), https://nationalcenter.org/wp-content/uploads/2022/08/National-Center-for-Public-Policy-Research-v.-Starbucks-CEO-Howard-Schultz-ET-Al..pdf.

Petitioners suggest that venue is nonetheless proper because the petition was filed jointly with two individual Kroger shareholders who reside in Texas and supported NCPPR's review request. Pet. 5. But NCPPR cannot cure its lack of venue by joining a petition with others. *See Amerada Petroleum Corp. v. Fed. Power Comm'n*, 338 F.2d 808 (10th Cir. 1964) (dismissing petition as to all petitioners other than one for which proper venue was alleged); *Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 930 (9th Cir.

2020) (Nelson, J., concurring) (courts must "analyze venue on an individual

basis, even if multiple petitioners join one petition").[4]

This Court may correct this venue defect in two ways, both of which

render petitioners unlikely to succeed on the merits. The Court may

transfer the petition to the D.C. Circuit—where venue is proper for every

petitioner, but binding precedent compels the petition's dismissal. *See*

*Dornbusch v. Comm'r*, 860 F.2d 611, 615 & n.6 (5th Cir. 1988) (per curiam);

*Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 658 F.2d 278, 279 (5th

Cir. 1981); *Texas v. EPA*, 2011 WL 710598, at *3 n.28 (5th Cir. Feb. 24, 2011)

(unpublished); *Georgia Repub. Party v. SEC*, 888 F.3d 1198, 1205 (11th Cir.

2018). Or the Court may dismiss NCPPR as a petitioner for lack of venue.

*Fed. Power Comm'n v. Texaco*, 377 U.S. 33 (1964). But the remaining

---

[4] Nor does the concept of "pendent venue" apply here. This Court has not held that the doctrine applies at all in the appellate context. *See Merchants Fast Motor Lines, Inc. v. ICC*, 5 F.3d 911, 921 (5th Cir. 1993) (rejecting invocation of pendent venue on other grounds). And even district courts will not apply pendent venue when Congress has provided clear instructions on where claims should be heard. *See Martin v. U.S. Equal Emp. Opportunity Comm'n*, 19 F. Supp. 3d 291, 310 (D.D.C. 2014); *Schmidt v. Delta Airlines, Inc.*, 1999 WL 179469, at *2 (E.D. La. Mar. 31, 1999). The Exchange Act clearly states that venue is determined by residence, not (as pendent venue would allow) the factual connection between claims. 15 U.S.C. § 78y(a)(1).

petitioners were not proponents of the NCPPR proposal, and they have

failed to make a "strong showing" that they have standing to seek review

on NCPPR's behalf.

## II.     Petitioners will not be irreparably injured without a stay.

Petitioners have also failed to show that they will suffer any injury—

irreparable or otherwise—if a stay is not granted.

The lack of legal consequences flowing from the Kroger letter (*see*

*supra* at 11-12) forecloses the possibility that petitioners will suffer such

injury.  They say that "Kroger could issue its proxy materials as soon as

May 7" (Mtn. 1), but the letter has no legal impact on that timeframe or

Kroger's decision to exclude NCPPR's proposal.  A stay of the letter thus

would not affect Kroger's ability to distribute its proxy materials without

the proposal on that date.

Petitioners contend (Mtn. 26-27) that companies seek no-action letters

as "cover" for decisions to exclude proposals from proxy materials.  But

they offer no support for the notion that, having already learned that staff

is not recommending an enforcement action, Kroger would change its

conduct because the letter announcing that intention has been "stayed."

Nor is their purported injury irreparable without such a stay, as petitioners

can bring a private action directly against Kroger, which would allow them to seek relief that they cannot obtain in this petition, including (potentially) restraining Kroger from excluding NCPPR's proposal.

### III.    The remaining factors weigh against a stay.

As with all of its informal procedures, staff at the Commission provide no-action letters to assist members of the public.  This informal process helps the Commission efficiently deploy its limited enforcement resources.  Informal Procedures, 1976 WL 160411, at *3.  It also serves the public interest by aiding both management and proponents and facilitating compromise.  The prospect of court review of this informal, non-binding advisory function would, as a practical matter, thwart staff's ability to provide their views within the required timeframe and likely frustrate the process completely.  *Bd. of Trade*, 883 F.2d at 531.

Nor is there any reason to invoke this Court's jurisdiction to evaluate staff statements that, under well-established law, do not impact any legal rights or obligations.  Petitioners suffer no legally cognizable harm from the Kroger letter and can seek more direct and complete relief through a private action against Kroger.

# CONCLUSION

For these reasons, a stay should be denied.

Respectfully submitted,

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
Assistant General Counsel

/s/ Theodore J. Weiman
THEODORE J. WEIMAN
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5167 (Weiman)

May 3, 2023

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27.4 and Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,187 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B)

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6) because it has been prepared in a proportionally spaced typeface—Book Antiqua, 14 point—using Microsoft Word.

/s/ Theodore J. Weiman
Theodore J. Weiman

May 3, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed with the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on May 3, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Theodore J. Weiman
Theodore J. Weiman

May 3, 2023