No. 23-60230

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH;
NATHANIEL FISCHER; PHILLIP ARONOFF,

Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION,

Respondent.

---

On Petition for Review from an Order of the Securities and Exchange
Commission 2022-2023 No-Action Responses Re: The Kroger Co. (the
'Company') Incoming Letter Dated February 16, 2023 (April 12, 2023)

---

## REPLY IN SUPPORT OF EMERGENCY MOTION

---

GENE P. HAMILTON
REED D. RUBINSTEIN
AMERICA FIRST LEGAL
FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

R. TRENT MCCOTTER
  *Counsel of Record*
JONATHAN BERRY
MICHAEL BUSCHBACHER
JARED M. KELSON
BOYDEN GRAY & ASSOCIATES
801 17th Street NW, Suite 350
Washington, DC 20006
202-706-5488
mccotter@boydengrayassociates.com

*Counsel for Petitioners*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

### *National Center for Public Policy Research v. SEC*

No. 23-60230

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  National Center for Public Policy Research. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

2.  Nathaniel Fischer

3.  Phillip Aronoff

4.  The Securities and Exchange Commission

5.  Boyden Gray & Associates PLLC

6.  R. Trent McCotter

7.  Jonathan Berry

8.  Michael Buschbacher

9.  Jared M. Kelson

10.   The Kroger Co. It is publicly traded under the ticker KR, and, according to public information, The Vanguard Group, Inc., owns 10% or more of its stock.

11.   Gene P. Hamilton

12.   Reed D. Rubinstein

13.   America First Legal Foundation

14.   Theodore J. Weiman

15.   Tracey A. Hardin

16.   Megan Barbero

17.   Michael A. Conley

Dated: May 4, 2023                    /s/ R. Trent McCotter
                                      R. Trent McCotter
                                      *Counsel of Record for Petitioners*

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS .........................................i

TABLE OF AUTHORITIES.................................................................iv

I.     The Court Has Jurisdiction, and Venue Is Proper.................1

       A.     There Is Final Action. .....................................................1

              1.     Section 78d-1 Establishes the Consummation
                     of the Agency Process.............................................1

              2.     Petitioners Need Not Satisfy *Bennett*'s Second
                     Prong—But They Do So Anyway..........................2

              3.     There Is an "Order."................................................6

       B.     Section 78d-1 Applies—But Even If Not, This Court
              Still Has Jurisdiction. .....................................................7

       C.     *Heckler v. Chaney* Does Not Bar Review. .....................9

       D.     The Availability of a Private Suit Is Irrelevant. .........10

       E.     Venue Is Proper..............................................................11

II.    Petitioners Are Likely to Prevail on the Underlying
       Merits. ......................................................................................12

III.   Petitioners Face Irreparable Injury.......................................13

IV.    The Remaining Factors Favor Petitioners. ...........................14

CONCLUSION .......................................................................................14

CERTIFICATE OF COMPLIANCE.......................................................16

CERTIFICATE OF SERVICE................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amalgamated Clothing & Textile Workers Union v. SEC,*
15 F.3d 254 (2d Cir. 1994) ................................................................ 2

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,*
397 U.S. 150 (1970) ......................................................................... 11

*Axon Enter., Inc. v. FTC,*
143 S. Ct. 890 (2023) ......................................................................... 1

*Bennett v. Spear,*
520 U.S. 154 (1997) ............................................................... 1, 2, 3, 4

*CBS v. United States,*
316 U.S. 407 (1942) ........................................................................... 1

*CCNV v. Pierce,*
814 F.2d 663 (D.C. Cir. 1987) ......................................................... 13

*Ga. Republican Party v. SEC,*
888 F.3d 1198 (11th Cir. 2018) ....................................................... 11

*Glob. Van Lines, Inc. v. ICC,*
691 F.2d 773 (5th Cir. 1982) ........................................................... 11

*J.I. Case Co. v. Borak,*
377 U.S. 426 (1964) ......................................................................... 10

*Kixmiller v. SEC,*
492 F.2d 641 (D.C. Cir. 1974) ....................................................... 2, 3

*La. State v. U.S. Army Corps of Eng'rs,*
834 F.3d 574 (5th Cir. 2016) ............................................................. 4

