No. 23-60230

# In the United States Court of Appeals for the Fifth Circuit

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH;
NATHANIEL FISCHER; PHILLIP ARONOFF,

*Petitioners,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

Petition for Review from an Order
of the Securities and Exchange Commission

## MOTION FOR LEAVE TO INTERVENE
## BY THE NATIONAL ASSOCIATION OF MANUFACTURERS

Steven P. Lehotsky
Adam Steene
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW
Suite 700
Washington, DC 20001

Erica Klenicki
Michael A. Tilghman II
NAM LEGAL CENTER
733 10th Street, NW
Suite 700
Washington, DC 20001

Scott A. Keller
Matthew H. Frederick
Todd Disher
Alexis Swartz
LEHOTSKY KELLER COHN LLP
919 Congress Avenue
Suite 1100
Austin, TX 78701
scott@lkcfirm.com
(512) 693-8350

## CERTIFICATE OF INTERESTED PERSONS

No. 23-60230

National Center for Public Policy Research; Nathaniel Fischer;
Phillip Aronoff,
*Petitioners*,
*v.*
Securities and Exchange Commission,
*Respondent*.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. Proposed Intervenor the National Association of Manufacturers has no parent corporations and no publicly held corporation owns 10% or more of its respective stock. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Petitioners:**
National Center for Public Policy Research; Nathaniel Fischer; Phillip Aronoff

**Counsel for Petitioners:**
R. Trent McCotter (lead counsel)
Jonathan Berry
Michael Buschbacher
Jared M. Kelson
BOYDEN GRAY & ASSOCIATES PLLC

Gene Patrick Hamilton
AMERICA FIRST LEGAL FOUNDATION

**Respondent:**
Securities and Exchange Commission

**Counsel for Respondent:**
Theodore J. Weiman (lead counsel)
Megan Barbero
Michael A. Conley
Tracey A. Hardin
SECURITIES AND EXCHANGE COMMISSION

**Proposed Intervenor:**
National Association of Manufacturers

**Counsel for Proposed Intervenor:**
Scott A. Keller (lead counsel)
Steven P. Lehotsky
Matthew H. Frederick
Todd Disher
Adam Steene
Alexis Swartz
LEHOTSKY KELLER COHN LLP

Erica Klenicki
Michael A. Tilghman II
NAM LEGAL CENTER

**Interested Third Party:**
The Kroger Co.

/s/ *Scott A. Keller*
SCOTT A. KELLER
*Counsel of Record for*
*Proposed Intervenor*

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ........................................................................ i

Table of Contents ............................................................................................. iii

Table of Authorities ........................................................................................... v

Motion for Leave to Intervene........................................................................... 1

Background ........................................................................................................ 3

    A.  Corporations solicit proxy votes from absent
       shareholders before shareholder meetings..................................... 3

    B.  The SEC has misused a modest statute to compel
       companies to speak on shareholder-selected policy
       proposals and subsidize dissenting-shareholder speech. ............ 4

    C.  At the expense of main-street investors, activists hijack
       the proxy-vote process to advance their preferred social
       policies with the help of the SEC..................................................... 7

        1.  Activist groups overburden manufacturers with
           proposals designed to push ideological agendas. .................. 7

        2.  Proxy-advisory firms push institutional investors to
           support activist proposals. ......................................................... 9

        3.  The SEC forces companies to include activist
           proposals. ..................................................................................11

Argument ..........................................................................................................13

  I.  The motion is timely. .............................................................................15

  II.  The NAM and its members have a claim or defense that
     shares with the main action a common question of law and
     fact.........................................................................................................15

  III. No existing party adequately represents the NAM's
     position.................................................................................................18

A. The NAM's position is that the SEC lacks power to compel any corporation to speak, or subsidize shareholder speech, about any shareholder-submitted proposal.............................................................................18

B. Neither party is likely to advance the NAM's position..............21

IV. Granting permission to intervene will cause no undue delay or prejudice. ...................................................................22

Conclusion.........................................................................................23

Certificate of Service ........................................................................24

Certificate of Compliance .................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. HHS,*
141 S. Ct. 2485 (2021)............................................................20

*Citizens United v. FEC,*
558 U.S. 310 (2010)..............................................................19

*CTS Corp. v. Dynamics Corp. of Am.,*
481 U.S. 69 (1987)..............................................................1, 20

*In re Franchise Servs. of N. Am., Inc.,*
891 F.3d 198 (5th Cir. 2018)....................................................1

*Institutional S'holder Servs. Inc. v. SEC,*
No. 1:19-cv-03275-APM (D.D.C. July 27, 2022)...........................17

*J.I. Case Co. v. Borak,*
377 U.S. 426 (1964)............................................................2, 4, 5

*Jama v. ICE,*
543 U.S. 335 (2005)............................................................21

*Jana Master Fund, Ltd. v. CNET Networks, Inc.,*
954 A.2d 335 (Del. Ch. 2008)..................................................4

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31,*
138 S. Ct. 2448 (2018)..........................................................19

