No. 23-60230

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH; NATHANIEL FISCHER;
PHILLIP ARONOFF,
*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,
*Respondent.*

MOTION OF THE SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT, TO DISMISS PETITION AS MOOT AND FOR LACK OF
SUBJECT-MATTER JURISDICTION

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
Assistant General Counsel

THEODORE J. WEIMAN
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5167 (Weiman)

## CERTIFICATE OF INTERESTED PERSONS

*National Center for Public Policy Research v. SEC*, No. 23-60230

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.     America First Legal Foundation

2.     Phillip Aronoff, Petitioner

3.     Megan Barbero, General Counsel, Securities and Exchange Commission

4.     Jonathan Berry, Counsel for Petitioners

5.     Boyden Gray & Associates PLLC, Counsel for Petitioners

6.     Michael Buschbacher, Counsel for Petitioners

7.     Michael A. Conley, Solicitor, Securities and Exchange Commission

8.     Nathaniel Fischer, Petitioner

9.     National Association of Manufacturers, Intervenor

10.    Gene P. Hamilton

11.    Tracey A. Hardin, Assistant General Counsel, Securities and

Exchange Commission

12.    Jared M. Kelson, Counsel for Petitioners

13.    The Kroger Co.

14.    R. Trent McCotter, Counsel for Petitioners

15.    National Center for Public Policy Research, Petitioner

16.    Reed D. Rubinstein

17.    Theodore J. Weiman, Senior Appellate Counsel, Securities and

Exchange Commission

<u>/s/ Theodore J. Weiman</u>

*Attorney of Record for Respondent*
*Securities and Exchange Commission*

# TABLE OF CONTENTS

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS ....................................................i

TABLE OF AUTHORITIES ................................................................ v

INTRODUCTION ...........................................................................1

BACKGROUND ...........................................................................2

A.    Statutory and Regulatory Framework ...........................................2

B.    Factual background ..................................................................5

C.    Procedural background ............................................................7

DISCUSSION ...............................................................................8

I.    The petition should be dismissed as moot................................................8

II.    The petition should be dismissed for lack of
subject-matter jurisdiction...........................................................12

    A.    The Kroger letter is not a reviewable "order of the
Commission." ..................................................................13

    B.    The letter did not become an order of the Commission
through Commission inaction. ...............................................17

        1.    The letter was not issued under delegated
Commission authority..............................................17

        2.    The provision delegating authority to shorten filing
deadlines is inapplicable. .......................................20

        3.    The letter was not issued under power reserved to
the Commission by Section 14(a).........................21

# TABLE OF CONTENTS (cont'd)

Page

4.    The letter is not otherwise an order attributable to the Commission. ..................................................................21

C.    The letter lacks the requisite finality for review .........................23

1.    The letter does not mark the consummation of any agency decision-making process. .......................................24

2.    The letter does not have the requisite legal consequences for finality. ......................................................24

CONCLUSION .........................................................................................27

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                    <u>Page(s)</u>

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) .........................................................................8

*Amalgamated Clothing & Textile Workers Union v. SEC*,
    15 F.3d 254 (2d Cir. 1994).................................................12, 14, 15, 25, 26

*Apache Corp. v. Chevedden*,
    696 F. Supp. 2d 723 (S.D. Tex. 2010).......................................................2, 3

*Bd. of Trade of Chicago v. SEC*,
    883 F.2d 525 (7th Cir. 1989)..................................................12, 15, 21, 26

*C&H Nationwide, Inc. v. Norwest Bank Texas NA*,
    208 F.3d 490 (5th Cir. 2000)...............................................................9

*Empower Texans, Inc. v. Geren*,
    977 F.3d 367 (5th Cir. 2020)..............................................................9, 10

*Fontenot v. McCraw*,
    777 F.3d 741 (5th Cir. 2015)...............................................................8

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .......................................................................22

*Int'l Tel. & Tel. Corp. v. Local 134*,
    419 U.S. 428 (1975) .......................................................................13

*KBR v. Chevedden*,
    478 F. App'x 213 (5th Cir. 2012) ...........................................................5

*Kixmiller v. SEC*,
    492 F.2d 641 (D.C. Cir. 1974) ...................................... 12, 14, 15, 17, 21, 22

*Libertarian Party v. Dardenne*,
    595 F.3d 215 (5th Cir. 2010).............................................................10

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*Medical Committee for Human Rights v. SEC,*
    432 F.2d 659 (D.C. Cir. 1970), *vacated as moot,* 404 U.S. 403 (1972).......22

*Murphy v. Hunt,*
    455 U.S. 478 (1982) ...................................................................................11

*Nat'l Fed. of the Blind v. U.S. Dep't of Transp.,*
    827 F.3d 51 (D.C. Cir. 2016) ....................................................................16

