No. 23-60230

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH;
NATHANIEL FISCHER; PHILLIP ARONOFF,

Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION,

Respondent.

_____

On Petition for Review from an Order of the Securities and Exchange
Commission 2022-2023 No-Action Responses Re: The Kroger Co. (the
'Company') Incoming Letter Dated February 16, 2023 (April 12, 2023)

_____

### PETITIONERS' OPPOSITION TO SEC'S MOTION TO DISMISS

_____

GENE P. HAMILTON
REED D. RUBINSTEIN
AMERICA FIRST LEGAL
FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

R. TRENT MCCOTTER
  *Counsel of Record*
JONATHAN BERRY
MICHAEL BUSCHBACHER
JARED M. KELSON
BOYDEN GRAY & ASSOCIATES
801 17th Street NW, Suite 350
Washington, DC 20006
202-706-5488
mccotter@boydengrayassociates.com

*Counsel for Petitioners*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

### *National Center for Public Policy Research v. SEC*

No. 23-60230

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. National Center for Public Policy Research. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

2. Nathaniel Fischer

3. Phillip Aronoff

4. The Securities and Exchange Commission

5. Boyden Gray & Associates PLLC

6. R. Trent McCotter

7. Jonathan Berry

8. Michael Buschbacher

9. Jared M. Kelson

10. The Kroger Co. It is publicly traded under the ticker KR, and, according to public information, The Vanguard Group, Inc., owns 10% or more of its stock.

11. Gene P. Hamilton

12. Reed D. Rubinstein

13. America First Legal Foundation

14. Theodore J. Weiman

15. Tracey A. Hardin

16. Megan Barbero

17. Michael A. Conley

18. National Association of Manufacturers

19. Lehotsky Keller Cohn LLP

20. Steven P. Lehotsky

21. Adam Steene

22. Erica Klenicki

23. Scott A. Keller

24. Matthew H. Frederick

25. Todd Disher

26. Alexis Swartz

Dated: June 5, 2023              <u>/s/ R. Trent McCotter</u>
                                  R. Trent McCotter
                                  *Counsel of Record for Petitioners*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF CONTENTS ...............................................................iv

TABLE OF AUTHORITIES.............................................................v

    I.    Recent Events Do Not Moot the Case But Instead Confirm Its Justiciability. ...................................................................3

    II.    The Court Has Jurisdiction. ................................................ 12

        A.    There Is Final Agency Action. .....................................13

            1. Section 78d-1 Establishes the Consummation of the Agency Process. ...........................................................13

            2. Petitioners Need Not Satisfy *Bennett*'s Second Prong, But They Do So Anyway. ................................14

            3. There Is an "Order."......................................................19

        B.    Section 78d-1 Applies—But Even If Not, This Court Still Has Jurisdiction. ..................................................21

        C.    *Heckler v. Chaney* Does Not Bar Review.....................25

        D.    The Availability of a Private Suit Is Irrelevant. .........27

CONCLUSION ........................................................................27

CERTIFICATE OF COMPLIANCE.........................................................29

CERTIFICATE OF SERVICE...............................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amalgamated Clothing & Textile Workers Union v. SEC,*
    15 F.3d 254 (2d Cir. 1994) ................................................................. 15

*Axon Enter., Inc. v. FTC*, 143 S. Ct. 890 (2023) ...................................... 13

*Bennett v. Spear*, 520 U.S. 154 (1997).................................. 13, 14, 16, 17

*CBS v. United States*, 316 U.S. 407 (1942) ....................................... 12, 20

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) ........................................... 27

*Kixmiller v. SEC*, 492 F.2d 641 (D.C. Cir. 1974) .................................... 15

*Knox v. Serv. Emps. Int'l Union, Loc. 1000,*
    567 U.S. 298 (2012) ............................................................................ 3

*La. State v. U.S. Army Corps of Eng'rs,*
    834 F.3d 574 (5th Cir. 2016) ............................................................ 18

*Medical Committee for Human Rights v. SEC,*
    432 F.2d 659 (D.C. Cir. 1970) ........................................... 9, 16, 26, 27

*Medical Committee for Human Rights v. SEC,*
    404 U.S. 403 (1972) ........................................................... 9, 10, 11, 16

*Murphy v. Hunt*, 455 U.S. 478 (1982) ................................................. 4, 8

*Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.,*
    827 F.3d 51 (D.C. Cir. 2016) ............................................................ 20

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) ................................ 19

*Qureshi v. Holder*, 663 F.3d 778 (5th Cir. 2011) .................................... 16

*Ret. Sys. v. SEC*, 45 F.3d 7 (2d Cir. 1995) .............................................. 19

*Rollerson v. Brazos River Harbor Navigation Dist.*,
   6 F.4th 633 (5th Cir. 2021) ................................................ 26

