No. 23-60230

# In the United States Court of Appeals for the Fifth Circuit

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH;
NATHANIEL FISCHER; PHILLIP ARONOFF,

*Petitioners,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

Petition for Review from an Order
of the Securities and Exchange Commission

## INTERVENOR THE NATIONAL ASSOCIATION OF MANUFACTURERS' OPPOSITION TO SEC'S MOTION TO DISMISS

Steven P. Lehotsky
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW
Suite 700
Washington, DC 20001

Michael A. Tilghman II
NAM LEGAL CENTER
733 10th Street, NW
Suite 700
Washington, DC 20001

Scott A. Keller
Matthew H. Frederick
Todd Disher
Alexis Swartz
LEHOTSKY KELLER COHN LLP
919 Congress Avenue
Suite 1100
Austin, TX 78701
scott@lkcfirm.com
(512) 693-8350

## CERTIFICATE OF INTERESTED PERSONS

No. 23-60230
National Center for Public Policy Research; Nathaniel Fischer;
Phillip Aronoff,
*Petitioners*,
*v.*
Securities and Exchange Commission,
*Respondent*.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. Intervenor the National Association of Manufacturers has no parent corporations and no publicly held corporation owns 10% or more of its respective stock. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Petitioners:**
National Center for Public Policy Research; Nathaniel Fischer; Phillip Aronoff

**Counsel for Petitioners:**
R. Trent McCotter (lead counsel)
Jonathan Berry
Michael Buschbacher
Jared M. Kelson
BOYDEN GRAY & ASSOCIATES PLLC

Gene Patrick Hamilton
AMERICA FIRST LEGAL FOUNDATION

**Respondent:**
Securities and Exchange Commission

**Counsel for Respondent:**
Theodore J. Weiman (lead counsel)
Megan Barbero
Michael A. Conley
Tracey A. Hardin
SECURITIES AND EXCHANGE COMMISSION

**Intervenor:**
National Association of Manufacturers

**Counsel for Intervenor:**
Scott A. Keller (lead counsel)
Steven P. Lehotsky
Matthew H. Frederick
Todd Disher
Alexis Swartz
LEHOTSKY KELLER COHN LLP

Michael A. Tilghman II
NAM LEGAL CENTER

**Interested Third Party:**
The Kroger Co.

/s/ *Scott A. Keller*
SCOTT A. KELLER
*Counsel of Record for Intervenor*

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ..........................................................i

Table of Authorities ............................................................................ iii

Intervenor's Opposition to SEC's Motion to Dismiss.......................1

   I.   The petition is not moot because it presents an issue that is
capable of repetition yet evading review...............................3

        A.   The annual cycle of corporate proxy statements issued
just before shareholder meetings is too short to allow
full litigation of disputes about shareholder proposals...............3

        B.   The present controversy is capable of repetition. .........................6

   II.   SEC no-action letters regarding Rule 14a-8 are reviewable
final agency orders. ...............................................................10

Conclusion.............................................................................................15

Certificate of Service ...........................................................................16

Certificate of Compliance ...................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Appalachian Power Co. v. EPA,*
   208 F.3d 1015 (D.C. Cir. 2000).......................................................15

*AT&T Co. v. EEOC,*
   270 F.3d 973 (D.C. Cir. 2001).........................................................12

*Cohen v. United States,*
   578 F.3d 1 (D.C. Cir. 2009)..............................................................12

*Cohen v. United States,*
    650 F.3d 717 (D.C. Cir. 2011) .......................................................... 12

*Empower Texans, Inc. v. Geren,*
    977 F.3d 367 (5th Cir. 2020) ........................................................ 5, 6

*First Nat'l Bank of Boston v. Bellotti,*
    435 U.S. 765 (1978) ...................................................................... 3, 5

*Frozen Food Exp. v. United States,*
    351 U.S. 40 (1956) ...................................................................... 12, 13

*Murphy v. Hunt,*
    455 U.S. 478 (1982) .......................................................................... 7

*Roosevelt v. E.I. Du Pont de Nemours & Co.,*
    958 F.2d 416 (D.C. Cir. 1992) ......................................................... 4

*SEC v. Murphy,*
    50 F.4th 832 (9th Cir. 2022) ......................................................... 11

