No. 23-60230

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH; NATHANIEL FISCHER;
PHILLIP ARONOFF,
*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,
*Respondent.*

REPLY OF THE SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT, IN SUPPORT OF MOTION TO DISMISS PETITION AS
MOOT AND FOR LACK OF SUBJECT-MATTER JURISDICTION

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
Assistant General Counsel

THEODORE J. WEIMAN
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5167 (Weiman)

## CERTIFICATE OF INTERESTED PERSONS

*National Center for Public Policy Research v. SEC*, No. 23-60230

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. America First Legal Foundation

2. Phillip Aronoff, Petitioner

3. Megan Barbero, General Counsel, Securities and Exchange Commission

4. Jonathan Berry, Counsel for Petitioners

5. Boyden Gray & Associates PLLC, Counsel for Petitioners

6. Michael Buschbacher, Counsel for Petitioners

7. Michael A. Conley, Solicitor, Securities and Exchange Commission

8. Nathaniel Fischer, Petitioner

9. National Association of Manufacturers, Intervenor

10. Gene P. Hamilton

11.   Tracey A. Hardin, Assistant General Counsel, Securities and Exchange Commission

12.   Jared M. Kelson, Counsel for Petitioners

13.   The Kroger Co.

14.   R. Trent McCotter, Counsel for Petitioners

15.   National Center for Public Policy Research, Petitioner

16.   Reed D. Rubinstein

17.   Theodore J. Weiman, Senior Appellate Counsel, Securities and Exchange Commission


/s/ Theodore J. Weiman

*Attorney of Record for Respondent*
*Securities and Exchange Commission*

# TABLE OF CONTENTS

<u>Page</u>

CERTIFICATE OF INTERESTED PERSONS........................................................i

TABLE OF AUTHORITIES............................................................... v

INTRODUCTION ..............................................................................1

DISCUSSION .....................................................................................3

I.    The petition should be dismissed as moot................................................3

    A.    Petitioners and NAM have not shown that future challenges would be incapable of review......................................4

    B.    Petitioners and NAM have not shown a reasonable expectation of recurrence. .................................................6

II.    The petition should be dismissed for lack of subject-matter jurisdiction.........................................................9

    A.    The Kroger letter is not a Commission order................................9

    B.    The letter lacks the requisite finality. ...........................................12

CONCLUSION .................................................................................13

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                    <u>Page(s)</u>

*Allen v. Sisters of St. Joseph*,
    490 F.2d 81 (5th Cir. 1974)............................................................................3

*Amalgamated Clothing & Textile Workers Union v. SEC*,
    15 F.3d 254 (2d Cir. 1994)...........................................................................11

*Bayou Liberty Ass'n v. U.S. Army Corps of Engineers*,
    217 F.3d 393 (5th Cir. 2000)......................................................................4, 5

*Empower Texans, Inc. v. Geren*,
    977 F.3d 367 (5th Cir. 2020)......................................................................4, 5

*Kixmiller v. SEC*,
    492 F.2d 641 (D.C. Cir. 1974) ....................................................................11

*N.Y.C. Employees' Retirement System v. Dole Food Co.*,
    969 F.2d 1430 (2d Cir. 1992) ........................................................................6

*SEC v. Medical Committee for Human Rights*,
    404 U.S. 403 (1972) ......................................................................................9

*SEC v. Murphy*,
    50 F.4th 832 (9th Cir. 2022) ......................................................................13

*Trinity Wall Street v. Wal-Mart Stores, Inc.*,
    75 F. Supp. 3d 617 (D. Del. 2014),
    *rev'd*, 2015 WL1905766 (3d Cir. 2015).......................................................6

**<u>Statutes, Laws, Regulations, and Rules</u>**

Administrative Procedure Act, 5 U.S.C. 704 ....................................................11

Rule 200.30-1, 17 C.F.R. 200.30-1 ..................................................................11

Rule 202.1, 17 C.F.R. 202.1.............................................................................10

# TABLE OF AUTHORITIES (cont'd)

Page(s)

Rule 202.2, 17 C.F.R. 202.2.....................................................................10

