No. 23-60230

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH, *et al.*,

*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

On Petition for Review of an Order of the Securities and Exchange Commission.

## BRIEF OF FIRST AMENDMENT AND SECURITIES LAW SCHOLARS AS *AMICI CURIAE* IN SUPPORT OF RESPONDENT

Rachel L. Fried
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel.: (202) 448-9090
rfried@democracyforward.org

*Counsel for* Amici Curiae *First Amendment and Securities Law Scholars*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

INTEREST OF *AMICI CURIAE* ............................................................. 1

INTRODUCTION ................................................................................... 1

ARGUMENT ........................................................................................... 4

I. Rule 14a-8 protects shareholders' right to an informed vote and prevents shareholders from being disenfranchised by deceit or omission.................................... 4

II. Rule 14a-8 regulates intra-corporate speech, and any resources deployed in shareholder governance are the shareholders' own resources.............................................. 7

III.  Rule 14a-8 expertly balances speaker and listener interests and to the extent that it burdens companies' speech, it does so minimally. ............................................. 10

IV.  To the extent that Rule 14a-8 is subject to First Amendment scrutiny, it easily survives. ........................... 17

   A. As an anti-fraud regulation, Rule 14a-8 need satisfy only rational basis review. ............................................. 17

   B. Rule 14a-8 is constitutional under *Zauderer*. ................. 21

CONCLUSION ...................................................................................... 29

CERTIFICATE OF COMPLIANCE......................................................... 31

CERTIFICATE OF SERVICE................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877 (S.D.N.Y. 1993) .................................. 15

*Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014) ....................................................... 23, 27–29

*Citizens United v. FEC*, 558 U.S. 310 (2010) ......................................... 10

*CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832 (9th Cir. 2019) ....................................................... 22, 25

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ..................................................................... 17

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ............................ 8

*Lowe v. S.E.C.*, 472 U.S. 181 (1985).................................................. 27–28

*Nat'l Ass'n of Mfrs. v. S.E.C.*, 800 F.3d 518 (D.C. Cir. 2015)............ 24–25

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018) ....................................................................... 25

*NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022) ..................... 22

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978) ........................... 17

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n*, 475 U.S. 1 (1986)................................................... 7, 9–10, 17

*Paris Adult Theatre I v. Slayton*, 413 U.S. 49 (1973)............................. 18

*Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212 (5th Cir. 2011) ................................................... 29

*Recht v. Morrisey*, 32 F.4th 398 (4th Cir.) ............................................ 26

*Roosevelt v. E.I. Du Pont de Nemours & Co.*,
958 F.2d 416 (D.C. Cir. 1992) ................................ 7

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S.
47 (2006) ........................................ 13

*S.E.C. v. Wall St. Pub. Inst., Inc.*, 851 F.2d 365 (D.C. Cir.
1988) ........................................ 17

*United States v. Alvarez*, 567 U.S. 709 (2012).......................... 20

*United States v. Stevens*, 559 U.S. 460 (2010)......................... 19

*Zauderer v. Off. of Disciplinary Couns. of the Sup. Ct. of
Ohio*, 471 U.S. 626 (1985) ............................ 3, 21–23, 27–29

## Statutes

Securities Exchange Act of 1934, 15 U.S.C.A. § 78n(a)(1)...................... 4

Securities Act of 1933, 15 U.S.C. § 77b(b) ............................. 27

## Rules and Regulations

Adoption of Amends. Relating to Proposals by Sec. Holders,
Exchange Act Release No. 12999, 1976 WL 160347 (Nov.
22, 1976) ........................................ 12

Rule X-14A-7, Duty of Management to Set Forth
Stockholders' Proposals, Exchange Act Release No. 3347,
1942 WL 34864 (Dec. 18, 1942) ........................ 5-6

17 C.F.R. § 240.14a-4 (2022) ............................... 20

17 C.F.R. § 240.14a-7 (2008) ............................... 15

17 C.F.R. § 240.14a-8 (2021) .................... 1, 3–4, 7–17, 21–23, 25, 27, 29

17 C.F.R. § 240.14a-9 (2022) ............................... 15–16

## Other Authorities

James D. Cox & Randall S. Thomas, *The SEC's Shareholder Proposal Rule: Creating a Corporate Public Square*, 2021 Colum. Bus. L. Rev. 1147 (2021) ................................................... 10–11

Aleta G. Estreicher, *Securities Regulation and the First Amendment*, 24 Ga. L. Rev. 223 (1990) ............................................. 19

Jill E. Fisch, *From Legitimacy to Logic: Reconstructing Proxy Regulation*, 46 Vand. L. Rev. 1129 (1993) ....................................... 5, 6

Jill E. Fisch, *The Destructive Ambiguity of Federal Proxy Access*, 61 Emory L.J. 435 (2012) .......................................... 9

Sarah C. Haan, *Shareholder Proposal Settlements and the Private Ordering of Public Elections*, 126 Yale L.J. 262 (2016) ................................................................................ 14

