No. 23-60230

# In the United States Court of Appeals for the Fifth Circuit

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH;
NATHANIEL FISCHER; PHILLIP ARONOFF,

*Petitioners,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

Petition for Review from an Order
of the Securities and Exchange Commission

## REPLY BRIEF OF INTERVENOR
## THE NATIONAL ASSOCIATION OF MANUFACTURERS

Steven P. Lehotsky
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW
Suite 700
Washington, DC 20001

Michael A. Tilghman II
NAM LEGAL CENTER
733 10th Street, NW
Suite 700
Washington, DC 20001

Scott A. Keller
Matthew H. Frederick
Todd Disher
Alexis Swartz
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
scott@lkcfirm.com
(512) 693-8350

*Counsel for Intervenor*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-60230

National Center for Public Policy Research; Nathaniel Fischer;
Phillip Aronoff,
*Petitioners*,
*v.*
Securities and Exchange Commission,
*Respondent.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. Intervenor the National Association of Manufacturers has no parent corporations and no publicly held corporation owns 10% or more of its respective stock. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Petitioners:**
National Center for Public Policy Research; Nathaniel Fischer; Phillip Aronoff

**Counsel for Petitioners:**
R. Trent McCotter (lead counsel)
Jonathan Berry
Michael Buschbacher
Jared M. Kelson
BOYDEN GRAY & ASSOCIATES PLLC

Gene Patrick Hamilton
AMERICA FIRST LEGAL FOUNDATION

**Respondent:**
Securities and Exchange Commission

**Counsel for Respondent:**
Theodore J. Weiman (lead counsel)
Megan Barbero
Michael A. Conley
Tracey A. Hardin
SECURITIES AND EXCHANGE COMMISSION

**Intervenor:**
National Association of Manufacturers

**Counsel for Intervenor:**
Scott A. Keller (lead counsel)
Steven P. Lehotsky
Matthew H. Frederick
Todd Disher
Alexis Swartz
LEHOTSKY KELLER COHN LLP

Michael A. Tilghman II
NAM LEGAL CENTER

**Interested Third Party:**
The Kroger Co.

**Amicus Curiae in Support of Petitioners**
Alliance Defending Freedom

**Counsel for Amicus Curiae Alliance Defending Freedom**
Jeremy Tedesco
Michael Ross
James A. Campbell

John J. Bursch
Ryan L. Bangert
ALLIANCE DEFENDING FREEDOM

**Amicus Curiae in Support of Respondent**
As You Sow

**Counsel for Amicus Curiae As You Sow**
Danielle Fugere
Luke Morgan
AS YOU SOW

**Amici Curiae in Support of Respondent**
ClientEarth
The Shareholder Commons

**Counsel for Amici Curiae ClientEarth and The Shareholder Commons**
Ryan McCarl
John Rushing
Davit Avagyan
RUSHING MCCARL LLP

**Amicus Curiae in Support of Respondent**
Interfaith Center on Corporate Responsibility

**Counsel for Amicus Curiae Interfaith Center on Corporate Responsibility**
Beth-Ann Roth
Richard A. Kirby
R|K INVEST LAW, PBC

**Amici Curiae First Amendment and Securities Law Scholars in Support of Respondent**
Sarah C. Haan
Enrique Armijo

Carliss N. Chatman

George S. Georgiev

Kent Greenfield

Kyle Langvardt

Amelia Miazad

Helen Norton

Omari Scott Simmons

Faith Stevelman

James Tierney

Alexander Tsesis

Anne M. Tucker

Karen E. Woody

**Counsel for Amici Curiae First Amendment and Securities Law Scholars**

Rachel L. Fried

DEMOCRACY FORWARD FOUNDATION

*/s/ Scott A. Keller*

SCOTT A. KELLER

*Counsel of Record for Intervenor*

# Table of Contents

Page

Certificate of Interested Persons...........................................................i

Table of Authorities........................................................................ vii

Introduction..................................................................................1

Argument......................................................................................3

    I.   Nothing precludes judicial review of the NAM's First
Amendment and statutory authority arguments................................3

        A.  Post-filing events have not mooted this case. ...............................3

        B.  The SEC's no-action letter is a reviewable "order" that
constitutes final agency action. .......................................................4

        C.  It would have been futile for any party to tell the SEC
during its no-action-letter process that the SEC lacks
statutory and constitutional authority for its compelled-
speech regime. ...................................................................................7

        D.  Limitations periods do not bar the NAM's argument in
this as-applied enforcement proceeding that the SEC
lacks constitutional or statutory power. ........................................8

        E.  The SEC has no discretion to exceed its authority, so
*Chenery* and the APA's reasoned-explanation
requirement do not apply..............................................................10

        F.  The NAM does not need to establish its own standing
because it seeks the same relief urged by the SEC:
denial of the petition for review. ..................................................12

    II.  The First Amendment prohibits the SEC from compelling
corporations to include shareholder proposals on their
proxy-voting-solicitation statements. ..................................................13

        A.  The First Amendment applies to corporate proxy
statements.......................................................................................13

B.   *Zauderer* does not apply because Rule 14a-8 compels much more than "purely factual and uncontroversial" commercial speech. ............................................................18

III.   Section 14(a) of the Exchange Act does not grant the SEC power to compel the inclusion of shareholder proposals on a corporation's own proxy statement. ...................................19

A.   The federalism clear-statement canon applies, and the SEC and amici misunderstand applicable state corporation law. ...............................................................19

B.   Neither Section 14(a)'s plain text nor its purpose grants the SEC authority to permit activist shareholders to commandeer corporate proxy statements through Rule 14a-8. .............................................................................21

Conclusion .............................................................................27

Certificate of Service .............................................................28

Certificate of Compliance .......................................................28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*303 Creative LLC v. Elenis,*
 143 S. Ct. 2298 (2023) ...................................................................11, 15

*Abbott Lab'ys v. Gardner,*
 387 U.S. 136 (1967) .............................................................................5

*Action for Children's Television v. FCC,*
 564 F.2d 458 (D.C. Cir. 1977) ..........................................................7

*Alliance for Hippocratic Medicine v. FDA,*
 No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023)............7

*American Power & Light Co. v. SEC,*
 329 U.S. 90 (1946) .............................................................................20