*McClure v. Ashcroft,*
335 F.3d 404 (5th Cir. 2003) ........................................................... 13

*Med. Comm. for Human Rts. v. SEC,*
432 F.2d 659 (D.C. Cir. 1970) .............................................. 3, 9, 10, 14

*Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.,*
827 F.3d 51 (D.C. Cir. 2016) ................................................. 6

*Perez v. Mortg. Bankers Ass'n,*
575 U.S. 92 (2015) ................................................................. 6

*Qureshi v. Holder,*
663 F.3d 778 (5th Cir. 2011) ................................................ 3

*Ret. Sys. v. SEC,*
45 F.3d 7 (2d Cir. 1995) ........................................................ 5

*Rollerson v. Brazos River Harbor Navigation Dist.,*
6 F.4th 633 (5th Cir. 2021) ................................................. 10

*S. Cal. Aerial Advertisers' Ass'n v. FAA,*
881 F.2d 672 (9th Cir. 1989) ............................................... 6

*Sackett v. EPA,*
566 U.S. 120 (2012) ............................................................... 2

*Sanchez v. R.G.L.,*
761 F.3d 495 (5th Cir. 2014) ............................................... 13

*SAS Inst., Inc. v. Iancu,*
138 S. Ct. 1348 (2018) .......................................................... 7

*SEC v. Chenery Corp.,*
318 U.S. 80 (1943) ............................................................... 12

*Texas v. EEOC,*
933 F.3d 433 (5th Cir. 2019) ............................................... 4

*Texas v. United States,*
809 F.3d 134 (5th Cir. 2015) ................................................ 5

*Trinity Wall St. v. Wal-Mart Stores, Inc.,*
75 F. Supp. 3d 617 (D. Del. 2014) ...................................... 14

## Statutes

5 U.S.C. § 551(6) ........................................................... 6

15 U.S.C. § 78d-1(c) ............................................... 1, 2, 3

15 U.S.C. § 78n ............................................................ 7

15 U.S.C. § 78y(a) ........................................................ 1

28 U.S.C. § 2112 ......................................................... 11

Pub. L. No. 100-181, 101 Stat. 1249, 1254–55 (1987) ............................. 3

## Other Authorities

17 C.F.R. § 200.30-1 .................................................... 8

17 C.F.R. § 202.1 .................................................... 3, 4, 8

17 C.F.R. § 202.2 ........................................................ 8

17 C.F.R. § 240.14a-8(j) ............................................... 3, 5

25 Fed. Reg. 6719 (July 15, 1960) ............................... 1, 2, 3, 7, 8

*Statement of Informal Procedures for the Rendering of Staff
    Advice with Respect to Shareholder Proposals*, 41 Fed.
    Reg. 29,989 (July 7, 1976) ....................................... 9

76 Fed. Reg. 71,872 (Nov. 21, 2011) ................................... 8

*2021–22 Shareholder Proposal No-Action Responses*,
    SEC, https://tinyurl.com/sec2021-22 ............................. 5

*Consumers' Research SEC No-Action Audit 2018–2022*,
    https://consumersresearch.org/secnoactionaudit ................... 12

Hugh Rice Kelly, *Administrative Law*, 49 TEX. L. REV. 322
    (1971) ............................................................ 8

Note, *The SEC and "No-Action" Decisions Under Proxy Rule
    14a-8*, 84 Harv. L. Rev. 835 (1971) ....................... 3, 5, 7, 9

Harwell Wells, *Shareholder Meetings and Freedom Rides: The Story of* Greyhound, HARV. L. SCH. F. CORP. GOV. (Aug. 6, 2021), https://tinyurl.com/secgreyhound ............................. 12

*Shareholder Impact Review*, As You Sow (2022), https://tinyurl.com/pfizersettle ........................................................... 5

# ARGUMENT

## I.   THE COURT HAS JURISDICTION, AND VENUE IS PROPER.

The SEC argues there is no "final order of the Commission" under 15 U.S.C. § 78y(a). That is wrong. In seeking to avoid review, the SEC relies extensively on the "particular label[s]" it gives its own actions, but "it is the substance" that matters when determining reviewability of agency action. *CBS v. United States*, 316 U.S. 407, 416 (1942).