*Jennings v. Rodriguez,*
138 S. Ct. 830 (2018)..........................................................19

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
140 S. Ct. 2367 (2020)..........................................................14

*Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1*,
  554 U.S. 527 (2008) ............................................................................22

*NAM v. SEC*,
  2017 WL 3503370 (D.D.C. Apr. 3, 2017) ........................................17

*NAM v. SEC*,
  2022 WL 16727731 (W.D. Tex. Sept. 28, 2022) ..............................18

*NAM v. SEC*,
  No. 22-51069 (5th Cir.) ....................................................................18

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  138 S. Ct. 2361 (2018) ......................................................................19

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) ............................................................13

*Newby v. Enron Corp.*,
  443 F.3d 416 (5th Cir. 2006) ............................................................16

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ..........................................................................19

*Richardson v. Flores*,
  979 F.3d 1102 (5th Cir. 2020) ..........................................................13

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) ............................................................................22

*Texas v. Dep't of Energy*,
  754 F.2d 550 (5th Cir. 1985) ............................................................13

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ......................................................14, 18

*Trinity Wall St. v. Wal-Mart Stores, Inc.*,
  792 F.3d 323 (3d Cir. 2015) ..............................................3, 4, 6, 12

*Va. House of Delegates v. Bethune-Hill*,
139 S. Ct. 1945 (2019)........................................................................14

*West Virginia v. EPA*,
142 S. Ct. 2587 (2022)........................................................................20

**Statutes**

15 U.S.C. § 78n ...............................................................2, 4, 5, 19, 20, 21

Dodd-Frank Wall Street Reform & Consumer Protection Act,
Pub. L. 111-203 § 971(a), 124 Stat 1376, 1915 (2010) .............................5, 17

Securities Exchange Act of 1934, Pub. L. 73-291 § 14, 48 Stat.
881, 895.............................................................................................4

**Rules, Regulations, and Agency Documents**

5th Cir. R. 15.3.3...............................................................................14

5th Cir. R. 15.5.................................................................................3, 15

17 C.F.R. § 240.14a-8............................... 1, 2, 3, 6, 7, 8, 11, 12, 13, 15, 18, 19, 22

63 Fed. Reg. 29,106 (May 28, 1998) ...........................................................6

85 Fed. Reg. 55,082 (Sept. 3, 2020)........................................................10, 11

85 Fed. Reg. 70,240 (Nov. 4, 2020)............................................................9

87 Fed. Reg. 45,052 (July 27, 2022) ..........................................................22

*American Express Co.*, 2023 WL 2524429 (SEC Mar. 9, 2023) ...........................13

*Eli Lilly & Co.*, 2023 WL 2524430 (SEC Mar. 8, 2023).......................................17

Fed. R. App. P. 15(d) .......................................................................3, 13, 15

Fed. R. Civ. P. 24...................................................................13, 14, 16, 17, 22

*Lab'y Corp. of Am. Holdings*, 2023 WL 174011 (SEC Mar. 22, 2023) .................8

*Mastercard, Inc.*, 2022 WL 392206 (SEC Apr. 22, 2022) ....................................13

*Pfizer Inc.*, 2021 WL 6126545 (SEC Feb. 10, 2022)..........................................8, 17

*Pfizer Inc.*, 2022 WL 17832223 (SEC Jan. 19, 2023) ...........................................17

SEC Release No. 34-87457, 2019 WL 5869793 (Nov. 5, 2019)..........................10

SEC Staff Legal Bulletin No. 14L (CF),
    https://www.sec.gov/corpfin/staff-legal-bulletin-14l-share-
    holder-proposals ........................................................................................6, 12

*The Travelers Cos.*, 2023 WL 352627 (SEC Mar. 30, 2023) ..................................8

**Other Authorities**

7C Charles Alan Wright, et al., *Federal Practice & Procedure*
    § 1911 (3d ed. 2023) ...........................................................................................16

As You Sow, Proxy Preview 2022,
    https://www.proxypreview.org/2022/report .................................................9

Comment Letter from the NAM to the SEC (Feb. 3, 2020),
    https://www.sec.gov/comments/s7-22-19/s72219-6735396-
    207626.pdf ......................................................................................................10

Comment Letter from the NAM to the SEC (Sept. 12, 2022),
    https://www.sec.gov/comments/s7-20-22/s72022-20138839-
    308542.pdf ......................................................................................................12

James R. Copland, Proxy Monitor 2022 Voting Results: Mid-
    Season Review, https://manhattan.institute/article/proxy-
    monitor-2022-voting-results-mid-season-review.........................................8

Letter from 21 State Attorneys General to ISS & Glass Lewis
  (Jan. 17, 2023), https://attorneygeneral.utah.gov/wp-con-
  tent/uploads/2023/01/2023-01-17-Utah-Texas-Letter-to-Glass-
  Lewis-ISS.pdf ................................................................................................10

Letters from 21 State Financial Officers to ISS & Glass Lewis
  (May 15, 2023), https://treasurer.utah.gov/wp-content/up-
  loads/Proxy-Voting-Letter-to-Proxy-Advisory-Firms.pdf .......................11