*N.Y.C. Emps.' Ret. Sys. v. SEC,*
    45 F.3d 7 (2d Cir. 1995)..............................................................12, 15, 27

*Peoples Nat'l Bank v. Comptroller,*
    362 F.3d 333 (5th Cir. 2004).....................................................................23

*Piper v. Chris-Craft Indus., Inc.,*
    430 U.S. 1 (1977) .........................................................................................4

*Roosevelt v. E.I. Du Pont de Nemours & Co.,*
    958 F.2d 416 (D.C. Cir. 1992) .................................................................3, 4

*Sierra Club v. Peterson,*
    185 F.3d 349 (5th Cir. 1999).....................................................................13

*Trinity Wall St. v. Wal-Mart Stores, Inc.,*
    792 F.3d 323 (3d Cir. 2015) ....................................................................2, 5

*U.S. v. Sosebee,*
    59 F.4th 151 (5th Cir. 2023) .......................................................................8

*Watts v. SEC,*
    482 F.3d 501 (D.C. Cir. 2007) ..................................................................16

*Yarls v. Bunton,*
    905 F.3d 905 (5th Cir. 2018)....................................................................8, 9

# TABLE OF AUTHORITIES (cont'd)

Page(s)

**Statutes, Laws, Regulations, and Rules**

5 U.S.C. 4802 ..................................................................................................18

Administrative Procedure Act, 5 U.S.C. 551 ...............................................13, 16

Rule 200.30-1, 17 C.F.R. 200.30-1 .................................................................18, 20

Rule 202.1, 17 C.F.R. 202.1 ............................................................5, 13, 14, 19, 20

Rule 202.2, 17 C.F.R. 202.2 .................................................................................5, 19

Rule 202.3, 17 C.F.R. 202.3 .................................................................................19

Rule 14a-8, 17 C.F.R. 240.14a-8 ....................................................................3, 6, 25

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.*

      Section 3, 15 U.S.C. 78c ..............................................................................12

      Section 4, 15 U.S.C. 78d .........................................................................12, 18

      Section 4A, 15 U.S.C. 78d-1 .............................................................17, 24, 25

      Section 14(a), 15 U.S.C. 78n ...............................................................3, 15, 21

      Section 21, 15 U.S.C. 78u .......................................................................4, 15

      Section 25(a), 15 U.S.C. 78y(a) .......................................................2, 12, 21

**Other Authorities**

2 James Cox & Thomas Lee Hazen,
    *Treatise on the Law of Corporations* (3d ed. 2022) .......................................2

Informal Procedures Regarding Shareholder Proposals ................................14

# TABLE OF AUTHORITIES (cont'd)

                                                                    Page(s)

Statement of Informal Procedures for the Rendering of Staff
     Advice With Respect to Shareholder Proposals,
     Rel. No. 34-12599, 41 Fed. Reg. 29,989, 1976 WL 160411
     (July 7, 1976)................................................................. 3, 4, 5, 14, 15, 19, 25

## INTRODUCTION

The Securities and Exchange Commission ("Commission"), respondent, respectfully requests that this Court dismiss this petition for review of an informal letter sent by staff of the Commission.  Events occurring after the petition was filed have rendered it moot.  And, in any event, the Court lacks subject-matter jurisdiction over the petition.

Petitioners challenge an informal "no-action" letter from staff of the Commission's Division of Corporation Finance ("Division") to The Kroger Co. ("Kroger").  That letter ("Kroger letter") informed Kroger that Division staff would not recommend to the Commission that it bring an enforcement action against the company if Kroger followed through on its plan to exclude from its proxy materials a shareholder proposal submitted by petitioner National Center for Public Policy Research ("NCPPR"). Petitioners argue that they are harmed by this non-binding staff opinion because it would purportedly authorize exclusion of NCPPR's proposal and the individual petitioners would lose the ability to vote on the proposal.  And petitioners sought emergency relief from this Court, arguing that such relief would prevent Kroger from distributing its proxy materials without including NCPPR's proposal.  But after the petition was

filed, Kroger *included* NCPPR's proposal in the proxy materials it was distributing to shareholders. Petitioners' challenge is therefore moot.

Even if it were not moot, the Court should dismiss the petition because it lacks subject-matter jurisdiction. Under Section 25(a) of the Securities Exchange Act of 1934 ("Exchange Act"), only "final order[s] of the Commission" are directly reviewable in a Court of Appeals. 15 U.S.C. 78y(a). But as every circuit to consider the question has concluded, a no-action letter from staff is not a "final order" of the Commission under the Act and is thus excluded from review in this Court.