*S. Cal. Aerial Advertisers' Ass'n v. FAA*,
   881 F.2d 672 (9th Cir. 1989) .............................................. 21

*Sackett v. EPA*, 566 U.S. 120 (2012) ...................................... 14

*SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018) ...................... 22

*Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019) ......................... 17

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) ............. 18

*Trinity Wall St. v. Wal-Mart Stores, Inc.*,
   75 F. Supp. 3d 617 (D. Del. 2014) ....................................... 4

*Turner v. Rogers*, 564 U.S. 431 (2011) ............................ 4, 5, 7

## Statutes

5 U.S.C. § 551(6) ..................................................................... 21

15 U.S.C. § 78d-1 ....................................... 1, 13, 14, 15, 16, 21, 22, 23, 24

15 U.S.C. § 78n ...................................................................... 22

15 U.S.C. § 78y(a) ................................................................. 12

Pub. L. No. 87-592, 76 Stat. 394 (1962) .................................. 15

Pub. L. No. 100-181, 101 Stat. 1249 (1987) ............................ 15

## Other Authorities

17 C.F.R. § 200.30-1 ........................................................ 24, 25

17 C.F.R. § 202.1 ....................................................... 17, 23, 24

17 C.F.R. § 202.2 ............................................................. 23, 24

17 C.F.R. § 240.14a-8 ............................................ 8, 11, 16, 19, 24

76 Fed. Reg. 71,872 (Nov. 21, 2011) .................................... 23

Corporation Finance, *Staff Legal Bulletin No. 14L* (Nov. 3, 2021), https://www.sec.gov/corpfin/staff-legal-bulletin-14l-shareholder-proposals...........................................................................7

*Hearing on Reorganization Plans of 1961: No. 1, Securities and Exchange Commission Before the S. Comm. on Gov't Operations*, 87th Cong. 45 (1961) ......................................................15

Hugh Rice Kelly, *Administrative Law*, 49 TEX. L. REV. 322 (1971).................................................................................................23

Note, *The SEC and "No-Action" Decisions Under Proxy Rule 14a-8*, 84 HARV. L. REV. 835, 837 (1971) .......................... 16, 19, 21, 26

*Shareholder Impact Review* 16, As You Sow (2022), https://tinyurl.com/pfizersettle ...........................................................18

*Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals*, 41 Fed. Reg. 29,989 (July 7, 1976)..................................................................25

## **INTRODUCTION**

The SEC's motion to dismiss re-raises many of the arguments the parties briefed when Petitioners sought emergency relief. *Compare* ECF Nos. 4 (motion), 19 (opposition), 21 (reply), *with* ECF No. 37 ("MTD"). The Court ordered that emergency motion carried with the case and also issued an administrative stay, presumably to ensure the case would not become moot before a merits panel could hear it. ECF No. 29. Despite this, the SEC also now claims the case is moot despite the Court's order.

Petitioners disagree with the SEC's arguments but do agree that the Court should resolve these matters now. Otherwise, the SEC will insist on raising the same arguments at every conceivable step to delay this case. In concurrently filed motions, *see* ECF Nos. 38–39, the SEC is refusing even to file the administrative record in this case, on the same theory. This Court should issue a decision finding jurisdiction and rejecting the SEC's arguments gerrymandered to avoid judicial review despite Congress's exceedingly clear statutory mandate. *See* 15 U.S.C. § 78d-1(c) (decisions by SEC delegees "shall, *for all purposes, including appeal or review thereof*, be deemed the action of the Commission," including for "[f]inality") (emphasis added).

1

# BACKGROUND

Rather than repeat the same lengthy background and facts sections about the no-action process, and Petitioners' lengthy and ongoing disputes with the SEC over viewpoint-diversity proposals, Petitioners respectfully direct the Court to their Petition and emergency motion for a stay. *See* ECF Nos. 1, 4.

After that motion was briefed, this Court issued an order carrying it with the case, denying expedited review, and imposing an administrative stay that would "continue[] in effect pending further order of the court." ECF No. 29 (May 10, 2023).

On May 12, 2023, Kroger issued the proxy materials for its upcoming shareholder meeting, and Petitioners' proposal about viewpoint diversity ("the Proposal") was included in those materials.

Petitioner NCPPR has already submitted the same proposal—requesting that the company "issue a public report detailing the potential risks associated with omitting 'viewpoint' and 'ideology' from its written equal employment opportunity (EEO) policy"—to Kroger for the 2024 proxy season *and* to two other companies for future proxy seasons, as well. *See* Ex. A (attached). This continues NCPPR's years-long practice of

submitting this same viewpoint-diversity proposal to companies, only to have the SEC grant no-action relief every single time. *See* Part I.B, *infra*. Petitioner Fischer has also submitted the same viewpoint-diversity proposal to Redfin for its upcoming proxy season. *See* Ex. B (attached).