*SEC v. Nutra Pharma Corp.,*
    2022 WL 3912561 (E.D.N.Y. Aug. 31, 2022) ................................. 11

*S. Pac. Terminal Co. v. ICC,*
    219 U.S. 498 (1911) .......................................................................... 3

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ......................................................... 12

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ......................................................... 11

*Turner v. Rogers,*
    564 U.S. 431 (2011) .................................................................... 3, 5, 7

*Trinity Wall St. v. Wal-Mart Stores, Inc.,*
    792 F.3d 323 (3d Cir. 2015) ......................................................... 4, 8

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2006)..........................................................................12

*United States Steel Corp. v. EPA*,
    614 F.2d 843 (3d Cir. 1979) ...............................................................8

*Weinstein v. Bradford*,
    423 U.S. 147 (1975) (per curiam) .................................................3, 5

**Statutes**

15 U.S.C. § 78d-1(c) ............................................................................10

15 U.S.C. § 78y(a)(1) ...........................................................................10

**Rules, Regulations, and Regulatory Actions**

17 C.F.R. § 240.14a-8.......................................................................9, 13

17 C.F.R. § 240.14a-8(f)(1) ...................................................................4

17 C.F.R. § 240.14a-8(i)(7) .................................................................7, 8

17 C.F.R. § 240.14a-8(j) .........................................................................9

17 C.F.R. § 240.14a-8(j)(1) ....................................................................4

17 C.F.R. § 240.14a-8(j)(2) .................................................................2, 12

17 C.F.R. § 240.14a-8(j)(2)(ii) ...............................................................7

17 C.F.R. § 240.14a-8(k).........................................................................4

*Eli Lilly & Co.*, SEC Staff No-Action Letter, 2023 WL 2524430
    (Mar. 8, 2023) .....................................................................................9

*Morgan Stanley & Co., Inc.*, Release No. 28,990, 1991 WL 296498
    (Mar. 20, 1991) ................................................................................11

*Pfizer Inc.*, SEC Staff No-Action Letter, 2022 WL 17832223 (Jan. 19, 2023) ...................................................................................9

*United Bhd. of Carpenters & Joiners of Am.*, SEC Staff No-Action Letter, 2002 WL 31749942 (Dec. 6, 2002) .......................................14

SEC, *Amendments to Rules on Shareholder Proposals*, Release No. 34-40018, 63 Fed. Reg. 29,106 (May 28, 1998) ...........................................9, 12

SEC, *Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals*, Release No. 34-12599, 41 Fed. Reg. 29,989 (July 20, 1976) ...............................................10, 14

SEC Staff Legal Bulletin No. 14L (CF) (Nov. 3, 2021) ...................................7, 8

## Other Authorities

Br. fo Appellee SEC, *SEC v. Gounaud*, 2021 WL 4929518 (9th Cir. 2021) ....................................................11

Br. of SEC in Support of Motion for Partial Summary Judgment, *SEC v. Nutra Pharma Corp.*, 2021 WL 1902895 (E.D.N.Y. Apr. 9, 2021) ...................................................................................11

SEC, 2022-2023 No-Action Responses Issued Under Exchange Act Rule 14a-8 ...................................................................................10

SEC, Announcement Regarding Rule 14a-8 No-Action Requests (Sept. 6, 2019) ......................................................................... 13-14

Charles T. Haag & Zachary A. Keller, *Honored in the Breach: Issues in the Regulation of Tender Offers for Debt Securities*, 9 N.Y.U. J.L. & Bus. 199 (2013) .........................................................14

Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in SEC No-Action Letters: Current Problems and a Proposed Framework*, 83 Cornell L. Rev. 921 (1998) .......................................................14

### Intervenor's Opposition to SEC's Motion to Dismiss

Every year, SEC Rule 14a-8 compels corporate speech on shareholder proposals that raise contentious social issues unrelated to companies' core businesses or the creation of shareholder value. Disputes about the application and constitutionality of Rule 14a-8 will recur every annual proxy season whenever shareholders submit proposals to publicly traded companies, including members of the National Association of Manufacturers (NAM). And the short duration of the annual proxy cycle makes it impossible to fully litigate questions about such proposals before companies issue their yearly proxy statements. *See infra* Part I. Thus, the SEC's Motion to Dismiss should be denied.