Rule 14a-8, 17 C.F.R. 240.14a-8 ................................................1, 6, 7, 8, 10, 11, 13

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.*

    Section 4A, 15 U.S.C. 78d-1.........................................................9, 10, 11, 12

    Section 25(a), 15 U.S.C. 78y(a) ...............................................................5, 11

## **Other Authorities and Guidance**

Bromberg & Lowenfels on Securities Fraud (2d ed.).......................................13

*AT&T Co.,*
    1988 WL235316 (Dec. 29, 1988) ...................................................................8

*Capital Cities/ABC, Inc.,*
    1991 WL178633 (Apr. 4, 1991) .....................................................................8

Informal Procedures,
    Rel. 34-12599, 1976 WL 160411 (July 7, 1976)...........................................8

Senate Hearing (1961)....................................................................................12

S. Rep. 100-105,
    1987 WL61544 (1987) .................................................................................10

*Texaco, Inc.,*
    1992 WL68720 (Mar. 31, 1992)....................................................................8

**INTRODUCTION**

All parties agree that there is no longer a live controversy regarding the impetus for this petition—Kroger's announced intention to exclude NCPPR's proposal from its 2023 proxy materials.  Nor could there be, as all petitioners have obtained their desired outcome:  NCPPR had its proposal included and the individual petitioners will have the opportunity to vote on that proposal.

Petitioners and intervenor National Association of Manufacturers ("NAM") nonetheless suggest that the end of *this* controversy is irrelevant because they really seek broad rulings on the scope and validity of Rule 14a-8 for potential *future* controversies.  But that is the essence of an impermissible advisory opinion, and their invocation of the "capable of repetition yet evading review" exception cannot revive a matter in which petitioners have already obtained the relief their petition sought.

While petitioners and NAM argue that NCPPR has submitted the same proposal to Kroger and other companies for the 2024 proxy season, they ignore the different potential outcomes that could result in a different controversy or no controversy at all.  And even if a similar controversy were to arise, expedited procedures would be available to permit full

review.  NAM's suggestion that Kroger's inclusion of NCPPR's proposal during the administrative stay proves the insufficiency of expedited procedures overlooks that this Court denied expedited review and ignores other potential causes of Kroger's decision, like NCPPR's pending lawsuit against Kroger.

Nor is this challenge to a staff no-action letter an available vehicle to raise the programmatic, policy-based challenges they seek to bring. Because staff no-action letters are not final Commission orders, this Court lacks jurisdiction.  Indeed, NAM does not even try to defend petitioners' claim that such letters are Commission orders, and for good reason:  three circuit courts have held they are not, and petitioners' only purported basis for distinguishing those decisions rests on a factual error.  Moreover, petitioners' theory that the Commission delegated authority to issue no-action letters is contradicted by the text of the rules they cite and is supported only by citation to a 1971 law student journal note that erroneously relies on a *different* purported delegation that is inapplicable on its face.  And even if there were such a delegation, it still would not convert an informal staff letter into a Commission "order."

Finally, petitioners and NAM persist in erroneously attributing binding effect to staff letters that the Commission and staff have made clear for decades do not carry legal consequences. Their finality arguments are premised on mischaracterizations of the no-action process; but even if they were correct, they fail to account for the absence of a final Commission *order*, which is a prerequisite under the Exchange Act for direct review in a Court of Appeals.

## DISCUSSION

### I.     The petition should be dismissed as moot.

Petitioners and NAM invoke the "capable of repetition yet evading review" mootness exception. But this narrow exception is limited to situations where "the underlying controversy" under Article III "continues to exist between the parties" beyond the present case. *Allen v. Sisters of St. Joseph*, 490 F.2d 81, 82 (5th Cir. 1974). Even if the petition raises legal issues that may be implicated in future disputes, the dispute between the parties here has definitively concluded, and no "exceptional circumstances" exist justifying further review. *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 371 (5th Cir. 2020).