Sarah C. Haan, *The First Amendment and the SEC's Proposed Climate Risk Disclosure Rule* (June 23, 2022), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4138 712 ........................................................................................ 18

Ronald O. Mueller et al., *Shareholder Proposal Developments During the 2023 Proxy Season*, Harv. L. School Forum on Corp. Governance (Aug. 3, 2023), https://corpgov.law.harvard.edu/2023/08/03/shareholder-proposal-developments-during-the-2023-proxy-season/ .............. 19–20

Helen L. Norton, *What 21st-Century Free Speech Law Means for Securities*, 99 Notre Dame L. Rev. (forthcoming 2023) (U of Colorado Law Legal Studies Research Paper No. #23-13), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4438 368) ................................................................................ 6, 18

Robert Post, *Compelled Commercial Speech*, 117 W. Va. L. Rev. 867 (2015) ...................................................... 23, 26

Robert Post, *Recuperating First Amendment Doctrine*, 47
    Stan. L. Rev. 1249 (1995)...............................................17–18

Melissa Sawyer et al., *2023 Proxy Season Review: Rule 14a-8
    Shareholder Proposals*, Harv. L. School Forum on Corp.
    Governance (Aug. 28, 2023),
    https://corpgov.law.harvard.edu/2023/08/28/2023-proxy-
    season-review-rule-14a-8-shareholder-proposals/.............................12

S. Rep. No. 73-792 (1934) ...........................................................5

Frederick Schauer, *The Boundaries of the First Amendment:
    A Preliminary Exploration of Constitutional Salience*,
    117 Harv. L. Rev. 1765 (2004)........................................18–19

Amanda Shanor, *First Amendment Coverage*,
    93 N.Y.U. L. Rev. 318 (2018)........................................18–19

Cynthia A. Williams, *The Securities and Exchange
    Commission and Corporate Social Transparency*, 112
    Harv. L. Rev. 1197 (1999)...................................................5

## INTEREST OF *AMICI CURIAE*

*Amici* are law professors with significant expertise in corporate and securities law, and constitutional law, particularly regarding the First Amendment. They have published extensive analyses about the Shareholder Proposal Rule, shareholder voting, corporate democracy, First Amendment "coverage," the constitutionality of mandatory disclosures, and various related issues. *Amici* thus have particular expertise in the First Amendment issues raised by the parties in this case.[1]

## INTRODUCTION

*Amici* submit this brief to respond to Intervenor National Association of Manufacturers' extreme argument that Rule 14a-8 violates the First Amendment. This position ignores—and NAM repeatedly overlooks—the vital function of proxy solicitation in modern corporate

---

[1] *Amici* certify that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund this brief, and no person other than *amici*, their members, and their counsel contributed money intended to fund this brief.

governance and the potential for material omissions in proxy materials to impair the shareholder franchise.

Under state corporate law, shareholders have a right to elect the corporation's board of directors and to vote on other important matters, including proposed amendments to the charter and the bylaws, proposals to sell or dissolve the corporation, and precatory proposals such as Say-On-Pay and shareholder-sponsored resolutions ("shareholder proposals"). Because few shareholders personally attend the meetings where voting occurs, and because state corporate law imposes quorum requirements on meetings, the proxy voting mechanism was developed to allow a shareholder to delegate its votes to a "proxyholder," who attends the meeting in the shareholder's place. The proxy system has long been indispensable to corporate governance and its regulation is the product of many decades of thoughtful law- and rule-making.

*Proxy solicitation* is the process by which a party (usually the corporation itself) asks a corporation's shareholders to delegate their votes via proxy.[2] To solicit proxies, companies create proxy materials,

---

[2] Though any party can solicit proxies, the modern practice is for corporations themselves to play this key role (and current stock exchange rules require certain corporations to solicit proxies from their shareholders).

which include a "proxy statement" and a "form of proxy" (the proxy instrument, also known as the "proxy card") and transmit these to their shareholders. This process is regulated by the SEC pursuant to Section 14 of the Securities Exchange Act of 1934. It is the procedural mechanism through which "corporate democracy" is accomplished.

The Shareholder Proposal Rule, now Rule 14a-8, has a long pedigree, ensuring shareholders' ability to exercise a meaningful, informed vote on all matters that are submitted for shareholder decision-making under state and federal law, and preventing shareholders from being misled about how their delegated votes will be used by the proxyholder. The Supreme Court has never treated the Rule as implicating corporate speakers' protected speech interests. Even were this Court to subject Rule 14a-8 to the scrutiny set forth in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), it is plainly constitutional because it requires purely factual and uncontroversial disclosures: the questions to be presented for shareholder vote (so that shareholders can give a voting instruction to the proxyholder), and how the company intends to exercise the shareholders' delegated votes if no such instruction is provided. These disclosures are reasonably related to

the government's interest in preventing companies from undermining shareholders' right to vote under state law, and preventing companies from misleading shareholders about what matters are on the corporate ballot and how proxy votes will be exercised.