*Atorie Air, Inc. v. FAA,*
 942 F.2d 954 (5th Cir. 1991) .............................................................4

*Bennett v. Spear,*
 520 U.S. 154 (1997) .............................................................................5

*Biden v. Texas,*
 142 S. Ct. 2528 (2022) ......................................................................12

*Bus. Roundtable v. SEC,*
 905 F.2d 406 (D.C. Cir. 1990) ....................................................21, 22

*Cath. Leadership Coal. of Texas v. Reisman,*
 764 F.3d 409 (5th Cir. 2014) .............................................................9

*Citizens United v. FEC,*
 558 U.S. 310 (2010) ...........................................................9, 15, 16, 17

*Clarke v. CFTC*,
  74 F.4th 627 (5th Cir. 2023) ....................................................... 3, 4, 5

*Data Mktg. P'ship v. United States Dep't of Labor*,
  45 F.4th 846 (5th Cir. 2023) ......................................................... 4, 5

*Doe v. Reed*,
  561 U.S. 186 (2010) ......................................................................... 9

*Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*,
  112 F.3d 1283 (5th Cir. 1997) ....................................................... 10

*First Nat. Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978) ................................................................... 16, 17

*Food Mktg. Inst. v. Argus Leader Media*,
  139 S. Ct. 2356 (2019) .................................................................. 25

*Gardner v. Sch. Bd. Caddo. Par.*,
  958 F.2d 108 (5th Cir. 1992) ........................................................... 7

*Ghedi v. Mayorkas*,
  16 F.4th 456 (5th Cir. 2021) .......................................................... 11

*Greater Iowa Corp. v. McLendon*,
  378 F.2d 783 (8th Cir. 1967) ......................................................... 24

*Gundy v. United States*,
  139 S. Ct. 2116 (2019) .................................................................. 21

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ......................................................................... 6

*Hooper v. Mountain States Sec. Corp.*,
  282 F.2d 195 (5th Cir. 1960) ......................................................... 22

*Hormel v. Helvering*,
  312 U.S. 552 (1941) ......................................................................... 7

*Int'l Ass'n of Machinists & Aerospace Workers v. FEC*,
  678 F.2d 1092 (D.C. Cir.) (en banc) ................................................14

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps.*,
  138 S. Ct. 2448 (2018) ...............................................................15

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
  567 U.S. 298 (2012) .....................................................................3

*KPMG, LLP v. SEC*,
  289 F.3d 109 (D.C. Cir. 2002) ......................................................8

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020) ...............................................................12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................13

*Magassa v. Mayorkas*,
  52 F.4th 1156 (9th Cir. 2002) ......................................................4

*Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of
  Snohomish Cnty., Wash.*,
  554 U.S. 527 (2008) ...................................................................10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.
  Co.*,
  463 U.S. 29 (1983) .....................................................................11

*NAACP v. FPC*,
  425 U.S. 662 (1976) ...................................................................21

*Nat'l Ass'n of Mfrs. v. SEC*,
  748 F.3d 359 (D.C. Cir. 2015) ....................................................14

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  138 S. Ct. 2361 (2018) ...............................................................18

ix

*National Ass'n of Mfrs v. SEC,*
    800 F.3d 518 (D.C. Cir. 2015) ........................................................15

*NLRB v. Gissel Packing Co.,*
    395 U.S. 575 (1969) .......................................................................14

*Ohralik v. Ohio State Bar Ass'n,*
    436 U.S. 447 (1978) .......................................................................15

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.,*
    139 S. Ct. 2051 (2019) ...................................................................10

*Rauchman v. Mobil Corp.,*
    739 F.2d 205 (6th Cir. 1984) .........................................................22

*Sackett v. EPA,*
    566 U.S. 120 (2012) .........................................................................5

*SEC v. Chenery Corp.,*
    318 U.S. 80 (1943) .........................................................................10

*SEC v. Chenery Corp.,*
    332 U.S. 194 (1947) ...................................................................10, 11

*SEC v. Transamerica Corp.,*
    163 F.2d 511 (3d Cir. 1947) ...........................................................24

*SEC v. Transamerica Corp.,*
    67 F. Supp. 326 (D. Del. 1946) ......................................................24

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of
    Engineers,*
    531 U.S. 159 (2001) .......................................................................25

*Studebaker Corp. v. Gittlin,*
    360 F.2d 692 (2d Cir. 1966) ...........................................................24

*Texas v. EEOC,*
  933 F.3d 433 (5th Cir. 2019) ............................................................6

*Trinity Wall Street v. Wal-Mart Stores, Inc.,*
  792 F.3d 323 (3d Cir. 2015) ...........................................................23

*TSC Indus., Inc. v. Northway,*
  426 U.S. 438 (1976) ........................................................................24

*United Video, Inc. v. FCC,*
  890 F.2d 1173 (D.C. Cir. 1989) ......................................................11

*Va. House of Delegates v. Bethune-Hill,*
  139 S. Ct. 1945 (2019) ....................................................................12

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
  471 U.S. 626 (1985) ........................................................................18

## Statutes and Regulations

15 U.S.C. § 78d-1 ..............................................................................5

15 U.S.C. § 78n-1 ............................................................................26

15 U.S.C. § 78y ............................................................................4, 8

17 C.F.R. § 240.14a-8 ........................................................4, 5, 6, 19

5 U.S.C. § 706 ...............................................................................9, 11

Pub. L. 111-203, 124 Stat. 1376 (2010)...........................................26

## Legislative Materials

H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934) .......................22

S. Rep. No. 73-792 (1934) ..............................................................23

**Other Authorities**

Alan R. Palmiter, *The Shareholder Proposal Rule: A Failed
    Experiment in Merit Regulation*, 45 Ala. L. Rev. 879 (1994) ........................22

Richard H. Fallon, *As-Applied and Facial Challenges and Third-
    Party Standing*, 113 Harv. L. Rev. 1321 (2000)...............................................9

W. Douglas, *Go East, Young Man* (1974) ...........................................................21

## Introduction

The Securities and Exchange Commission ("SEC") asserts a sweeping view of its own authority. The SEC believes it can compel a corporation to include shareholder speech on the corporation's proxy statements because this facilitates "disclosure" and vague notions of "corporate democracy." SEC Br. 62-63.