### A.   THERE IS FINAL ACTION.

#### 1.   SECTION 78D-1 ESTABLISHES THE CONSUMMATION OF THE AGENCY PROCESS.

The SEC disputes that the Division decision represented the "'consummation' of the Agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997); Opp.17. That disregards 15 U.S.C. § 78d-1(c), which states that decisions by SEC delegees "shall, *for all purposes, including appeal or review thereof*, be deemed the action of the Commission," including for "[f]inality," once Commission review has been denied or the time to seek it has expired. *Id.* (emphasis added); Pet.5–7. The SEC never disputes the Commission denied review here. That means the Division decision is the final Commission decision. *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 898 (2023); *see also infra* Part I.B.

1

The SEC claims it "might" change its mind, Opp.17, but "[t]he mere possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal." *Sackett v. EPA*, 566 U.S. 120, 127 (2012).

### 2. PETITIONERS NEED NOT SATISFY *BENNETT*'S SECOND PRONG—BUT THEY DO SO ANYWAY.

The SEC next claims the Division's decision is so informal that it was not "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78; Opp.10–12, 16–20. That is incorrect.

*First*, that additional form of finality is an APA requirement, Pet.7–8, but as discussed above, the Exchange Act provides for finality "for all purposes, including appeal or review thereof," once the Commission denies review. § 78d-1(c). That expansive language prohibits any attempt to glom additional tests for review onto the requirements in § 78d-1(c).

The SEC cites cases finding no finality, *see, e.g.*, *Kixmiller v. SEC*, 492 F.2d 641 (D.C. Cir. 1974); *Amalgamated Clothing & Textile Workers Union v. SEC*, 15 F.3d 254 (2d Cir. 1994), but those cases don't cite § 78d-

1, and *Kixmiller* was issued *before* § 78d-1's 1987 codification, *see* Pub. L. No. 100-181, 101 Stat. 1249, 1254–55 (1987).[1]

*Second*, even if *Bennett* prong-two finality were required, Petitioners satisfy that "pragmatic" inquiry. *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011); *see Med. Comm. for Human Rts. v. SEC*, 432 F.2d 659, 665–76 (D.C. Cir. 1970), *vacated on mootness grounds*, 404 U.S. 403 (1972).[2]

Companies wishing to exclude proposals are *required* to initiate the Rule 14a-8 process. 17 C.F.R. § 240.14a-8(j). And "in the administration of proxy rule 14a-8, … the SEC performs a quasi-judicial function." Note, *The SEC and "No-Action" Decisions Under Proxy Rule 14a-8*, 84 HARV. L. REV. 835, 837 (1971) ["HARVARD"]. The D.C. Circuit described it as "an adversary encounter" between "two interested private parties," where the SEC "formally decides among conflicting adversary claims premised on detailed legal arguments." *Med. Comm.*, 432 F.2d at 669–70, 675.

---

[1] Similarly, 17 C.F.R. § 202.1(d)'s statement that Division decisions do not necessarily constitute official expressions of the Commission was issued *before* § 78d-1. 25 Fed. Reg. 6719, 6737 (July 15, 1960).

[2] The SEC attempts to distinguish *Medical Committee* because the Commission had adopted the Division decision there, Opp.14, but § 78d-1(c) renders that distinction irrelevant.

In short, pursuant to Rule 14a-8's "formal procedures," 17 C.F.R. § 202.1(c), the SEC legally compels the company to submit stockholder-proposal disputes, treats them as adversarial controversies with full-blown briefing, and resolves them by applying explicit legal standards. Deciding private rights necessarily satisfies *Bennett* prong-two.

Further, the entire point of the process is that "'private parties can rely on [the decision] as a norm or safe harbor by which to shape their actions'"—i.e., it provides "'best practices'" for the company—and that also makes it final. *Texas v. EEOC*, 933 F.3d 433, 444 (5th Cir. 2019).

The SEC baldly claims a company's "management is free to ignore a staff letter," Opp.18–19, but if a company insists on excluding a proposal, the SEC could institute an investigation or lawsuit, Opp.5. At the very least it *"tend[s] to expose* parties to civil or criminal liability for non-compliance with the agency's view." *La. State v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 583 (5th Cir. 2016).