Richard Vanderford, *Shareholder Activists Drag Companies Into
  U.S. Culture Wars,* Wall St. J. (May 23, 2023),
  https://www.wsj.com/articles/shareholder-activists-drag-
  companies-into-u-s-culture-wars-
  775804cd?mod=hp_lead_pos1 ............................................................9, 12, 13

### Motion for Leave to Intervene

The National Association of Manufacturers ("NAM") moves to intervene to raise a fundamental threshold issue addressed by neither party but affecting every publicly traded company in the United States: Whether the First Amendment and federal securities laws allow the SEC, through its Rule 14a-8, to compel a corporation to use its proxy statement to speak about abortion, climate change, diversity, gun control, immigration, or other contentious issues unrelated to its core business or the creation of shareholder value.[1]

The answer is "No." It is "firmly established" that the *States* have the authority "to regulate domestic corporations." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987). And state corporate law typically empowers corporate management, subject to oversight by the board of directors, to determine whether and how the corporation will speak or act. *See, e.g., In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 210 (5th Cir. 2018).

But the SEC's Rule 14a-8 asserts federal governmental power to override management and compel a corporation to publicize dissenting shareholders' proposals on divisive issues in its own proxy solicitation. The SEC's claimed power to dictate the contents of corporate proxy statements has no basis in federal securities law, and it violates the First Amendment's

---

[1] As explained in more detail below (at 3-4), a proxy statement is a document that a corporation sends to its shareholders to solicit permission to vote on their behalf if the shareholders are absent from the corporation's shareholder meeting.

prohibition against government-compelled speech. The statutory authority invoked by the SEC, 15 U.S.C. § 78n(a), deals with adequate "disclosure": It prevents "deceptive" or "misleading" speech *by corporations* when they solicit shareholder-proxy votes. *J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 434-35 (1964), *abrogated on other grounds by Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Nowhere does it grant the SEC power to compel corporations to publish dissenting shareholders' speech in the corporations' own proxy statements.

The NAM seeks intervention to vindicate manufacturers' constitutional rights and limit the SEC's overreaching attempts to politicize corporate governance. The NAM is the largest manufacturing association in the United States, representing small and large manufacturers in every industrial sector and in all 50 States. The NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the United States. Seventy-nine percent of Fortune 100 manufacturers are members of the NAM, as are fifty-four percent of Fortune 500 manufacturers.

Consistent with state corporate law and the Constitution, manufacturers choose to express certain views—or not—through the choices of their management, as directed by their boards, which, in turn, are elected by shareholders. But each year, manufacturers are inundated with proposals from a limited set of activist shareholders pushing their own agendas divorced from shareholder value, and companies must spend tens of millions of dollars addressing these proposals under Rule 14a-8's compelled-speech regime.

Although the NAM is concerned that the SEC has applied Rule 14a-8 in an inconsistent and politically motivated manner, as identified by petitioners, the NAM also agrees that Kroger should not be forced to include petitioners' policy proposal in Kroger's proxy statement. That is because the SEC lacks authority to force *any* public company to include *any* shareholder-selected policy proposal in the company's proxy solicitation. Given that neither petitioners nor the SEC will raise these key threshold arguments, the NAM moves to intervene under Federal Rules of Appellate Procedure 15(d) and 27 and Fifth Circuit Rule 15.5. Counsel for the NAM has contacted counsel for petitioners and the SEC. Petitioners consent to the NAM's motion, and the SEC takes no position on the motion.

## BACKGROUND

### A. Corporations solicit proxy votes from absent shareholders before shareholder meetings.

At annual shareholder meetings, publicly traded corporations' shareholders may vote for the board of directors and vote on other proposals. Most shareholders do not attend these meetings in person, but instead grant the corporation (or sometimes other shareholders) a proxy to vote on their behalf at the meeting. *See Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 334 (3d Cir. 2015).

Consequently, before a shareholder meeting, corporations often send a proxy statement to shareholders, soliciting authority to vote by proxy on behalf of absent shareholders. *Id.* The proxy statement also "includes

information about items or initiatives on which the shareholders are asked to vote" by the corporation, such as approval of compensation or a sale of substantially all assets. *Id.* at 328. State law typically permits dissenting shareholders to seek their own "independently financed proxy solicitation," asking other shareholders to grant their proxy votes to the dissenting shareholder rather than the corporation. *Jana Master Fund, Ltd. v. CNET Networks, Inc.*, 954 A.2d 335, 342 (Del. Ch. 2008).

## B. The SEC has misused a modest statute to compel companies to speak on shareholder-selected policy proposals and subsidize dissenting-shareholder speech.

Invoking 15 U.S.C. § 78n, the SEC claims authority to subvert state corporate law. Originally enacted as section 14 of the Securities Exchange Act of 1934, section 78n addresses "deceptive or inadequate disclosure" by corporations when they solicit proxy votes from absent shareholders. *J.I. Case*, 377 U.S. at 431; *see* Securities Exchange Act of 1934, Pub. L. 73-291 § 14, 48 Stat. 881, 895 (1934). To that end, the first subsection of section 78n permits the SEC to regulate "proxy" solicitations by the corporation "for the protection of investors":

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect

4

of any security (other than an exempted security) registered pursuant to section 78l of this title.