## BACKGROUND

### A.    Statutory and Regulatory Framework

The right of shareholders to vote by proxy is now "universal in stock corporations" under state law (2 James Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* 13:26 (3d ed. 2022)) and "has become an indispensable part of corporate governance." *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 334 (3d Cir. 2015) (punctuation omitted).

Before shareholder meetings, companies distribute proxy materials informing shareholders "about items or initiatives on which the shareholders are asked to vote." *Apache Corp. v. Chevedden*, 696 F. Supp. 2d

723, 727 (S.D. Tex. 2010). Shareholders may also present proposals for a vote and can solicit proxies either by "pay[ing] to issue a separate proxy statement" or seeking the inclusion of their "proposal in management's proxy statement, along with a statement supporting the proposal, at the company's expense." *Id.* at 727-28. This case involves NCPPR's choice to do the latter.

Pursuant to Exchange Act Section 14(a), 15 U.S.C. 78n(a), the Commission has prescribed rules relating to the solicitation of proxies. Under one of those rules, Rule 14a-8(i), 17 C.F.R. 240.14a-8(i), a company may omit a shareholder-submitted proposal from its proxy materials if any of thirteen substantive exclusions apply.

If a company decides to exclude a shareholder proposal, the company must notify the Commission and the proponent of its reasons for doing so. Rule 14a-8(j), 17 C.F.R. 240.14a-8(j). This requirement "is informational only" and "[n]o response by the Commission or its staff is required." *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 423 n.13 (D.C. Cir. 1992) (quoting Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals ("Informal Procedures"), Rel. No. 34-12599, 41 Fed. Reg. 29,989, 1976 WL 160411 (July 7, 1976)).

3

Rather, its purpose is to bring the matter to the Commission's attention in case "enforcement action may be appropriate" and to "alert the shareholder proponent" so the shareholder can consider whether to pursue its own remedies against the company.  Informal Procedures, 1976 WL 160411, at *4.

Although no Commission or staff response is required, the Commission may, in its discretion, investigate and bring an injunctive action pursuant to Exchange Act Section 21, 15 U.S.C. 78u, for violation of Rule 14a-8 if a company omits from its proxy materials a shareholder proposal that the Commission believes the company was required to include.  Informal Procedures, 1976 WL 160411, at *1.

But there are significant practical limitations on the Commission's enforcement capabilities in this area, and "private enforcement [of the proxy rules] provides a necessary supplement to Commission action." *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 25 (1977) (punctuation omitted); *Roosevelt*, 958 F.2d at 423-24 (SEC has historically received "hundreds of shareholder proposals" "concentrated … during the few months preceding the peak annual meeting season" (punctuation omitted)).  For a shareholder aggrieved by a company's decision to exclude its proposal, the

4

ability to "pursue its rights against the company in federal court" represents an effective and direct remedy. *Trinity Wall St.*, 792 F.3d at 337; *see also KBR v. Chevedden*, 478 F. App'x 213, 215 (5th Cir. 2012) (per curiam).

The Commission's staff have also developed a practice of providing informal advice on whether a particular shareholder proposal is excludable. Informal Procedures, 1976 WL 160411, at *1; 17 C.F.R. 202.1(d), 202.2. When a company decides to exclude a shareholder proposal, it may ask Division staff for a "no-action" letter stating that staff will not recommend enforcement action if the company follows through. Alternatively, staff may send the company a letter disagreeing with its view and declining to issue a no-action letter, or staff may express no position. Any staff response "does not constitute an official expression of the Commission's views." 17 C.F.R. 202.1(d).

### B.    Factual Background

NCPPR has submitted a number of proposals for inclusion in the proxy materials for various public companies. Some companies have decided to exclude NCPPR proposals and requested no-action letters from Division staff. In many such instances, staff issued a letter stating that it did not concur with the company's view that the NCPPR proposal was

excludable.  *See, e.g.,* Letter, PayPal Holdings, Inc., 2023 WL 385338 (Apr. 10, 2023); Letter, Eli Lilly & Co., 2023 WL 2524430 (Mar. 8, 2023); Letter, CVS Health Corp., 2022 WL 110303 (Mar. 17, 2022); Letter, Levi Strauss & Co., 2021 WL 5918662 (Feb. 10, 2022); Letter, The Walt Disney Co., 2021 WL 5052838 (Jan. 19, 2022).

Here, NCPPR submitted a proposal to Kroger on December 21, 2022. Motion for Stay ("Mtn.") Ex. A.  On February 16, 2023, Kroger sent a letter to Division staff stating its intention to omit the proposal from its proxy materials and asking staff for a no-action letter.  Mtn. Ex. B.  NCPPR submitted response letters stating that the proposal should not be excluded.  Mtn. Exs. C, E.