## ARGUMENT

### I.    RECENT EVENTS DO NOT MOOT THE CASE BUT INSTEAD CONFIRM ITS JUSTICIABILITY.

The SEC claims the case is moot because Kroger included the Proposal in its 2023 proxy materials. That does not moot the case, as explained below. Indeed, presumably the reason this Court issued an extended administrative stay was to ensure this case would *not* become moot before a merits panel could hear it.

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012) (cleaned up). And a case remains live under the "'capable of repetition, yet evading review' doctrine" when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable

expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *see Turner v. Rogers*, 564 U.S. 431, 439–40 (2011).

Both elements are satisfied here.

## A.    The Short Duration of the Proxy Season Precludes Full Review.

The shareholder proxy season is extraordinarily short, almost always precluding full judicial review before the company must print its proxy materials. This case demonstrates it. In late December 2022, NCPPR timely filed the Proposal with Kroger, which timely sought no-action relief. Once the SEC Division issued no-action relief and the Commission declined review, Petitioners promptly sought emergency relief before this Court, which issued an extraordinarily expedited briefing schedule. Despite all this, there was still no realistic chance of a dispositive ruling before Kroger had to print its annual materials for its June 2023 meeting.

Unsurprisingly, in a similar case, the U.S. District Court for the District of Delaware agreed that the proxy review process is a classic scenario for the capable-of-repetition-yet-evading-review doctrine. *See Trinity Wall St. v. Wal-Mart Stores, Inc.*, 75 F. Supp. 3d 617, 627 (D. Del.

2014). And the Supreme Court held in *Turner*, albeit in a different context, that even a one-year window was too short to ensure full litigation. *Turner*, 564 U.S. at 439–40. The window here is far shorter.

## B.    There Is a Reasonable Expectation of the Same Action Recurring.

There is a reasonable expectation that Petitioners will be subjected to the same SEC action again.

*First*, NCPPR has already submitted the same Proposal to Kroger for its 2024 proxy materials. Ex. A (attached). There is no reason to believe that Kroger will change course and decline to seek no-action relief from the SEC, nor that the SEC will decline to provide it. To be sure, Kroger included the Proposal in its 2023 materials, but that was only because of this Court's administrative stay, which deprived Kroger of its no-action letter, and thus Kroger resorted to the default practice of including a proxy proposal unless the SEC has provided no-action relief.

*Second*, Petitioners challenge the SEC's treatment of its viewpoint-discrimination proposal, and that treatment can (and will) be repeated in the future. The SEC acknowledges that submitting this same proposal to other companies could avoid mootness if the SEC were likely to issue the

5

same no-action decision—but the SEC insists it is unbelievable that this process would occur again. MTD11.

But the SEC ignores that NCPPR has a consistent pattern of submitting this *exact same* proposal to numerous other companies, which have sought and obtained no-action relief from the SEC:

- *Apple Inc.*, 2019 WL 5420787, at *1 (S.E.C. No - Action Letter Dec. 20, 2019) (asking company to "issue a report detailing the potential risks associated with omitting 'viewpoint' and 'ideology' from its written equal employment opportunity policy").

- *Salesforce.com, Inc.*, 2020 WL 605941, at *1 (S.E.C. No-Action Letter Mar. 5, 2020) (same).

- *Alphabet Inc.*, 2020 WL 605360, at *1 (S.E.C. No-Action Letter Feb. 24, 2020) (same).

- *Walgreens Boots All., Inc.*, 2020 WL 5656738, at *1 (S.E.C. No-Action Letter Nov. 12, 2020) (same).

- *BlackRock, Inc.*, 2022 WL 225967, at *1 (S.E.C. No-Action Letter Apr. 4, 2022) (same).

And most importantly, weeks before the SEC filed its motion to dismiss, NCPPR submitted the same proposal again to BlackRock and to Microsoft for their *upcoming* proxy seasons (as well as to Kroger, as mentioned above), *see* Ex. A (attached), and Petitioners Fischer and Aronoff both own shares in all three of those companies. Further,

Petitioner Fischer submitted the same viewpoint proposal to Redfin for 2024. Ex. B (attached). Those proposals remain pending.

It is hardly "speculative," MTD11, to conclude that at least one of those companies will seek no-action relief (as has always happened when NCPPR submitted this proposal in the past), and that Petitioners will again be on the losing end when the SEC grants no-action relief (as they have every time in the past for this same proposal). What is truly speculative is the SEC's assertion that *all* of those companies will suddenly start including the Proposal or that the SEC will suddenly begin denying no-action relief on *all* of those submissions.