The SEC interprets Rule 14a-8 through its responses to requests from companies for so-called "no-action" letters regarding shareholder proposals. If issued by the SEC, a no-action letter permits the requesting company to exclude the shareholder proposal from its proxy statement without fear of an SEC enforcement action. If the SEC declines the company's request for a no-action letter, the company is compelled by Rule 14a-8 to disseminate the shareholder proposal. No-action letters are binding as a practical matter. *See infra* Part II. For instance, the SEC has announced that no-action letters provide guidance to the public. The SEC also represents that no-action letters contain the Commission's interpretation of federal securities law—a representation courts regularly accept. Rule 14a-8 itself even states that no-action

letters are authoritative, *see* 17 C.F.R. § 240.14a-8(j)(2), and the Commission has confirmed this by issuing a final rule for the express purpose of reversing a no-action letter.

The facts of this case illustrate the practical effect of no-action letters on the regulated community. Kroger was set to exclude a shareholder proposal by the National Center for Public Policy Research (NCPPR) from its 2023 proxy statement after the company requested and received an SEC no-action letter. Although Kroger ultimately included the NCPPR proposal, it did so only *after* this Court granted an administrative stay effectively depriving the company of the no-action letter's protections.

The SEC's mistaken claim that the controversy is now moot ignores these critical facts. Kroger changed its behavior only after NCPPR sought and obtained the most expedited form of relief available from this Court. But despite NCPPR's quick action to secure legal review, Kroger did not have time to postpone its decision pending litigation because it had to distribute its proxy statement on a short deadline before its annual shareholder meeting. Thus, this case demonstrates both that no-action letters are binding and that the SEC's actions will continue to evade full judicial review. Therefore, the important issues before this Court remain live, and this Court has jurisdiction to review the SEC's use of Rule 14a-8 politicizing corporate governance.

## I.   The petition is not moot because it presents an issue that is capable of repetition yet evading review.

This case is not mooted by the issuance of Kroger's proxy statement because the controversy is "capable of repetition, yet evading review." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978) (quoting *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)). That doctrine applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Turner v. Rogers*, 564 U.S. 431, 439-40 (2011) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)). Both conditions exist here.

### A.   The annual cycle of corporate proxy statements issued just before shareholder meetings is too short to allow full litigation of disputes about shareholder proposals.

The issues raised by NCPPR and the NAM evade review because the contents of corporate proxy statements are necessarily decided before a company's annual shareholder meeting, leaving insufficient time for full litigation of disputes about the SEC compelling companies to disseminate shareholder proposals. The SEC contends that these issues will not evade review because "there are no inherent timing limitations that would prevent future review concerning the issues petitioners raise." MTD 10. That claim conflicts with the nature of the proxy cycle, Supreme Court precedent, and the SEC's own position here.

The SEC's denial of any "inherent timing limitations" does not square with the inherently compressed timeline that applies to corporate proxy statements. A company must notify the shareholder of its objection within 14 days of receiving a proposal. 17 C.F.R. § 240.14a-8(f)(1). The shareholder has 14 days to respond. *Id.* The company must then file a statement with SEC staff at least 80 days before filing its proxy materials with the SEC, providing reasons why it believes it may exclude the proposal. *Id.* § 240.14a-8(j)(1). This statement typically includes a request for a no-action letter. *See, e.g., Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 336-37 (3d Cir. 2015). The proponent shareholder has the opportunity to submit a response "as soon as possible after the company makes its submission." 17 C.F.R. § 240.14a-8(k).

All this happens shortly before the shareholder meeting. As the SEC explains, "during the few months preceding the peak annual meeting season," it "has historically received 'hundreds of shareholder proposals.'" MTD 4 (quoting *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 423-24 (D.C. Cir. 1992)). Whether a company will be forced to include any of the shareholder proposals it has received on its proxy statement will necessarily be determined *before* the company's annual meeting when the company's proxy statement is distributed to shareholders. Disputes about the inclusion of shareholder proposals in company proxy statements thus occur on a yearly cycle tied to the peak annual meeting season.