**A.    Petitioners and NAM have not shown that future challenges would be incapable of review.**

Despite previously arguing that this Court's expedited procedures "would accord" sufficient time for this Court to "consider[] the petition" (Stay Mtn. 6-7, 26-27), petitioners now assert that the "short duration" of the proxy season leaves "no realistic chance of a dispositive ruling," thereby "precluding full judicial review." Pet. Opp. 4. But they do not address this Court's controlling precedent that an "issue is not one that will evade review" when "[e]xpedited procedures are available." *Empower Texans*, 977 F.3d at 371 (punctuation omitted); *Bayou Liberty Ass'n v. U.S. Army Corps of Engineers*, 217 F.3d 393, 398 (5th Cir. 2000) ("this exception to the mootness doctrine does not apply" where party can "seek a stay or injunction" in future challenges). NAM argues that *Empower Texans* is inapplicable because Kroger's inclusion of NCPPR's proposal during the administrative stay proves that expedited procedures are insufficient to permit full review. But an administrative stay is not the full measure of expedited relief available to this Court, which *denied* expedited review. That petitioners were "not successful in the present action in getting" such relief "does not mean that upon the proper evidentiary showing actions

4

such as these are inherently capable of evading review." *Bayou Liberty*, 217

F.3d at 398.

   Although petitioners argue that a "one-year window" has been

deemed too short for review "in a different context" (Pet. Opp. 5), this

Court has rejected similar claims of a "calendar for evading review,"

holding that "[c]laims need to be judged on how quickly relief can be

achieved in relation to the specific claim." *Empower Texans*, 977 F.3d at 370.

Because the primary question presented by the petition is jurisdictional, it

is particularly susceptible to expeditious review (and dismissal):  as three

circuit courts have held, staff no-action letters are not "final order[s] of the

Commission" directly reviewable in a Court of Appeals under Section

25(a)(1).

   Sufficient time also exists to consider the merits of their challenges

when properly brought.[1]  NCPPR has a lawsuit against Kroger pending in

district court to require inclusion of its proposal (Motion to Dismiss

("MTD") 10), and can pursue private actions against other companies in

---

[1] Petitioners and NAM also have potential options for action from the
Commission that will not be restricted to any particular proxy season and
may allow them to raise their broader arguments.  Stay Opp. 21.

future cases.  As the Second Circuit has held, expedited procedures give courts in such cases "ample time for full review" of "the legal question of whether Rule 14a-8 required inclusion of [a] proposal in [a] proxy statement," making the issue not one that "evades review."  *N.Y.C. Employees' Retirement System v. Dole Food Co.*, 969 F.2d 1430, 1434-35 (2d Cir. 1992).  And petitioners' reliance on the fact-bound district court decision they cite—which is inapposite to petitions for review such as this which present primarily legal questions—may be more appropriate in that context.  *Trinity Wall Street v. Wal-Mart Stores, Inc.*, 75 F. Supp. 3d 617, 625-27 (D. Del. 2014), *rev'd*, 2015 WL1905766 (3d Cir. 2015) (finding insufficient time for "a full trial on the merits" based on judge's "current docket").

## B.    Petitioners and NAM have not shown a reasonable expectation of recurrence.

Petitioners claim a reasonable expectation of recurrence because NCPPR submitted "the same Proposal to Kroger" for 2024 and they see "no reason to believe that Kroger will" include it.  Opp. 5.  But they state the burden backwards.  It is not for the Commission to prove that Kroger (or another company) will include NCPPR's proposal; petitioners must show a reasonable expectation that the proposal will be *excluded*—and that the

company will rely on the same Rule 14a-8 exclusion, ask staff for a no-action letter, and receive a no-action letter from staff expressing the same opinion.

They have not done so. Petitioners and NAM baselessly assume that Kroger included NCPPR's proposal only because of the administrative stay, but that is pure conjecture; any number of reasons may have driven Kroger's decision, including that NCPPR followed the established path of bringing suit against Kroger to require its inclusion. Nor can they predict future decisions of other companies. While they speculate that "at least one" may exclude NCPPR's proposal and then seek and receive a staff no-action letter, they fail to explain why any particular company is likely to do so or would necessarily rely on the same exclusion under Rule 14a-8, which has thirteen substantive (and various procedural) grounds to exclude a shareholder proposal.