NAM argues that Rule 14a-8 unconstitutionally compels companies' speech. This position has no basis in First Amendment jurisprudence and would, if accepted, render the proxy voting system unworkable by permitting companies to defeat informed shareholder governance. This Court should reject it.

## ARGUMENT

### I.    Rule 14a-8 protects shareholders' right to an informed vote and prevents shareholders from being disenfranchised by deceit or omission.

The Securities Exchange Act of 1934 empowers the SEC to promulgate proxy and disclosure rules "as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C.A. § 78n(a)(1). That provision's legislative history suggests the drafters sought, among other things, to protect investors from being misled into granting corporations the right to exercise their votes through proxy solicitations with material omissions. A 1934 report of the Senate Committee on Banking and Currency observed:

> In order that the stockholder may have adequate knowledge as to the manner in which his interests are being served, it is essential that he be enlightened not only as to the financial condition of the corporation, *but also as to the major questions of policy, which are decided at stockholders' meetings. Too often proxies are solicited without explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.*

S. Rep. No. 73-792, at 12 (1934) (emphasis added); *see also* Jill E. Fisch,

*From Legitimacy to Logic: Reconstructing Proxy Regulation*, 46 Vand. L.

Rev. 1129, 1132-33 (1993) ("Congressional consideration of the abuses to

which the federal securities laws were addressed … reveals a strong

objective to protect shareholders from practices by corporate insiders that

limit the effectiveness of shareholder voting."); Cynthia A. Williams, *The*

*Securities and Exchange Commission and Corporate Social*

*Transparency*, 112 Harv. L. Rev. 1197, 1242 (1999). The Senate

Committee Report also described an example of a company that solicited

proxies to vote in favor of certain transactions, while "omitt[ing] all

mention of other important details," including a conflict of interest on the

part of the company president, "which furnished the real motive behind

the request for ratification." S. Rep. No. 73-792, at 12.

The Shareholder Proposal Rule was created informally by the SEC

in 1938, under the leadership of William O. Douglas, and formalized with

the 1942 promulgation of Rule X-14A-7, "Duty of Management to Set Forth Stockholders' Proposals." Exchange Act Release No. 3347, <u>1942 WL 34864</u> (Dec. 18, 1942).[3] The SEC created the rule to bring clarity to a major problem that had emerged in the governance of public companies: shareholders' efforts to bring a matter to the attention of fellow shareholders and submit a resolution for a shareholder vote as permitted by state law could be thwarted if management refused to include the shareholder's proposal in the proxy materials. If shareholders were not informed of a proposal in the proxy materials and given an opportunity to make a voting instruction on the proxy card, no proposal opposed by management could realistically succeed. Shareholder governance at large public companies cannot function as contemplated by state corporate law without the regulatory protection of the Shareholder Proposal Rule.

Mandatory disclosures in the proxy statement "inform shareholders' decisions about how to govern the firms in which they own shares...." Helen Norton, *What 21st-Century Free Speech Law Means for*

---

[3] For more detail on this history, see Fisch, *From Legitimacy to Logic*, *supra* page 5 at 1142–47.

*Securities*, 99 Notre Dame L. Rev. (forthcoming 2023) (U of Colorado Law Legal Studies Research Paper No. #23-13 at 14), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4438368. The only way to ensure that shareholders retain the ability to make an informed vote via delegation is to require companies to tell shareholders what will be voted on. Indeed, "the corporate circulation of proxy materials which fail to make reference to a shareholder's intention to present a proper proposal at the annual meeting renders the solicitation inherently misleading." *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 422 (D.C. Cir. 1992) (quotation omitted). By requiring companies to include eligible proposals on company proxy statements, Rule 14a-8 prevents deceptive proxy solicitation.

## II. Rule 14a-8 regulates intra-corporate speech, and any resources deployed in shareholder governance are the shareholders' own resources.

In *Pacific Gas & Electric Co. v. Public Utilities Commission*, 475 U.S. 1 (1986) ("*PG&E*"), a plurality of the United States Supreme Court succinctly explained why requiring a company to disclose upcoming shareholder proposals is not the same as requiring a company to include opinions with which it disagrees in its speech to its customers. In his

dissent in that case, Justice Stevens had analogized Rule 14a-8—which, he wrote, "requires the incumbent board of directors to transmit proposals of dissident shareholders which it opposes"—to the required inclusion of a public interest group's message in the billing envelope sent by a utility company to its customers. *Id.* at 39 (Stevens, J., dissenting). The plurality rejected this analogy, citing two grounds.