The SEC, however, fails to clear the First Amendment barrier to its compelled subsidized speech regime. In the scant three pages it devotes to defending Rule 14a-8's constitutionality, SEC Br. 61-63, the SEC ignores precedent raised throughout Intervenor the National Association of Manufacturers' ("NAM") brief that clearly elucidates Rule 14a-8's constitutional deficiencies. And the SEC concedes that Rule 14a-7 separately provides a mechanism for shareholders to send their own proxy solicitations, rendering Rule 14a-8's compulsory regime unnecessary even under the SEC's own justifications. *See* NAM Br. 9-10, 21, 27, 29-30. Amici, meanwhile, openly *admit* that Rule 14a-8 compels corporations to subsidize shareholder speech, as their chief complaint is that shareholders' use of Rule 14a-7 comes "at their own expense" rather than the corporation's. Scholars Br. 15. This is no justification for jettisoning the First Amendment.

Section 14(a) of the Exchange Act does not the SEC power to force shareholder proposals onto corporate proxy statements. The SEC does not dispute the well-established federalism canon (SEC Br. 60), which provides that

Congress must use clear statutory language to override state corporation law. *See* NAM Br. 49-51. Instead, the SEC contends that Rule 14a-8 does not "override state corporation law." SEC Br. 59 n.15. But the SEC and its amici fundamentally misunderstand the most crucial feature of state corporation law at issue here: state law does *not* enable shareholders to insert their speech or voting proposals onto a corporation's own proxy-vote-solicitation statement. *See* NAM Br. 7. Indeed, the SEC and amici fail to cite any state law giving shareholders this right. The SEC is therefore dead wrong when it asserts "Rule 14a-8 simply facilitates this state law right," SEC Br. 59, because no such right exists. Instead, state law allows shareholders to solicit proxy votes through *their own separate* proxy statement—which is precisely what Rule 14a-7 independently provides. *See* NAM Br. 7. And state law allows shareholders to present voting proposals *while attending the annual meeting. See id.* Rule 14a-7's mechanism for shareholders to send their own proxy solicitations already "facilitates that right . . . by allowing the proxy vote to approximate what would occur at the meeting." SEC Br. 59 n.15. But Rule 14a-8 goes much further by granting shareholders the power to hijack the corporation's own speech in contravention of state corporation law. If Congress wanted to give the SEC this authority, it needed to speak clearly, which it has not done.

Perhaps recognizing that this regulatory scheme cannot withstand judicial review, the SEC tries hard to avoid it. Yet no jurisdictional or procedural barriers prevent this Court from holding that the SEC has no authority to

compel corporations to include and subsidize shareholder speech within the corporation's own proxy statement. The Petition therefore should be denied.

## ARGUMENT

## I. Nothing precludes judicial review of the NAM's First Amendment and statutory authority arguments.

As the NAM already explained in its prior Brief in Opposition to the SEC's Motion to Dismiss, there are no barriers to review of the important First Amendment and statutory issues before this Court. Nothing in the SEC's merits brief changes that.

### A. Post-filing events have not mooted this case.

The SEC reraises the mootness argument it made in its Motion to Dismiss (SEC Br. 18-25), adding that Kroger's inclusion of the National Center for Public Policy Research's ("NCPPR") proposal on its 2023 proxy statement and the failure of that proposal to receive sufficient support buttresses the SEC's mootness argument. But this case is not moot: "Post-filing events do not moot a case '[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation.'" *Clarke v. CFTC*, 74 F.4th 627, 636 (5th Cir. 2023) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)).

There is still a concrete interest here. The SEC's regulations recognize that the Kroger no-action letter is binding authority on which companies can rely to exclude NCPPR's or similar shareholder proposals in the future. *See*

17 C.F.R. § 240.14a-8(j)(2)(ii) (company intending to exclude a proposal must include "[a]n explanation of why the company believes that it may exclude the proposal, which should, if possible, refer to the most recent applicable authority, such as *prior Division letters issued under the rule*" (emphasis added)). NCPPR has already submitted similar proposals for the 2024 proxy season, so it maintains a concrete interest in the lawfulness of the SEC's no-action letter, *see* NCPPR Br. 59—as do the NAM's publicly traded members who have received similar proposals from NCPPR or other shareholder activists.

## B.  The SEC's no-action letter is a reviewable "order" that constitutes final agency action.

Contrary to the SEC's position (SEC Br. 27-32, 39-46), the Kroger no-action letter is an "order," for purposes of 15 U.S.C. § 78y(a), that constitutes reviewable final agency action. This Court and others have interpreted the word "order," as used in other statutes affording immediate appellate review, broadly to permit review of final agency action not deemed an "order" in the traditional adjudicatory sense. *See, e.g.*, *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991); *Magassa v. Mayorkas*, 52 F.4th 1156, 1165 (9th Cir. 2002). The SEC offers no basis to depart from that practice here.

An agency action is "final" when it "'mark[s] the consummation of the agency's decisionmaking process'" and is "'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Clarke*, 74 F.4th at 637 (quoting *Data Mktg. P'ship v. United States Dep't of Labor*,

45 F.4th 846, 853 (5th Cir. 2023)); *see Sackett v. EPA*, 566 U.S. 120, 126 (2012) ("hallmark" of APA finality is that an order "determine[s]" "rights" or "obligations" (quotation marks and citation omitted)). The finality inquiry is "flexible" and "pragmatic." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 150 (1967). The possibility that the agency could reverse course is "irrelevant." *Clarke*, 74 F.4th at 639.

The Kroger no-action letter and the SEC's decision declining to review it represent the "consummation" of the SEC's decisionmaking. All that "consummation" requires is no further right of agency review. *Sackett*, 566 U.S. at 127; *see Data Mktg. P'ship*, 45 F.4th at 854 (Department of Labor "advisory opinion" "consummated" agency decisionmaking because "it is not subject to further Agency review" (quotation marks and citation omitted)). The SEC's refusal to review the Kroger no-action letter left NCPPR with no further administrative remedy. *See* 15 U.S.C. § 78d-1(c).