Petitioners' review of the 2021–22 proxy season reveals that of the 112 instances where the SEC denied no-action relief, the company

complied in 111.[3] In the one exception, the company agreed to give the proponent the underlying information requested, in exchange for withdrawing the proposal.[4] That means *100%* of the time, the company bowed to the SEC decision to deny Rule 14a-8 no-action relief.

The SEC also says that "Commissioners might elect to proceed no matter what [staff] recommends," Opp.17, but neglects to cite a single example of this ever occurring. The Division's decision is "applied by the agency in a way that indicates it is binding" and is thus final. *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015).

Moreover, Rule 14a-8 itself expressly treats "prior Division letters" as persuasive authority, 17 C.F.R. § 240.14a-8(j)(2)(ii), and courts often award deference to the SEC's no-action decisions in private lawsuits against the company.[5] Those forms of deference, no matter how slight, are legal consequences separate from the SEC's own enforcement

---

[3] Petitioners matched no-action outcomes the SEC marked "include," *see 2021–22 Shareholder Proposal No-Action Responses*, SEC, https://tinyurl.com/sec2021-22, to companies' proxy statements, available at *EDGAR Search*, SEC, https://www.sec.gov/edgar/search/.

[4] *Pfizer Inc.*, 2021 WL 6126545 (Feb. 10, 2022); *2022 Shareholder Impact Review* 16, As You Sow (2022), https://tinyurl.com/pfizersettle.

[5] HARVARD, *supra*, at 854; *N.Y.C Emps.' Ret. Sys. v. SEC*, 45 F.3d 7, 14 (2d Cir. 1995).

decision. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 110 (2015) (Scalia, J., concurring).

### 3.    THERE IS AN "ORDER."

It is unclear whether the SEC disputes the existence of an "order" on any basis not addressed above. Opp.10–11. If so, the SEC is wrong.

The Exchange Act does not define "order," but "courts sometimes have construed 'order' for purposes of special review statutes more expansively than its definition in the APA" to ensure reviewability even of "informal" rulings. *Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.*, 827 F.3d 51, 55 (D.C. Cir. 2016). That is warranted here given § 78d-1's broad scope.

Even if the APA definition of "order" applied, the outcome is unchanged because "the APA defines 'order' broadly." *S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 675 (9th Cir. 1989). The written decision here included (1) a "declaratory" disposition, 5 U.S.C. § 551(6), that there is a basis for concluding the Proposal involves only ordinary business matters and thus can be excluded; and (2) an "affirmative" "disposition," *id.*, that the Division will not recommend enforcement if Kroger excludes the Proposal.

Thus, "it would seem entirely consistent with the scheme of the Exchange Act to treat agency determinations under rule 14a-8 as … an 'order' within the meaning of section [78y](a)." HARVARD, *supra*, at 861.

## B.   SECTION 78D-1 APPLIES—BUT EVEN IF NOT, THIS COURT STILL HAS JURISDICTION.

The SEC alternatively tries to escape § 78d-1 by claiming the Commission never delegated authority over the Rule 14a-8 no-action process to the Division. Opp.14–16. This implies that Division staff are rogue actors who have been issuing no-action decisions for decades without the Commission providing *any* authority to do so. No.

*First*, the SEC cannot avoid judicial review by letting subordinates issue decisions and then disclaiming any delegation. That would eviscerate § 78d-1. And an agency has no "'power to do indirectly what it cannot do directly'"—i.e., preclude judicial review of subordinates' decisions. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 n.* (2018).

*Second*, the SEC's argument is irrelevant because if the Commission never delegated Rule 14a-8 no-action authority, then the Commission itself retains exclusive authority over proxies under 15 U.S.C. § 78n, meaning the Division's letters *necessarily* represent the Commission's own final orders for judicial review purposes even without

resort to § 78d-1. Thus, even under the SEC's view, the Division is the agent communicating the Commission's *own* judicially reviewable decisions.