15 U.S.C. § 78n(a)(1).

This provision is limited in scope. It allows the SEC to ensure that a corporation's proxy-vote solicitation to shareholders is not "deceptive" or "misleading." *J.I. Case*, 377 U.S. at 434–35. But nothing in this statute grants the SEC power to compel a corporation to affirmatively include *additional proposals* when the corporation solicits proxy votes from shareholders.

Congress amended 15 U.S.C. § 78n in 2010, adding a subsection that expressly authorizes the SEC to mandate the inclusion of shareholders' *director nominees*:

> The rules and regulations prescribed by the Commission under paragraph (1) may include—
> (A) a requirement that a solicitation of proxy, consent, or authorization by (or on behalf of) an issuer include *a nominee submitted by a shareholder to serve on the board of directors* of the issuer; and
> (B) a requirement that an issuer follow a certain procedure in relation to a solicitation described in subparagraph (A).

Dodd-Frank Wall Street Reform & Consumer Protection Act, Pub. L. 111-203 § 971(a), 124 Stat 1376, 1915 (codified at 15 U.S.C. § 78n(a)(2)) (emphasis added). But the amendment says nothing about the inclusion of shareholders' *proposals* in a company's proxy statement.

Nevertheless, the SEC mandates that public corporations include in their proxy solicitations certain policy proposals selected by qualifying shareholders. Promulgated in its current form in 1998, this regulatory

5

mandate, SEC Rule 14a-8, lists the many circumstances in which "a company *must* include a shareholder's proposal in its proxy statement." 17 C.F.R. § 240.14a-8 (emphasis added); *see* 63 Fed. Reg. 29,106, 29,119 (May 28, 1998).

Rule 14a-8 also contains limited exceptions. One exception allows a company "to exclude [a shareholder] proposal . . . [i]f the proposal deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i), (i)(7). Recently, the SEC narrowed its interpretation of this exception, asserting that any "proposal rais[ing] issues with a broad societal impact" does not qualify for the exception. SEC Staff Legal Bulletin No. 14L (CF) (Nov. 3, 2021).[2] And the SEC now requires the inclusion of such proposals even if there is no "nexus between a policy issue and the company." *Id.*

If a company wishes to exclude a shareholder-submitted proposal, the company must establish to the SEC that the proposal falls within one of the Rule's exceptions. 17 C.F.R. § 240.14a-8(j). If the SEC agrees with the company, the SEC may issue "a no-action letter, specifying that the company may omit the shareholder proposal under the [exception] it relied on." *Trinity*, 792 F.3d at 337. If the SEC disagrees, its letter will state "that it is 'unable to concur' with the company" and the company will be required to include the proposal on its proxy statement. *Id.*

---

[2]    https://www.sec.gov/corpfin/staff-legal-bulletin-14l-shareholder-proposals.

**C. At the expense of main-street investors, activists hijack the proxy-vote process to advance their preferred social policies with the help of the SEC.**

Rule 14a-8's mandate has driven a surge of activists forcing onto corporate proxy statements a host of proposals addressing social issues, many with little relevance to a company's business. Today, the activist-proposal process involves three steps. First, an advocacy group formulates a social policy proposal and, relying on Rule 14a-8, submits it on behalf of a small shareholder for inclusion in a corporation's proxy statement. Second, proxy-advisory firms direct institutional investors to support the proposal. Third, the SEC uses Rule 14a-8 to force companies to include the proposal, more often than not in a manner that aligns with the SEC's political viewpoints.

**1. Activist groups overburden manufacturers with proposals designed to push ideological agendas.**

The process begins with activist groups like As You Sow, whose stated mission is to "empower[] shareholders to change corporations" on issues such as "gender inequalities, workplace equity, environmental health, and more."[3] These activists usually hold a *de minimis* stake in the corporation, often having acquired shares for the primary purpose of advancing their social or political goals, not for economic reasons. Unable to achieve success for their agendas in the political arena, these groups attempt instead to exploit Rule 14a-8. The Rule permits shareholders with as little as $2,000 in

---

[3] https://www.asyousow.org/.

shares to demand that a proposal be included in the company's proxy statement. 17 C.F.R. § 240.14a-8(b)(1)(i)(A). So, on behalf of a qualifying shareholder, the advocacy group submits a proposal seeking to force the company to announce and address the proposal in its proxy statement. *E.g.*, *The Travelers Cos.*, 2023 WL 352627 (SEC Mar. 30, 2023) (proposal to have the insurance company oversee an audit to "improv[e] the racial impacts of its policies, practices, products, and services"); *Lab'y Corp. of Am. Holdings*, 2023 WL 174011 (SEC Mar. 22, 2023) (proposal to reduce company's cooperation with law enforcement enforcing abortion laws); *Pfizer Inc.*, 2021 WL 6126545 (SEC Feb. 10, 2022) (proposal to report on its "diversity, equity, and inclusion efforts" and to report "data by gender, race, and ethnicity").