Staff sent Kroger a no-action letter on April 12, 2023, stating that "[t]here appears to be some basis for your view that the Company may exclude the Proposal under Rule 14a-8(i)(7)" because "the Proposal relates to, and does not transcend, ordinary business matters."  Mtn. Ex. F.

NCPPR requested that staff reconsider its views or present the matter to the Commission, and it also directly asked the Commission for review. Mtn. Exs. G, H.  Petitioners Nathaniel Fischer and Phillip Aronoff sent

letters in support to the Commission.  Mtn. Exs. I, J.  The Commission did not conduct any such review or express any views on the matter.

## C.    Procedural Background

Petitioners filed the petition for review in this Court on April 28, 2023, and moved for an emergency stay and expedited briefing.  The same day, this Court ordered "that an administrative stay is entered pending further order of the court."  Unpublished Order, Doc. 10-2 (4/28/23).  After briefing on the stay motion, this Court ordered that the "motion for stay is carried with the case," denied the motion to expedite, and stated that "[t]he administrative stay continues in effect pending further order of the court."  Unpublished Order, Doc. 29-2 (5/10/23).

On May 12, 2023, Kroger filed with the Commission the final proxy statement it was sending to shareholders.  *See* Kroger Schedule 14A, https://www.sec.gov/Archives/edgar/data/56873/000110465923059456/ tm233382d3_def14a.htm.  The proxy statement included NCPPR's proposal.  *Id.* at 92.

## DISCUSSION

## I.    The petition should be dismissed as moot.

"Whether an appeal is moot is a jurisdictional matter, since it implicates the Article III requirement that there be a live case or controversy." *U.S. v. Sosebee*, 59 F.4th 151, 154 (5th Cir. 2023) (punctuation omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) (punctuation omitted); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("an actual controversy must exist not only at the time the [case] is filed, but through all stages of the litigation") (punctuation omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (punctuation omitted).

The petition in this matter—which seeks review of a staff opinion concerning Kroger's exclusion of NCPPR's shareholder proposal from its

8

proxy materials—should be dismissed because it is now moot.  Kroger *included* NCPPR's proposal in its final proxy statement (*supra* at 7), and thus petitioners have already obtained all the relief that they have sought from this Court.  Accordingly, a decision by this Court "cannot affect the rights of litigants in the case before" it and would be a mere "advisory opinion[]" (*C&H Nationwide, Inc. v. Norwest Bank Texas NA*, 208 F.3d 490, 493 (5th Cir. 2000) (punctuation omitted)) concerning the validity of a non-binding staff view about a course of conduct that Kroger chose not to pursue.

Petitioners previously suggested that the printing of Kroger's proxy materials would not moot the petition because "this case would fall within the capable-of-repetition-yet evading-review" exception.  Stay Mtn. Reply ("Reply") 14.  But that exception—which is available only in "exceptional circumstances" (*Empower Texans, Inc. v. Geren*, 977 F.3d 367, 371 (5th Cir. 2020))—"applies only when (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."  *Yarls*, 905 F.3d at 911 (punctuation omitted).

Neither of these elements, which petitioners "bear the burden of proving"

(*Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010)), exists here.

First, there are no inherent timing limitations that would prevent

future review concerning the issues petitioners raise.  Where "[e]xpedited

procedures are available" to address an issue, as in "this circuit," the "issue

is not one that will evade review."  *Empower Texans*, 977 F.3d at 371

(punctuation omitted).  Events in this case demonstrate that review would

be available even if the challenged action were capable of repetition:

petitioners waited more than two weeks to file their petition, yet still had

sufficient time to obtain an administrative stay and, after briefing, a

decision on their motion for expedited relief.  Moreover, petitioners would

be able to seek relief directly against the company at which they have

submitted a proposal.  *See supra* 4-5.  Indeed, it appears that NCPPR has

done so here, filing a private suit directly against Kroger in federal district

court.  *See* Complaint, *NCPPR v. Kroger*, No. 23-cv-00256 (S.D. Ohio

05/01/23).

Second, petitioners cannot show a reasonable expectation that the

same parties will be subjected to the "same action" again.  Because

NCPPR's proposal was sent to shareholders, NCPPR can no longer "lose its

statutory right to have its proposal communicated to and voted on by other shareholders at [the] 2023 meeting via Kroger's proxy materials" (Stay Mtn. 7), and the individual petitioners can no longer lose their ability to "vote on" that proposal (Reply 11).