The SEC pivots and claims that no-action decisions "are necessarily specific to the particular proposal and company at issue," so perhaps the Court should treat Kroger's 2023 no-action decision as inherently different from other no-action decisions that will be coming down the pike, even though they will address the same proposal text. *Id.* The Court should not credit this self-serving litigation position because the SEC's own formal legal bulletins say the exact opposite: the SEC "is no longer taking a company-specific approach to evaluating the significance of a policy issue under Rule 14a-8(i)(7)," Division of Corporation Finance,

*Staff Legal Bulletin No. 14L* (Nov. 3, 2021), https://www.sec.gov/corpfin/staff-legal-bulletin-14l-shareholder-proposals. Thus, when it comes to Petitioners' viewpoint-diversity proposal, the SEC's decision is decidedly *not* "specific to the particular proposal and company at issue," MTD11, no matter what the SEC tells this Court in the hopes of avoiding judicial review.

Moreover, Rule 14a-8 expressly treats "prior Division letters" as persuasive authority when considering other proposals, meaning the Division's prior grants of no-action relief against NCPPR's viewpoint-diversity proposal will make it even more likely that the SEC grants the same relief in the future. *See* 17 C.F.R. § 240.14a-8(j)(2)(ii).

Given all this, it is almost a guarantee that the SEC will issue no-action relief against Petitioners' pending viewpoint-discrimination proposals, regardless of which company is at issue, just as the SEC has always done in the past when faced with that proposal.

There is accordingly not just "a reasonable expectation"—but *a near certainty*—that Petitioners will "be subjected to the same action again" by the SEC. *Murphy*, 455 U.S. at 481.

Both requirements of the capable-of-repetition-yet-evading-review

doctrine are therefore satisfied.

### C.   The Mootness Analysis Here Is Materially Different than in *Medical Committee*.

The SEC does not cite the mootness analysis in *Medical Committee for Human Rights v. SEC*, 404 U.S. 403 (1972), but to avoid the risk of the SEC raising that case for the first time in its reply brief, Petitioners will explain now why that case does not apply here (a conclusion confirmed by the fact that the SEC chose not to cite it).

In *Medical Committee*, the Supreme Court held a proxy dispute was moot because Dow Chemical Co. had included the disputed proposal and it had failed to receive 5% of the vote. The Court was clear that mere inclusion of the proposal did not moot the case. "If Dow were likely to repeat its allegedly illegal conduct, the case would not be moot. However, in light of the meager support the proposal attracted, we can only speculate that Dow will continue to include the proposal when it again becomes eligible for inclusion, rather than to repeat this litigation." *Med. Comm.*, 404 U.S. at 406. In other words, the case was moot because Dow wouldn't seek no-action relief again from the SEC over that proposal.

9

The Court's mootness analysis in *Medical Committee* does not control here for several reasons.

*First*, Kroger has not yet had its 2023 annual meeting, so it is yet to be seen what level of support the Kroger Proposal will achieve. And Kroger has given no indication it will forgo no-action relief from the SEC for NCPPR's 2024 proposal.

*Second*, regardless of what happens with Kroger, this case is still not moot. The shareholder proponent in *Medical Committee* had submitted the challenged proposal only to Dow, and once it became clear that Dow would likely never seek no-action relief again, there was no fair prospect of another SEC no-action decision on the substance of that proposal—*ever*.

But here, as noted above, Petitioners have submitted the same Proposal to numerous other companies in the past and already have done the same for the 2024 season, too. Of the companies that previously received this proposal in the past, all of them sought and were granted no-action relief. There is no basis to speculate that those companies and the SEC will all act differently this time.

It is important to note that the SEC is the Respondent in this case—not Kroger—and so it is the SEC's repeated denials in the past and its near-guaranteed denials in the future that matter for the mootness analysis.

Unlike in *Medical Committee*, there is at least a "reasonable expectation" that Petitioners will face the same challenged SEC conduct.

### D. Kroger's Decision to Include the Proposal in Its 2023 Materials Confirms the Court Can Redress Petitioners' Harms.

Finally, Kroger's decision to include the proposal in the 2023 proxy materials confirms that this Court can provide meaningful relief to Petitioners. Companies must include a proposal unless they report to the SEC that they wish to exclude the proposal. 17 C.F.R. § 240.14a-8(j). Unless companies receive a no-action decision from the SEC, they almost invariably include the proposal; and conversely, when they do receive a no-action decision, they always follow the SEC's lead and exclude the proposal. *See, e.g.*, ECF No. 21 at 12–13 (court-stamped page numbering).

During the SEC proceedings, Kroger fought vigorously to keep the Proposal out of the 2023 proxy materials and received its coveted no-action relief. But Kroger suddenly changed course and included the

Proposal only *after* this Court issued an administrative stay of the SEC's no-action decision. By doing so, the Court deprived Kroger of the SEC decision greenlighting exclusion of the Proposal. Kroger had to move forward with printing its materials, so it resorted to the default rule and included the Proposal.