The compressed duration of disputes about shareholder proposals falls well within the period the Supreme Court has deemed too short for full

litigation. As NCPPR notes, Pet. Opp. to MTD 5, the Supreme Court has held that a challenged action lasting 12 months is "in its duration too short to be fully litigated" before its "expiration." *Turner*, 564 U.S. at 440. Similarly, *Bellotti* held that even 18 months was too short "to obtain complete judicial review." 435 U.S. at 774.

To avoid this conclusion, the SEC argues that a controversy does not evade review so long as expedited procedures are available. MTD 10. The SEC's argument fails because it ignores the Supreme Court's instruction that a challenged action evades review if it is "too short to be *fully litigated* prior to its cessation or expiration." *Weinstein*, 423 U.S. at 149 (emphasis added). That is the case here. NCPPR managed to obtain expedited relief in the form of an administrative stay. Kroger, suddenly unable to rely on the SEC's no-action letter, included NCPPR's proposal in its proxy statement. According to the SEC, that means the controversy is moot. In fact, it proves that NCPPR's challenge is one that necessarily evades review. Kroger had to decide what to include in its proxy statement before the issue could be fully litigated—and before this Court had time to explain its decision whether to stay the no-action letter.

Furthermore, the argument misinterprets this Court's precedent and conflicts with the SEC's own position that NCPPR's challenge is moot *despite* its invocation of expedited procedures in this Court, *see* MTD 1-2. The SEC cites *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 371 (5th Cir. 2020), for the proposition that if "'[e]xpedited procedures are available' to address an

5

issue, as in 'this circuit,' the 'issue is not one that will evade review.'" MTD 10 (quoting *Empower Texans*, 977 F.3d at 371). But *Empower Texans* stands for no such rule. There, this Court merely recognized that "*if* prompt application for a stay pending appeal *can preserve an issue for appeal*, the issue is not one that will evade review." *Empower Texans*, 977 F.3d at 371 (emphases added) and citation omitted). That does not establish that expedited procedures necessarily preserve an issue for appeal, however. If a stay pending appeal *cannot* preserve an issue for appeal, then the issue necessarily *will* evade review. Indeed, that is the upshot of the SEC's argument here: If the SEC is correct that the Court's administrative stay *does not* preserve NCPPR's issue for appeal because Kroger has already issued its proxy statement (after this Court stayed the no-action letter), MTD 8-9,[1] that demonstrates that the NCPPR's issue necessarily evades this Court's full review.

## B.  The present controversy is capable of repetition.

Repetition of the controversy presented by NCPPR's petition and the NAM's intervention is not merely likely; it is certain. The SEC's arguments to the contrary depend on an unreasonably narrow framing of the issues that contradicts Supreme Court precedent and indisputable facts.

First, the SEC avoids the real issue, arguing that "'a mere physical or theoretical possibility' of recurrence is not 'sufficient to satisfy the test'" of

---

[1] The SEC also argues that NCPPR may sue Kroger directly, MTD 10, but by the SEC's logic, those claims would also be moot.

matters capable of repetition yet evading review. MTD 11 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). That is true, but no one suggests that the possibility of repetition is merely theoretical, much less that this would be enough to preserve a live controversy. Instead, the test is satisfied because there is "a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Turner*, 564 U.S. at 439-40.

Second, the SEC attempts to unduly narrow the focus of the inquiry, arguing that disputes about shareholder proposals "are necessarily specific to the particular proposal and company at issue." MTD 11. That is not the case. The SEC does not take a "company-specific approach" to policy issues presented by shareholders under Rule 14a-8(i)(7), and prior no-action letters are treated as authority in evaluating future requests. SEC Staff Legal Bulletin No. 14L (CF) (Nov. 3, 2021); *see* 17 C.F.R. § 240.14a-8(j)(2)(ii) (requiring a company to provide the SEC Division of Corporate Finance "[a]n explanation of why the company believes that it may exclude [a] proposal, which should, if possible, refer to the most recent applicable *authority, such as prior Division letters* issued under" Rule 14a-8 (emphasis added)). But even if the SEC's framing were correct, the issue is reasonably likely to recur. NCPPR has already submitted the same proposal at issue here to Kroger and other companies for future proxy seasons, just as it has done in past proxy seasons. Pet. Opp. to MTD 2, 5-8. And experience supports a reasonable expectation that companies will oppose NCPPR's proposal, thereby presenting the same question about the SEC's application of Rule 14a-8 that NCPPR raises here.