Petitioners also mistakenly assume that staff's views are "near-guaranteed" to be the same as in past no-action letters. Pet. Opp. 11. Staff advice in a no-action letter is limited to each "particular instance" and "does not have precedential value with respect to identical or similar

proposals submitted to other issuers in the future."[2]  Informal Procedures, Rel. 34-12599, 1976 WL160411, at *5 (July 7, 1976).  While NAM argues that staff may take previous letters into account, those letters are non-binding, and "staff's views on certain issues may change from time-to-time, in light of re-examination, new considerations, or changing conditions which indicate that its earlier views are no longer in keeping with the objectives of Rule 14a-8." *Id.*  The Commission is also not bound by staff views and may choose to express a different opinion, as it does from time to time.[3]  Indeed, petitioners say NCPPR's proposal concerns rapidly changing societal values, and nothing precludes them from presenting—or staff or the Commission from considering—such developments.  Stay Mtn. 17, Ex. C at 9 (stating the proposal concerns "one of the most hotly-debated subjects in politics today," "advocates increasingly call for new laws," and the issues "are growing in their significance … in our society today").

---

[2] Petitioners confuse this concept with staff not taking "a company-specific approach to evaluating the significance of a policy issue."  Pet. Opp. 7.  While the *significance* of a policy issue is not judged relative to any specific company, the advice given in each no-action letter remains case-specific.
[3] NAM claims there is only one such instance, but that is not the case.  *See, e.g.*, *Texaco, Inc.*, 1992 WL68720 (Mar. 31, 1992); *Capital Cities/ABC, Inc.*, 1991 WL178633 (Apr. 4, 1991); *AT&T Co.*, 1988 WL235316 (Dec. 29, 1988).

This case is thus no different in relevant respects from *SEC v. Medical Committee for Human Rights*, 404 U.S. 403 (1972), in which the Supreme Court held that a challenge to a Commission decision affirming a no-action letter concerning a proxy proposal was mooted by the company's inclusion of the proposal in its proxy materials. Petitioners' attempts to distinguish that decision rely on the same sort of "conjecture" about the future actions of unidentified companies and staff as the arguments rejected there. *Id.* at 406.

## II. The petition should be dismissed for lack of subject-matter jurisdiction.

### A. The Kroger letter is not a Commission order.

As discussed (MTD 12), the Second, Seventh, and D.C. Circuits have held that staff no-action letters are not "final order[s] of the Commission" and are thus not directly reviewable in a Court of Appeals under Section 25(a)(1). Petitioners dismiss this uniform authority, asserting that those courts "were simply unaware" of the delegation statute, Section 4A, because it was "originally enacted in 1962" but (they claim) "not codified until … 1987." Opp. 15. Not only is this claim incorrect—the statute was codified at 15 U.S.C. § 78d-1 in 1962 and merely designated "Section 4A" in

1987 (S. Rep. 100-105, 1987 WL61544, at *20 (1987))—but three of the four decisions postdate even that designation.

Petitioners next say they "need not even invoke § 78d-1 to trigger this Court's jurisdiction," making it "irrelevant" whether the Commission "delegated authority over the Rule 14a-8 no-action process." Pet. Opp. 21-22.  But this claim—which is meritless for reasons already discussed (MTD 21)—eliminates their purported basis for distinguishing those circuit court cases and for showing finality.

Petitioners' reversal on Section 4A's significance is also a tacit acknowledgment of the weakness of their arguments regarding the applicability of that provision.  Petitioners' claim that such a delegation occurred in Rules 202.1(d) and 202.2—which expressly state that such staff opinions are informal and "do not constitute an official expression of the Commission's views"—is meritless (MTD 19-20).  Indeed, the only "authority" petitioners cite (Opp. 23) is a footnote from a 1971 student note that relies on (and apparently misinterprets) a *different* purported

delegation—the inapplicable delegation in Rule 200.30-1(f)(4) concerning shortening "periods of time" until proxy materials can be used.  MTD 20.[4]