First, resources used by the corporation to communicate the proposals of "dissident shareholders" do not belong to management, but rather to the body of shareholders itself. As the plurality put it, Rule 14a-8 "allocate[s] shareholder property between management and certain groups of shareholders," but "management has no interest in corporate property except such interest as derives from the shareholders." *Id.* at 14 n.10. For this reason, the plurality explained, "regulations that limit management's ability to exclude some shareholders' views from corporate communications do not infringe corporate First Amendment rights." *Id.*[4]

---

[4] Derivative lawsuits—whose purpose is to "place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers"—reinforce that corporate proxy statements are ultimately shareholder, not management, property. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). Were NAM's extreme position to be accepted, then even derivative lawsuits may become suspect.

Second, shareholder proposals are best understood as "speech by a corporation *to itself*." *Id.* (emphasis in the original); *see also* Jill E. Fisch, *The Destructive Ambiguity of Federal Proxy Access*, 61 Emory L.J. 435, 479 (2012) ("The SEC has long defended the value of shareholder proposals in communicating shareholder views to management."). Communications made by management to shareholders for the purpose of soliciting shareholders' delegated votes are intra-corporate speech, and do not affect corporations' speech to the public. "Rules that define how corporations govern themselves do not limit the range of information that the corporation may contribute to the public debate," the plurality explained. *PG&E*, 475 U.S. at 14 n.10. In other words, no First Amendment right is impaired by requiring management to convey notice of a shareholder proposal intended to be voted on at a meeting.

Though *PG&E* did not involve a challenge to Rule 14a-8, its logic remains sound and has become essential to understanding the constitutional value of proxy statements in the twenty-first century. The shareholder franchise is officially exercised at meetings. For most shareholders, however, the key decisions happen through the exchange of documents—the proxy statement and proxy card sent to shareholders,

and the proxy card returned by shareholders to the proxyholder(s). These communications are not "corporate property" encircled so tightly by First Amendment protections that the essential purpose of shareholder voting is defeated. Since *PG&E* was decided in 1986, the Supreme Court has further developed its corporate speech jurisprudence in reliance on the idea that "procedures of corporate democracy" facilitate real—not illusory—shareholder governance, including through the shareholder proposal mechanism. *Citizens United v. FEC*, 558 U.S. 310, 362, 370 (2010). If Rule 14a-8 is invalid under the First Amendment, some of the basic assumptions justifying the First Amendment protection of corporate political speech must also be incorrect.

### III.  Rule 14a-8 expertly balances speaker and listener interests and to the extent that it burdens companies' speech, it does so minimally.

Rule 14a-8 mandates intra-corporate communication that benefits all shareholders and the corporation as a whole. The common, "functional view" of the Rule is that it "facilitates both shareholder communication and engagement by solving the collective action problem facing small investors"; in addition, it serves "an important role informing boards of their investors and stakeholders' viewpoints." James D. Cox & Randall

S. Thomas, *The SEC's Shareholder Proposal Rule: Creating a Corporate Public Square*, 2021 Colum. Bus. L. Rev. 1147, 1154, 1162 (2021).

Under Rule 14a-8, only certain proposals are eligible for inclusion in corporate proxy statements. Companies must include only those proposals submitted by shareholders that meet minimum criteria concerning the number of shares held and the number of years those shares have been held; that meet specified content and advance notice requirements; and that are not excludable under numerous scenarios. *See* 17 C.F.R. § 240.14a-8(b), (i). For example, companies may exclude shareholder proposals that are not permitted by state law or that "substantially duplicate[] another proposal" submitted to the company. *Id.* § 240.14a-8(i)(1), (11). These criteria limit the proposals required to be included in corporate proxy statements to those that are submitted by shareholders with a significant financial stake in the company and a long-term shareholding relationship with it. They also ensure that state-law rules granting managerial authority over a company's day-to-day business are respected.

Only shareholder proposals that "have significant policy, economic or other implications inherent in them" are designed to funnel through

the Rule 14a-8 restrictions and land on the proxy statement. Adoption of Amends. Relating to Proposals by Sec. Holders, Exchange Act Release No. 12999, 1976 WL 160347, at 11 (Nov. 22, 1976). Companies may exclude shareholder proposals under a list of exceptions that weed out proposals that deal with ordinary business matters of a complex nature that "shareholders, as a group, would not be qualified to make an informed judgment on, due to their lack of business expertise and their lack of intimate knowledge of the issuer's business." Adoption of Amends. Relating to Proposals by Sec. Holders, 1976 WL 160347, at 10.

Thus limited, the absolute number of shareholder proposals submitted each year is closer to a trickle than the tidal wave that NAM describes. *See, e.g.*, NAM Br. at 17. During the core 2023 proxy season, only 821 total shareholder proposals were submitted across *all* S&P 1500 companies—representing about 90% of U.S. capitalization—or approximately 0.55 shareholder proposals per company, on average. Melissa Sawyer et al., *2023 Proxy Season Review: Rule 14a-8 Shareholder Proposals*, Harv. L. School Forum on Corp. Governance (Aug. 28, 2023), https://corpgov.law.harvard.edu/2023/08/28/2023-proxy-season-review-rule-14a-8-shareholder-proposals/.