The SEC's no-action process also determined "rights" and "obligations." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotation marks and citation omitted). The SEC's own regulations create a presumption that a shareholder proposal must be included on a company's proxy statement, and the company bears the burden of proving otherwise. *See* 17 C.F.R. § 240.14a-8(g). Accordingly, the no-action letter process represents a safe harbor, assuring a company that it may exclude a proposal without facing an enforcement action from the SEC. *See* J.A. 34 No-Action Letter (informing Kroger that the Division "will not recommend enforcement action to the Commission if the

Company omits the Proposal from its proxy materials in reliance on Rule 14a-8(i)(7)"). And an agency's determination that "creates safe harbors demonstrates that legal consequences flow from it." *Texas v. EEOC*, 933 F.3d 433, 442 (5th Cir. 2019).

The SEC's mere say-so (Br. 41) that its no-action letters are informal, non-binding agency decisions does not resolve the question of finality. "What matters is whether the document has practical binding effect such that affected private parties are reasonably led to believe that failure to conform will bring adverse consequences." *Texas v. EEOC*, 933 F.3d at 442 (cleaned up). No-action letters "reasonably le[a]d" corporations to believe that they may exclude a shareholder proposal under Rule 14a-8, and they accordingly rely upon that view to avoid "adverse consequences." *Id.* (quotation marks and citation omitted).

Likewise, this final agency action is reviewable, because the issuance of a no-action letter is agency action establishing binding authority companies can rely on to exclude future proposals. *See* 17 C.F.R. § 240.14a-8(j)(2)(ii) (directing companies to address "prior Division letters"). These SEC no-action letters therefore are much more than agency decisions to do nothing, so *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), is no bar to review. *Cf.* SEC Br. 39-40.

### C. It would have been futile for any party to tell the SEC during its no-action-letter process that the SEC lacks statutory and constitutional authority for its compelled-speech regime.

The SEC complains that the First Amendment and statutory arguments made by the NAM were not raised before the agency. SEC Br. 55-56. But it would have been futile to argue during the Kroger Rule 14a-8 no-action-letter process that the SEC lacked power to enforce its compelled corporate speech regime.

It is no mystery that the SEC asserts this authority, and the SEC's "general views" on Rule 14a-8's lawfulness are "known." *Action for Children's Television v. FCC*, 564 F.2d 458, 469 (D.C. Cir. 1977). Indeed, the SEC's brief expresses no intent to disavow its Rule 14a-8 power, and raising these arguments during the no-action process would not have changed anything.

Parties "need not exhaust claims where they can demonstrate 'the futility or inadequacy of administrative review.'" *Alliance for Hippocratic Medicine v. FDA*, No. 23-10362, 2023 WL 2913725, at *16 (5th Cir. Apr. 12, 2023) (quoting *Gardner v. Sch. Bd. Caddo. Par.*, 958 F.2d 108, 112 (5th Cir. 1992)). "The futility exception applies when exhaustion would be clearly useless and it is certain a claim will be denied." *Id.* (cleaned up); *see Hormel v. Helvering*, 312 U.S. 552, 557-58 (1941) (exhaustion excused where "futile"); *Action for Children's Television*, 564 F.2d at 469 (administrative exhaustion not required where agency has "made known its general views").

The futility exception to administrative exhaustion is also inherent in the SEC's statutory scheme, which provides: "No objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission *or there was reasonable ground for failure to do so.*" 15 U.S.C. § 78y(c)(1) (emphasis added); *see KPMG, LLP v. SEC*, 289 F.3d 109, 117 (D.C. Cir. 2002) (characterizing "reasonable ground for failure to do so" as a "safety valve."). It is not credible for the SEC to suggest it needs more time to address whether the power it has asserted for years is valid. The SEC's position on its authority to compel speech via Rule 14a-8 is well established, and it would have been futile for the NAM or any party to tell the SEC otherwise, as is demonstrated by the SEC's maintenance of its compelled-speech regime under Rule 14a-8 despite the NAM's arguments in this case.

### D. Limitations periods do not bar the NAM's argument in this as-applied enforcement proceeding that the SEC lacks constitutional or statutory power.

Contrary to the SEC's assertions (Br. 53), the NAM has not asserted "facial challenges" to Rule 14a-8. A party can always argue in an individual enforcement proceeding that an agency's rule is unlawful or that an agency lacks statutory authority to enforce it—notwithstanding any "limitations period" to challenge agency rules. *Id.*

The SEC's brief mischaracterizes the NAM's involvement in this proceeding. The NAM seeks only an order denying NCPPR's petition for

review. The NAM in this proceeding is not asking the Court to vacate or enjoin Rule 14a-8 in its entirety. *See* 5 U.S.C. § 706.

The NAM is, therefore, not asserting a "facial challenge" to Rule 14a-8. The label "facial" challenge "goes to the *breadth of the remedy* employed by the Court." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010) (emphasis added). Thus, a "'facial'" challenge examines whether the "'claim *and the relief* that would follow . . . *reach beyond the particular circumstances of the [] plaintiffs.*'" *Cath. Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010) (emphases added)).

To be sure, the NAM's legal reasoning supporting a judgment denying NCPPR's petition for review would lead to the conclusion that the SEC does not have the power it asserts in any Rule 14a-8 enforcement proceeding. But that legal reasoning supporting a judgment denying NCPPR's petition for review does not transmogrify the NAM's requested as-applied relief into a facial challenge. "'[O]nce a case is brought, no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases.'" *Citizens United*, 558 U.S. at 331 (quoting Richard H. Fallon, *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1339 (2000)).

Relatedly, the SEC's invocation of the Administrative Procedure Act (APA) and Exchange Act "limitations" periods does not preclude consideration of the NAM's constitutional and statutory arguments. SEC Br. 53. Parties in an as-applied enforcement action can always challenge an agency's

authority to promulgate and enforce a rule, no matter when the rule was initially promulgated. *See, e.g.*, *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2060 (2019) (Kavanaugh, J., concurring in the judgment) ("[A] party traditionally has been able to raise an as-applied challenge to an agency's interpretation of a statute in an enforcement proceeding."); *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997) ("when an agency *applies* a rule, the limitations period running from the rule's publication will not bar a claimant from challenging the agency's statutory authority" or claiming that the agency "exceeded its constitutional" authority). The NAM therefore can raise the constitutional and statutory issues with Rule 14a-8 in the context of this as-applied challenge.