*Third*, the "Commission has in fact delegated its powers in 14a-8 cases to the Division of Corporate Finance." Hugh Rice Kelly, *Administrative Law*, 49 TEX. L. REV. 322, 332 n.48 (1971). Rule 14a-8, issued by the Commission, refers five different times to the role of "staff" and says "prior Division letters" are persuasive authority. And 17 C.F.R. §§ 202.1(d) and 202.2, which the SEC says cover Rule 14a-8, *see* Opp.6, 21, both invoke § 78d-1 for their authority. *See* 76 Fed. Reg. 71,872, 71,875 (Nov. 21, 2011). This is all inexplicable if the Commission never delegated such authority in the first place.

In addition to exercising § 78d-1's delegation authority in part 202, the Commission issued a rule delegating power to the Division to "authorize the use of forms of proxies, proxy statements, or other soliciting material within periods of time less than that prescribed in" relevant regulations, including Rule 14a-8. 17 C.F.R. § 200.30-1(f)(4). Contrary to the SEC's claim, that delegation could *not* refer exclusively to the authority to waive certain filing deadlines. Opp.15. "[A]uthoriz[ing]

the use of proxies" inherently means the *review* of proxy materials. And the Rule 14a-8 no-action process is part of that "review" because it authorizes an essential part of a company's proxy materials: shareholder proposals. *See Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals*, 41 Fed. Reg. 29,989, 29,991 (July 7, 1976) (referring to Rule 14a-8 no-action process as "proxy review").[6]

## C. *HECKLER V. CHANEY* DOES NOT BAR REVIEW.

The SEC argues in passing the challenged order is unreviewable as a purely discretionary decision. Opp.12–13. That is wrong.

*First*, this argument is a red herring because the no-action letter does far more than announce a decision against enforcement. The Division unequivocally concluded: "In our view, the Proposal relates to, and does not transcend, ordinary business matters" and thus could be excluded. Ex.F. That legal conclusion is segregable, *Med. Comm.*, 432 F.2d at 673–75, and is "an issue which the agency has effectively resolved and which is appropriate for judicial review," HARVARD, *supra*, at 865,

---

[6] Moreover, Rule 14a-8 itself already separately authorizes the Division to waive a company's filing deadline for good cause, § 240.14a-8(j)(1), making the SEC's interpretation entirely redundant.

especially because the SEC "has never indicated that it takes … prosecutorial factors into consideration at all in rule 14a-8 decisions," *id.* at 851.

*Second*, the bar on reviewing discretionary decisions "is very narrow," *Rollerson v. Brazos River Harbor Navigation Dist.*, 6 F.4th 633, 644 (5th Cir. 2021), and does not apply (1) where the agency itself has issued regulations that provide judicially manageable standards for review (which the SEC does not dispute exist), or (2) to constitutional claims (which Petitioners bring). Pet.11.n.2. The SEC doesn't dispute these exceptions, but instead notes irrelevant distinctions about the cases Petitioners cited. Opp.13.n.2.

### D.     THE AVAILABILITY OF A PRIVATE SUIT IS IRRELEVANT.

The SEC notes Petitioners could sue Kroger directly under the implied cause of action created in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964). But the availability of an implied cause of action cannot oust this Court's *express* jurisdiction. *Med. Comm.*, 432 F.2d at 672. This suit follows the textually supported route.

### E.    VENUE IS PROPER.

Venue is proper when an aggrieved petitioner "resides" in this Circuit. § 78y(a)(1). Petitioners Fischer and Aronoff reside in Texas. The SEC nonetheless insists that the presence of Petitioner NCPPR, which has its principal place of business outside this Circuit, spoils venue for the entire case and thus it must be dismissed. Opp.22.

No court has adopted that view, and this Court has rejected it: "Because *one of the petitioners* is a corporation organized and existing under the laws of the state of Texas, venue is properly in this court." *Glob. Van Lines, Inc. v. ICC*, 691 F.2d 773, 774 n.1 (5th Cir. 1982) (emphasis added); *see Ga. Republican Party v. SEC*, 888 F.3d 1198, 1205 (11th Cir. 2018) (suggesting one petitioner with venue would suffice under § 78y).

Even if the Court dismissed NCPPR, Petitioners Fischer and Aronoff would remain in this Circuit,[7] and NCPPR would file a D.C. Circuit petition that "shall" then be transferred to *this Circuit*. 28 U.S.C. § 2112(a)(1), (5). Because venue under § 78y is not jurisdictional, the

---

[7] The SEC never disputes Fischer and Aronoff are "aggrieved parties" because they cannot vote on the Proposal. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 155–56 (1970).