As these examples suggest, activist proposals tend to focus on environmental, social, and governance ("ESG") matters. "Fully 60% of all shareholder proposals on company proxy ballots [in 2022] involve[d] environmental or social issues—an all-time high percentage." James R. Copland, Proxy Monitor 2022 Voting Results: Mid-Season Review (May 19, 2022).[4] In February 2022, As You Sow boasted that activists had already "filed 529 shareholder resolutions on environmental, social and related sustainable governance issues for the 2022 proxy season." As You Sow, Proxy Preview

---

[4]     https://manhattan.institute/article/proxy-monitor-2022-voting-results-mid-season-review.

2022, at 5 (Feb. 24, 2022).[5] And "[t]he current political climate means companies can expect more proposals next year." Richard Vanderford, *Shareholder Activists Drag Companies Into U.S. Culture Wars*, Wall St. J. (May 23, 2023).[6]

Main-street investors overwhelmingly reject these politically motivated proposals. Last year, only "12% of ESG-related proposals targeting S&P 1500 companies that went up for a vote won support from a majority of shareholders." *Id.*

But even when they are unsuccessful, these proposals impose real costs on companies and, ultimately, shareholders. The SEC itself estimates that shareholder proposals can impose up to $150,000 in direct costs on a company *per proposal*. *See* 85 Fed. Reg. 70,240, 70,274 (Nov. 4, 2020). So, it is no exaggeration to say that this process wastes tens of millions of dollars that could otherwise be used to create value for main-street investors.

### 2. Proxy-advisory firms push institutional investors to support activist proposals.

Activist groups are not alone in their crusade. Joining them are so-called proxy-advisory firms, which advise institutional investors about upcoming proxy votes, including shareholder-submitted proposals on activist causes. *See* Comment Letter from National Association of Manufacturers to

---

[5] https://www.proxypreview.org/2022/report.

[6] https://www.wsj.com/articles/shareholder-activists-drag-companies-into-u-s-culture-wars-775804cd?mod=hp_lead_pos1.

SEC, at 3 (Feb. 3, 2020) ("NAM 2020 Comment").[7] These institutional investors (such as BlackRock or State Street Global Advisors) control a clear majority of market value on U.S. exchanges. SEC Release No. 34-87457, 2019 WL 5869793, at *3 (Nov. 5, 2019). Given the enormity of their investments, fund managers at these large institutions rely on proxy-advisory firms to consider a large volume of proxies for their clients and sometimes to cast votes on their behalf. *Id.* Proxy-advisory firms can therefore impact the direction of a business and the life savings of millions of investors. *See* 85 Fed. Reg. 55,082, 55,083 & n.18 (Sept. 3, 2020).

Control of the proxy-advisory industry is concentrated in two firms, and neither has main-street investors' interests at heart. The two largest firms—Glass Lewis and Institutional Shareholder Services ("ISS")—control an estimated 97 percent share of the proxy-advisory market. 85 Fed. Reg. at 55,127 n.517.

Proxy-advisory firms increasingly advocate for a normative agenda, seeking to dictate rather than merely analyze corporate behavior—particularly as it relates to ESG priorities. But the ESG agenda that they support is often contrary to the financial interests of investors. *See, e.g.*, Letter from 21 State Attorneys General to ISS & Glass Lewis (Jan. 17, 2023) ("AG Letter").[8]

---

[7] https://www.sec.gov/comments/s7-22-19/s72219-6735396-207626.pdf.

[8] https://attorneygeneral.utah.gov/wp-content/uploads/2023/01/2023-01-17-Utah-Texas-Letter-to-Glass-Lewis-ISS.pdf.

Fiduciaries of state pension and retirement funds have therefore questioned whether such proxy-voting advice is "prudent, open, honest, and consistent with [their] public constituents' long-term economic interests." Letters from 21 State Financial Officers to ISS & Glass Lewis, at 1 (May 15, 2023) ("Some of the ESG proposals are plainly ancillary to a company's principal business, while others appear flatly contradictory to it.").[9]

Consider, for example, a 2022 recommendation by Glass Lewis to reject an oil and gas company's climate plan. *See* AG Letter at 3 & n.12. The recommendation was "based on a concern that it did not do enough to reduce *customers'* emissions." AG Letter at 3. "Put another way, Glass Lewis faulted the company for not having a good enough plan to get its customers to stop buying its own product." *Id.*

### 3.   The SEC forces companies to include activist proposals.

At the center of this new battleground for the Nation's most intractable policy debates sits the SEC. Corporations have been forced to seek SEC no-action letters to prevent the wave of activist proposals from overwhelming their businesses. They often argue that activist proposals need not be included in corporate proxy statements because the proposals "deal[] with [] matter[s] relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7).