Moreover, determinations by companies to exclude shareholder proposals (and the potential for a staff no-action letter) are necessarily specific to the particular proposal and company at issue. Thus any assertion that petitioners will suffer the same alleged harm in the future would be speculative and remote: NCPPR would have to submit the same proposal to a company of which the individual petitioners are also shareholders, that company would have to make an independent determination to exclude it based on the same Rule 14a-8 exclusion invoked by Kroger here and seek a staff no-action letter, staff would have to make its own independent informal determination not to recommend enforcement action, and the company would have to decide to follow through on omitting the proposal from its proxy materials. Even if theoretically possible, "a mere physical or theoretical possibility" of recurrence is not "sufficient to satisfy the test" for this exception to mootness. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). If a future dispute

were to arise between any of the parties, it should be decided on its own

unique facts.

## II.    The petition should be dismissed for lack of subject-matter jurisdiction.

Section 25(a) of the Exchange Act authorizes "[a] person aggrieved by

a final order of the Commission" to obtain review in certain U.S. Courts of

Appeals.  15 U.S.C. 78y(a).  But the Commission—which generally acts

through a vote of the majority of its five commissioners (*see* 15

U.S.C. 78c(a)(15), 78d(a))—has issued no order concerning this matter, final

or otherwise.  Nor do the informal staff views in the Kroger letter represent

such an order.

Every court of appeals to consider the question has held that the

courts of appeals lack jurisdiction to review staff no-action letters because

they are not "final order[s]" of the Commission "within the meaning of

section 25(a)(1) of the Act."  *Amalgamated Clothing & Textile Workers Union

v. SEC*, 15 F.3d 254, 257 (2d Cir. 1994); *Bd. of Trade of Chicago v. SEC*, 883

F.2d 525, 529-30 (7th Cir. 1989); *Kixmiller v. SEC*, 492 F.2d 641, 644 (D.C. Cir.

1974) (per curiam); *see also N.Y.C. Emps.' Ret. Sys. v. SEC*, 45 F.3d 7, 13-14

(2d Cir. 1995) (no-action letter that "went further" than "most no-action

letters" by "expressly abandon[ing] a previous SEC rule" was purely "interpretive" and unreviewable).

### A.    The Kroger letter is not a reviewable "order of the Commission."

The Administrative Procedure Act ("APA") defines an "order" as "the whole or a part of a final disposition … of an agency in a matter other than rule making" and as the product of an agency "adjudication." 5 U.S.C. 551(6), (7).  An agency decision that does "not order anybody to do anything" and "binds no one" is "not itself a 'final disposition' within the meaning of 'order' and 'adjudication.'" *Int'l Tel. & Tel. Corp. v. Local 134*, 419 U.S. 428, 443-44 (1975) (punctuation omitted).  In particular, these definitions exclude "the investigation and information gathering aspects of an agency's functioning." *Sierra Club v. Peterson*, 185 F.3d 349, 366 n.25 (5th Cir. 1999).

The Kroger letter is not a Commission "order" for several reasons. First, the letter was sent by staff on the "Rule 14a-8 Review Team," not issued by the Commission.  Mtn. Ex. F.  By rule, such staff statements "do not constitute an official expression of the Commission's views."  17 C.F.R. 202.1(d).  Rather, they are only the informal, non-binding "opinions" of

staff in one division. *Id.* "[M]embers of the Commission's staff, like staff

personnel of other agencies, have no authority individually or collectively

to make orders." *Kixmiller*, 492 F.2d at 644 (punctuation omitted).

Nor are staff no-action letters "dispositions" in an "adjudication."

Staff members review proxy materials to gather information that may

indicate whether an "enforcement action may be appropriate." Informal

Procedures, 1976 WL160411 at *4. While no-action letters may be available

on request to advise companies of staff's informal views, they "do not

adjudicate the merits" of any matter, represent "rulings" or "decisions" in

an adjudicated matter, or "have precedential value." *Id.* at *3-5; *see also*

Informal Procedures Regarding Shareholder Proposals, http://sec.gov/

corpfin/informal-procedures-regarding-shareholder-proposals.[1] Such a

"letter does not bind" any party or the Commission "and does not fix any

legal relationship among them." *Amalgamated Clothing*, 15 F.3d at 257;

*Roosevelt*, 958 F.2d at 423 (any advice given in the no-action process "is

---

[1] This statement on the Commission's website describing and providing
instructions for the no-action process states that in every case, a "staff's no-
action responses to Rule 14a-8(j) submissions reflect only informal views"
of those staff members and "do not and cannot adjudicate the merits of a
company's position with respect to the proposal." *Id.*

nonbinding for all concerned"); Informal Procedures, 1976 WL 160411 at *4 ("advisory only" and "not binding"). Indeed, in this very matter, Kroger took an action other than the one contemplated in staff's no-action letter (as it was free to do) and included NCPPR's proposal in the proxy materials it sent to shareholders. *See supra* at 7.