This confirms that if the Court grants the Petition and issues a decision against the SEC's illegal actions, there is at least a fair prospect that it will provide some kind of relief to Petitioners, akin to a declaratory judgment that the SEC's actions are illegal. Kroger's recent actions confirm this causal link.

## II.    THE COURT HAS JURISDICTION.

The SEC rehashes its prior argument that there is no "final order of the Commission" under 15 U.S.C. § 78y(a). That is wrong. In seeking to avoid review, the SEC relies extensively on the "particular label[s]" it gives its own actions, but "it is the substance" that matters when determining reviewability of agency action. *CBS v. United States*, 316 U.S. 407, 416 (1942).

A.　THERE IS FINAL AGENCY ACTION.

　　1.　SECTION 78D-1 ESTABLISHES THE CONSUMMATION OF THE AGENCY PROCESS.

The SEC disputes that the Division decision represented the "'consummation' of the Agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997); MTD24. That disregards 15 U.S.C. § 78d-1(c), which states that decisions by SEC delegees "shall, *for all purposes, including appeal or review thereof*, be deemed the action of the Commission," including for "[f]inality," once Commission review has been denied or the time to seek it has expired. *Id.* (emphasis added); Pet.5–7.

It is hard to imagine a clearer statutory directive designed to ensure that SEC actions remain judicially reviewable regardless of who exactly at the SEC made the decision and regardless of whatever procedural tricks the Commission may invoke to try and evade review. The SEC never disputes the Commission did in fact deny review here, MTD7, which is one of the triggers for § 78d-1. That means the Division decision is the final Commission decision for all purposes, including "[f]inality." *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 898 (2023); *see also infra* Part II.B.

13

The SEC claims it "might" change its mind down the road, MTD26, but "[t]he mere possibility that an agency might reconsider … does not suffice to make an otherwise final agency action nonfinal." *Sackett v. EPA*, 566 U.S. 120, 127 (2012). And the Commission already had that opportunity and declined to do so.

### 2.　Petitioners Need Not Satisfy *Bennett*'s Second Prong, But They Do So Anyway.

The SEC next claims the Division's decision—issued on SEC letterhead after numerous rounds of briefing—is so informal that it was not "one by which rights or obligations have been determined, or from which legal consequences will flow," under the second prong of *Bennett*, 520 U.S. at 177–78; *see* MTD23. That is incorrect.

*First*, that generic element of finality is a default APA requirement, Pet.7–8, but as discussed above, the Exchange Act provides for finality "for all purposes, including appeal or review thereof," once the Commission denies review or the time expires to seek review. § 78d-1(c). That expansive language prohibits any attempt to glom additional tests for review onto the requirements in § 78d-1(c). The SEC seems to claim that § 78d-1 does not govern finality, *see* MTD25, even though it expressly dictates "[f]inality."

14

The SEC cites cases finding no final, reviewable order in similar circumstances, *see, e.g.*, *Kixmiller v. SEC,* 492 F.2d 641 (D.C. Cir. 1974); *Amalgamated Clothing & Textile Workers Union v. SEC*, 15 F.3d 254 (2d Cir. 1994), but none of those cases cited § 78d-1—presumably they were simply unaware of it. That is unsurprising because § 78d-1 was not codified until 1987 and has largely remained unrecognized since then.[1] But its text could not be clearer, and it directly forecloses the SEC's arguments here.

In fact, the SEC itself confirmed that "a staff decision could become final without review" by the Commission and then "go[] directly to the Court of Appeals without the benefit of a full Commission hearing." *Hearing on Reorganization Plans of 1961: No. 1, Securities and Exchange Commission Before the S. Comm. on Gov't Operations*, 87th Cong. 45 (1961) (statement of SEC Chairman William I. Cary), *available at*

---

[1] The substance of § 78d-1 was originally enacted in 1962, *see* Pub. L. No. 87-592, 76 Stat. 394 (1962), but was not codified until it was re-enacted in 1987, *see* Pub. L. No. 100-181, 101 Stat. 1249, 1254–55 (1987); S. Rep. 100-105, 1987 WL 61544, at *20 (1987) (noting the 1987 Act would "insert [the 1962 Act] provisions into the 1934 Act, where they would be more readily accessible").

https://tinyurl.com/5n72te5r. The Court should reject the SEC's attempt to abandon that view.