Moreover, the NAM has identified broader questions about the SEC's Rule 14a-8 that bear on the Court's inquiry but are not addressed by the SEC's motion to dismiss. *See United States Steel Corp. v. EPA*, 614 F.2d 843, 845 (3d Cir. 1979) ("[T]here are instances when an intervenor's claim does not rise and fall with the claim of the original party."). Under the Rule 14a-8 exception at issue here, SEC rules allow a company "to exclude [a shareholder] proposal . . . [i]f the proposal deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7). But any "proposal rais[ing] issues with a broad societal impact" does not qualify for the exception. SEC Staff Legal Bulletin No. 14L. And companies must include such proposals even if there is no "nexus between a policy issue and the company." *Id.* In effect, the SEC forces publicly traded companies to include—on their own proxy statements, and at their own expense—shareholder proposals on matters of "broad societal impact" having nothing to do with the company's business operations and no nexus with the company. *Id.*; *see Trinity Wall Street*, 792 F.3d at 335 ("The rule mandates subsidized shareholder access to a company's proxy materials . . . ."). This raises significant questions about the constitutionality of the SEC's compelled-speech rules and the SEC's authority under federal securities law beyond the application of Rule 14a-8 to NCPPR's specific shareholder proposal.

Those questions are guaranteed to recur, significantly impacting the rights of publicly traded companies throughout the economy. Experience supports a reasonable expectation that the SEC will continue to receive

hundreds of requests by companies, including the NAM's members, requesting permission to exclude shareholder proposals from company proxy statements. The NAM's members regularly receive shareholder proposals similar to the proposal here, including proposals from NCPPR. *See, e.g.*, *Pfizer Inc.*, SEC Staff No-Action Letter, 2022 WL 17832223 (Jan. 19, 2023) (letter regarding an NCPPR proposal). They also have been forced by the SEC to include activist shareholders' proposals in their proxy statements. *See, e.g.*, *id.*; *Eli Lilly & Co.*, SEC Staff No-Action Letter, 2023 WL 2524430 (Mar. 8, 2023) (SEC letter requiring company to include proposal about abortion). If a company prefers not to include a proposal, it must initiate an expedited process seeking the SEC's permission not to subsidize and disseminate shareholder speech. The company must hope that the SEC will issue a no-action letter before the deadline to submit the company's proxy statement. To secure relief, the company must persuade the SEC that the proposal falls within one of Rule 14a-8's exceptions. 17 C.F.R. § 240.14a-8(j). Unless the company succeeds in that time-sensitive endeavor, SEC Rule 14a-8 applies, and the "company *must include* [the] shareholder's proposal in its proxy statement." 17 C.F.R. § 240.14a-8 (emphasis added); *see* SEC, *Amendments to Rules on Shareholder Proposals*, Release No. 34-40118, 63 Fed. Reg. 29,106, 29,119 (May 28, 1998).

This process will repeat itself every time a shareholder submits a proposal for inclusion on a company's proxy statement, as they are certain to

do. Thus, the questions that the NAM raises in this case about the legitimacy of the SEC's Rule 14a-8 regime will continue to arise in future proxy seasons.

## II. SEC no-action letters regarding Rule 14a-8 are reviewable final agency orders.

The SEC's claim that the Court lacks subject-matter jurisdiction over the petition is also mistaken. No-action letters issued by the SEC regarding Rule 14a-8 are final orders, as a practical matter, because they determine how publicly traded corporations conduct their affairs. That is sufficient under governing law to establish finality.