And even if staff no-action letters were sent under delegated authority, that still would not make them "orders" reviewable in a Court of Appeals under Section 25(a)(1).  As the Second Circuit has held, a no-action letter sent by the Commission itself would not be an "order," let alone "informal advice provided by the staff."  *Amalgamated Clothing & Textile Workers Union v. SEC*, 15 F.3d 254, 257 (2d Cir. 1994).  Although petitioners suggest that Section 4A(c) provides otherwise, it states that unreviewed action under delegated authority may be deemed an "action" of the Commission, not an "order."  15 U.S.C. 78d-1(c).  While agency "action" is in some cases reviewable in district court under the APA, 5 U.S.C. 704, the special review provisions of Section 25(a)(1) allow direct review in a Court of Appeals only for final Commission "orders."  *Kixmiller v. SEC*, 492 F.2d

---

[4] Petitioners suggest that limiting this delegation to its terms would render it superfluous because Rule 14a-8 has been amended to reflect staff's delegated authority to extend the deadline for companies to submit reasons for exclusion.  But Rule 200.30-1(f)(4)'s plain text is unambiguous, and when it was promulgated, Rule 14a-8 allowed only the Commission to alter those time periods.  *See* 17 C.F.R. 240.14a-8(d) (1964).

641, 645 n.24 (D.C. Cir. 1974) ("final orders of the Commission" is "a

narrower concept than that of 'agency action'" under APA).[5]

## B.    The letter lacks the requisite finality.

Petitioners largely ignore the Commission's responses to their finality

arguments, instead seeking to avoid the finality requirements altogether by

erroneously relying on Section 4A.  Pet. Opp. 14.  But even if that statute

applied, they mischaracterize its text, suggesting it provides for an action

to be deemed *final* when it actually provides for an action to be "deemed

*the action of the Commission*."  That provision (when applicable) concerns

only the consummation requirement for finality.  MTD 25.

NAM argues that no-action letters are applied as binding (NAM

Opp. 9-11), but predicates this argument on a consistent

mischaracterization of the no-action process as one through which

companies are required to seek "permission" to exclude proposals.  As

explained (MTD 25-26), while notice must be publicly filed with the

Commission when a company plans to exclude a proposal, there is no

---

[5] Petitioners mischaracterize a 1961 statement by the Commission Chair (Opp. 15), which did not concern no-action letters but the inapposite situation where "the Commission delegated to a hearing examiner the right to make an initial decision."  Senate Hearing at 45 (1961).

requirement for companies to seek a no-action letter, for staff to opine on the grounds for exclusion, or for companies to include proposals absent a no-action letter.  Whether a company may exclude a shareholder proposal is governed by Rule 14a-8—regardless of staff's opinions—and courts, not the Commission or its staff, adjudicate that question in private suits or SEC enforcement actions.[6]  MTD 15.

## CONCLUSION

Accordingly, the petition should be dismissed.

Respectfully submitted,

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

---

[6] NAM misinterprets a 1991 statement from a Commissioner in a matter demonstrating that no-action letters are *not* determinative. *See* Bromberg & Lowenfels on Securities Fraud 1:12 (2d ed.) (Commission proceeding against broker-dealer for transaction "which seemed to have been approved in prior no-action letters").  And that statement was only that some practitioners had been given the mistaken impression that no-action letters were precedential.  NAM likewise misconstrues the other instances they cite, which reflect, at most, that staff letters are non-binding guidance. For example, a no-action letter was referenced in *SEC v. Murphy* for a "fair notice" standard that could be met by the mere ability to make an informal inquiry (50 F.4th 832, 845 n.6 (9th Cir. 2022)), and the Cracker Barrel matter involved a *Commission* position agreeing with staff and the use of notice-and-comment rulemaking to take a binding position.

TRACEY A. HARDIN
Assistant General Counsel

/s/ Theodore J. Weiman
THEODORE J. WEIMAN
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
June 20, 2023                        (202) 551-5167 (Weiman)

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27.4 and Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,598 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B)

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6) because it has been prepared in a proportionally spaced typeface—Book Antiqua, 14 point—using Microsoft Word.

/s/ Theodore J. Weiman
Theodore J. Weiman

June 20, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed with the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on June 20, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Theodore J. Weiman
Theodore J. Weiman

June 20, 2023