In addition, each shareholder proposal requires only a few hundred words of space in a corporation's proxy statement. *See* 17 C.F.R. § 240.14a-8(d) (limiting the title and supporting statement of a shareholder proposal included in a corporate proxy statement to 500 words).

Nor does Rule 14a-8 "force[]" corporations to engage in any additional speech, as NAM contends. *See* NAM Br. at 26. Nothing in the rule requires management to respond to the substance of any shareholder proposal. Rather, a "company *may* elect to include in its proxy statement reasons why it believes shareholders should vote against [a] proposal." 17 C.F.R. § 240.14a-8(m)(1) (emphasis added). *Cf. Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 49, 65 (2006) ("This Court has found compelled-speech violations where the complaining speaker's own message was affected by the speech it was forced to accommodate…. Nothing about recruiting suggests that law schools agree with any speech by recruiters, and nothing in the Solomon Amendment restricts what the law schools may say about the military's policies."). Indeed, management could indicate its recommendation to vote against a shareholder proposal without responding to the substance at all. And unlike the shareholder

proponent, companies have an unlimited opportunity to speak against a shareholder proposal in their proxy statements. Rule 14a-8 thus preserves management's freedom to respond to shareholder proposals included in their proxy statements as they see fit; they can say as much as they like, or nothing at all.

The value of the shareholder proposal process is illustrated by the increasingly common practice in which shareholder proposals are "settled" between shareholders and managers before the proxy statement is published. *See* Sarah C. Haan, *Shareholder Proposal Settlements and the Private Ordering of Public Elections*, 126 Yale L.J. 262, 279–80 (2016). When a shareholder proposal that qualifies under Rule 14a-8 is resolved through settlement, the parties have all agreed that the settlement benefits the corporation—and management has not been forced to "speak" about the proposal or its subject.

It is not true, as NAM suggests, that an adequate alternative is for shareholders to raise proposals for the first time at a company meeting. *See* NAM Br. at 7. NAM fails to acknowledge that a shareholder proposal presented for the first time at a company meeting will almost certainly fail. At that point, absent shareholders will have already delegated their

proxies, many to the company itself to vote according to the judgment of management. *See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 881 (S.D.N.Y. 1993) ("Unless the shareholders' proposed resolution is included in the proxy material, however, other shareholders would not have advance notice of the intention to make the proposal or have the ability to vote on the proposal via the proxy."). NAM's position would not only leave shareholders with incomplete information when determining whether and how to delegate their votes (and whether and how to instruct the proxyholder on the proxy card), but it would essentially permit corporate management to obtain the voting outcome it wants—the defeat of the proposal—through an intentional and strategic omission.

NAM contends that Rule 14a-8 is unnecessary in light of Rules 14a-7 and 14a-9. NAM Br. at 29–30. That is incorrect; neither of those rules accomplishes what Rule 14a-8 does. Rule 14a-7 permits shareholders to distribute proxy solicitations at their own expense, a process which may be cost-prohibitive and confusing to other shareholders. *See* 17 C.F.R. § 240.14a-7 (2008). This is no substitute for the combined proxy statement scheme in Rule 14a-8. Reliance on Rule 14a-7 alone would revert

shareholders to the same vulnerable position they were prior to the enactment of the Exchange Act and Rule 14a-8.

Rule 14a-9 prohibits false or misleading statements as well as material omissions in proxy solicitations. 17 C.F.R. § 240.14a-9 (2022). But it does not guarantee that all shareholder proposals of interest are included in a corporation's proxy statement. Rule 14a-9 does not set forth the criteria for determining whether any particular shareholder proposal must be included on a corporation's proxy statement; Rule 14a-8 does. And certainly, the SEC may regulate the content of proxy statements more specifically than by generally prohibiting misleading statements or material omissions. The rules work in tandem to ensure that proxy solicitations are neither misleading nor omit information a reasonable shareholder would consider important in deciding whether to delegate their proxy and, if so, how to instruct the proxyholder. NAM's policy dispute over the utility of the Shareholder Proposal Rule is also irrelevant to the Rule's constitutionality.

## IV.  To the extent that Rule 14a-8 is subject to First Amendment scrutiny, it easily survives.

### A.  As an anti-fraud regulation, Rule 14a-8 need satisfy only rational basis review.

The Supreme Court has stated in dicta that the government may regulate "corporate proxy statements" "without offending the First Amendment." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). The Court repeated this dicta in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758 n.5 (1985); *see also PG&E*, 475 U.S. 1, 14 n.10. The Supreme Court distinguished regulation of securities, including corporate proxy statements, from regulation of commercial speech generally, *see Dun & Bradstreet*, 472 U.S. at 758 n.5 (discussing commercial speech as "the most prominent example of reduced protection for certain kinds of speech" and then separately discussing "further examples" that include corporate proxy statements), suggesting that regulations of proxy statements need not be subject to the scrutiny that regulations of commercial speech are. *See also S.E.C. v. Wall St. Pub. Inst., Inc.*, 851 F.2d 365, 373 (D.C. Cir. 1988).