### E. The SEC has no discretion to exceed its authority, so *Chenery* and the APA's reasoned-explanation requirement do not apply.

The SEC's (Br. 48, 56) reliance on *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) and 332 U.S. 194 (1947), as a bar to reviewing the NAM's arguments is misplaced and ignores the precedent the NAM discussed in its opening brief. *See* NAM Br. 24 n.20. *Chenery* only forbids a court from "uphold[ing] a *discretionary* agency decision where the agency has offered a justification in court different from what it provided in its opinion." *Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 554 U.S. 527, 544 (2008) (emphasis added). *Chenery* does not apply where an agency has no

discretion. *Id.*; *see Chenery*, 332 U.S. at 196 ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency *alone is authorized to make*, must judge the propriety of such action solely by the grounds invoked by the agency." (emphasis added)). Thus, "*Chenery* reversal is not necessary where, as here, the agency has come to a conclusion to which it was bound to come as a matter of law, albeit for the wrong reasons[.]" *United Video, Inc. v. FCC*, 890 F.2d 1173, 1990 (D.C. Cir. 1989). An agency has no discretion to "compel a person to speak [the government's] preferred messages." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2312 (2023). And "an agency certainly has no power to take actions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ghedi v. Mayorkas*, 16 F.4th 456, 468 (5th Cir. 2021) (quoting 5 U.S.C. § 706(2)(A)). Therefore, *Chenery* does not bar arguments asserting that the SEC necessarily would have exceeded its constitutional or statutory authority if it reached any other result than the Kroger no-action letter's conclusion.

*Chenery* is the origin of the APA's reasoned-explanation requirement, which also only applies to *discretionary* agency decisions. Because the SEC had no discretion to exceed its constitutional or statutory authority, there is no basis to vacate the SEC's no-action letter for failing to "articulate a satisfactory explanation for its action." SEC Br. 47 (citation omitted). The Supreme Court's canonical decision on the scope of the APA's reasoned-explanation requirement held that "an agency must cogently explain why it has exercised its *discretion* in a given manner." *Motor Vehicle Mfrs. Ass'n of U.S.,*

*Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983) (emphasis added), *cited in* NCPPR Br. 31; SEC Br. 47. Consequently, an agency's "exercise of *discretion* . . . must be reasonable and reasonably explained." *Biden v. Texas*, 142 S. Ct. 2528, 2543 (2022) (emphasis added). But the SEC had no discretion to exceed its constitutional or statutory authority and reach any different result than what it concluded in the Kroger no-action letter.

## F. The NAM does not need to establish its own standing because it seeks the same relief urged by the SEC: denial of the petition for review.

Because the NAM seeks no broader relief than that urged by the SEC, the NAM need not establish its Article III standing. *Contra* SEC Br. 54-55. As the NAM explained in its Motion for Leave to Intervene (at 14 n.12), it seeks no relief beyond that sought by the Respondent SEC—*i.e.*, denial of the petition for review. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) ("Because neither role entailed invoking a court's jurisdiction, it was not previously incumbent on the [intervenor] to demonstrate its standing."). The NAM would only need to "independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020).

---

The NAM did not "forfeit[]" (SEC Br. 48 n.11) this argument, as it addressed the SEC's lack of agency "discretion" to exceed its authority in its opening merits brief (at 24 n.20) and its Motion for Leave to Intervene (at 21 n.14).

Regardless, the NAM has standing on behalf of its members. The NAM's members suffer concrete injuries every time they receive a controversial shareholder proposal that management does not want to include in the corporation's proxy solicitation. Those proposals cost companies millions of dollars, and their required inclusion violates their First Amendment rights. *See* NAM Br. 2. A favorable ruling denying NCPPR's petition for review on the ground that the SEC lacks statutory or constitutional authority to compel companies to include unwanted shareholder proposals in corporate proxy solicitations would enable manufacturers within this Circuit that are members of the NAM to forego those shareholder proposals. That satisfies the three-part test for standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

## II. The First Amendment prohibits the SEC from compelling corporations to include shareholder proposals on their proxy-voting-solicitation statements.

The SEC's brief pays little attention to the serious First Amendment issues raised by Rule 14a-8. And amici's attempts to address the First Amendment do not save the SEC's compelled-speech regime.

### A. The First Amendment applies to corporate proxy statements.

The SEC and amici do not dispute that (1) corporate proxy statements contain the corporation's own speech; (2) Rule 14a-8 requires the corporation to subsidize shareholder speech; (3) Rule 14a-7 separately allows shareholders to send their own proxy statements at their own expense; and (4) Rule

14a-8 compels the corporation to include shareholder speech within its own speech, including proposals the corporation does not want to disseminate.

That should resolve this case. Corporate speech does not lose First Amendment protection merely because it is speech "to itself" or its shareholders. SEC Br. 62; Scholars Br. 9. This is confirmed by caselaw raised in the NAM's opening brief that the SEC and amici ignore. *See* NAM Br. 39-40 (quoting *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969); *Int'l Ass'n of Machinists & Aerospace Workers v. FEC*, 678 F.2d 1092, 1114 n.96 (D.C. Cir.) (en banc), *aff'd*, 459 U.S. 983 (1982)). As the NAM detailed extensively in its opening brief (Br. 38-41), the *PG&E* plurality footnote referenced by the SEC and amici is neither controlling nor persuasive under both preexisting and subsequent Supreme Court precedent.

The SEC's and amici's reasoning would permit the SEC to compel *any* speech on corporate proxy statements—including forcing corporations to state their positions on abortion, gun control, and climate change. This conflicts with the D.C. Circuit's holding invalidating the SEC's attempt to require corporations to make disclosures regarding "conflict minerals" specifically because such disclosures were required to contain more than "purely factual and *uncontroversial* information." *Nat'l Ass'n of Mfrs. v. SEC*, 748 F.3d 359, 371-72 (D.C. Cir. 2015) (emphasis added) (quotation marks and citation omitted) (rejecting SEC's asserted power to ignore the First Amendment as that "would allow Congress to easily regulate otherwise protected speech

using the guise of securities laws"), *adhered to, National Ass'n of Mfrs v. SEC*, 800 F.3d 518 (D.C. Cir. 2015).