Court need not indulge in such pointless procedures even if the SEC were correct—which it is not.[8]

## II. PETITIONERS ARE LIKELY TO PREVAIL ON THE UNDERLYING MERITS.

The SEC ignores the underlying merits. Indeed, it is barred from raising new arguments. *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).

On the First Amendment claim, new research from the non-profit group Consumers' Research reveals that during the 2018–2022 proxy seasons, no-action relief was granted under Rule 14a-8(i)(7) on 46% of all liberal-aligned proposals, but 72% of all conservative-aligned proposals. *Consumers' Research SEC No-Action Audit 2018–2022*, https://consumersresearch.org/secnoactionaudit (forthcoming May 4, 2023). This continues the SEC's unfortunate history of viewpoint discrimination. *See* Harwell Wells, *Shareholder Meetings and Freedom Rides: The Story of* Peck v. Greyhound, HARV. L. SCH. F. CORP. GOV. (Aug. 6, 2021), https://tinyurl.com/secgreyhound (detailing SEC obstruction of desegregation proposals).

---

[8] The SEC says that "binding precedent compels … dismissal," Opp.23, but no case it cites actually dismissed a joint petition.

## III.  PETITIONERS FACE IRREPARABLE INJURY.

The SEC argues primarily that granting relief in this case might not remedy any injuries because Kroger might "change its conduct" regardless of what the Court does. Opp.24.

Petitioners "need only show that a favorable ruling could *potentially lessen* [their] injury," and they "need not definitively demonstrate that a victory would completely remedy the harm." *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014). Thus, where a favorable ruling "arguably" would result in "third parties" "chang[ing]" their actions that negatively affect the petitioners, there is a redressable injury. *McClure v. Ashcroft*, 335 F.3d 404, 411 (5th Cir. 2003); *CCNV v. Pierce,* 814 F.2d 663, 669 (D.C. Cir. 1987) (government action played a "substantial factor motivating the third parties' actions").

Temporarily staying the SEC's decision means Kroger could no longer rely on it (including as a defense in a private suit), which would lessen Petitioners' injuries given that companies "'delay'" printing their materials while awaiting Division decisions. Pet.10. And a final decision

in Petitioners' favor would almost guarantee the Proposal would be included, given the 100% compliance rate demonstrated above.[9]

## IV. THE REMAINING FACTORS FAVOR PETITIONERS.

The SEC suggests in passing that practicality concerns justify denying relief, Opp.25, but the SEC issues only about 100 grants of no-action relief per year, *see Shareholder Proposal Developments During the 2022 Proxy Season*, Gibson Dunn (2022), https://tinyurl.com/m9pfu988.

## CONCLUSION

The Court should grant the motion.

---

[9] If Kroger prints the 2023 Proxy Materials, this case would fall within the capable-of-repetition-yet-evading-review framework. *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 75 F. Supp. 3d 617, 625 (D. Del. 2014); Pet.5; *see also Med. Comm.*, 404 U.S. at 406.

May 4, 2023                     Respectfully submitted,

                                /s/ R. Trent McCotter
                                R. TRENT MCCOTTER
                                  *Counsel of Record*
                                JONATHAN BERRY
                                MICHAEL BUSCHBACHER
                                JARED M. KELSON
                                BOYDEN GRAY & ASSOCIATES
                                801 17th Street NW, Suite 350
                                Washington, DC 20006
                                202-706-5488
                                mccotter@boydengrayassociates.com

                                GENE P. HAMILTON
                                REED D. RUBINSTEIN
                                AMERICA FIRST LEGAL FOUNDATION
                                611 Pennsylvania Ave SE #231
                                Washington, DC 20003
                                202-964-3721
                                gene.hamilton@aflegal.org

                                *Counsel for Petitioners*

# **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Fifth Circuit Rule 27.4 and Federal Rule of Appellate Procedure 27(d)(2) because it contains 2587 words, excluding the portions exempted by Rule 27(a)(2)(B). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

May 4, 2023                    /s/ R. Trent McCotter

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF.

May 4, 2023                              /s/ R. Trent McCotter