---

[9]   https://treasurer.utah.gov/wp-content/uploads/Proxy-Voting-Letter-to-Proxy-Advisory-Firms.pdf.

But the Biden Administration's SEC has taken the categorical position that "issues with a broad societal impact" do not qualify for that exception, regardless of whether there is any "nexus" between the issue and the company's actual business. SEC Staff Legal Bulletin No. 14L.[10] Predictably, this new position has drastically reduced the success of no-action requests, with only 38% of requests succeeding in 2022—down from 71% a year prior. Comment Letter from the NAM to the SEC, at 3 (Sept. 12, 2022) ("NAM 2022 Comment").[11] And the SEC's stance on no-action requests has only encouraged a new surge of ideologically driven proposals. *See* Vanderford, *supra*.

Recognizing that activists have relocated their policy fights from the halls of government into the corporate world, groups like Petitioner National Center for Public Policy Research ("NCPPR") have sought to use Rule 14a-8 to include conservative proposals in corporate proxy statements. One might expect that conservative proposals would achieve a similar level of success with the SEC in avoiding exclusion under the "ordinary business operations" exception, which should not depend on viewpoint. 17 C.F.R. § 240.14a-8(i)(7).

But the "Commission has adopted what can only be described as a 'we-know-it-when-we-see-it' approach." *Trinity*, 792 F.3d at 346. The SEC

---

[10]    https://www.sec.gov/corpfin/staff-legal-bulletin-14l-shareholder-proposals.

[11] https://www.sec.gov/comments/s7-20-22/s72022-20138839-308542.pdf.

permits companies to exclude certain viewpoints significantly more often than it permits the exclusion of other proposals. *See* NCPPR Stay Opening Br. 22-25. For instance, the SEC required Mastercard to include an *anti*-gun-rights proposal in its proxy statement, while permitting American Express to exclude a nearly identically worded *pro*-gun-rights proposal. *Compare Mastercard, Inc.*, 2022 WL 392206 (SEC Apr. 22, 2022), *with American Express Co.*, 2023 WL 2524429 (SEC Mar. 9, 2023). The SEC's compelled-speech regime under Rule 14a-8 thus enables the SEC to arbitrarily bolster certain proposals while also forcing companies to speak about controversial political topics when they would rather stay silent. *See* Vanderford, *supra*.

## Argument

"Rule 15(d) of the Federal Rules of Appellate Procedure governs interventions in administrative appeals such as this one." *Texas v. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985). This Court treats a Rule 15 intervention motion as "akin to that of a district court's considering a motion under Federal Rule of Civil Procedure 24." *Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020).

Rule 24(b) permits a court to grant intervention "[o]n [a] timely motion" to "anyone" who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1), (b)(1)(B). In addition, "it is proper to consider . . . whether the intervenors' interests are adequately represented by other parties." *New Orleans Pub. Serv., Inc. v.*

*United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (en banc); *cf.* 5th Cir. R. 15.3.3(b). And, finally, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

"Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015). At bottom, "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Id.* at 657.[12]

The NAM satisfies the criteria for intervention. *First,* this motion, filed within thirty days of the petition for review and well before the parties' briefs are due, is timely. *Second*, the NAM and its members share questions of law and fact at the heart of this case: whether the SEC can compel publicly traded corporations to include shareholder-submitted proposals on company-issued proxy statements. *Third*, the parties will not adequately represent the interests of the NAM and its members because neither side will argue that the SEC lacks power to compel corporations to publicize and discuss shareholder-submitted proposals. *Fourth*, intervention at this early stage will not cause undue delay or prejudice.

---

[12] Because the NAM seeks no relief beyond that sought by the SEC—denial of the petition for review—the NAM need not establish standing. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020).

## I.    The motion is timely.

Rule 15 requires the motion to be "filed within 30 days after the petition for review is filed." Fed. R. App. P. 15(d). This Court's rules further provide that a motion to intervene "should be filed promptly after the petition for review of the agency proceeding is filed, but not later than 14 days prior to the due date of the brief of the party supported by the intervenor." 5th Cir. R. 15.5.

By either measure, the motion is timely. Petitioners filed their petition for review on April 28, 2023, less than 30 days ago. And because the Court has not yet issued a briefing schedule, the motion comes well before the due date of either party's brief.

## II.    The NAM and its members have a claim or defense that shares with the main action a common question of law and fact.

The NAM and its members present a claim or defense that shares a common question of law and fact with the petition for review: Whether the First Amendment and federal securities laws authorize the SEC to compel the inclusion of shareholder proposals in corporate proxy solicitations. The NAM's members will benefit directly from an opinion holding that the SEC lacks such authority because Rule 14a-8's compelled-speech regime forces them to spend millions of dollars on activist-shareholder proposals. This satisfies the "claim or defense portion of Rule 24(b)(2)," which "has been construed liberally" and "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the

litigation." *Newby v. Enron Corp.*, 443 F.3d 416, 422-23 (5th Cir. 2006). "Indeed, . . . a permissive intervenor does not even have to be a person who would have been a proper party at the beginning of the suit." 7C Charles Alan Wright, et al., *Federal Practice & Procedure* § 1911 (3d ed. 2023).