Nor could staff letters be "orders." Neither staff nor the Commission adjudicate disputes concerning the exclusion of a proxy proposal. The Exchange Act authorizes the Commission to promulgate "rules and regulations" concerning proxy solicitation (15 U.S.C. 78n) and to bring enforcement actions for violations of proxy requirements (15 U.S.C. 78u)— not to serve as a forum for the resolution of such disputes. It is the courts, not the Commission or its staff, that adjudicate the application of Rule 14a-8's exclusions. *See Amalgamated Clothing*, 15 F.3d at 257 (shareholders' "proper course [is] to seek a judicial determination … in the district court"); *N.Y.C. Emps.*, 45 F.3d at 13 (same); *Bd. of Trade*, 883 F.2d at 531 ("aggrieved party can file its own suit" against the company); *Kixmiller*, 492 F.2d at 645-46 ("a dissatisfied stockholder is free to litigate proxy-solicitation questions judicially, with or without prior administrative resort to the staff or the Commission").

15

Neither of petitioners' arguments to the contrary withstands scrutiny. First, they argue (Reply 6-7) that the letter meets the APA's definition of "order" because it is a "written decision" that is "declaratory" and "affirmative," in that it declares staff's position and affirms staff's intention to "not recommend enforcement." But petitioners mistake the "form[s]" that an order may take—"whether affirmative, negative, injunctive, or declaratory"—for the order itself, which must be a "final disposition" by the "agency" in an "adjudication." 5 U.S.C. 551(6), (7).

Second, petitioners contend (Reply 6) that the Exchange Act's definition of "order" should be construed "more expansively" than the APA definition. But they do not explain what that expansive definition should be or why it would encompass an informal staff letter. The case they cite recognized only that some statutes referencing an "order" have been construed to encompass "notice-and-comment rulemaking," which is, of course, action by the agency itself. *Nat'l Fed. of the Blind v. U.S. Dep't of Transp.*, 827 F.3d 51, 55 (D.C. Cir. 2016). And the same court "look[ed] to the Administrative Procedure Act" definition of "order" in interpreting Exchange Act Section 25(a) (*Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007))

and held that staff no-action letters are not Commission orders (*Kixmiller*,

492 F.2d at 644).

## B. The letter did not become an order of the Commission through Commission inaction.

Petitioners offer several reasons why the Kroger letter, though not

itself an order, should be deemed a Commission order. None has merit.

### 1. The letter was not issued under delegated Commission authority.

Petitioners contend that the Kroger letter became a Commission

order pursuant to Section 4A of the Exchange Act, which states that the

Commission "shall have the authority to delegate, by published order or

rule, any of its functions to a division of the Commission, an individual

Commissioner, an administrative law judge, or an employee or employee

board." 15 U.S.C. 78d-1. Subsection (c) further provides that, absent

Commission review, an "action" taken under such a delegation "shall, for

all purposes, … be deemed the action of the Commission." *Id.*

This provision does not apply, however, because the Kroger letter

was not issued under authority delegated by the Commission. The

Commission has exercised its power under Section 4A to "delegate"

authority "by published order or rule" (15 U.S.C. 78d-1(a)) by adopting

rules to formally delegate a number of its functions to division directors, administrative law judges, and others. *See, e.g.* 17 C.F.R. 200.30-1 ("Pursuant to sections 4A and 4B of the Securities Exchange Act … the Securities and Exchange Commission hereby delegates … the following functions to the Director of the Division of Corporation Finance….").  But no such delegation applies to the staff letter at issue here.

This does not mean, as petitioners claim, that "staff are rogue actors who have been issuing no-action decisions for decades without the Commission providing *any* authority to do so."  Reply 7.  Actions by delegated authority are taken on behalf of the Commission itself and execute functions the Commission itself would otherwise take.  No-action letters do neither; rather, they are sent on behalf of staff to provide guidance to the regulated public through informal processes that are both authorized by Congress and recognized by regulation.

In particular, Congress has authorized the Commission to retain attorneys, economists, and other employees to aid the Commission in carrying out its functions.  *See* 15 U.S.C. 78d(b); 5 U.S.C. 4802.  One of those Commission functions is (potential) enforcement of the proxy rules in court, and the Commission has tasked staff with reviewing proxy material

filings in order to "alert the Commission that enforcement action may be appropriate" in a particular instance.  Informal Procedures, 1976 WL 160411 at *1; 17 C.F.R. 202.3(a).  And, "to assist both managements and proponents in complying with the proxy rules," the Commission has recognized that the staff may, on request, "provide guidance as to the staff's enforcement views" through no-action letters.  Informal Procedures, 1976 WL 160411 at *4; 17 C.F.R. 202.1(d).  But nothing in those limited authorizations purported to formally delegate authority to exercise functions of the Commission itself.