*Second*, even if *Bennett* prong-two finality were required, Petitioners satisfy that "pragmatic" inquiry. *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011); *see Med. Comm. for Human Rts. v. SEC*, 432 F.2d 659, 665–76 (D.C. Cir. 1970), *vacated on mootness grounds*, 404 U.S. 403 (1972).[2]

Companies wishing to exclude proposals are *required* to inform the SEC pursuant to Rule 14a-8. 17 C.F.R. § 240.14a-8(j). And "in the administration of proxy rule 14a-8, … the SEC performs a quasi-judicial function." Note, *The SEC and "No-Action" Decisions Under Proxy Rule 14a-8*, 84 HARV. L. REV. 835, 837 (1971) ["HARVARD"]. The D.C. Circuit described it as "an adversary encounter" between "two interested private parties," where the SEC "formally decides among conflicting adversary claims premised on detailed legal arguments." *Med. Comm.*, 432 F.2d at 669–70, 675.

---

[2] The SEC attempts to distinguish *Medical Committee* because the Commission had adopted the Division decision there, MTD22, but § 78d-1(c) renders that distinction irrelevant.

In short, pursuant to Rule 14a-8's "formal procedures," 17 C.F.R. § 202.1(c), the SEC legally compels the company to submit stockholder-proposal disputes, then chooses to treat them as adversarial controversies with full-blown briefing, and resolves them by applying explicit legal standards. Deciding private rights necessarily satisfies *Bennett* prong-two. This is a far cry from "investigation and information gathering," as the SEC attempts to label it. MTD13.

To be sure, the SEC does not have to issue a decision when a company seeks no-action relief, *see* MTD25, but that does not somehow preclude finality where the SEC actually *does* issue a decision, as it did here.

Further, the entire point of the process is that "'private parties can rely on [the decision] as a norm or safe harbor by which to shape their actions'"—i.e., it provides "'best practices'" for the company—and that also makes it final. *Texas v. EEOC*, 933 F.3d 433, 444 (5th Cir. 2019).

The SEC has previously claimed that a company's "management is free to ignore a staff letter," ECF No. 19 at 27–28 (court-stamped page numbering), but if a company insists on excluding a proposal, the SEC could institute an investigation or lawsuit, MTD4. At the very least,

17

disregarding the Division's decision "*tend[s] to expose* parties to civil or criminal liability for non-compliance with the agency's view." *La. State v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 583 (5th Cir. 2016).

Petitioners' review of the 2021–22 proxy season reveals that of the 112 instances where the SEC denied no-action relief, the company complied in 111.[3] In the one exception, the company agreed to give the proponent the underlying information requested, in exchange for withdrawing the proposal.[4] That means *100%* of the time, the company bowed to the SEC decision to deny Rule 14a-8 no-action relief.

The SEC also says that "'Commissioners might elect to proceed no matter what [staff] recommends,'" MTD26, but conspicuously neglects to cite a single example of this occurring. The Division's decision is "applied by the agency in a way that indicates it is binding" and is thus final. *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015).

---

[3] Petitioners matched no-action outcomes the SEC marked "include," *see 2021–22 Shareholder Proposal No-Action Responses*, SEC, https://tinyurl.com/sec2021-22, to companies' proxy statements, available at *EDGAR Search*, SEC, https://www.sec.gov/edgar/search/.

[4] *Pfizer Inc.*, 2021 WL 6126545 (Feb. 10, 2022); *2022 Shareholder Impact Review* 16, As You Sow (2022), https://tinyurl.com/pfizersettle.

Moreover, Rule 14a-8 itself expressly treats "prior Division letters" as persuasive authority when parties seek no-action relief, 17 C.F.R. § 240.14a-8(j)(2)(ii), and courts often award deference to the SEC's no-action decisions in private lawsuits against the company.[5] Those forms of deference by courts and the SEC itself, no matter how slight, are legal consequences separate from the SEC's own declaratory and enforcement decisions. The SEC seems to believe that there are legal effects only when an agency decision categorically "bind[s]" others, MTD26, but that is wrong. As Justice Scalia aptly put it in the context of agency rules, where agency action "gets deference, the people are bound to obey it on pain of sanction, no less surely than they are bound to obey substantive rules" that are mandatory. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 110 (2015) (Scalia, J., concurring).

### 3.    THERE IS AN "ORDER."

It is unclear whether the SEC disputes the existence of an "order" on any basis not addressed above. MTD13–16. If so, the SEC is wrong.

---

[5] HARVARD, *supra*, at 854; *N.Y.C Emps.' Ret. Sys. v. SEC*, 45 F.3d 7, 14 (2d Cir. 1995).