This Court has jurisdiction to review the SEC's decision to issue a no-action letter regarding NCPPR's shareholder proposal because that decision constitutes a final order by the SEC under 15 U.S.C. § 78d-1(c), and review of that decision is available in this Court under section 78y(a)(1).[2] Pet. Opp. to MTD 13-14. Although the SEC asserts that its no-action letters are non-

---

[2] The SEC's first proxy rules did not require that proxy materials be submitted to it before distribution to shareholders. *See* SEC, *Statement of Informal Procedures for the Rendering of Staff Advice with Respect to Shareholder Proposals*, Release No. 34-12599, 41 Fed. Reg. 29,989, 29,990-91 (July 20, 1976). The SEC established the no-action-letter procedure in its current form—requiring submission of proxy solicitations to the SEC before distribution—to reduce the number of proxy solicitations it deemed to violate the rules. *See id*. The SEC staff have since issued a plethora of letters, which they publish for reference and reliance on the SEC's website. *See, e.g.*, 2022-2023 No-Action Responses Issued Under Exchange Act Rule 14a-8, https://www.sec.gov/corpfin/2022-2023-shareholder-proposals-no-action.

binding, *see* MTD 26, it has long been true that the letters are "applied by the agency in a way that indicates [they are] binding," *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015); *see* Pet. Opp. to MTD 18-19. In 1991, Commissioner Fleischman—at the time a sitting SEC commissioner—put it best:

> No matter how often the Commission repeats the mantra that no-action letters "only purport to represent the views of the officials who give them" or "set forth staff positions only" that "are not rulings of the Commission or its staff on questions of law or fact," the Commission's own contrary actions, not to speak of the contrary actions of the Commission's staff, belie that message to the practicing securities Bar.

*Morgan Stanley & Co., Inc.*, Release No. 28,990, 1991 WL 296498, at *1 (Mar. 20, 1991) (statement of Commissioner Fleischman).

That statement remains true today. The SEC continues to represent that its no-action letters are the final word of the Commission on the meaning of securities laws—a representation courts regularly accept. *See, e.g.*, Br. for Appellee SEC, *SEC v. Gounaud*, 2021 WL 4929518, at *50-51 (9th Cir. 2021) (SEC arguing that no-action letters can supply "fair notice" of the meaning of securities laws); *SEC v. Murphy*, 50 F.4th 832, 845 n.6 (9th Cir. 2022) (agreeing with that argument); Br. of SEC in Support of Motion for Partial Summary Judgment at 17-18, *SEC v. Nutra Pharma Corp.*, 2021 WL 1902895 (E.D.N.Y. Apr. 9, 2021) (SEC relying on "consistent[] state[ments]" in "public SEC No-Action letters"); *SEC v. Nutra Pharma Corp.*, 2022 WL 3912561, at *8 (E.D.N.Y. Aug. 31, 2022) (district court relying on same no-action letters). In addition,

the SEC states in Rule 14a-8 that the letters are "*authority*." 17 C.F.R. § 240.14a-8(j)(2) (emphasis added). And the SEC previously issued a final rule to *reverse* a no-action letter. *See* 63 Fed. Reg. at 29,106 & n.33 (explaining that amendments to shareholder proposal rules were intended in part to "[r]everse the Cracker Barrel no-action letter on employment-related pro-posals raising social policy issues" and would "apply to future Division no-action responses"). These actions belie the SEC's suggestion that its no-ac-tion letters are not final determinations by the Commission.

The SEC's attempt to shift focus to the APA's "final agency action" re-quirement is unavailing because, even under the APA, the Supreme Court has endorsed a "pragmatic approach" to questions of finality. *See, e.g., Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2006)). "When the language of the [agency] document is such that private parties can rely on it as a norm or safe harbor by which to shape their actions, it can be binding as a practical matter." *Id.* at 442 (quoting *Cohen v. United States*, 578 F.3d 1, 9 (D.C. Cir. 2009), *vacated in part on other grounds*, 650 F.3d 717 (D.C. Cir. 2011)). Final agency action in-cludes "taking a legal position . . . [that] forces a party to change its behavior" or that "affect[s] the regulated community." *AT&T Co. v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001); *see also Frozen Food Exp. v. United States*, 351 U.S. 40, 44 (1956) (holding that an agency order providing notice of commodities deemed exempt from regulation was immediately reviewable even though

it had no immediate effect). That is precisely what SEC no-action letters regarding Rule 14a-8 enforcement do.