The presumed constitutionality of corporate proxy statement regulation is consistent with the Supreme Court's approach to securities

regulation under the First Amendment. *See Paris Adult Theatre I v. Slayton*, 413 U.S. 49, 64 (1973) ("Neither the First Amendment nor 'free will' precludes States from having 'blue sky' laws to regulate what sellers of securities may write or publish about their wares.") (citation omitted); *see also* Sarah C. Haan, *The First Amendment and the SEC's Proposed Climate Risk Disclosure Rule*, at 7 (June 23, 2022), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4138712. This is because "securities differ from other goods and services available in the commercial marketplace in ways that intensify the importance of accurate securities-related information to investors as listeners." Norton, *supra* page 6, at 40–41. The regulatory tradition of prohibiting false and misleading speech and requiring certain disclosures to inform shareholders' key decisions responds to "securities markets' unusual vulnerability to information asymmetries," functioning to "inform[] and protect investors[]." *Id.* at 34.

Along the same lines, the government's longstanding regulation of speech in certain other areas has similarly never prompted First Amendment review—like contract law, perjury, conspiracy, malpractice, the compelled speech of tax returns, criminal solicitation, antitrust

regulation, and most of evidence law. Amanda Shanor, *First Amendment Coverage*, 93 N.Y.U. L. Rev. 318, 320–21 (2018); Frederick Schauer, *The Boundaries of the First Amendment: A Preliminary Exploration of Constitutional Salience*, 117 Harv. L. Rev. 1765, 1766–67 (2004); *see also* Robert Post, *Recuperating First Amendment Doctrine*, 47 Stan. L. Rev. 1249, 1271 (1995).

What is more, as an anti-fraud regulation, Rule 14a-8 falls into the well-established principle that fraudulent speech is not protected by the First Amendment at all. Government restrictions on speech to prevent fraud "have never been thought to raise any Constitutional problem," *United States v. Stevens*, 559 U.S. 460, 469 (2010) (quotation omitted), either because they are outside the scope of First Amendment coverage or because their rational basis is readily apparent. Laws prohibiting securities fraud, including fraud by omission, generally do not implicate the First Amendment. *See* Aleta G. Estreicher, *Securities Regulation and the First Amendment*, 24 Ga. L. Rev. 223, 286–87 (1990).

It is telling that many of the shareholder proposals that have been most strongly opposed by corporate management were those challenging aspects of executive compensation. This subject remains one of the most

popular topics for shareholder proposals today. *See* Ronald O. Mueller et al., *Shareholder Proposal Developments During the 2023 Proxy Season*, Harv. L. School Forum on Corp. Governance (Aug. 3, 2023), https://corpgov.law.harvard.edu/2023/08/03/shareholder-proposal-developments-during-the-2023-proxy-season/. It is not hard to understand why corporate management would want to exclude compensation-related proposals from their proxy statements when asking shareholders for their delegated votes: exclusion would reduce the ability of shareholders to weigh in on executive compensation. Speech that is designed to solicit proxies but that is misleading, or that omits material information, in order to obtain proxies to defeat shareholder proposals (unbeknownst to the proxy givers) is not high-value speech entitled to rigorous First Amendment scrutiny. *See United States v. Alvarez*, 567 U.S. 709, 723 (2012) (indicating that false speech "used to gain a material advantage" may be regulated consistent with the First Amendment).[5]

---

[5] The corporate election and proxy solicitation process involves numerous compelled speech elements, and it would be inappropriate and impracticable to submit each of them to searching First Amendment scrutiny. Notably, NAM does not challenge the speech compelled by Rule 14a-4: that proxy statements: "identify clearly and impartially each separate matter intended to be acted upon, whether or not related

**B.     Rule 14a-8 is constitutional under *Zauderer*.**

If this Court nonetheless decides to apply heightened First Amendment review to Rule 14a-8, it should apply the standard of review articulated in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), a case involving a commercial disclosure mandate. *Zauderer* concerned a challenge to an Ohio attorney disciplinary rule that required attorney advertisements mentioning contingent-fee arrangements to include a disclosure about whether percentages in the fee arrangement were computed before or after the deduction of court costs and expense. *Id.* at 633. The purpose of the rule was to prevent prospective clients from misunderstanding contingent fee arrangements, to the potential advantage of the attorney who omitted this important information from the advertisement. Though the rule was challenged as compelling speech in violation of the First Amendment, the Supreme Court disagreed and

---

to or conditioned on the approval of other matters, and whether proposed by the registrant or by security holders"; provide means "whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or disapproval of, or abstention with respect to each separate matter referred to therein as intended to be acted upon"; state "in bold-face type how it is intended to vote the shares represented by the proxy" where the shareholder confers "discretionary authority with respect to matters as to which a choice is not specified"; and include shareholder-nominated candidates for directors. 17 C.F.R. § 240a-4(a)(3), (b)(1)–(2) (2022). Yet there is little to distinguish these requirements from the requirement that proxy statements include eligible shareholder proposals.

upheld the disclosure mandate. Among other things, *Zauderer* recognized that a disclosure mandate burdens speech less significantly than a speech restriction. *Id.* at 650.