Astonishingly, the SEC relies on *Citizens United* and *303 Creative* to argue that the First Amendment has no application to corporate proxy statements. SEC Br. 62. Both cases could not have been clearer that the First Amendment protects a corporation's speech. *See Citizens United*, 558 U.S. at 342 ("The Court has recognized that First Amendment protection extends to corporations."); *303 Creative LLC*, 143 S. Ct. at 2316 ("Nor, this Court has held, do speakers shed their First Amendment protections by employing the corporate form to disseminate their speech."). The SEC misleadingly quotes *303 Creative* by inserting in brackets "[shareholders]" after "speakers." SEC Br. 62. But the NAM is arguing that *the corporation itself* is the speaker whose First Amendment rights are violated when Rule 14a-8 compels the corporation to include dissident shareholder speech within the corporation's own proxy statement.

The SEC and amici invoke a passing reference in dictum from *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). SEC Br. 61; Scholars Br. 17. But they ignore the arguments the NAM already raised in its opening brief about *Ohralik*. *See* NAM Br. 36-37. *Ohralik* never addressed Rule 14a-8, and its holding has been subsequently limited. *Id.*

The SEC and amici have nothing to say about *Janus*, which held that government cannot "[c]ompel[] a person to *subsidize* the speech of other private speakers." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 138 S. Ct. 2448,

2464 (2018). Nevertheless, the SEC and amici seem to insist that corporations should be required to *pay for* the dissemination of shareholder speech on corporate proxy statements—to facilitate undefined notions of "shareholder governance," Scholars Br. 10, or "corporate democracy," SEC Br. 62 (citation omitted). The SEC provides no explanation for why Rule 14a-7's mechanism for shareholders to send their own proxy statements does not satisfy its vision of "corporate democracy," *id.*, or allow "shareholders [to] receive adequate information in the proxy context," SEC Br. 63. Amici say the quiet part out loud when they allege shareholders sending their own proxy statements "may be cost-prohibitive." Scholars Br. 15. But that "level the playing field" rationale is no basis to override the First Amendment. *See* NAM Br. 25-26, 30.

Even if there were a "corporate democracy" exception to the First Amendment (which there is not), corporations are more like republics than direct democracies, with corporations acting through management. *See* NAM Br. 3-5. The SEC and amici misleadingly take their "corporate democracy" quotes from *Citizens United* and *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765 (1978). But the references in these cases to "corporate democracy" concerned shareholders' ability "to elect the board of directors or insist upon protective provisions in the corporation's charter"—precisely the protections one finds in a republic, not a plebiscite—not to force their own speech directly onto the corporation's own proxy statements. *Bellotti*, 435 U.S. at 794-95; *see Citizens United*, 558 U.S. at 370 (citing *Bellotti*). And both cases held

that corporations are entitled to First Amendment protections. *Citizens United*, 558 U.S. at 342; *Bellotti*, 435 U.S. at 784.

If shareholders wish to solicit other shareholders' proxy votes for their preferred proposals, they are empowered to send their own proxy statements under Rule 14a-7 and state law. *See* NAM Br. 7. It is therefore absurd for amici to suggest that the NAM's position would "silence the holders of . . . stock." ClientEarth Br. 9 n.8.[2] Similarly, it is wrong for amici to lament that, without Rule 14a-8, shareholders could no longer participate in corporate decisionmaking. ClientEarth Br. 22; Interfaith Br. 6. As amicus concedes, "many investors and companies successfully engage *voluntarily* throughout the year on a wide range of issues outside of the shareholder proposal process." Interfaith Br. 24 (emphasis added). If Rule 14a-8 were invalid, a corporation could still do so if it wishes. And a corporation could even choose voluntarily to include in its proxy statement at its own expense a voting proposal generated by a shareholder rather than management. All that the NAM seeks to prevent is the government requiring corporations to subsidize and disseminate shareholder speech.

---

[2] Contrary to ClientEarth's assertion, the NAM made no "misrepresentation[]" in its opening brief. ClientEarth Br. 25-27. Amicus argues that the NAM misrepresented a Glass Lewis recommendation faulting an oil and gas company for not doing enough to reduce emissions because the "emissions" that Glass Lewis was taking issue with were "Scope 3 Emissions." *Id*. But faulting an oil and gas company for not doing enough to get people to use less oil and gas is the same as faulting an oil and gas company for not doing enough to get customers to stop buying oil and gas.

**B.** ***Zauderer*** **does not apply because Rule 14a-8 compels much more than "purely factual and uncontroversial" commercial speech.**

The SEC offers no response to the NAM's argument that corporate proxy statements are not "commercial speech," because they do not propose any commercial transactions and are not related solely to the economic interests of the corporation and shareholders. *See* NAM Br. 31-34. *Zauderer*'s level of scrutiny therefore cannot possibly apply here. *Id.*

Nevertheless, the SEC spends a single sentence asserting that *Zauderer* applies because Rule 14a-8 purportedly "provides neutral standards for the disclosure of qualifying shareholder proposals to be voted on and thus involves 'purely factual and noncontroversial' commercial speech concerning corporate decision-making." SEC Br. 63. But *Zauderer* does not examine whether *the governmental rule* at issue "provides neutral standards" (and then whether those standards can be deemed "purely factual and uncontroversial"); it examines whether *the compelled speech* is "purely factual and uncontroversial information." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985); *see Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372 (2018). There can be little doubt that forced speech about controversial political topics like abortion and gun control goes beyond "purely factual and uncontroversial information." *Zauderer*, 471 U.S. at 651.

Amici similarly assert that the only facts "required to be disclosed" on the corporate proxy statement "are the matters the proxy will be used to vote on at the shareholder meeting and how the proxyholder—the corporation— intends to vote on each matter." Scholars Br.23. That is incorrect, as Rule 14a-8 compels the corporation to include not only a shareholder proposal but also a shareholder's "accompanying supporting statement" of up to 500 words. 17 C.F.R. § 240.14a-8(d). Those statements often contain, at the corporation's expense, some of the most controversial positions on today's most controversial topics. *See* NAM Br.13-14; *see also, e.g.*, J.A. 3 Kroger, 2023 Proxy Statement (containing NCPPR statement that "Kroger recently kowtowed to leftwing social media criticism").