In keeping with the Supreme Court's construction, this Court has permitted intervention even when the putative intervenor does not identify a claim or defense they intend to raise in the litigation or in an ongoing separate lawsuit. Instead, under this Court's precedent, the "claim or defense" portion of the Rule is satisfied when there might be related future litigation, or even when the movant can identify some other articulable interest in the litigation. *Newby*, for example, permitted the Texas Board of Public Accountability to intervene even though the Board was not involved in an ongoing lawsuit. *See* 443 F.3d at 422. The Court explained that "[t]he Board ha[d] questions of fact and law in common with the *Enron* litigation [because] it [was] investigating alleged audit failures that may have led to Enron's collapse to determine whether any Texas-licensed CPAs violated the Public Accountancy Act or the Board's rules." *Id.* Or consider civil cases where "documents and records [are] under a protective order or under seal." *Id.* at 424. "Nonparties to a case," this Court has noted, "routinely access [such] documents and records . . . through motions for permissive intervention under Rule 24(b)(2)." *Id.*

The NAM has a sufficient interest in this litigation because its members must grapple, on a near-daily basis, with the SEC's claimed authority to

compel publicly traded corporations to discuss shareholder-submitted pro-
posals in company proxy statements. The NAM's members regularly receive
shareholder proposals—including from petitioner NCPPR on issues similar
to the proposal here. *See, e.g., Pfizer Inc.*, 2022 WL 17832223 ( SEC Jan. 19,
2023) (SEC no-action letter regarding an NCPPR proposal); *Eli Lilly & Co.*,
2023 WL 2524430 (SEC Mar. 8, 2023) (SEC letter requiring company to in-
clude proposal about abortion). These same members have been forced by
the SEC to include activist proposals in their proxy statements. *See, e.g., id.*;
*Pfizer Inc.*, 2021 WL 6126545 (SEC Feb. 10, 2022) (SEC letter requiring com-
pany to include As You Sow proposal regarding "diversity, equity, and in-
clusion efforts").

Given the critical importance of this legal issue, the NAM has regularly
participated in litigation concerning SEC rules—as intervenor and as plain-
tiff. *See, e.g.*, Minute Entry, *Institutional S'holder Servs. Inc. v. SEC*, No. 1:19-
cv-03275-APM (D.D.C. July 27, 2022) (granting the NAM's motion to inter-
vene supporting the SEC's defense of requirements that proxy-advisory
firms abide by proxy-solicitation rules); *NAM v. SEC*, No. 1:13-CV-00635-
KBJ, 2017 WL 3503370, at *1 (D.D.C. Apr. 3, 2017) (Jackson, J.) (granting judg-
ment in the NAM's favor and declaring that a provision of the Dodd-Frank
Act and another SEC rule violated the First Amendment by compelling
speech); *NAM v. SEC*, No. MO:21-CV-183-DC, 2022 WL 16727731, at *1 (W.D.
Tex. Sept. 28, 2022) (granting the NAM summary judgment on claim that
SEC should have engaged in notice-and-comment rulemaking before

suspending the deadline for proxy-advisory firms' compliance with solicita-tion rules);[13] *NAM v. SEC*, No. 22-51069 (5th Cir.) (pending challenge before this Court to SEC recission of 2020 regulations designed to increase proxy-advisory firm transparency).

## III.    No existing party adequately represents the NAM's position.

The NAM must show only that "the representation of [its] interest 'may be' inadequate," not that it "will be, for certain, inadequate." *Texas*, 805 F.3d at 661 (internal quotation marks omitted). The NAM easily satisfies this requirement. If permitted to intervene, the NAM would argue that the First Amendment and federal securities laws prohibit the SEC from compelling corporations to speak or subsidize shareholder speech about shareholder-selected proposals. Neither side is likely to take these positions: Petitioners urge the SEC to compel speech in corporate proxy statements, and the SEC will not disclaim this power.

### A.    The NAM's position is that the SEC lacks power to compel any corporation to speak, or subsidize shareholder speech, about any shareholder-submitted proposal.

The NAM would argue that the SEC's asserted power to compel cor-porations to publicize and discuss shareholder-submitted proposals violates the First Amendment. Rule 14a-8 authorizes the SEC to force public

---

[13] The NAM has also played an active role in the SEC's Rule 14a-8 rulemak-ing. *See* NAM 2022 Comment; NAM 2020 Comment.

corporations to convey the message of third parties (activist shareholders) as part of the corporation's speech (its proxy-vote-solicitation statements) and to take a position on those proposals. This "compelled" corporate speech— and compelled "subsidization" of shareholder speech—violates the First Amendment. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463-64 (2018); *see, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 342 (2010) (collecting 26 examples of Supreme Court decisions recognizing corporations' First Amendment rights). Because the Rule "plainly alters the content of [companies'] speech," it is "a content-based regulation of speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (internal quotation marks omitted). Nor is the speech compelled by Rule 14a-8 "limited to purely factual and uncontroversial information." *Id.* at 2372 (cleaned up). The Rule is presumptively unconstitutional. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Under the "canon of constitutional avoidance," the Court can avoid those First Amendment issues by correctly interpreting 15 U.S.C § 78n. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). This statute does not grant the SEC power to compel corporations to publicize or discuss shareholder-submitted proposals. As explained above, section 78n(a) targets "misleading" or "deceptive" statements *by the corporation* while soliciting shareholder-proxy votes. *See supra* pp. 4-5. The section contains no authorization to compel corporations to affirmatively engage in solicitation prompted by third parties or to discuss policy proposals raised by activist shareholders.