Petitioners argue (Reply 8) that Commission rules 202.1(d) and 202.2 constitute delegations pursuant to Section 4A, noting that Section 4A is listed among the authorizing statutes for Part 202 of the rules.  That some of the rules in Part 202 may have been promulgated (in part) to effectuate Section 4A, however, does not mean that Section 4A provided the authority for each individual subsection.  And that some of those rules describe procedures that may be used in the exercise of delegated authority does not make those rules themselves delegations of authority.  Were there any doubt, Rule 202.1 expressly distinguishes between "the Commission's functions" and the "informal procedures designed to aid the public and

facilitate the execution of" those functions, while making clear that such

informal expressions of staff views "do not constitute an official expression

of the Commission's views."  17 C.F.R. 202.1(c), (d).

### 2. The provision delegating authority to shorten filing deadlines is inapplicable.

Petitioners also claim that the Kroger letter was issued under a

delegation in Rule 200.30-1(f)(4).  But that provision merely delegates

authority "[t]o authorize the use of forms of proxies, proxy statements, or

other soliciting material *within periods of time less* than that prescribed in"

Commission rules.  17 C.F.R. 200.30-1(f)(4) (emphasis added).

Despite the clear text of this provision, petitioners advance the

doubly flawed argument (Reply 8-9) that it "could *not* refer exclusively to

the authority to waive certain filing deadlines" because "[a]uthoriz[ing] the

use of proxies inherently means the *review* of proxy materials."  But this

provision does not generally delegate the power to "authorize the use of

proxies"; it delegates only the power to authorize a shorter "period[] of

time" for the use of proxy materials.  And nothing about authorizing

companies to use proxies within a shorter time frame "inherently" (or

otherwise) encompasses staff "review" of those materials.

3.    **The letter was not issued under power reserved to the Commission by Section 14(a).**

Petitioners also assert that "the Commission itself retains exclusive authority over proxies under [Section 14,] 15 U.S.C. § 78n, meaning the Division's letters *necessarily* represent the Commission's own final orders for judicial review purposes."  Reply 7.  But the mere fact that the Commission has statutory authority to act within an area does not render every action staff takes with respect to the same subject matter a "final order" under Section 25 or the APA.  And nothing in Section 14 assigns "exclusive authority over proxies" to the Commission or authorizes the Commission to adjudicate disputes concerning individual proxy submissions.  *See supra* at 15.

4.    **The letter is not otherwise an order attributable to the Commission.**

Petitioners also suggest (Reply 9-10) that they are able to challenge staff's informal position that it would not recommend an enforcement action.  But even if the Commission itself had made a decision not to bring an enforcement action, such a "decision to refrain from an investigation or an enforcement action" is "unreviewable."  *Kixmiller*, 492 F.2d at 645; *see also Bd. of Trade*, 883 F.2d at 529-30 (SEC's decision not to bring an

enforcement action "is a classic illustration of a decision committed to agency discretion" (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985))).  This principle applies with even greater force to a mere staff-level decision not to *recommend* to the Commission that it take action.

Petitioners contend (Reply 9) that the "no-action letter does far more than announce a decision against enforcement" because it states staff's informal "legal conclusion."  But the case petitioners cite, *Medical Committee for Human Rights v. SEC*, 432 F.2d 659 (D.C. Cir. 1970), *vacated as moot*, 404 U.S. 403 (1972), held only that such a legal conclusion may be reviewable in court if reviewed and "approved" by the Commission itself.  *See id.* at 663. The same court subsequently held that where, as here, the Commission has not adopted staff's conclusions on review, a staff no-action letter is not a reviewable Commission order.  *Kixmiller*, 492 F.2d at 644 ("[V]ery different jurisdictional consequences flow" when the Commission does not "in any way probe or pass on the staff's no-action position.").

Petitioners also invoke (Reply 10) exceptions to the rule against review of agency enforcement decisions.  But even if petitioners could show that those exceptions apply, they would at best authorize a district

court action, as in the cases they cite.[2]  Regardless of whether an agency

non-enforcement decision can be reviewed, only a "final order of the

Commission" may be directly reviewed in a court of appeals under Section

25(a).

### C.    The letter lacks the requisite finality for review.

While the absence of a Commission order is dispositive, the Kroger

letter also lacks the requisite finality to permit review.  "As a general

matter, two conditions must be satisfied for an agency action to be final:

(1) the action must mark the consummation of the agency's decision-

making process; [and] (2) the action must be one by which rights or

obligations have been determined or from which legal consequences will

flow."  *Peoples Nat'l Bank v. Comptroller*, 362 F.3d 333, 337 (5th Cir. 2004).

Neither element is met.