The Exchange Act does not define "order," but "courts sometimes have construed 'order' for purposes of special review statutes more expansively than its definition in the APA" to ensure reviewability even of "informal" rulings. *Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.*, 827 F.3d 51, 55 (D.C. Cir. 2016). That is warranted here given § 78d-1's broad confirmation of finality for SEC actions, and also because when it comes to defining an "order," "it is the substance" that matters. *CBS*, 316 U.S. at 416. Concluding after full-blown adversarial briefing that Petitioners' proposal "relates to, and does not transcend, ordinary business matters," and that Kroger may therefore exclude it, ECF No. 4 at 80 (court-stamped page numbering), has more than sufficient indicia of finality to qualify as an order. That entails far more formality and process than many agency proceedings that undoubtedly yield reviewable orders.[6]

---

[6] The SEC's continued reference to the recommendation against an enforcement action is a red herring because, as discussed above, that recommendation is segregable from the Division's unequivocal conclusion that the Proposal "relates to, and does not transcend, ordinary business matters" and thus could be excluded. ECF No. 4 at 80 (court-stamped page numbering). Further, and in any event, the recommendation against enforcement is itself reviewable even under *Heckler v. Chaney*. *See* Part II.C, *infra*.

Even if the APA definition of "order" applied, the outcome is unchanged because "the APA defines 'order' broadly." *S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 675 (9th Cir. 1989). The written decision here included (1) a "declaratory" disposition, 5 U.S.C. § 551(6), that there is a basis for concluding the Proposal involves only ordinary business matters and thus can be excluded; and (2) an "affirmative" "disposition," *id.*, that the Division will not recommend enforcement if Kroger excludes the Proposal. And that decision was reached only after a formal regulatory process with full-blown adversarial briefing.

Thus, "it would seem entirely consistent with the scheme of the Exchange Act to treat agency determinations under rule 14a-8 as … an 'order' within the meaning of section [78y](a)." HARVARD, *supra*, at 861.

### B.   SECTION 78D-1 APPLIES—BUT EVEN IF NOT, THIS COURT STILL HAS JURISDICTION.

The SEC alternatively tries to escape § 78d-1 by claiming the Commission never delegated authority over the Rule 14a-8 no-action process to the Division. MTD17–21. This implies that Division staff are rogue actors who have been issuing no-action decisions for decades, pursuant to detailed regulations and formal legal bulletins, without the Commission ever providing *any* authority to do so. The Court should

reject this absurdity, which is precisely what Congress was trying to prevent when it enacted § 78d-1.

*First*, the SEC cannot avoid judicial review by letting subordinates issue decisions and then disclaiming any delegation. That charade would eviscerate § 78d-1. And an agency has no "'power to do indirectly what it cannot do directly'"—i.e., preclude judicial review of subordinates' decisions. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 n.* (2018).

*Second*, the SEC's argument is irrelevant because if the Commission never delegated Rule 14a-8 no-action authority, then the Commission itself retains exclusive authority over proxies under 15 U.S.C. § 78n, meaning the Division's letters *necessarily* represent the Commission's own final orders for judicial review purposes even without resort to § 78d-1. Thus, even under the SEC's view, the Division is the agent communicating the Commission's *own* judicially reviewable decisions, and Petitioners need not even invoke § 78d-1 to trigger this Court's jurisdiction.

The SEC can't have it both ways. The SEC is issuing these decisions, so they must be attributable to the Commission directly, or

indirectly via § 78d-1. *But see* MTD21 (insisting the SEC can have it both ways).

*Third*, in any event, the "Commission has in fact delegated its powers in 14a-8 cases to the Division of Corporat[ion] Finance." Hugh Rice Kelly, *Administrative Law*, 49 Tex. L. Rev. 322, 332 n.48 (1971).

Rule 14a-8, issued by the Commission, refers five different times to the role of "staff" and says "prior Division letters" are persuasive authority, confirming that the Commission handed this process to the Division Staff. And 17 C.F.R. §§ 202.1(d) and 202.2, which the SEC concedes apply to the Rule 14a-8 process, *see* MTD19–20, both invoke § 78d-1 for their authority. *See* 76 Fed. Reg. 71,872, 71,875 (Nov. 21, 2011). The SEC even concedes in its brief that the no-action process is "recognized by regulation." MTD18. This is all inexplicable if the Commission never delegated such authority in the first place.

The SEC claims that perhaps § 78d-1 did not "provide[] the authority for each individual subsection" in 17 C.F.R. §§ 202.1(d) and 202.2. MTD19. But 15 U.S.C. § 78d-1 is listed as authority for *all* of § 202.1, and in any event § 202.1(d) is the only subsection about the Division's Staff and thus the only subsection that would need to invoke

§ 78d-1. And § 202.2 has no subsections, so § 78d-1 provides authority for the entire provision. The SEC also notes that § 202.1(d) states that Division decisions do "not constitute an official expression of the Commission's views," MTD20, but that is a red herring because it is a statute (§ 78d-1) that *subsequently* deems the Division's views to be the Commission's views, once the Commission declines review or the time to seek review has expired.