That Kroger ultimately included NCPPR's proposal in the company's proxy statement only proves the practical finality of an SEC no-action letter. The SEC's claim that Kroger voluntarily chose to include NCPPR's proposal because it "was free to do" so, MTD 15, does not account for all the facts. Far from unilaterally choosing to disregard the no-action letter it had requested from the SEC, Kroger included NCPPR's proposal only after this Court entered an administrative stay of the no-action letter. *See* MTD 7. With the no-action letter stayed, Kroger had no assurance that it could exclude NCPPR's proposal without prompting legal action from the SEC. Kroger was left with Rule 14a-8's default rule that companies "*must include*" shareholder proposals in their proxy statements unless they can persuade the SEC that a specific exemption applies. 17 C.F.R. § 240.14a-8 (emphasis added). There is no reason to think that Kroger would have voluntarily chosen to include NCPPR's proposal if the no-action letter remained in effect. To the contrary, there is every reason to believe that Kroger would have relied on the no-action letter—which it requested from the SEC—to exclude NCPPR's proposal but for this Court's stay order. This demonstrates that a no-action letter from the SEC determines how publicly traded companies "order[] and arrang[e] their affairs." *Frozen Food Exp.*, 351 U.S. at 44.

As recently as 2019, the SEC announced that its no-action letters "provide . . . broadly applicable guidance" to the public. *See* SEC, Announcement

Regarding Rule 14a-8 No-Action Requests (Sept. 6, 2019).[3] To practitioners, "SEC no-action letters have become 'a source of de facto law.'" Charles T. Haag & Zachary A. Keller, *Honored in the Breach: Issues in the Regulation of Tender Offers for Debt Securities*, 9 N.Y.U. J.L. & Bus. 199, 216 (2012) (quoting Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in SEC No-Action Letters: Current Problems and a Proposed Framework*, 83 Cornell L. Rev. 921, 924-25 (1998)). And for good reason. According to the SEC, a no-action letter provides "some measure of assurance that, if [management] distributes the [proxy] materials as filed [with the SEC], the Commission will not seek to enjoin the solicitation by filing an injunctive suit." 41 Fed. Reg. at 29,990. Even in the rare instance where the full Commission publicly disagrees with the Division's position taken in a no-action letter (the NAM is aware of only one such instance), the full Commission has declined to take action against companies that "relied in good faith" on the Division's no-action letter. *See United Bhd. of Carpenters & Joiners of Am.*, SEC Staff No-Action Letter, 2002 WL 31749942, at *1 (Dec. 6, 2002). These are not the actions of a body that considers its no-action letters to be "tentative" and "non-binding." *Contra* MTD 24.

Simply put, the SEC's boilerplate assertion that no-action letters are "non-binding" and "non-precedential," MTD 26, is insufficient to preclude

---

[3] https://www.sec.gov/corpfin/announcement/announcement-rule-14a-8-no-action-requests.

judicial review. *See, e.g., Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (holding that an agency's "boilerplate" language in guidance documents that the guidance "do[es] not represent final Agency action, and cannot be relied upon to create any rights enforceable by any party" was insufficient to render the guidance non-final). Further, whether decisions in no-action letters are subject to change or that the Commission hypothetically could proceed with an enforcement action at some future date despite a no-action letter is of no moment. "Even that most enduring of documents, the Constitution of the United States, may be amended from time to time. The fact that [a final agency action] may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." *Id.* at 1022.

## Conclusion

For these reasons, this Court should deny the SEC's motion to dismiss.

DATED: June 12, 2023                    Respectfully submitted,

                                        */s/ Scott A. Keller*

Steven P. Lehotsky                      Scott A. Keller
Lehotsky Keller Cohn LLP                Matthew H. Frederick
200 Massachusetts Avenue, NW            Todd Disher
Suite 700                               Alexis Swartz
Washington, DC 20001                    Lehotsky Keller Cohn LLP
                                        919 Congress Avenue
Michael A. Tilghman II                  Suite 1100
NAM Legal Center                        Austin, TX 78701
733 10th Street, NW                     scott@lkcfirm.com
Suite 700                               (512) 693-8350
Washington, DC 20001

## CERTIFICATE OF SERVICE

On June 12, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses. No paper copies were filed in accordance with the COVID-19 changes ordered in General Docket No. 2020-3.

*/s/ Scott A. Keller*
Scott A. Keller

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,750 words, excluding the parts of the brief exempted by Rule 27(a)(2)(B); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Scott A. Keller*
Scott A. Keller