Under *Zauderer*, the government may require a disclosure that is "factual and uncontroversial" so "long as disclosure requirements are reasonably related to the [government] interest" at issue and are not unduly burdensome. *Id.* at 651. *Zauderer* applies to a commercial enterprise's factual and uncontroversial information even outside the context of commercial advertisements. *See NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 485 (5th Cir. 2022). Though courts have disagreed about whether *Zauderer* review is limited to disclosure mandates designed to prevent deception, this Court need not resolve that issue because the state interests justifying Rule 14a-8 include preventing deception of shareholders in the delegation and exercise of their votes. *See Zauderer*, 471 U.S. at 651; *see also CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 843 (9th Cir. 2019) (discussing that courts take for granted that *Zauderer* applies to disclosures required to prevent deception, and most courts apply it to disclosures required to inform listeners' choices even absent deception).

As a threshold matter, the *Zauderer* standard is applicable because the disclosure required by Rule 14a-8 is "factual and uncontroversial." The facts required to be disclosed are the matters the proxy will be used to vote on at the shareholder meeting and how the proxyholder—the corporation—intends to vote on each matter. Either the company is aware that a shareholder intends to submit a proposal to a vote at an upcoming shareholder meeting or it is not. That a certain proposal will or will not be made is a matter of fact; it is "directly informative of intrinsic characteristics" of the election for which the shareholders' delegated votes are sought. *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 27 (D.C. Cir. 2014).

Nor is a statement that a particular proposal will be voted on controversial. "The requirement that information be 'uncontroversial' would . . . seem best interpreted as a description of the epistemological status of the information that a speaker may be required to communicate." Robert Post, *Compelled Commercial Speech*, 117 W. Va. L. Rev. 867, 910 (2015). Though the substance of a shareholder's proposal may touch on "controversial" subjects (the attorney advertisement in *Zauderer* concerned Dalkon Shield lawsuits, an arguably "controversial"

subject since it related to women's reproductive injuries from contraception), the fact of the existence of the proposal is not controversial. Including a shareholder proposal on a proxy solicitation is no more controversial than including an eligible initiative on a state's ballot.

A reasonable shareholder deciding whether to grant a corporation's management the right to vote their shares by proxy would likely want to know about upcoming shareholder proposals, whether or not the proposal itself touches on a controversial topic or the proponent espouses a controversial position. The "controversial" nature of the underlying proposal is irrelevant. Indeed, since the shareholder-proponent must present the proposal at the meeting, shareholders who delegate their votes away and do not attend the meeting would otherwise fail to receive any information about the proposal from the party asking shareholders to vote for it. No matter how "controversial" an eligible shareholder proposal may be, shareholders nonetheless have the right to know of its existence in order to exercise an informed vote about it.

Recent case law from the DC Circuit and the Supreme Court suggest that a disclosure may be considered "controversial" if it requires

a speaker "to publicly condemn itself," *Nat'l Ass'n of Mfrs. v. S.E.C.*, 800 F.3d 518, 530 (D.C. Cir. 2015), or if it forces the speaker to take sides on a topic generally considered controversial that is unrelated to the speaker's products or services, *see Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372 (2018). Rule 14a-8 does neither.

NAM contends that including eligible shareholder proposals on proxy statements would cause corporations to appear to agree with the views expressed in the proposals if the corporation does not respond to them. NAM Br. at 26. But proxy statements clearly indicate where a proposal is made by management or by another shareholder. And a statement of fact does not become controversial simply because it "can be tied in some way to a controversial issue." *CTIA - The Wireless Ass'n*, 928 F.3d at 845. Including an eligible shareholder proposal on a proxy statement says no more about the company's position on the subject of the proposal than including an eligible initiative on a ballot says about the position of the state employees who designed the ballot.