## III. Section 14(a) of the Exchange Act does not grant the SEC power to compel the inclusion of shareholder proposals on a corporation's own proxy statement.

The SEC's unbridled interpretation of its statutory authority under 15 U.S.C. § 78n flies in the face of multiple clear-statement canons, plus the statute's text and purpose.

### A. The federalism clear-statement canon applies, and the SEC and amici misunderstand applicable state corporation law.

The SEC does not dispute the existence or contours of the federalism canon that the NAM raised in its opening brief.[3] *See* NAM Br.49-51. Instead,

---

[3] Amicus incorrectly states that "[t]he federalism canon is not applicable to 'conditions and requirements on those who use the channels of interstate

the SEC claims in a single sentence that Rule 14a-8 does not "override state corporation law." SEC Br. 60 (citation omitted). That fundamentally misunderstands state corporation law, which does *not* enable shareholders to insert their speech or voting proposals onto a corporation's own proxy-vote-solicitation statement. *See* NAM Br. 7. If Congress wanted to permit the SEC to override this state law, it needed to speak clearly.

State law does allow shareholders to present proposals *while present at the shareholder meeting*. *See* NAM Br. 7. State law also allows shareholders to separately send their own proxy-vote-solicitation statements. *See id.* Rule 14a-7 independently furthers that right. But state law does not grant shareholders rights to compel corporations to include shareholder proposals or supporting statements in a corporation's own proxy statement.

Rule 14a-8 supplants this state corporate law, dictating when and in what form shareholders may present voting proposals—all without a clear statement from Congress granting the SEC this power. Rule 14a-8 therefore does not "facilitate" (SEC Br. 60) state shareholder rights, because state law gives shareholders no such right in the first place.

---

commerce.'" As You Sow Br. 19 n.4 (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 99-100 (1946)). That passage from *American Power* discussed Congress' "power under the commerce clause." 329 U.S. at 99. As decades of precedent establish, if Congress wants to use that Commerce Clause power to "compel changes in the voting rights and other privileges of stockholders," *id.* at 100, then it must provide a clear statutory statement. *See* NAM Br. 49-51.

### B.  Neither Section 14(a)'s plain text nor its purpose grants the SEC authority to permit activist shareholders to commandeer corporate proxy statements through Rule 14a-8.

Unable to find any clear statement in § 78n, the SEC and amici attempt to rely on the statute's "purpose" (SEC Br. 56-58; As You Sow Br. 4)—rather than perform a textual analysis like the NAM presented in its opening brief. *See* NAM Br. 42-47. But even "broad 'public interest' mandates must be limited to 'the purposes Congress had in mind when it enacted [the] legislation.'" *Bus. Roundtable v. SEC*, 905 F.2d 406, 413 (D.C. Cir. 1990) (quoting *NAACP v. FPC*, 425 U.S. 662, 670 (1976)). The SEC and amici ignore *Business Roundtable* and other authority the NAM cited (Br. 45) recognizing that "public interest" must be tethered to what Congress contemplated when enacting the statute, *NAACP*, 425 U.S. at 670-71. Even William O. Douglas—SEC chairman at the time the agency began requiring management to inform shareholders of third-party proposals—understood that "'[p]ublic interest' is too vague a standard to be left to free-wheeling administrators." *Gundy v. United States*, 139 S. Ct. 2116, 2140 n.63 (2019) (Gorsuch, J., dissenting) (quoting W. Douglas, *Go East, Young Man* at 216-17 (1974)). Such a boundless interpretation of Rule 14a-8 as the SEC proposes would violate the nondelegation doctrine, or at least raise serious nondelegation issues that must be avoided. *See* NAM Br. 45.

Furthermore, the "purpose" of securities regulation "was to keep the channels of interstate commerce, the mail, and national security exchanges

pure from fraudulent schemes, tricks, devices, and all forms of manipulation." *Hooper v. Mountain States Sec. Corp.*, 282 F.2d 195, 202 (5th Cir. 1960). The purpose of 15 U.S.C. § 78n more specifically was to require those seeking proxy votes to provide accurate information allowing shareholders to make an informed choice about whether to grant their proxy. *See Bus. Roundtable*, 905 F.2d at 410 ("Congress's target" was "the solicitation of proxies by well informed insiders 'without fairly informing the stockholders of the purposes for which the proxies are to be used.'" (citing H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934)).

The SEC claims (both as to statutory purpose and the major questions doctrine) that there is no "mismatch" between the scope of Rule 14a-8 and Section 14(a). SEC Br. 61. But there is, since "rule 14a-8 seems unrelated to prohibiting the inclusion of misleading or dishonest information in proxy statements, which is the primary object of [Section 14(a)]." *Rauchman v. Mobil Corp.*, 739 F.2d 205, 207 (6th Cir. 1984). Commentators have also criticized Rule 14a-8's focus on corporate governance: "A glaring inroad into management's control over the process and content of the solicitation of shareholder proxies, Rule 14a-8 mandates that public companies subsidize access to the company's proxy mechanism for shareholders who offer 'proper' proposals." Alan R. Palmiter, *The Shareholder Proposal Rule: A Failed Experiment in Merit Regulation*, 45 Ala. L. Rev. 879, 879 (1994).

The SEC understandably does not even try to defend Rule 14a-8 as preventing fraud or deception in proxy solicitation—since its requirements are

irrelevant to such a purpose, and Rule 14a-9 independently prohibits "false or misleading" proxy solicitations. *See* NAM Br. 9, 30. Bizarrely, amici claim that Rule 14a-8 is an "anti-fraud regulation," Scholars Br. 19, and that shareholders would be misled if they did not see on a corporation's proxy statement any voting proposals from other shareholders, As You Sow Br. 7.

But there is nothing misleading or fraudulent about this scenario. The corporate proxy statement is the corporation's own speech, stating the proposals that *management* will put forward to a shareholder vote and solicit absentee shareholders' proxies in support of. *See Trinity Wall Street v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 334 (3d Cir. 2015). A corporation's only disclosure obligation is to disclose material information about the measures it intends to put to the shareholders for a vote and for which the company seeks shareholder proxies. It is not deceptive to not include third-party proposals.