Moreover, federalism concerns require "Congress to enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power" in "an area that is the particular domain of state law," such as corporate law on proxy solicitations and shareholder voting. *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021). This law of corporate governance falls firmly within the domain of state law: "No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations, including the authority to define the voting rights of shareholders." *CTS Corp.*, 481 U.S. at 89.

Similarly, the SEC's interpretation of section 78n implicates the major-questions doctrine, a related clear-statement rule. It is a "major policy decision[]" for the SEC to force corporations to publicize and discuss shareholder-submitted proposals that are "the subject of an earnest and profound debate across the country." *West Virginia v. EPA*, 142 S. Ct. 2587, 2609, 2614 (2022). Indeed, the SEC's commandeering of the corporate proxy statement disempowers America's elected representatives in deciding national policy on issues "of vast economic and political significance." *Id.* at 2605, 2609 (cleaned up). It is implausible that Congress meant to grant the SEC power to occupy corporate proxy statements and dictate the Nation's policy agenda in circumvention of the legislative process.

There is no language, clear or otherwise, in section 78n to suggest that Congress intended to sweep aside States' traditional control over corporate management's solicitation of votes through its proxy statements. Instead,

Congress's 2010 amendment to this statute granted the SEC authority only to "require[] . . . an issuer [to] include a *[board] nominee* submitted by a shareholder," while making no similar provision for the inclusion of *proposals* by shareholders. 15 U.S.C. § 78n(a)(2)(A) (emphasis added). This silence speaks volumes. *See Jama v. ICE*, 543 U.S. 335, 341 (2005).

## B.    Neither party is likely to advance the NAM's position.

As the stay-motion briefing demonstrates, neither side will adequately represent the NAM's position. NCPPR seeks to invoke the SEC's compelled-speech regulations. *See* NCPPR Stay Opening Br. 22-26. But the NAM's view is that the SEC cannot compel corporations to speak or subsidize speech about *any* shareholder-submitted proposals in corporate proxy statements—regardless of viewpoint.

The SEC, on the other hand, shares the NAM's view that the petition for review should be denied. *See* SEC Stay Br. 20. But the SEC bases that view on "jurisdictional" grounds. *Id.* There is no reason to believe that the SEC would concede that its Rule 14a-8 regime is unlawful.[14] In 2022, for example, it stated that it "d[id] not propose to amend . . . the ordinary business exclusion" and instead "reaffirm[ed]" its past standards for applying Rule 14a-8. 87 Fed. Reg. 45,052, 45,054 (July 27, 2022).

---

[14] Review of the issue raised by the NAM is not precluded by *SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943), because the SEC has no "discretion[]" to avoid "the necessary result." *Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 544-45 (2008).

## IV.   Granting permission to intervene will cause no undue delay or prejudice.

Finally, "intervention will [not] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). This case is at an early stage: The administrative record is not due until June, and the Clerk has not yet issued a briefing schedule. *See* Dkt. 1, *NCPPR v. SEC*, No. 23-60230 (5th Cir. Apr. 28, 2023). Should the Court permit the NAM to intervene, it can ensure that any briefing schedule gives the other parties sufficient time to respond to the NAM's arguments. No undue prejudice will result from granting the motion. After all, the NAM asks only that the Court ensure that the SEC acts within its constitutional and statutory bounds.

## CONCLUSION

This Court should grant the NAM's motion to intervene.

DATED: May 24, 2023           Respectfully submitted,

                                     */s/ Scott A. Keller*

Steven P. Lehotsky           Scott A. Keller

Adam Steene                Matthew H. Frederick

LEHOTSKY KELLER COHN LLP   Todd Disher

200 Massachusetts Avenue, NW  Alexis Swartz

Suite 700                   LEHOTSKY KELLER COHN LLP

Washington, DC 20001        919 Congress Avenue

                                       Suite 1100

Erica Klenicki             Austin, TX 78701

Michael A. Tilghman II      scott@lkcfirm.com

NAM LEGAL CENTER         (512) 693-8350

733 10th Street, NW

Suite 700

Washington, DC 20001

## CERTIFICATE OF SERVICE

On May 24, 2023, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses. No paper copies were filed in accordance with the COVID-19 changes ordered in General Docket No. 2020-3.

*/s/ Scott A. Keller*
Scott A. Keller

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,113 words, excluding the parts of the brief exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Scott A. Keller*
Scott A. Keller