---

[2] As discussed in the Commission's stay motion opposition, none of the
cases petitioners cite support the application of any such exceptions to a
staff-level decision not to recommend that an agency take an enforcement
action in a particular case. *See* Opp. 13 n.2.

1.    **The letter does not mark the consummation of any agency decision-making process.**

As discussed, a staff no-action letter discloses the informal views of Division staff concerning whether to recommend an enforcement action. Such a tentative, non-binding letter plainly does not mark the consummation of any decision-making process at the Commission.

Petitioners argue that Section 4A(c) provides otherwise by stating that if the Commission does not review actions taken under a formal delegation of authority, "then the action … shall, for all purposes, including appeal or review thereof, be deemed the action of the Commission."  15 U.S.C. 78d-1(c).  But, as discussed, the Kroger letter was not issued under a formal delegation of Commission authority, making Section 4A(c) inapplicable.  *See supra* at 17-20.

2.    **The letter does not have the requisite legal consequences for finality.**

Nor does the letter impose any obligations, deny any rights, or have any legal consequences.  *See supra* at 14-15.  Even if the letter had been issued by the Commission itself, a mere announcement of an intention not "to bring an enforcement action … in no way 'impose[s]' or 'fixe[s]' a legal

relationship upon [the company, the shareholder proponent,] or the SEC."
*Amalgamated Clothing*, 15 F.3d at 257.

Petitioners contend that this element of the finality test does not need
to be met because it has been superseded by Section 4A(c). But even if
Section 4A(c) applied—as discussed, it does not—it provides for delegated
action to be "deemed the action of the Commission" (15 U.S.C. 78d-1(c)),
which concerns the consummation requirement for finality. Nothing in
Section 4A dispenses with the requirement that a reviewable "order"—
whether issued by the Commission or deemed an action of the
Commission—must have sufficient legal consequences to be "final."

None of petitioners' remaining finality arguments withstands
scrutiny. First, they argue (Reply 3-4) that no-action letters "decid[e]
private rights" because "[c]ompanies wishing to exclude proposals are
*required* to initiate the Rule 14a-8 process." That is incorrect. While
companies are required to file their reasons for excluding a shareholder
proposal, that requirement "is informational only." *Informal Procedures*,
1976 WL 160411, at *4. Companies are not required to request a no-action
letter from staff and "[n]o response or other action by the Commission or

25

its staff is required." *Id.* Nor does the filing requirement lead to any adjudicatory "'rulings' or 'decisions' on shareholder proposals." *Id.*

Petitioners also contend that a no-action letter gives private parties "safe harbor" from suit. That too is incorrect: a staff no-action letter is non-binding, non-precedential, and does not give any safe harbor from private or Commission suit. *See Bd. of Trade*, 883 F.2d at 529 (the Division "could change [its] mind tomorrow, or the Commissioners might elect to proceed no matter what [staff] recommends"); *Amalgamated Clothing*, 15 F.3d at 257 (letter "does not bind").

Nor is it true that "if a company insists on excluding a proposal, the SEC could institute an investigation or lawsuit" based on a no-action letter. Reply 5. In that hypothetical, any potential liability would be based on compliance with Section 14(a) and Rule 14a-8, not the informal views expressed by staff. *See Amalgamated Clothing*, 15 F.3d at 257.

Finally, petitioners argue (Reply 5) that the letters are consequential because courts or the Commission may afford them "slight" deference as "persuasive authority." But persuasiveness involves no deference at all: like a party brief, a no-action letter may be convincing, but it does not bind. Indeed, petitioners cite (Reply 5 n.5) a decision distinguishing the mere

"persuasive" effect a staff no-action letter might carry from the sort of

agency "deference" that impacts litigation in the courts. *N.Y.C. Employees*,

45 F.3d at 13.[3]

## CONCLUSION

For these reasons, the petition should be dismissed as moot or for

lack of subject-matter jurisdiction.

Respectfully submitted,

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
Assistant General Counsel

/s/ Theodore J. Weiman
THEODORE J. WEIMAN
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5167 (Weiman)

June 2, 2023

---

[3] As discussed in the Commission's stay opposition (Opp. 22), NCPPR does
not meet the venue requirements for review in this Circuit.  While it
remains the Commission's position that this defect requires dismissal of
NCPPR from the joint petition, the issue is not included in this motion in
light of this Court's recent denial of a motion raising a similar challenge.
*See* Unpublished Order, *Texas v. SEC*, No. 23-60079 (5th Cir. 5/26/23).

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27.4 and Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,198 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B)

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6) because it has been prepared in a proportionally spaced typeface—Book Antiqua, 14 point—using Microsoft Word.

/s/ Theodore J. Weiman
Theodore J. Weiman

June 2, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed with the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on June 2, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Theodore J. Weiman
Theodore J. Weiman

June 2, 2023