Because the Commission delegated the no-action process to the Division in 17 C.F.R. §§ 202.1(d) and 202.2, Petitioners rightfully can invoke 15 U.S.C. § 78d-1 and thereby have the Division's decisions deemed the final decisions of the Commission itself.

This conclusion is supported by a separate regulation delegating power to the Division to "authorize the use of forms of proxies, proxy statements, or other soliciting material within periods of time less than that prescribed in" relevant regulations, including Rule 14a-8. 17 C.F.R. § 200.30-1(f)(4). Contrary to the SEC's claim, that delegation could *not* refer exclusively to the authority to waive certain filing deadlines. MTD20. Most notably, Rule 14a-8 itself already separately authorizes the Division to waive a company's filing deadline for good cause, *see* 17 C.F.R.

§ 240.14a-8(j)(1), making the SEC's interpretation of § 200.30-1(f)(4) entirely redundant. Moreover, "authoriz[ing] the use of proxies" would include the *review* of proxy materials. And the Rule 14a-8 no-action process is part of that "review" because it authorizes an essential part of a company's proxy materials: shareholder proposals. The SEC's own regulations have used the same terminology. *See Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals*, 41 Fed. Reg. 29,989, 29,991 (July 7, 1976) (referring to Rule 14a-8 no-action process as "proxy review").

In short, the SEC never explains how it could be that the Division has been undertaking review of no-action requests, receiving full adversarial briefing, and issuing decisions and legal bulletins on SEC letterhead pursuant to hundreds of pages of intricate regulations—all without having been delegated any such power by the Commission.

## C.    *HECKLER V. CHANEY* DOES NOT BAR REVIEW.

The SEC argues in passing the challenged order is unreviewable as a purely discretionary decision. MTD22–23. That is wrong.

*First*, this argument is yet another red herring because the no-action letter does far more than announce a decision against

enforcement. The Division unequivocally concluded that "the Proposal relates to, and does not transcend, ordinary business matters," and thus could be excluded. ECF No. 4 at 80 (court-stamped page numbering). That conclusion is segregable, *Med. Comm.*, 432 F.2d at 673–75, and is "an issue which the agency has effectively resolved and which is appropriate for judicial review," HARVARD, *supra*, at 865, especially because the SEC "has never indicated that it takes … prosecutorial factors into consideration at all in rule 14a-8 decisions," *id.* at 851.

*Second*, the bar on reviewing discretionary decisions "is very narrow," *Rollerson v. Brazos River Harbor Navigation Dist.*, 6 F.4th 633, 644 (5th Cir. 2021), and does not apply (1) where the agency itself has issued regulations that provide judicially manageable standards for review (which the SEC does not dispute exist), or (2) to constitutional claims (which Petitioners bring). Pet.11.n.2. The SEC doesn't dispute these exceptions, but instead claims Petitioners should sue in district court instead. MTD23. But the Exchange Act authorizes Petitioners to sue in this Court.

**D.     THE AVAILABILITY OF A PRIVATE SUIT IS IRRELEVANT.**

The SEC again notes Petitioners could sue private companies directly under the implied cause of action created in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964). But the availability of an implied cause of action cannot oust this Court's *express* jurisdiction. *Med. Comm.*, 432 F.2d at 672. This suit follows the textually supported route.

## <u>CONCLUSION</u>

The Court should deny the SEC's motion to dismiss.[7]

---

[7] The SEC previously claimed that venue was improper in this Court but has wisely abandoned that argument, which is foreclosed by precedent, *see Glob. Van Lines, Inc. v. ICC*, 691 F.2d 773, 774 n.1 (5th Cir. 1982), and which this Court recently rejected in another case, *see* Order, *Texas v. SEC*, No. 23-60079 (5th Cir. May 26, 2023).

June 5, 2023                    Respectfully submitted,

                               /s/ R. Trent McCotter
                               R. TRENT MCCOTTER
                                 *Counsel of Record*
                               JONATHAN BERRY
                               MICHAEL BUSCHBACHER
                               JARED M. KELSON
                               BOYDEN GRAY & ASSOCIATES
                               801 17th Street NW, Suite 350
                               Washington, DC 20006
                               202-706-5488
                               mccotter@boydengrayassociates.com

                               GENE P. HAMILTON
                               REED D. RUBINSTEIN
                               AMERICA FIRST LEGAL FOUNDATION
                               611 Pennsylvania Ave SE #231
                               Washington, DC 20003
                               202-964-3721
                               gene.hamilton@aflegal.org

                                 *Counsel for Petitioners*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Fifth Circuit Rule 27.4 and Federal Rule of Appellate Procedure 27(d)(2) because it contains 5197 words, excluding the portions exempted by Rule 27(a)(2)(B). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

/s/ R. Trent McCotter

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF.

<u>/s/ R. Trent McCotter</u>