NAM also complains that some eligible shareholder proposals "rais[e] policy issues with a broad societal impact but no 'nexus' to the

company's products or services."[6] NAM Br. at 35 (internal quotations omitted). But all eligible shareholder proposals relate to the business of the company or company policy. Corporate management's lack of support for a shareholder proposal does not render its inclusion on a corporate proxy statement controversial. "Plainly a mandated disclosure cannot become controversial merely because a speaker objects to making it." Post, *Compelled Commercial Speech, supra* page 23, at 910. If a proposal will be voted on, a corporation must inform the shareholders whose votes it seeks to control that the proposal will be made and that management will use the proxy votes that it solicits to vote against. *See Recht v. Morrisey*, 32 F.4th 398, 418 (4th Cir.), *cert. denied*, 143 S. Ct. 527 (2022) ("The question is not whether the *existence* of a given disclosure requirement is controversial . . . . Rather, the question is whether the

---

[6] NAM repeatedly qualifies its condemnation of shareholder proposals relating to social issues to those that "have nothing to do with maximizing shareholder value." NAM Br. at 53; *see also id.* at 1 (decrying the inclusion in corporate proxy statements of shareholder proposals related to social topics and "unrelated to the corporation's core business or the creation of shareholder value."). As an initial matter, NAM cites no support for the proposition that shareholder proposals must relate to "the creation of shareholder value." The fact that a shareholder will submit, consistent with applicable law, a proposal to a vote is no less useful to a shareholder with voting rights just because a corporation's management thinks it is "unrelated to the corporation's core business or the creation of shareholder value." In any case, NAM may believe, for example, that a company's level of preparedness to thrive in an economy that transitions away from fossil fuels is unrelated to shareholder value, but many reasonable shareholders and potential investors would disagree.

*content* of a required disclosure is controversial. . . . And the statement that an FDA-approved drug remains approved strikes us as entirely anodyne.").

Finally, Rule 14a-8 does not "force companies to take public positions on controversial social and political questions where they would otherwise prefer to remain silent," as NAM contends. NAM Br. at 32. As discussed above, at *supra* pages 13–14, Rule 14a-8 contains no requirement that companies respond to the substance of a shareholder proposal included in a corporate proxy solicitation. It is up to companies whether to choose to do so. In any case, shareholders are entitled to have advance notice of eligible shareholder proposals when granting companies proxies.

Rule 14a-8 is constitutionally permissible under *Zauderer*. The government has a legitimate interest in protecting investors, safeguarding the shareholder franchise, and preventing fraud. *See Am. Meat Inst.*, 760 F.3d at 23 ("In applying *Zauderer*, we first must assess the adequacy of the interest motivating the" regulation); *see also* Securities Act of 1933, 15 U.S.C. § 77b(b) (charging the SEC with protecting investors and facilitating capital formation, among other

things); *Lowe v. S.E.C.*, 472 U.S. 181, 234 (1985) (White, J., concurring) (protecting investors from fraud is "certainly legitimate"). Rule 14a-8's requirement that corporations include eligible shareholder proposals in their proxy statements also assists investors by "prescrib[ing] what shall be orthodox" for proxy solicitations—and orthodoxy in proxy solicitation is especially valuable to investors that have, as many do, hundreds or even thousands of companies in their portfolios. *See Zauderer*, 471 U.S. at 651.

Requiring corporations to include eligible shareholder proposals on their proxy solicitations is a "reasonably crafted mandate to disclose 'purely factual and uncontroversial information' about attributes of the" corporate election in which delegated votes are sought. *Am. Meat Inst.*, 760 F.3d at 26. Indeed, "[t]he self-evident tendency of a disclosure mandate to assure that recipients get the mandated information may in part explain why, where that is the goal, many such mandates have persisted for decades without anyone questioning their constitutionality." *Id.*

Requiring corporations to include eligible shareholder proposals in their proxy solicitations does not burden the corporation's speech, and is

not even burdensome in a more conventional sense. As discussed in Part II, *supra* pages 7-8, Rule 14a-8 limits the shareholder proposals required to be included in corporate proxy statements on a number of reasonable grounds, while imposing no limit or burden on the corporation's discussion of the proposals. (Indeed, it is nonsensical to suggest, as NAM does, that the corporation's speech in the proxy statement is somehow separable from the speech of the corporation's shareholders in the same document. It is all intra-corporate speech.) Because Rule 14a-8 survives the *Zauderer* test, it necessarily has a rational basis. *See Am. Meat Inst.*, 760 F.3d at 33 (Kavanaugh, J., concurring) (the *Zauderer* standard is more stringent than rational basis review); *Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 227 (5th Cir. 2011) (referring to *Zauderer* standard as rational basis review).

## CONCLUSION

For the reasons stated above and in Respondent's filings, the First Amendment and Securities Law Scholars urge this Court to grant Respondent's motion to dismiss the petition.

Respectfully submitted,

*/s/ Rachel L. Fried*

Rachel L. Fried
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel.: (202) 448-9090
rfried@democracyforward.org

*Counsel for* Amici Curiae *First Amendment and Securities Law Scholars*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32(b), this document contains 5,726 words according to the word count function of Microsoft Word 365.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

*/s/ Rachel L. Fried*

Date: September 20, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, a true and accurate copyof the foregoing motion was electronically filed with the Court using theCM/ECF system. Service on counsel for all parties will be accomplished through the Court's electronic filing system.

*/s/ Rachel L. Fried*

Date: September 20, 2023