Shareholders may, of course, always present their own proposals while physically present at the annual shareholder meeting (to the extent state law permits). Under Rule 14a-7, they may also, at their own expense, disseminate their own proxy statements notifying other shareholders of their voting proposals. In enacting the Exchange Act, Congress meant to prevent corporations from materially misrepresenting facts pertinent to the proposals *the corporation* presented to shareholders. *See* S. Rep. No. 73-792, at 12 (1934) (describing a case where a corporation's president solicited proxies to ratify a transaction without disclosing his interest in the transaction). And if the amici's positions were correct, the logical conclusion would be that

23

*corporations* could compel *shareholders* to include management's proposals on the shareholder's competing proxies circulated under Rule 14a-7, because it would be "misleading" for a shareholder to fail to disclose all the other proposals that could be presented at the annual meeting.

The older cases cited by the SEC (Br. 57) from other circuits only confirm the NAM's position. *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 692 (2d Cir. 1966), and *Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 787 (8th Cir. 1967), concerned dissident shareholders seeking a corporation's shareholder lists to solicit *their own* proxy votes, as state law and Rule 14a-7 allow; neither involved shareholders seeking to place their own proposals on corporate proxy statements.[4] And in *Transamerica*, both the district and circuit courts looked to Delaware corporate law to determine if a dissident shareholder's proposals were of the type that state law would permit ("a proper subject"). *SEC v. Transamerica Corp.*, 163 F.2d 511, 515 (3d Cir. 1947); *SEC v. Transamerica Corp.*, 67 F. Supp. 326, 329 (D. Del. 1946). These decisions did not analyze the statutory text or any applicable clear-statement canons.

The SEC does not argue that Congress has ratified Rule 14a-8. Amici, however, contend that Congress implicitly ratified Rule 14a-8 by holding various "hearings" and declining to enact a few proposed bills. As You Sow Br. 11-19. As an initial matter, clear-statement canons like the federalism,

---

[4] The SEC also quotes *TSC Indus., Inc. v. Northway*, 426 U.S. 438, 449 n.10 (1976), but that addressed the interpretation of "materiality" under the separate Rule 14a-9 prohibiting false or misleading proxy statements.

constitutional-avoidance, or major-questions canons override any possible implicit ratification argument. *See Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*, 531 U.S. 159, 169, 174 (2001) (rejecting argument about "congressional acquiescence to administrative interpretations" when "clear statement" canon applied). If Congress must speak clearly through statutory text to delegate a certain power, then assertions of implicit ratification without clear statutory text cannot possibly suffice. *See id.* at 172-73 (congressional "clear indication" needed "where the administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power").

Regardless, mere congressional hearings and failed bills cannot establish congressional ratification. *See id.* at 169-70 ("[F]ailed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute." (quotation marks and citation omitted)). The "ratification canon" "derives from the notion that Congress is aware of a definitive judicial interpretation of a statute when it reenacts the *same* statute using the same language." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2365 (2019). Amici cite no examples of courts confronting the validity of Rule 14a-8 under either the First Amendment or 15 U.S.C. § 78n, and Congress has not revised the governing statute in a way that implies ratification of Rule 14a-8.

Finally, there has been no explicit ratification of the rule. The SEC has no response to the NAM's argument that the 2010 amendment to 15 U.S.C. § 78n shows Congress knows how to specify when it requires contents of a

proxy statement. *See* NAM Br. 46-47. In 2010, Congress required inclusion of shareholder-selected *director nominees* in corporate proxy statements, but it said nothing about substantive proposals. *Id.* And the provision of the Dodd-Frank Act that amici point to does not explicitly ratify Rule 14a-8. The Dodd-Frank Act requires companies to have a nonbinding "say-on-pay" shareholder vote on executive compensation at least once every three years. 15 U.S.C. § 78n-1(a)(1), (c). The rule of construction clarifying that the say-on-pay requirement does not "restrict or limit the ability of shareholders to make proposals for inclusion in proxy material related to executive compensation" just means the Act does not restrict shareholder's ability to bring say-on-pay proposals in their *own* proxy materials. Pub. L. 111-203 § 951(c)(4), 124 Stat. 1376, 1900 (2010).

\*   \*   \*

For too long, the SEC has compelled corporations to include within their proxy statements shareholder proposals and supporting statements regarding the most controversial political issues of our time. This compelled-speech regime violates the First Amendment and exceeds Congress's statutory delegation to the SEC.

The SEC contends (Br. 64-65) that these arguments should be fleshed out through the rulemaking process. But it is the SEC that has been altering its application of Rule 14a-8 outside the rulemaking process. *See* NAM Br. 17-18.

In all events, parties in an individual as-applied enforcement proceeding may *always* argue that an agency lacks power to enforce its rules or acts unconstitutionally when doing so. *See supra* at 8-10. Whenever any corporation faces a shareholder proposal it does not want to include on its proxy statement, that corporation can argue that the SEC cannot compel inclusion of that proposal on the company's proxy statement. Neither the First Amendment nor the Exchange Act tolerate this compelled corporate speech.

### CONCLUSION

The Court should deny the petition for review.

Respectfully submitted.

/s/ *Scott A. Keller*

| | |
|---|---|
| Steven P. Lehotsky | Scott A. Keller |
| LEHOTSKY KELLER COHN LLP | Matthew H. Frederick |
| 200 Massachusetts Avenue, NW | Todd Disher |
| Suite 700 | Alexis Swartz |
| Washington, DC 20001 | LEHOTSKY KELLER COHN LLP |
| | 408 W. 11th Street, 5th Floor |
| Michael A. Tilghman II | Austin, TX 78701 |
| NAM LEGAL CENTER | scott@lkcfirm.com |
| 733 10th Street, NW | (512) 693-8350 |
| Suite 700 | |
| Washington, DC 20001 | *Counsel for Intervenor* |

### CERTIFICATE OF SERVICE

On October 3, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses. No paper copies were filed in accordance with the COVID-19 changes ordered in General Docket No. 2020-3.

*/s/ Scott A. Keller*
Scott A. Keller

### CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,498 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Scott A. Keller*
Scott A. Keller