No. 23-60230

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

NATIONAL CENTER FOR PUBLIC POLICY RESEARCH; NATHANIEL FISCHER;
PHILLIP ARONOFF,
*Petitioners,*
v.
SECURITIES AND EXCHANGE COMMISSION,
*Respondent.*

On Petition for Review of an Order of the
Securities & Exchange Commission

BRIEF OF RESPONDENT
SECURITIES AND EXCHANGE COMMISSION

MEGAN BARBERO
*General Counsel*

MICHAEL A. CONLEY
*Solicitor*

TRACEY A. HARDIN
*Assistant General Counsel*

THEODORE J. WEIMAN
*Senior Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.5167 (Weiman)
weimant@sec.gov

## CERTIFICATE OF INTERESTED PERSONS

*National Center for Public Policy Research v. SEC*, No. 23-60230

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  America First Legal Foundation

2.  Phillip Aronoff, Petitioner

3.  Megan Barbero, General Counsel, Securities and Exchange Commission

4.  Jonathan Berry, Counsel for Petitioners

5.  Boyden Gray & Associates PLLC, Counsel for Petitioners

6.  Michael Buschbacher, Counsel for Petitioners

7.  Michael A. Conley, Solicitor, Securities and Exchange Commission

8.  Nathaniel Fischer, Petitioner

9.  National Association of Manufacturers, Intervenor

10. Gene P. Hamilton

11.    Tracey A. Hardin, Assistant General Counsel, Securities and

Exchange Commission

12.    Jared M. Kelson, Counsel for Petitioners

13.    The Kroger Co.

14.    R. Trent McCotter, Counsel for Petitioners

15.    National Center for Public Policy Research, Petitioner

16.    Reed D. Rubinstein

17.    Theodore J. Weiman, Senior Appellate Counsel, Securities and

Exchange Commission

/s/ Theodore J. Weiman

*Attorney of Record for Respondent*
*Securities and Exchange Commission*

## STATEMENT REGARDING ORAL ARGUMENT

The Securities and Exchange Commission stands ready to present oral argument if argument would aid the Court in considering the issues.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF AUTHORITIES ..................................................................... vii

INTRODUCTION .................................................................................. 1

COUNTERSTATEMENT OF JURISDICTION ................................................. 4

COUNTERSTATEMENT OF THE ISSUES ..................................................... 5

COUNTERSTATEMENT OF THE CASE ....................................................... 6

    A.    Statutory and Regulatory Framework ........................................ 6

        1.    Commission regulation of proxy solicitation. ..................... 6

        2.    Disclosure under Commission rules. ................................ 7

        3.    Enforcement of Rule 14a-8. ......................................... 10

        4.    Staff no-action letters. ............................................. 10

    B.    Factual Background ......................................................... 12

    C.    Procedural Background ..................................................... 14

STANDARD OF REVIEW ....................................................................... 15

SUMMARY OF ARGUMENT ................................................................... 15

ARGUMENT ...................................................................................... 18

I.    The petition should be dismissed as moot. ........................................ 18

    A.    No inherent timing limitation prevents future review............. 19

    B.    Petitioners have not shown a reasonable expectation
        of recurrence.................................................................. 22

iv

# TABLE OF CONTENTS (cont'd)

**Page**

II.  The petition should be dismissed for lack of
subject-matter jurisdiction. ........................................................ 25

A.  The Kroger letter is not a reviewable "order of
the Commission." ............................................................ 27

B.  Petitioners' arguments to the contrary are unavailing. ............. 29

C.  The letter is not reviewable under Exchange Act
Section 4A ...................................................................... 32

1.  Section 4A does not apply to the Kroger letter ................. 33

2.  The provisions petitioners cite do not delegate
Commission authority pursuant to Section 4A. ............... 37

D.  The letter is not reviewable as a matter of the
Commission's enforcement discretion. ......................................... 39

E.  The letter lacks the requisite finality for review. ........................ 40

1.  The letter does not mark the consummation of any
agency decision-making process. ......................................... 41

2.  The letter does not have the requisite legal
consequences. ......................................................................... 42

III.  Even if the petition were not moot and outside the Court's
jurisdiction, the Court should not reach the broad constitutional
and statutory claims raised by petitioners and NAM. ........................ 46

A.  If the Kroger letter were considered a final Commission
order, vacatur is appropriate under the APA. ............................. 47

B.  This Court is not an appropriate forum for petitioners'
broader claim of improper practices by staff. ............................. 50

v

# TABLE OF CONTENTS (cont'd)

**Page**

C.    Even if the Court hears petitioners' challenges, it lacks jurisdiction to address NAM's facial statutory and constitutional challenges. ................................................................ 52

    1.    NAM's facial challenges to past rulemakings are untimely ................................................................................. 53

    2.    NAM also lacks standing to raise its claims. .................... 54

    3.    The Court lacks jurisdiction over NAM's facial challenges because they were not "urged before" the Commission. ................................................................... 55

D.    In any event, NAM's claims are meritless on their face. ........... 56

    1.    Rule 14a-8 is authorized by Section 14(a). ........................ 56

    2.    Rule 14a-8 complies with the First Amendment. .............. 61

CONCLUSION ................................................................................. 65

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE AND FILING

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*303 Creative LLC v. Elenis,*
143 S. Ct. 2298 (2023) ...................................................................62

*Alabama Ass'n of Realtors v. Dep't of Health and Human Servs.,*
141 S. Ct. 2485, 2489 (2021) ........................................................61

*Amalgamated Clothing,*
821 F. Supp. 877 (S.D.N.Y. 1993) ................................................45

*Amalgamated Clothing & Textile Workers Union v. SEC,*
15 F.3d 254 (2d Cir. 1994); ........................................25, 28, 29, 31

*Am. Petroleum Inst. v. SEC,*
714 F.3d 1329 (D.C. Cir. 2013) ....................................................53

*Apache Corp. v. Chevedden,*
696 F. Supp. 2d 723 (S.D. Tex. 2010) ......................................6, 45

*Baldwin v. Foxx,*
2015 WL4397641 (EEOC July 15, 2015) ......................................50

*Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs,*
217 F.3d 393 (5th Cir. 2000) ........................................................21

*Biden v. Nebraska,*
143 S. Ct. 2355 (2023)) .................................................................61

*Bd. of Trade of Chicago v. SEC,*
883 F.2d 525 (7th Cir. 1989) ..............................25, 26, 28, 29, 39

*Bostock v. Clayton County, Ga.,*
140 S. Ct. 1731 (2020) ..................................................................49

*C&H Nationwide, Inc. v. Norwest Bank Texas NA,*
208 F.3d 490, 493 (5th Cir. 2000) ................................................19

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Cambranis v. Blinken,*
    994 F.3d 457 (5th Cir. 2021)......................................................64

*CBS v. United States,*
    316 U.S. 407 (1942) .....................................................................31

*Citizens United v. FEC,*
    558 U.S. 310 (2010) .....................................................................62

*Ctr. for Biological Diversity v. EPA,*
    937 F.3d 533 (5th Cir. 2019)......................................................54

*Clarke v. CFTC,*
    74 F.4th 627 (5th Cir. 2023) ................................................41, 42

*Data Mktg. P'ship v. Dept' of Labor,*
    45 F.4th 846 (5th Cir. 2022) .......................................................40

*Dow Chemical v. EPA.,*
    832 F.2d 319 (5th Cir. 1987)................................................43, 44

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.,*
    884 F.3d 560 (6th Cir. 2018)......................................................50

*Empower Texans, Inc. v. Geren,*
    977 F.3d 367 (5th Cir. 2020)................................................19, 20

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016) .....................................................................47

*Express Scripts Holding Co. v. Chevedden,*
    2014 WL631538 (E.D. Mo. Feb. 18, 2014) ...............................21

*Fontenot v. McCraw,*
    777 F.3d 741 (5th Cir. 2015)......................................................18

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Gen. Land Off. v. Dep't of Interior*,
  947 F.3d 309 (5th Cir. 2020).......................................................53

*Greater Iowa Corp. v. McLendon*,
  378 F.2d 783 (8th Cir 1967)..........................................................57

*Hadwani v. Gonzales*,
  445 F.3d 798 (5th Cir. 2006)..........................................................15

*Heckler v. Chaney*,
  470 U.S. 821 (1985) .......................................................................39

*Hively v. Ivy Tech Community College*,
  853 F.3d 339 (7th Cir. 2017)..........................................................50

*Indep. Broker-Dealers' Trade Ass'n v. SEC*,
  442 F.2d 132 (D.C. Cir. 1971) .......................................................26

*Int'l Tel. & Tel. Corp. v. Local 134*,
  419 U.S. 428 (1975) .......................................................................27

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) .............................................................7, 10, 58

*Jupiter Energy Corp. v. FERC*,
  482 F.3d 293 (5th Cir. 2007).....................................................47, 48

*KBR Inc. v. Chevedden*,
  776 F. Supp. 2d 415 (S.D. Tex. 2011)...........................................45

*KBR v. Chevedden*,
  478 F. App'x 213 (5th Cir. 2012) ..................................................10

*Kixmiller v. SEC*,
  492 F.2d 641 (D.C. Cir. 1974) ....................... 26, 27, 29, 30, 31, 39

ix

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Libertarian Party v. Dardenne,*
    595 F.3d 215 (5th Cir. 2010)........................................................19

*La. State v. U.S. Army Corps of Eng'rs,*
    834 F.3d 574 (5th Cir. 2016)........................................................41

*Macy v. Holder,*
    2012 WL1435995 (EEOC Apr. 20, 2012) ..................................50

*Med. Comm. for Human Rights v. SEC,*
    432 F.2d 659 (D.C. Cir. 1970) .......................................8, 31, 35, 40

*Merck Sharp & Dohme Corp. v. Albrecht,*
    139 S. Ct. 1668 (2019) ................................................................41

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,*
    463 U.S. 29 (1983) ......................................................................47

*NASDAQ v. SEC,*
    998 F.3d 1006 (D.C. Cir. 2021) ..................................................53

*Nat'l Fed. of the Blind v. Dep't of Transp.,*
    827 F.3d 51 (D.C. Cir. 2016) .......................................................30

*Nat'l Pork Producers Council v. EPA,*
    635 F.3d 738 (5th Cir. 2011).......................................................44

*N.Y.C. Employees' Retirement Sys. v. American Brands, Inc.,*
    634 F. Supp. 1382 (S.D.N.Y. 1986)............................................45

*N.Y.C. Employees' Retirement Sys. v. Dole Food Co.,*
    969 F.2d 1430 (2d Cir. 1992)..................................................21, 45

*N.Y.C. Employees' Retirement Sys. v. SEC,*
    843 F. Supp. 858 (S.D.N.Y. 1994)................................................9

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*N.Y.C. Employees' Retirement Sys. v. SEC,*
  45 F.3d 7 (2d Cir. 1995) ................................................................26, 29, 43

*N.Y.S.E v. Bloom,*
  562 F.2d 736 (D.C. Cir. 1977) ......................................................31

*Newsome v. EEOC,*
  301 F.3d 227 (5th Cir. 2002) .........................................................44

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447 (1978) ......................................................................61

*Oncale v. Sundowner Offshore Servs., Inc.,*
  523 U.S. 75 (1998) ........................................................................49

*Patel v. Garland,*
  142 S. Ct. 1614 (2022) ..................................................................34

*Peoples Nat'l Bank v. Comptroller,*
  362 F.3d 333 (5th Cir. 2004)..........................................................41

*Pacific Gas & Elec. Co. v. Public Utils. Comm'n,*
  475 U.S. 1 (1986) ...................................................................61, 62

*Rollerson v. Brazos River Harbor Navigation Dist.,*
  6 F. 4th 633 (5th Cir. 2021) ..........................................................39

*Rollins v. Home Depot USA,*
  8 F.4th 393 (5th Cir. 2021) ...........................................................48

*Roosevelt v. E.I. Du Pont de Nemours & Co.,*
  958 F.2d 416 (D.C. Cir. 1992) ......................................7, 10, 11, 28, 29, 57

*SEC v. Chenery,*
  332 U.S. 194 (1947) ................................................................48, 56

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*SEC v. Medical Committee for Human Rights*,
    404 U.S. 403 (1972) ..............................................................22, 24

*SEC v. Transamerica Corp.*,
    163 F.2d 511 (3d Cir. 1947) ..........................................................57

*Sierra Club v. Dep't of Interior*,
    990 F.3d 909 (5th Cir. 2021) ..........................................................51

*Slack v. McDaniel*,
    529 U.S. 473 (2000) ......................................................................49

*Smith v. Meese*,
    821 F.2d 1484 (11th Cir. 1987) ......................................................51

*Studebaker Corp. v. Gittlin*,
    360 F.2d 692 (2d Cir. 1966) ..........................................................57

*Texas v. EEOC*,
    933 F.3d 433 (5th Cir. 2019) ..........................................................44

*Texas v. United States*,
    749 F.2d 1144 (5th Cir. 1985) ........................................................53

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ..........................................................46

*TNT Crane & Rigging, Inc. v. OSHRC*,
    74 F.4th 347 (5th Cir. 2023) ..........................................................15

*Tosdal v. Nw. Corp.*,
    440 F. Supp. 3d 1186 (D. Mont. 2020) ....................................11, 21

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017) ......................................................................54

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Trinity Wall Street v. Wal-Mart Stores, Inc.,*
75 F. Supp. 3d 617 (D. Del. 2014) ............................................................21

*Trinity Wall St. v. Wal-Mart Stores, Inc.,*
792 F.3d 323 (3d Cir. 2015) ...................................................................6, 10

*TSC Indus., Inc. v. Northway, Inc.,*
426 U.S. 438 (1976) ...................................................................................57

*United States v. Pursley,*
22 F.4th 586 (5th Cir. 2022) ......................................................................51

*United States v. Sosebee,*
59 F.4th 151 (5th Cir. 2023) ......................................................................18

*Veldhoen v. U.S. Coast Guard,*
35 F.3d 222 (5th Cir. 1994)........................................................................45

*Watts v. SEC,*
482 F.3d 501 (D.C. Cir. 2007) ...................................................................30

*West Va. v. EPA,*
142 S. Ct. 2587 (2022) ...............................................................................60

*Wisconsin's Environ. Decade, Inc. v. SEC,*
882 F.2d 523 (D.C. Cir. 1989) ...................................................................48

*Yarls v. Bunton,*
905 F.3d 905 (5th Cir. 2018).......................................................................19

*Zarda v. Altitude Express, Inc.,*
883 F.3d 100 (2d Cir. 2018).......................................................................50

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
471 U.S. 626 (1985) ...................................................................................63

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Statutes, Laws, Regulations, and Rules**

Administrative Procedure Act

5 U.S.C. 551 .......................................................................27, 32

5 U.S.C. 706 ..............................................................................15

17 C.F.R. 200.30-1.................................................................33, 34

17 C.F.R. 200.30-4.......................................................................38

17 C.F.R. Pt. 202 .........................................................................38

17 C.F.R. 202.1 ........................................ 11, 12, 27, 33, 35, 37, 38

17 C.F.R. 202.2.........................................................11, 12, 37, 38

17 C.F.R. 202.5............................................................................38

11 Fed. Reg. 177A-729 (Sept. 11, 1946) ...............................................38

25 Fed. Reg. 6736 (July 15, 1960) ..........................................................38

54 Fed. Reg. 24329 (June 7, 1989) .........................................................38

57 Fed. Reg. 18210 (Apr. 29, 1992) .......................................................57

Rel. 34-2376,
1940 WL7144 (Jan. 12, 1940) .......................................................11

Rel. 34-3347,
1942 WL34864 (Dec. 18, 1942) .................................................7, 8

Rel. 34-4114,
1948 WL28637 (July 6, 1948) .......................................................8

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

Rel. 34-4979,
    1954 WL5772 (Jan. 6, 1954) ..........................................................................8

Rel. 34-12599,
    1976 WL160411 (July 7, 1976) ......................... 10, 11, 12, 24, 27, 28, 37, 40

Rel. 34-12999,
    1976 WL160347 (Nov. 22, 1976) ...................................................................8

Rel. 34-39093,
    1997 WL578696 (Sept. 18, 1997) ..................................................................9

Rel. 34-40018,
    1998 WL254809 (May 21, 1998) .........................................................9, 24, 25

Rel. 34-48626,
    2003 WL22350515 (Oct. 14, 2003) .............................................................58

Rel. 34-62764,
    2010 WL3343532 (Aug. 25, 2010) ..............................................................59

Rel. 34-89964,
    2020 WL5763382 (Sep. 23, 2020) ...............................................................60

Rel. 34-95267,
    2022 WL2953280 (July 27, 2022) ................................................................60

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.*

    Rule 14a-8, 17 C.F.R. 240.14a-8..........................................................*passim*

    Section 4, 15 U.S.C. 78d ...............................................................................26

    Section 4A, 15 U.S.C. 78d-1...................... 32, 33, 34, 35, 36, 37, 38, 42, 43

    Section 14, 15 U.S.C. 78n ................................. 6, 7, 8, 29, 36, 44, 53, 55, 56

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

Section 21, 15 U.S.C. 78u ............................................................29

Section 25, 15 U.S.C. § 78y ............................................... *passim*

28 U.S.C. 2401 ..............................................................................53

**Other materials**

Announcement (Jan. 16, 2015).......................................................11

Enforcement Manual .....................................................................39

*Hearing on Reorganization Plans*,
87th Cong. 4 (1961) ..................................................................43

H.R. Rep. No. 1383,
73d Cong., 2d Sess. (1934)....................................................7, 57

Informal Procedures Regarding Shareholder Proposals .................28

2 James Cox & Thomas Lee Hazen,
*Treatise on the Law of Corporations* (3d ed. 2022) .......................6

Kroger Form 8-K ...........................................................................15

Kroger Schedule 14A .....................................................................14

Letter, AT&T Co.,
1988 WL235316 (Dec. 29, 1988) ................................................25

Letter, Capital Cities/ABC, Inc.,
1991 WL178633 (Apr. 4, 1991) ..................................................25

Letter, CorVel Corp.,
2019 WL1640021 (June 5, 2019) ................................................49

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

Letter, Cracker Barrel Old Country Store, Inc.,
    1992 WL289095 (Oct. 13, 1992) .................................................................9

Letter, CVS Health Corp.,
    2022 WL110303 (Mar. 17, 2022) .................................................................13

Letter, Eli Lilly & Co.,
    2023 WL2524430 (Mar. 8, 2023) .................................................................13

Letter, Levi Strauss & Co.,
    2021 WL5918662 (Feb. 10, 2022) .................................................................13

Letter, PayPal Holdings, Inc.,
    2023 WL385338 (Apr. 10, 2023) .................................................................13

Letter, Texaco, Inc.,
    1992 WL68720 (Mar. 31, 1992) .................................................................25

Letter, United Brotherhood of Carpenters and Joiners of Am.,
    2002 WL31749942 (Dec. 6, 2002) .................................................................25

Letter, The Walt Disney Co.,
    2021 WL5052838 (Jan. 19, 2022) .................................................................13

IV Louis Loss et al., Securities Regulation (6th ed. 2020) ..........................57, 64

*NCPPR v. Kroger*, No. 23-cv-00256 (S.D. Ohio) .................................................23

Ninth Annual Report of the SEC (1943) .............................................................11

Alan Palmiter & Frank Partnoy,
    Corporations: A Contemporary Approach (1st ed. 2010)) ...................60

S. Rep. No. 792,
    73d Cong., 2d Sess. (1934) .............................................................7, 57, 58

# INTRODUCTION

The petition for review seeks to vacate an informal and non-binding "no-action" letter sent by staff at the Securities and Exchange Commission ("Commission" or "SEC") to the Kroger Co. ("Kroger"), which is not a party to this case.  Petitioners National Center for Public Policy Research ("NCPPR"), Nathaniel Fischer, and Phillip Aronoff claimed that the staff letter ("Kroger letter") would cause Kroger to exclude from its proxy materials a shareholder proposal submitted by NCPPR.  But that prediction did not materialize:  Kroger included NCPPR's proposal in its proxy materials and the proposal was voted on at Kroger's annual meeting. Because the events underlying the petition were undisputedly resolved in petitioners' favor, this case is now moot.  But this Court also lacks jurisdiction for another reason—the Kroger letter is not a Commission order subject to this Court's direct review.  Nor is there *any* judicially reviewable final agency action.

Notwithstanding these fatal flaws, petitioners (joined by intervenor National Association of Manufacturers ("NAM")) improperly seek to use their challenge to the Kroger letter to pursue broad claims against decades-old Commission rules and staff practices.  Those challenges were never

1

presented to the Commission and far exceed the scope of the Kroger letter.
While reviewing the Kroger letter at all would be unprecedented—and
would split with uniform authority in three other circuits—petitioners' and
NAM's attempts to bypass the Commission and appropriate process reflect
an extraordinary disregard for established administrative law and
jurisprudential norms.

The petition's multiple jurisdictional flaws compel dismissal.  First,
the petition is moot.  Petitioners' purported injuries, which turned on the
prospect of Kroger excluding NCPPR's proposal from its 2023 proxy
materials, did not occur, and vacating the Kroger letter would have no
impact on any party.  Nor can petitioners satisfy the requirements for the
"capable of repetition, yet evading review" exception to mootness.  As
courts have held, expedited court procedures provide ample time for
consideration of properly raised legal challenges to the exclusion of a
shareholder proposal.  Moreover, the Supreme Court has made clear that
there is no reasonable expectation of recurrence where, as here, the
proposal was voted on by shareholders and received minimal support.

This Court also lacks subject-matter jurisdiction.  Under Section 25(a)
of the Securities Exchange Act of 1934 ("Exchange Act"), only "final

2

order[s] of the Commission" are directly reviewable in the courts of appeals.  15 U.S.C. 78y(a).  And, as every circuit to consider the question has concluded, a no-action letter from staff is not a final Commission order.  The letter was sent pursuant to an informal process and offered only the views of the staff of one division—not the Commission itself.  Indeed, the letter lacks the explanation required for a Commission "order" under the Administrative Procedure Act ("APA") precisely because it is not such an order.

Regardless, this Court lacks jurisdiction to reach either petitioners' or NAM's broad challenges to past rulemakings and staff practices.  Petitioners assert that staff lacked a reasoned and constitutional basis for the distinctions it drew here (and in other unrelated staff letters), erroneously claiming that staff engages in viewpoint discrimination.  That claim is unfounded, and the nature of the Kroger letter leaves the Court without a record on which to adjudicate those issues.

NAM's facial statutory and constitutional challenges to the shareholder-proposal process suffer from even more fundamental flaws.  NAM fails to identify any basis on which it may bring its claims decades after the statutory time period for such challenges expired.  And, even if it

3

could, NAM lacks standing to pursue them here.  Moreover, Section 25(c) of the Exchange Act precludes review because NAM's claims were never before the Commission.

For these reasons, the Court should reject petitioners' and NAM's extraordinary invitation to issue what would be an advisory opinion in a case in which the Court lacks jurisdiction in order to upend the settled expectations regarding the rights and obligations of share ownership that have prevailed for eighty years.  Appropriate paths exist to seek changes to Rule 14a-8 and staff's informal no-action process.  But petitioners' and NAM's effort to shoehorn their arguments for such changes into a petition for review of a letter offering non-binding—and now moot—staff views on which the Commission never opined is not one of them.

## COUNTERSTATEMENT OF JURISDICTION

Petitioners invoke Section 25(a) as the basis for jurisdiction in this Court.  As discussed below, this Court lacks jurisdiction under this provision because the Kroger letter is not a "final order of the Commission" directly reviewable in this Court.  15 U.S.C. 78y(a).  In addition, as discussed in the Commission's stay opposition (SEC Stay Opp. 21-23), NCPPR, which is a Delaware corporation based in Washington

4

D.C., does not meet the venue requirements for review in this Circuit under Section 25(a)(1).

## COUNTERSTATEMENT OF THE ISSUES

1. Whether the petition, which challenges staff's statement that it would not recommend enforcement action to the Commission if Kroger excluded NCPPR's shareholder proposal, was mooted by Kroger's decision to include the proposal.

2. Whether this Court lacks jurisdiction to review a staff letter that was not considered or adopted by the Commission because Exchange Act Section 25(a) grants jurisdiction only for review of a "final order of the Commission."

3. Whether direct appellate review of petitioners' erroneous claim of a pattern of viewpoint discrimination is precluded by the lack of an administrative record or findings by an appropriate fact finder.

4. Whether the Court lacks jurisdiction over NAM's facial statutory and constitutional challenges to Rule 14a-8 because NAM lacks standing, those claims are brought decades out of time, and they were not urged before the Commission.

## COUNTERSTATEMENT OF THE CASE

**A.    Statutory and Regulatory Framework**

**1.    Commission regulation of proxy solicitation.**

The right of shareholders to vote by proxy, instead of in person at the shareholder meeting, is "universal in stock corporations" (2 James Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* 13:26 (3d ed. 2022)) and "has become an indispensable part of corporate governance." *Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 334 (3d Cir. 2015) (punctuation omitted). Before shareholder meetings, companies distribute proxy materials informing shareholders "about items or initiatives on which the shareholders are asked to vote." *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 727 (S.D. Tex. 2010). Shareholders may present proposals for a vote and can solicit proxies either by "pay[ing] to issue a separate proxy statement" or seeking inclusion of their proposal in the proxy statement distributed by the company, along with a supporting statement. *Id.* This case involves NCPPR's choice to do the latter.

Section 14(a) of the Exchange Act authorizes the Commission to prescribe "rules and regulations" regarding the solicitation of proxies "as necessary or appropriate in the public interest or for the protection of

6

investors."  15 U.S.C. 78n(a).  Congress enacted this provision in 1934 to

enable the Commission to protect against "'the recurrence of abuses'" that

had "'frustrated the free exercise of the voting rights of stockholders.'"  *J.I.*

*Case Co. v. Borak*, 377 U.S. 426, 432 (1964) (quoting H.R. Rep. No. 1383, 73d

Cong., 2d Sess. 14 (1934)).  Congress thus entrusted the Commission with

ensuring that investors who were solicited for use of their proxies "'be

enlightened not only as to the financial condition of the corporation, but

also as to the major questions of policy, which are decided at stockholders'

meetings.'"  *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 422

(D.C. Cir. 1992) (quoting S. Rep. No. 792, 73d Cong., 2d Sess. 12 (1934)).

   **2.    Disclosure under Commission rules.**

   The Commission first adopted rules implementing Section 14(a) in

1935 and has revised the rules multiple times in the years since.  Among

those rules, Rule 14a-8 provides terms under which a company "must

include a shareholder's proposal in its proxy statement" and details

thirteen substantive grounds (and several procedural grounds) permitting

a company to exclude a shareholder proposal.  17 C.F.R. 240.14a-8.

Versions of these requirements date back to the 1940s.  Rel. 34-3347, 1942

WL34864 (Dec. 18, 1942) (requiring inclusion of shareholder proposals);

Rel. 34-4114, 1948 WL28637 (July 6, 1948) (exclusions).

Subsection (i)(7) of Rule 14a-8 was added in 1954 and permits

companies to exclude a shareholder proposal that "deals with a matter

relating to the company's ordinary business operations."  17 C.F.R. 240.14a-

8(i)(7); Rel. 34-4979, 1954 WL5772 (Jan. 6, 1954).  In 1970, the D.C. Circuit

indicated that the exclusion of proposals of significant importance to

investors under this exemption could conflict with Congress's purposes in

enacting Section 14(a).  *Med. Comm. for Human Rights v. SEC*, 432 F.2d 659

(D.C. Cir. 1970), *vacated as moot*, 404 U.S. 403 (1972).  In subsequent

rulemaking, the Commission stated that the term "ordinary" in subsection

(i)(7) should be "interpreted somewhat more flexibly than in the past" to

require the inclusion of "certain matters which have significant policy,

economic, or other implications inherent in them," as opposed to "business

matters that are mundane in nature and do not involve" such

considerations.  Rel. 34-12999, 1976 WL160347, at *11-12 (Nov. 22, 1976).

In a 1992 no-action letter, which the Commission reviewed and

approved, staff stated that it viewed shareholder proposals "concerning a

company's employment policies and practices for the general workforce"

as falling within ordinary business even if "tied to a social issue."  Letter,

Cracker Barrel Old Country Store, Inc., 1992 WL289095, at *1 (Oct. 13, 1992)

("Cracker Barrel letter").  A district court later held that this view conflicted

with the Commission's interpretation in the 1976 release.  *N.Y.C. Employees'*

*Retirement Sys. v. SEC*, 843 F. Supp. 858, 880 (S.D.N.Y. 1994), *rev'd*, 45 F.3d 7

(2d Cir. 1995).  Although the Second Circuit reversed, Congress directed

the Commission to conduct a study of shareholders' ability to put forward

proposals concerning social issues, and several parties filed a rulemaking

petition with the Commission to require companies to include such

proposals in the employment context.  *See* Rel. 34-39093, 1997 WL578696, at

*3 & nn.15, 22 (Sept. 18, 1997).

In subsequent rulemaking, the Commission adopted an

interpretation contrary to the view expressed in the Cracker Barrel letter,

stating that "employment-related proposals that raise sufficiently

significant social policy issues" are not excludable as ordinary business

matters under subsection (i)(7).  Rel. 34-40018, 1998 WL254809, at *4 (May

21, 1998) ("1998 Amendments").

### 3.    Enforcement of Rule 14a-8.

If the Commission believes that an issuer has violated Rule 14a-8, it

may, in its discretion, investigate and bring an injunctive action against the

issuer.  *See* Section 21, 15 U.S.C. 78u; Rel. 34-12599, 1976 WL160411 (July 7,

1976) ("Informal Procedures").  But there are significant practical

limitations on the Commission's enforcement capabilities in this area, and

"[p]rivate enforcement of the proxy rules provides a necessary supplement

to Commission action."  *Borak*, 377 U.S. at 432; *Roosevelt*, 958 F.2d at 423-24

("hundreds of shareholder proposals" can be "concentrated … during the

few months preceding the peak annual meeting season" (punctuation

omitted)).  A shareholder aggrieved by a company's decision to exclude its

proposal thus may "pursue its rights against the company in federal

court."  *Trinity Wall St.*, 792 F.3d at 337; *see also KBR v. Chevedden*, 478 F.

App'x 213, 215 (5th Cir. 2012) (per curiam).

### 4.    Staff no-action letters.

From the Commission's establishment in 1934, Commission staff

have developed a practice of providing informal advice to the public in

various areas.  By rule, this informal process is not binding on the

Commission or the public and is distinct from the exercise of statutory

authority by the Commission itself.  17 C.F.R. 202.1, 202.2.  Staff began

providing such advice in the proxy context shortly after the proxy rules

were adopted in 1938, when some corporate managers started "a practice

of submitting proposed material for [advance] inspection by the

Commission's staff" so that staff could advise them of "any inadvertent

deficiencies in the material[s.]"  Rel. 34-2376, 1940 WL7144, at *1 (Jan. 12,

1940); *see also, e.g.* Ninth Annual Report of the SEC at 10 (1943),

https://www.sec.gov/about/annual_report/1943.pdf.

Rule 14a-8 currently provides that if a company decides to exclude a

shareholder proposal, the company must notify the Commission and the

proponent of its reasons for doing so.  Rule 14a-8(j), 17 C.F.R. 240.14a-8(j).

This requirement "'is informational only'" and "'[n]o response by the

Commission or its staff is required.'"  *Roosevelt*, 958 F.2d at 423 n.13

(quoting Informal Procedures, 1976 WL160411, at *4); *see, e.g.*, *Tosdal v. Nw.

Corp.*, 440 F. Supp. 3d 1186, 1190 (D. Mont. 2020).[1]  Rather, its purpose is to

---

[1] Staff has also stated on occasion that it would not provide a no-action
response regarding certain categories of proposals.  *See, e.g.*,
Announcement (Jan. 16, 2015), https://www.sec.gov/
corpfin/announcement/cf-announcement-rule-14a-8i9-no-views.

notify the Commission in case "enforcement action may be appropriate" and to "alert the shareholder proponent" so the shareholder can consider whether to pursue its own remedies against the company. Informal Procedures, 1976 WL160411, at *4.

Companies providing this notice frequently do so in the form of a "no-action" request seeking the views of staff in the SEC's Division of Corporation Finance as to whether staff will recommend enforcement action to the Commission if the company excludes the proposal. While staff is not obligated to respond, when it does staff generally indicates either that it will not recommend enforcement action because there appears to be a basis for the company's view that the proposal may be excluded or that it is unable to concur with that view. In some cases, staff expresses no view. Informal Procedures, 1976 WL160411, at *3; 17 C.F.R. 202.1(d), 202.2. Regardless, staff's views are non-binding on companies, the Commission, or anyone else and, by rule, do "not constitute an official expression of the Commission's views." 17 C.F.R. 202.1(d).

### B.    Factual Background

NCPPR has submitted numerous proposals for inclusion in the proxy materials for various public companies. Some companies have decided to

exclude NCPPR proposals and requested no-action letters from Division staff. In many such instances, staff sent a letter disagreeing with the company's view. *See, e.g.*, Letter, PayPal Holdings, Inc., 2023 WL385338 (Apr. 10, 2023); Letter, Eli Lilly & Co., 2023 WL2524430 (Mar. 8, 2023); Letter, CVS Health Corp., 2022 WL110303 (Mar. 17, 2022); Letter, Levi Strauss & Co., 2021 WL5918662 (Feb. 10, 2022); Letter, The Walt Disney Co., 2021 WL5052838 (Jan. 19, 2022).

NCPPR submitted the proposal at issue here to Kroger on December 21, 2022. JA1. The proposal requested that Kroger "issue a public report detailing the potential risks associated with omitting 'viewpoint' and 'ideology' from its written equal employment opportunity (EEO) policy." JA3. On February 16, 2023, Kroger sent a letter to staff stating its intention to omit the proposal from its proxy materials and asking staff for a no-action letter. JA6. NCPPR sent letters to staff stating that the proposal should not be excluded. JA12, JA31.

Staff sent Kroger a no-action letter on April 12, 2023, stating that "[t]here appears to be some basis for your view that the Company may exclude the Proposal under Rule 14a-8(i)(7)" because "the Proposal relates to, and does not transcend, ordinary business matters." JA34.

13

NCPPR requested that staff reconsider its views or present the matter to the Commission, and it also directly emailed individual Commissioners requesting review.  JA35, JA66.  Petitioners Nathaniel Fischer and Phillip Aronoff sent emails in support to the Commissioners.  JA82, JA150.  The Commission did not conduct any such review or express any views on the matter.

### C.    Procedural Background

Petitioners filed a petition for review in this Court on April 28, 2023, and moved for an emergency stay and expedited briefing.  The same day, this Court entered an administrative stay "pending further order of the court."  Unpublished Order, Doc. 10-2 (4/28/23).  After briefing on the stay motion, this Court ordered it "carried with the case," denied the motion to expedite, and stated that "[t]he administrative stay continues in effect pending further order of the court."  Unpublished Order, Doc. 29-2 (5/10/23).

On May 12, 2023, Kroger filed with the Commission the final proxy statement it was sending to shareholders—and it included NCPPR's proposal.  *See* Kroger Schedule 14A at 92, https://www.sec.gov/Archives/ edgar/data/56873/000110465923059456/tm233382d3_def14a.htm.  On

June 2, 2023, the Commission filed a motion to dismiss the petition on the

ground that Kroger's inclusion of the proposal rendered it moot, as well as

on jurisdictional grounds.  After briefing on the motion, this Court ordered

it "carried with the case" on each ground.  Unpublished Order, Doc. 61-2

(7/12/23).

On June 22, 2023, Kroger released the results of its shareholder vote;

NCPPR's proposal received 1.88% of the vote.  *See* Kroger Form 8-K,

https://www.sec.gov/Archives/edgar/data/56873/000110465923074287/

tm2319563d1_8k.htm (10,458,817 for; 544,893,409 against).

## STANDARD OF REVIEW

"This [C]ourt reviews questions of jurisdiction de novo" on a petition

for review.  *Hadwani v. Gonzales*, 445 F.3d 798, 800 (5th Cir. 2006).  Under

the APA, an agency's "legal conclusions must be upheld unless they are

'arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law.'"  *TNT Crane & Rigging, Inc. v. OSHRC*, 74 F.4th 347,

353 (5th Cir. 2023) (quoting 5 U.S.C. 706(2)(A)).

## SUMMARY OF ARGUMENT

1.    The petition is moot and should be dismissed.  Petitioners

claimed that the Kroger letter would cause Kroger to exclude NCPPR's

15

proposal from its proxy materials and asked this Court to vacate the letter

to redress the purported injuries such an exclusion would cause them. But

Kroger's inclusion of the proposal eliminates both their purported injuries

and the prospect that vacating the letter could redress such injuries. And

petitioners' invocation of the "capable of repetition, yet evading review"

mootness exception is unavailing. All but one of their challenges are

untethered to any particular proxy season, eliminating any time barrier to

future review. Sufficient time would also exist to review a future challenge

to the exclusion of the same proposal, if properly brought. And NCPPR's

proposal received such meager support in the Kroger shareholder vote that

it triggered an independent ground for future exclusion, which is

dispositive under Supreme Court precedent.

2.    The petition should also be dismissed for lack of subject-matter

jurisdiction. Exchange Act Section 25(a), under which the petition was

brought, permits direct review in a court of appeals only for a "final order

of the Commission." The Kroger letter—an informal, non-binding staff

letter with no legal consequences—is neither "final" nor a Commission

"order."

3.     Even if the petition were not both moot and outside the Court's jurisdiction, the Court should not reach petitioners' substantive arguments. It is undisputed that the Kroger letter—which was not understood by staff to be a Commission order—does not meet the APA's requirement that an agency order contain a sufficient explanation of the agency's rationale. While this underscores that the letter is not a Commission order, if this Court were to hold otherwise, petitioners' request to vacate the letter on APA grounds should be granted without reaching any other issue.

Petitioners' viewpoint discrimination claim is also meritless and unsupported by any factual record that can be assessed in this Court. Indeed, petitioners misguidedly ask this Court to make factual determinations in the first instance, submitting purported evidence that has not been tested or countered before an appropriate finder of fact.  Such claims cannot be litigated in an appellate court in the first instance.

Finally, NAM's attempt to pursue broad facial challenges to Rule 14a-8 in a petition for review of a staff letter—without obtaining the Commission's views or participating in the administrative process—is without legal basis.  Congress established mechanisms for litigants to raise

17

statutory and constitutional challenges to existing rules, and NAM cannot

bypass those procedures.  In any event, NAM's contentions are meritless.

## ARGUMENT

### I.    The petition should be dismissed as moot.

"Whether an appeal is moot is a jurisdictional matter, since it

implicates the Article III requirement that there be a live case or

controversy."  *United States v. Sosebee*, 59 F.4th 151, 154 (5th Cir. 2023)

(punctuation omitted).  "A case becomes moot … when the issues

presented are no longer 'live' or the parties lack a legally cognizable

interest in the outcome."  *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir.

2015) (punctuation omitted).

Petitioners' challenge to staff's views concerning Kroger's proxy

materials was mooted by Kroger's inclusion of NCPPR's proposal in those

materials.  While petitioners argue otherwise because the Commission, not

Kroger, is respondent (Br. 55), their alleged injuries and the potential for

the relief they seek to remedy those injuries were wholly tied to Kroger's

2023 proxy materials, and thus *both* have been definitively eliminated.

Because a decision vacating the Kroger letter "cannot affect the rights of

litigants in the case," it would be an impermissible "advisory opinion[.]"

18

*C&H Nationwide, Inc. v. Norwest Bank Texas NA*, 208 F.3d 490, 493 (5th Cir. 2000) (punctuation omitted).

Petitioners argue that this case falls within the "capable of repetition, yet evading review" mootness exception.  Br. 55.  But that doctrine—which is available only in "exceptional circumstances" (*Empower Texans, Inc. v. Geren*, 977 F.3d 367, 371 (5th Cir. 2020))—"applies only when (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."  *Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018) (punctuation omitted).  Neither element, which petitioners "bear the burden of proving" (*Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010)), is met here.[2]

### A.    No inherent timing limitation prevents future review.

Petitioners' claim that the short proxy season necessarily "preclude[s] full judicial review" (Br. 56) is incorrect.  First, petitioners' challenges to the

---

[2] Because NAM intervened in opposition to petitioners and sought no affirmative relief, the petition's mootness is dispositive notwithstanding NAM's assertion of alternative grounds for denying the petition.  Nor are those grounds—broad challenges to Rule 14a-8 untethered to any proxy season—incapable of review.

scope and constitutionality of the "ordinary business" exclusion and the no-action process extend beyond any particular proxy season. Sufficient time would be available to consider those claims if properly presented to a court.

Second, sufficient time would likewise exist to consider a future claim specific to NCPPR's proposal. Assuming a company stated an intent to exclude that proposal on the same basis, NCPPR could litigate the exclusion's legality in a private suit against that issuer. And, while appellate courts lack jurisdiction to directly review a staff no-action letter (*see infra* at 25), if NCPPR improperly sought such review again, there would be sufficient time to litigate that case. Petitioners contend that a "one-year window" has been deemed too short, but they concede that was "in a different context." Br. 56. There is no "calendar for evading review," which must be judged relative to the "specific claim," and where "[e]xpedited procedures are available," as in "this circuit," a matter that can be reviewed under such procedures will "not … evade review." *Empower Texans*, 977 F.3d at 370-71 (punctuation omitted).

Applying similar principles in a private action, the Second Circuit held that the notification deadlines under Rule 14a-8 provide courts with

"ample time for full review" of "the legal question of whether Rule 14a-8 require[s] inclusion of [a shareholder] proposal in [a company's] proxy statement," making the issue not "evade[] review." *N.Y.C. Employees' Retirement Sys. v. Dole Food Co.*, 969 F.2d 1430, 1434-35 (2d Cir. 1992); *see also* 17 C.F.R. 240.14a-8(e)(2), (j)(1) (specifying deadlines). There, and in other shareholder suits, expedited procedures enabled full review. *E.g.*, *Express Scripts Holding Co. v. Chevedden*, 2014 WL631538, at *1 (E.D. Mo. Feb. 18, 2014); *Tosdal*, 440 F. Supp. 3d at 1188.

Petitioners suggest (Br. 56) that expedited procedures were ineffective here because this Court denied their motion for expedited briefing. That they were "not successful in the present action in getting" expedited review, however, "does not mean that upon the proper evidentiary showing actions such as these are inherently capable of evading review." *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 398 (5th Cir. 2000). This principle is unaffected by the fact-bound district court decision they cite, which found insufficient time for "a full trial on the merits" based on the judge's "current docket." *Trinity Wall Street v. Wal-Mart Stores, Inc.*, 75 F. Supp. 3d 617, 625-27 (D. Del. 2014), *rev'd*, 792 F.3d 323.

21

### B.    Petitioners have not shown a reasonable expectation of recurrence.

Petitioners point to their submission of the same proposal to Kroger for the 2024 proxy season.  Br. 57.  But NCPPR's 2023 proposal received only 1.88% of the shareholder vote, which triggers an independent ground for Kroger to exclude the proposal for the next three years.  17 C.F.R. 240.14a-8(i)(12) (companies may exclude resubmitted proposal that received "[l]ess than 5 percent of the votes cast" within previous three years).  In *SEC v. Medical Committee for Human Rights*, the Supreme Court held that similar events precluded a finding that the controversy could "'reasonably be expected to recur.'"  404 U.S. 403, 406 (1972).  Even after three years, the Court held, "in light of the meager support the proposal attracted, we can only speculate that [the company] will continue to include the proposal when it again becomes eligible for inclusion, rather than to repeat this litigation."  *Id.*

Petitioners previously argued that NCPPR's submission of the same proposal to other companies avoids mootness.  But even if petitioners could show that any particular company is inclined against their proposal—and they have not—the "meager support" it received among

22

Kroger shareholders similarly diminishes the likelihood that another company would risk litigation rather than simply including the proposal. That NCPPR sued Kroger directly to compel the proposal's inclusion—and dropped that suit once Kroger included it—makes such a prospect even more unlikely. *See NCPPR v. Kroger*, No. 23-cv-00256 (S.D. Ohio).

Their arguments are also unavailing even apart from the shareholder vote. While petitioners cite five past instances in which a company excluded the same proposal (Br. 58), the proposal has been included by Starbucks Corp.; Twitter, Inc.; Netflix Inc.; and Comcast Corp. without any request for a no-action letter from staff—and that was before Kroger included the proposal after being sued by NCPPR. *See* EDGAR, https://www.sec.gov/edgar/search/#/q=viewpoint%2520 ideology%2520%2522written%2520equal%2520employment%2520opportu nity%2522&category=form-cat8.

Petitioners claim it is "speculative … that *all*" of the other companies to which NCPPR submitted its proposal will include it. Br. 60. But that misstates the burden: petitioners must show a *reasonable likelihood* that the events here will recur. Given litigation costs, the inclusion of the proposal by five major companies, and the proposal's minimal support among

23

Kroger shareholders, petitioners have failed to identify a single company that is reasonably likely to risk litigation instead of "includ[ing] the proposal." *Medical Committee*, 404 U.S. at 406. Nor have petitioners shown that such a company would necessarily invoke the same ground for exclusion. *See supra* at 7.

And even if petitioners could clear those hurdles, they have not shown a reasonable likelihood that staff would express the same view. They argue that staff may take previous letters into account (Br. 61 n.15), but those letters are non-binding and "staff's views on certain issues may change from time-to-time, in light of re-examination, new considerations, or changing conditions." Informal Procedures, 1976 WL160411, at *5.[3]

Indeed, the Commission has observed that staff has "adjust[ed] its view with respect to 'social policy' proposals involving ordinary business" "in light of experience" and "changing societal views" and "reversed its position on the excludability of a number of types of proposals." Rel. 34-

---

[3] Petitioners confuse this long-established principle with staff not taking "a company-specific approach to evaluating the significance of a policy issue." Br. 60. While the *significance* of a policy issue is not judged relative to any specific company, the advice given in each response remains case-specific.

40018, 1998 WL254809, at *3.  Contrary to petitioners' suggestion (Br. 46), the Commission is also not bound by staff views and may choose to express a different view by informal letter or adopt a formal interpretation by rulemaking, as it has done from time.  *See, e.g.*, *id.*; Letter, United Brotherhood of Carpenters and Joiners of Am., 2002 WL31749942 (Dec. 6, 2002); Letter, Texaco, Inc., 1992 WL68720 (Mar. 31, 1992); Letter, Capital Cities/ABC, Inc., 1991 WL178633 (Apr. 4, 1991); Letter, AT&T Co., 1988 WL235316 (Dec. 29, 1988).  Petitioners state that NCPPR's proposal concerns issues that are "growing in their significance," and nothing precludes them from presenting—or staff or the Commission from considering—such developments.  JA20.

## II.     The petition should be dismissed for lack of subject-matter jurisdiction.

Exchange Act Section 25(a) authorizes "[a] person aggrieved by a final order of the Commission" to obtain direct appellate review.  15 U.S.C. 78y(a).  Every Circuit to consider the question has held that the courts of appeals lack jurisdiction to review SEC staff no-action letters because they are not final Commission orders under this provision.  *Amalgamated Clothing & Textile Workers Union v. SEC*, 15 F.3d 254, 257 (2d Cir. 1994); *Bd.*

*of Trade of Chicago v. SEC*, 883 F.2d 525, 529-30 (7th Cir. 1989); *Kixmiller v. SEC*, 492 F.2d 641, 644 (D.C. Cir. 1974) (per curiam); *see also N.Y.C. Employees' Retirement Sys. v. SEC*, 45 F.3d 7, 13-14 (2d Cir. 1995).  The Commission—which, in relevant respects, acts through a vote of the majority of its five commissioners (*see* 15 U.S.C. 78d(a))—has issued no order concerning this matter, final or otherwise.  Nor do the informal staff views in the Kroger letter represent such an order.

Petitioners largely ignore this jurisdictional requirement, focusing instead on whether such letters constitute "final agency action."  Br. 39. But Section 25(a) "applies in terms only to 'orders,' a narrower concept than that of 'agency action' reviewable in district courts" under the APA. *Kixmiller*, 492 F.2d at 645 n.24 (punctuation omitted).  This requirement "was intended to provide direct review" in a court of appeals only "in cases wherein a clear, formal record of an administrative hearing would be before the reviewing court without the need for presentation to a court of evidence (or affidavit) of the agency's action."  *Indep. Broker-Dealers' Trade Ass'n v. SEC*, 442 F.2d 132, 143 (D.C. Cir. 1971).  This is not such a case.

26

### A.    The Kroger letter is not a reviewable "order of the Commission."

The APA defines an "order" as "the whole or a part of a final disposition … of an agency in a matter other than rule making" and as the product of an agency "adjudication."  5 U.S.C. 551(6), (7).  An agency decision that "does not order anybody to do anything" and "binds no one" is "not itself a 'final disposition' within the meaning of 'order' and 'adjudication.'"  *Int'l Tel. & Tel. Corp. v. Local 134*, 419 U.S. 428, 443-44 (1975) (punctuation omitted).

The Kroger letter was sent by staff on the "Rule 14a-8 Review Team," not issued by the Commission.  JA34.  By rule, such staff statements "do not constitute an official expression of the Commission's views," but are only the informal, non-binding views of staff in one division.  17 C.F.R. 202.1(d).  "[M]embers of the Commission's staff … have no authority individually or collectively to make orders."  *Kixmiller*, 492 F.2d at 644 (punctuation omitted).

Nor are staff no-action letters "dispositions" in an "adjudication." Staff members review proxy materials to gather information that may indicate whether an "enforcement action may be appropriate."  Informal

27

Procedures, 1976 WL160411, at *4.  While staff may informally advise

companies of its views, those views "do not adjudicate the merits" of any

matter, represent "rulings" or "decisions" in an adjudicated matter, or

"have precedential value."  *Id.* at *3-5; *see also* Informal Procedures

Regarding Shareholder Proposals, http://sec.gov/corpfin/informal-

procedures-regarding-shareholder-proposals.[4]  Such a "letter does not

bind" the company, shareholder proponent, staff, or the Commission, and

it "does not fix any legal relationship among them."  *Amalgamated Clothing*,

15 F.3d at 257; *Roosevelt*, 958 F.2d at 423; Informal Procedures, 1976

WL160411, at *4.  Nor does it limit staff's discretion to "change [its] mind

tomorrow."  *Bd. of Trade*, 883 F.2d at 529.  And "the Commissioners might

elect to proceed no matter what the [staff] recommends." *Id.*; *supra* at 25.[5]

---

[4] This online statement describing and providing instructions for the no-
action process states that in every case, "staff's no-action responses to Rule
14a-8(j) submissions reflect only informal views" of those staff members
and "do not and cannot adjudicate the merits of a company's position with
respect to the proposal." *Id.*

[5] That the Commission may always disregard staff's recommendation is
distinct from situations in which "an agency might reconsider" a final
decision that the agency itself has made.  Br. 41.

Moreover, neither staff nor the Commission "adjudicate" disputes concerning the exclusion of a proxy proposal. The Exchange Act authorizes the Commission to promulgate "rules and regulations" concerning proxy solicitation (15 U.S.C. 78n(a)) and to bring enforcement actions for violations of proxy requirements (15 U.S.C. 78u)—not to serve as a forum for the resolution of proxy disputes between two private parties. *See also Roosevelt*, 958 F.2d at 424 ("The Commission has consistently regarded the court, and not the agency, as the formal and binding adjudicator of Rule 14a–8's implementation of section 14(a)."); *Amalgamated Clothing*, 15 F.3d at 257 (shareholders' "proper course [is] to seek a judicial determination … in the district court"); *N.Y.C. Employees*, 45 F.3d at 13; *Bd. of Trade*, 883 F.2d at 531; *Kixmiller*, 492 F.2d at 645-46.

### B. Petitioners' arguments to the contrary are unavailing.

Petitioners claim that this Court has "already twice indicated" that the Kroger letter is an order, pointing to the captions of the motion panel's rulings, which stated, "Petition for Review from an Order of the Securities & Exchange Commission." Br. 39, 47. This argument is frivolous—a caption reference does not constitute a substantive ruling—and underscores the lack of merit in petitioner's other arguments.

29

Petitioners assert that the Exchange Act's definition of "order" should be construed "more expansively" than the APA's definition.  Br. 47. But they do not explain what that expansive definition should be or why it would encompass an informal staff letter.  The D.C. Circuit case they cite recognized only that "order" in some statutes has been construed to encompass "notice-and-comment rulemaking," which is, of course, action taken by the agency itself pursuant to procedures that result in a comprehensive administrative record.  *Nat'l Fed. of the Blind v. Dep't of Transp.*, 827 F.3d 51, 55 (D.C. Cir. 2016).  And in interpreting "order" in Exchange Act Section 25(a), the same court has "look[ed] to the Administrative Procedure Act" definition of "order" (*Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007)) and held that a staff no-action letter is *not* a Commission "order" (*Kixmiller*, 492 F.2d at 644).

Petitioners next argue that "substance," not a label, is decisive.  Br. 48.  But the substance of the Kroger letter does not have any characteristics of an order.  *See supra* at 27-29.  And it is petitioners who elevate form over substance by arguing—incorrectly—that the letter was issued "on agency letterhead."  *See* JA34 ("Division of Corporation Finance").  The letter does not purport to speak for the Commission; it was signed by staff and plainly

concerns a potential recommendation "*to* the Commission," as opposed to a decision *from* the Commission.  *Id.* (emphasis added).  In the inapposite case on which petitioners rely, by contrast, an order by the agency—not staff—existed in "substance" because it "promulgat[ed] regulations which operate[d] to control … contractual relationships, and it was adopted by the [agency] in the avowed exercise of its rule-making power," which carried "the force of law."  *CBS v. United States*, 316 U.S. 407, 416-17 (1942).

Petitioners also argue, based on the D.C. Circuit's vacated *Medical Committee* decision, that staff proxy review is an "adversary encounter" in "a formal proceeding designed to establish rights."  Br. 44.  But the court there stated that such a characterization ***does not*** apply to "informal advice" by staff, but "depends upon the Commission's initial determination to review the staff decision" (432 F. 2d at 675), which did not occur here.  And the D.C. Circuit reaffirmed this distinction in *Kixmiller*, 492 F.2d at 644.[6]

---

[6] Nor is it clear that *Medical Committee*'s holding as to the reviewability of a no-action position by the Commission itself remains good law.  *See N.Y.S.E v. Bloom*, 562 F.2d 736, 743 n.6 (D.C. Cir. 1977).  And the Second Circuit has since held that such a position is not reviewable.  *Amalgamated Clothing*, 15 F.3d at 257.

Finally, petitioners argue that the letter is an "order" under the APA's definition because it is a "written decision" that is "declaratory" of staff's position and "affirmative" of staff's intention to "not recommend enforcement."  Br. 48.  But petitioners mistake the "form[s]" that an order may take—"whether affirmative, negative, injunctive, or declaratory"—for the order itself, which must be a "final disposition" by the "agency" in an "adjudication."  5 U.S.C. 551(6), (7).  None of those requirements are met.

## C.    The letter is not reviewable under Exchange Act Section 4A.

Petitioners also contend that the Kroger letter is reviewable under Exchange Act Section 4A, which provides for certain action by Commission delegees to be "deemed the action of the Commission" itself.  15 U.S.C. 78d-1(c).  But even if this argument had any merit—and it does not—it would at best show that the letter represented agency *action* potentially reviewable in district court, not a Commission "order" directly reviewable in this Court.  *See supra* at 26.  In any event, petitioners' arguments fail on their own terms.

### 1.    Section 4A does not apply to the Kroger letter.

Section 4A states that the Commission "shall have the authority to delegate, by published order or rule, any of its functions to a division of the Commission, an individual Commissioner, an administrative law judge, or an employee or employee board."  15 U.S.C. 78d-1.  And, absent Commission review, an "action" taken under such a delegation "shall, for all purposes, including appeal or review thereof, be deemed the action of the Commission."  *Id.*

The Kroger letter was not issued pursuant to any Commission function, much less one "delegate[d]" by the Commission "by published order or rule."  *Id.*  Regulations, as well as descriptions of the no-action process by both the Commission and staff, make clear the distinction between Commission decisions—delegated or otherwise—and informal, non-binding staff views.  *See supra* at 27-28; 17 C.F.R. 202.1(c) (distinguishing "the Commission's functions" from "informal procedures designed to aid the public and facilitate the execution of" those functions).

And, while the Commission has adopted rules delegating a number of its functions to various subordinates "[p]ursuant to section[] 4A" (17 C.F.R. 200.30-1), none of those delegations concerns providing informal

33

views in a no-action letter.  The only delegated function concerning Rule 14a-8 *at all* is limited to altering the timing for use of proxy materials.  *See* 17 C.F.R. 200.30-1(f)(4) (delegating authority "[t]o authorize the use of forms of proxies, proxy statements, or other soliciting material *within periods of time less* than that prescribed in" Commission rules) (emphasis added).[7]

Petitioners argue that Section 4A's plain text should be ignored for policy reasons:  applying its delegation requirement, they claim, would allow the Commission to "avoid judicial review by letting subordinates *issue decisions* and then disclaiming that it was done pursuant to any delegation."  Br. 49 (emphasis added).  But this logic is circular:  absent a delegation of Commission functions under Section 4A, staff cannot issue "decisions" carrying legal force.  Nor may the clear, unambiguous text of Section 4A be disregarded based on purported policy concerns.  *See, e.g.*, *Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022).

---

[7] When promulgated, Rule 14a-8 allowed only the Commission to alter those time periods.  *See* 17 C.F.R. 240.14a-8(d) (1964).  Rule 14a-8 has since been amended to reflect staff's delegated authority to extend the deadline for companies to submit reasons for exclusion.  *See* 17 C.F.R. 240.14a-8(j)(1) (2023).

This does not mean, as petitioners claim, that "staff have been issuing no-action decisions for decades … without the Commission ever having provided *any* authority to do so."  Br. 49.  Section 4A allows the Commission to delegate some of its statutory functions to subordinates, subject to Commission review.  But it does not speak to or displace the Commission's ability to task staff with ordinary jobs in which they do not speak for the Commission.  Commission rules make clear that staff is permitted to informally express views to the regulated public, but such statements are on behalf of staff alone and "do not constitute an official expression of the Commission's views."  17 C.F.R. 202.1.  And this day-to-day work of Commission employees in carrying out their duties is distinct from the authority to act in place of the Commission itself.

Petitioners next make a startling about-face, claiming that "resort to" Section 4A is unnecessary.  Br. 49-50.  But Section 4A is the linchpin of nearly all of their arguments:  they premise their finality claims on Section 4A (Br. 39-42); invoke it to avoid the inapplicability of the D.C. Circuit's *Medical Committee* decision (Br. 43 n.11); and attempt to distinguish the Second, Seventh, and D.C. Circuit decisions holding that staff no-action letters are not reviewable Commission orders on the basis that "none of

35

those cases cited" Section 4A and, implausibly, that those courts "presumably … were simply unaware of it" (Br. 40-41).[8]  Given the provision's inapplicability, it serves none of these purposes.

In any event, petitioners err in asserting that a delegation under Section 4A is "irrelevant" because "the Commission itself retains exclusive authority over proxies under [Section 14], meaning [staff's] decisions *necessarily* represent the Commission's own final orders."  Br. 50.  This does not follow:  even if the Commission's authority were that broad, that would not mean that *staff* letters represent the *Commission's* exercise of such authority without a delegation under Section 4A or some other basis in statute or rule (which petitioners fail to identify).

Moreover, Section 14(a)'s authorization to prescribe "rules and regulations" concerning proxy solicitation does not provide authority to adjudicate a proxy-materials dispute between private parties.  15 U.S.C. 78n(a); *supra* at 29.  Petitioners contend that the rules adopted by the

---

[8] Petitioners previously premised this claim on their mistaken belief that Section 4A, which was codified in 1962, was not codified until 1987.  Pet. Opp. to Mtn. to Dismiss at 15.  Notified of their error by the Commission's Reply (Mtn. to Dismiss Reply at 9-10), petitioners now offer *no* basis for this claim.

Commission pursuant to that authority contemplate staff "review" of proxy materials (Br. 52), but such review does not (and could not) expand the Commission's authority beyond the powers invested by statute.

### 2. The provisions petitioners cite do not delegate Commission authority pursuant to Section 4A.

Petitioners' efforts to locate an applicable delegation under Section 4A fare no better. They cite a footnote from a 1971 law student note stating that "the Commission has in fact delegated its powers in 14a-8 cases" (Br. 50), but the footnote cites the inapposite delegation concerning the power to shorten the "periods of time" for use of proxy materials. *See supra* at 34.

Petitioners also contend that Rule 14a-8 "refers five different times" to staff's role in reviewing company proxy materials. Br. 50. But there is no dispute that staff engages in such review, which it does to "alert the Commission that enforcement action may be appropriate" in a particular instance. Informal Procedures, 1976 WL160411 at *4. That such review occurs does not mean staff is acting under a Section 4A delegation of the Commission's functions.

Nor do Rules 202.1 and 202.2 delegate Commission authority, as petitioners contend. Br. 51. To the contrary, they are procedural and

expressly provide that staff views are informal and do not represent the views of the Commission. *See supra* at 27-28, 33. Notwithstanding this plain text, petitioners argue that the rules delegate Commission authority because Section 4A is currently listed among their authorizing statutes. But they are mistaken: Section 4A is included in an undifferentiated list of the authority for Part 202 as a whole—which includes eleven other rules. *See* 17 C.F.R. Pt. 202.

Nor were Rules 202.1(d) and 202.2 adopted pursuant to Section 4A. Those rules have, in relevant part, remained unchanged since their adoption in 1946—sixteen years before Section 4A was enacted—and originally cited different authorizing provisions. *See* 11 Fed. Reg. 177A-729 (Sept. 11, 1946); 25 Fed. Reg. 6736, 6736 (July 15, 1960). Section 4A was added in 1989 as authority specifically for an amendment to Rule 202.5 (54 Fed. Reg. 24329, 24330, 24332 (June 7, 1989)), and a 1992 simplification grouped all authorizing statutes in one list for Part 202 as a whole. 57 Fed. Reg. 18210, 18216 (Apr. 29, 1992). And the amendment to Rule 202.5 that prompted Section 4A's inclusion in the authorizing statutes did not itself delegate authority, but was accompanied by corresponding "delegate[d] authority" in Rule 30-4(a)(7). 54 Fed. Reg. at 24330.

38

**D.    The letter is not reviewable as a matter of the Commission's enforcement discretion.**

"[A]n agency's decision not to … enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).  This "presumption of unreviewability" (*id.* at 834) applies with even greater force to a mere staff-level decision not to ***recommend*** such action to the Commission.  *See Kixmiller*, 492 F.2d at 645; *Bd. of Trade*, 883 F.2d at 529-30.

None of the exceptions to *Heckler* apply.  *Contra* Br. 54.  Petitioners cite a case explaining that an agency's non-enforcement decision may be reviewable if based on a legal error announced by the agency.  *Rollerson v. Brazos River Harbor Navigation Dist.*, 6 F. 4th 633, 645 (5th Cir. 2021).  But the Commission has neither made a statement concerning an enforcement action against Kroger nor expressed a view on the Kroger letter or staff's legal views.

Petitioners are also incorrect in suggesting that "prosecutorial factors" are not taken "into consideration at all in rule 14a-8" decisions.  Br. 54.  *See, e.g.*, Enforcement Manual at 4, 13, https://www.sec.gov/ divisions/enforce/enforcementmanual.pdf (detailing prosecutorial factors

considered in all enforcement decisions).  And the Commission has long

explained that a substantial factor in its enforcement of Rule 14a-8 is "its

limited staff and the need for rapid examination" of proxy materials

resulting from the "concentrated" time period in which annual meetings

are typically held.  *Informal Procedures*, 1976 WL160411, at *3.

Citing the D.C. Circuit's *Medical Committee* decision, petitioners also

contend (Br. 54) that this Court can review a "segregable" legal view

underlying a non-enforcement decision.  But, as discussed, that case was

limited to a no-action letter reviewed and approved by the Commission

itself.  *See supra* at 31.  There is no indication here that the Commission has

based any enforcement (or non-enforcement) decision on a particular view

of the law that can be separated from other prosecutorial factors.

### E.    The letter lacks the requisite finality for review.

While the absence of a Commission order is dispositive, the Kroger

letter also lacks the requisite finality to permit review.  *Data Mktg. P'ship v.*

*Dep't of Labor*, 45 F.4th 846, 853 (5th Cir. 2022) (finality is 'a jurisdictional

prerequisite of judicial review'").  "As a general matter, two conditions

must be satisfied for an agency action to be final:  (1) the action must mark

the consummation of the agency's decision-making process; [and] (2) the

40

action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Peoples Nat'l Bank v. Comptroller*, 362 F.3d 333, 337 (5th Cir. 2004). Neither element is met.

### 1. The letter does not mark the consummation of any agency decision-making process.

As discussed, a staff no-action letter concerning proxy materials merely discloses the informal views of staff in one division concerning an enforcement recommendation to the Commission. Such a non-binding letter, which anticipates that any ultimate enforcement decision belongs to the Commission alone, does not mark the consummation of any Commission decision-making process. *See, e.g.*, *La. State v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 582 (5th Cir. 2016) (action does not consummate agency process when "it anticipates the necessity of further agency action"); *Cf. Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1683 (2019) (Thomas, J., concurring) (FDA letter "requir[ing]" either withdrawal of an application or measures to address purported deficiencies was "not a final agency action with the force of law").

The Kroger letter is thus unlike the staff letter considered in *Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023). There, the Court preliminarily

41

concluded that a staff letter was final agency action because the governing regulation stated that recipients of the letter "may rely" on it; the letter revoked a previous letter stating that it "allow[ed]" the recipient to operate an unregistered futures market; and the revocation ordered that the recipient's market positions "be closed" by a date certain—all without any further agency action or ability to seek agency review. *Id.* at 634-38. The Kroger letter is distinguishable in each of these respects. Parties can ask staff to request Commission review, which is sometimes granted. *See supra* at 25. Governing regulations also make clear that SEC staff no-action views are non-binding and do not purport to "allow" or direct action by the company. *See supra* 27-28. Nor does the Kroger letter itself contain any such language.

> **2.** **The letter does not have the requisite legal consequences.**

As discussed, the Kroger letter did not impose any obligations, deny any rights, or have any legal consequences. *See supra* at 27-29. None of petitioners' arguments to the contrary withstands scrutiny.[9]

---

[9] Petitioners erroneously invoke Section 4A to argue that they need not establish this finality element. But even if Section 4A applied—it does not—that provision does not "specifically provide[] for '[f]inality' 'for all

Petitioners claim that no-action letters are given "slight" deference because courts or Commission staff may view them as "persuasive authority." Br. 43. But persuasiveness involves no deference at all: like a treatise or restatement, a no-action letter may be helpful or convincing, but it does not bind. Indeed, the case they cite (Br. 43 n.12), holds that a "no-action letter *does not* bind the courts" or "affix any legal relationships" because its "persuasive" treatment differs from "deference" to agency views. *N.Y.C. Employees*, 45 F.3d at 13 (emphasis added).

This Court has also held that expressing an agency view on the law does not alone suffice for finality. In *Dow Chemical v. EPA.*, for example, the Court held that an EPA letter "expressing [the] view" that Dow was violating an agency rule was not final because it did not "establish new rights or duties." 832 F.2d 319, 321, 324-25 (5th Cir. 1987); *see also, e.g.,*

---

purposes,'" as petitioners claim. Br. 42. Rather, certain delegee action is "deemed the *action of the Commission* for all purposes." 15 U.S.C. 78d-1(c) (emphasis added). This is confirmed, not undermined, by the legislative history petitioners cite. *See Hearing on Reorganization Plans*, 87th Cong. 4 (1961) (bill concerns when delegee actions may "be finally consummated") (statement of Pres. Kennedy); *id.* at 44 ("nothing" in provision "repeals or modifies any part of the [APA]" and action by delegation remains "[s]ubject to the basic standards" of APA) (statement of SEC Chair Cary).

*Newsome v. EEOC*, 301 F.3d 227, 229-30, 232 (5th Cir. 2002) (EEOC notification to complainant explaining why employment-discrimination investigation had ended "did not determine her rights or have legal consequences" for finality purposes); *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 756 (5th Cir. 2011) (agency guidance letters opining on law were "not reviewable, final agency decisions").

Petitioners cite *Texas v. EEOC*, but that case involved guidance from the agency itself—not staff—that was "bind[ing]" on staff, directed "their decisions about which employers to refer for enforcement actions," limited their "discretion respecting the use of certain evidence," and left "no room for EEOC staff *not* to issue referrals to the Attorney General" in certain circumstances. 933 F.3d 433, 443 (5th Cir. 2019). None of those factors is present here. *See supra* at 27-28.

Petitioners also incorrectly assert that staff letters have legal consequences because "if a company insists on excluding a proposal, the SEC could institute an investigation or lawsuit." Br. 45. Any liability for wrongly excluding a shareholder proposal would arise not from a staff letter, but directly from Section 14(a) and Rule 14a-8. *See Dow*, 832 F.2d at 323 ("legal source" for any subsequent legal action would be the regulation

44

itself rather than the "EPA interpretation of that regulation" in a letter); *see also Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 226 (5th Cir. 1994) (conclusions concerning whether "to recommend further civil or criminal action" do "not fix legal rights or impose obligations, even if further proceedings prompted by the [conclusions] may."). Nor does receiving a no-action letter immunize a company or provide any legal safe harbor from such liability. *E.g.*, *N.Y.C. Employees' Retirement Sys. v. American Brands, Inc.*, 634 F. Supp. 1382 (S.D.N.Y. 1986) (finding for shareholder where company had received no-action letter); *Dole Food Co.*, 969 F.2d at 1432 (similar); *Amalgamated Clothing*, 821 F. Supp. 877, 890 (S.D.N.Y. 1993) (similar).

Petitioners also argue that companies typically include a shareholder proposal if staff does not concur with its exclusion. Br. 45-46. But this is unsurprising—not because the letters are binding, but because such information signals a potential issue with the company's proxy materials. And companies also disagree with staff, sometimes even seeking declaratory relief in court without regard to staff's views. *See, e.g.*, *Apache Corp.*, 696 F. Supp.2d at 734; *KBR Inc. v. Chevedden*, 776 F. Supp. 2d 415, 419 (S.D. Tex. 2011).

45

Finally, petitioners contend that staff no-action letters are "applied" by the Commission in a way that indicates they are binding.  Br. 46.  But the Commission does not "apply" staff no-action letters; when the Commission speaks to them, it treats them as informal guidance with which it can, and sometimes does, disagree.  And while petitioners are "unaware" of the Commission "elect[ing] to proceed contrary to what [staff] concluded" (Br. 46), that does occur.  *See supra* at 25.  Petitioners cite *Texas v. United States*, but that case involved the inapposite situation of an agency policy concerning review of applications that, in practice, was mandatory for the staff processing the applications.  809 F.3d 134, 174-75 (5th Cir. 2015).

## III.  Even if the petition were not moot and outside the Court's jurisdiction, the Court should not reach the broad constitutional and statutory claims raised by petitioners and NAM.

Based on the Commission's rules and the uniform holdings of every Circuit to consider the question, the Commission and its staff have reasonably understood no-action letters to be informal statements of staff views, not Commission orders, for decades.  Accordingly, there is no administrative record that could enable substantive review.  The Kroger letter neither explains the rationale for staff's views nor addresses

46

petitioners' erroneous viewpoint-discrimination claim. Nor does it respond to NAM's facial attacks on Rule 14a-8, which were not raised before the Commission and far exceed the scope of the question staff addressed.[10]   This lack of an agency position independently precludes review of those claims here.

### A.    If the Kroger letter were considered a final Commission order, vacatur is appropriate under the APA.

There is no dispute (Br. 31) that the Kroger letter does not meet the APA's procedural requirements for an agency order, under which an agency must "articulate a satisfactory explanation for its action" so that courts can meaningfully review its rationality. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016). While this fact only underscores that the letter is not a final Commission order, if this Court were to hold otherwise, petitioners' requested remedy of vacatur (Br. 63) would be appropriate on these procedural grounds without reaching the merits of either petitioners' or NAM's claims. *See, e.g.*, *Jupiter Energy Corp. v. FERC*, 482 F.3d 293, 298-

---

[10] While staff consideration of NAM's challenges would not constitute reviewable agency action, those challenges were not raised even to staff while it considered Kroger's proxy materials.

99 (5th Cir. 2007) (granting petition, vacating, and remanding because agency "failed to provide a sufficiently reasoned explanation").[11]

Petitioners also challenge the merits of the Kroger letter on the baseless theory that it was driven by viewpoint discrimination. As discussed below, that allegation is wholly unfounded. But "[i]t will not do for a court to be compelled to guess at the theory underlying the agency's action" when it is not "set forth with such clarity as to be understandable." *SEC v. Chenery*, 332 U.S. 194, 196-97 (1947). As petitioners have acknowledged (*see* Stay Mtn. Reply at 12), the paucity of detail in the letter prevents the Commission from even raising substantive arguments to defend it in this Court. *Wisconsin's Environ. Decade, Inc. v. SEC*, 882 F.2d 523, 528 (D.C. Cir. 1989) (under *Chenery*, courts reviewing agency action cannot "accept the rationalizations first advanced by counsel in this litigation"). The absence of any record or expressed rationale on which the Court can evaluate staff's analysis thus precludes substantive review of

---

[11] NAM does not contend otherwise, and by failing to respond to petitioners' APA argument in NAM's brief, has forfeited any argument to the contrary. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

petitioners' discrimination claim—a conclusion reinforced by the doctrine of constitutional avoidance. *See Slack v. McDaniel*, 529 U.S. 473, 485 (2000).

Moreover, petitioners' claim is based on the erroneous premise that there is "no reason" other than viewpoint discrimination for staff to have treated NCPPR's proposal differently from a 2019 proposal as to which staff did not concur regarding exclusion. Br. 29-30 (citing Letter, CorVel Corp. ("CorVel"), 2019 WL1640021 (June 5, 2019)). But petitioners' own assertions demonstrate otherwise. They state that NCPPR's proposal is, by design, identical to the CorVel proposal, except NCPPR substituted the words "viewpoint" and "ideology" for "sexual orientation" and "gender identity." And they argue that the two proposals cannot be distinguished based upon differential treatment of the respective issues under employment law because staff sent the 2019 letter to CorVel "before *Bostock*," the 2020 decision in which the Supreme Court held that Title VII prohibits discrimination on the basis of gender identity and sexual orientation. Br. 6-7, 29. But, in *Bostock* itself, the Court stated that a 1998 decision "already confirmed" Title VII's applicability in this context. *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731, 1743 (2020) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)). Moreover, the EEOC

49

held that Title VII prohibits such discrimination in 2012 and 2015,

respectively, and three Courts of Appeals reached similar holdings in 2017

and 2018.  *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018);

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018);

*Hively v. Ivy Tech Community College*, 853 F.3d 339 (7th Cir. 2017); *Macy v.

Holder*, 2012 WL1435995, at *11 (EEOC Apr. 20, 2012); *Baldwin v. Foxx*, 2015

WL4397641, at *10 (EEOC July 15, 2015).

### B.    This Court is not an appropriate forum for petitioners' broader claim of improper practices by staff.

Petitioners also raise claims beyond the scope of the staff's views in

the Kroger letter, incorrectly contending that staff responses to no-action

requests reflect a pattern of "viewpoint discrimination" against

conservatives in violation of the First Amendment.  Br. 33-34.  The

Commission strongly disagrees with this claim; as discussed, petitioners'

critique of the Kroger letter is premised on baseless speculation (*see supra* at

49-50), and the flawed studies they cite have not been tested or evaluated

before an appropriate finder of fact.  But these factual disputes cannot be

litigated in an appellate court in the first instance on a petition for review,

as making "factual finding[s] is in the clear province of the district court

and is beyond [this Court's] role as an appellate court." *United States v. Pursley*, 22 F.4th 586, 591 (5th Cir. 2022); *see also Sierra Club v. Dep't of Interior*, 990 F.3d 909, 918 (5th Cir. 2021) (this Court "'may not consider evidence outside the administrative record'").

In the petition, petitioners promised that their "merits briefing will show" a "more-than-colorable claim" of discrimination and cited *Smith v. Meese*, 821 F.2d 1484 (11th Cir. 1987), which involved allegations of racial discrimination by Department of Justice officials.  Pet. 11. n.2.  But *Smith v. Meese* involved an inapposite Section 1983/*Bivens* action in district court—not a petition for review of a purported agency order.  Petitioners do not address this discrepancy in their merits briefing and fail to identify *any* authority permitting them to initiate a discrimination claim against a federal agency in a court of appeals.

Finally, petitioners ask the Court to declare that the "significant social policy exception to Rule 14a-8(i)(7), as promulgated by the 1998 Amendments and SLB-14L, is unconstitutional" for lack of a clear standard.  Br. 37.  But this contradicts their argument that the exception has "explicit" and "judicially manageable standards for review" under which, they contend, their proposal was non-excludable.  Br. 27-30, 44, 54.  Indeed, in

NCPPR's letters to staff, NCPPR did not request that staff conclude that the exception was unconstitutional.  To the contrary, it sought the benefit of the exception, arguing that its proposal "raise[d] issues of significant social policy so as to exempt it from omission" under Rule 14a-8(i)(7) and that staff should agree in order to "avoid" claims that it "may be facially invalid under the First Amendment."  JA16, JA22-23 (also arguing that staff's previous applications of the exception were "manifestly correct").  Not only have petitioners forfeited that argument, this Court lacks jurisdiction to consider it because it has not been addressed by the Commission.  *See infra* at 55.  Nor would it be appropriate to consider a facial constitutional challenge to a Commission rule without consideration by the Commission in the first instance.  *See infra* at 63.

### C.    Even if the Court hears petitioners' challenges, it lacks jurisdiction to address NAM's facial statutory and constitutional challenges.

NAM attempts to use petitioners' challenge to a single staff no-action letter as a vehicle to raise broad facial challenges to Rule 14a-8, decades after the rule was originally adopted in 1942.  These challenges are both meritless and beyond this Court's jurisdiction.

1.    **NAM's facial challenges to past rulemakings are untimely.**

NAM's untimely facial challenges to Rule 14a-8 flout the mechanisms Congress provided for review of Exchange Act rules.  Such challenges must be brought either under Section 25(b), which permits direct appellate review of certain rules "within sixty days after … promulgation" (15 U.S.C. 78y(b)), or the APA, which permits rule challenges in district court subject to a six-year limitations period, absent a special review provision.  (*Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1337 (D.C. Cir. 2013); 28 U.S.C. 2401(a)).  Rules promulgated under Section 14(a) are not within Section 25(b)'s scope, but, regardless, either of these jurisdictional provisions would preclude review of NAM's facial challenges to rules promulgated decades ago.  *See, e.g.*, *NASDAQ v. SEC*, 998 F.3d 1006, 1007 (D.C. Cir. 2021) (per curiam); *Gen. Land Off. v. Dep't of Interior*, 947 F.3d 309, 318 (5th Cir. 2020); *see also Texas v. United States*, 749 F.2d 1144, 1146 (5th Cir. 1985) (similar Hobbs Act sixty-day limit "is jurisdictional and cannot be judicially altered or expanded").  Nothing about the Kroger letter allows these requirements to be bypassed.

### 2.    NAM also lacks standing to raise its claims.

NAM also lacks standing to challenge Rule 14a-8's requirement that companies include certain shareholder proposals in their proxy materials.

Section 25(a), under which the petition was brought, permits a "person aggrieved by a final order of the Commission" to "obtain review of the order." 15 U.S.C. 78y(a). Moreover, "[f]or all relief sought, there must be a litigant with standing," and this principle applies equally to intervenors. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). To show standing, NAM must show that it or one of its members "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019) (punctuation omitted).

Because neither NAM, nor any of its members, was compelled by the Kroger letter to include NCPPR's shareholder proposal, it cannot meet any of these requirements. Indeed, not even Kroger was compelled to include the proposal; the Kroger letter stated staff's view that Rule 14a-8 *did not require* Kroger to include NCPPR's proposal. *See supra* at 13. Nor would granting the petition compel Kroger—let alone a NAM member—to

include NCPPR's proposal; even apart from mootness, this is not a lawsuit against Kroger to force it to comply with Rule 14a-8, but a petition seeking to vacate a letter articulating non-binding staff views.

### 3.     The Court lacks jurisdiction over NAM's facial challenges because they were not "urged before" the Commission.

Section 25(c) of the Exchange Act provides that "[n]o objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so."  15 U.S.C. 78y(c)(1).  Because none of the statutory or constitutional objections raised by NAM was urged before the Commission, the Exchange Act precludes their consideration here.

NAM erroneously contends that Rule 14a-8 conflicts with Section 14(a) and violates the First Amendment because it "compel[s] corporations to publish shareholders' speech in the corporations' own proxy statements."  NAM Br. at 2.  It is undisputed, however, that NAM did not make any presentations to staff or the Commission while staff was reviewing Kroger's proxy materials, and NCPPR argued the opposite in its submissions to staff, contending that Section 14(a) and the First

Amendment would be violated if Rule 14a-8 were read to "authorize the Company to exclude" its proposal. JA22-23, JA25. Having failed to obtain the Commission's views, NAM is precluded from asking this Court to judge the propriety (indeed, the constitutionality) of agency action without them.

NAM contends that *Chenery* does not bar this Court from requiring an agency to conform with the law. NAM Br. 24 n.20. But this ignores not only the jurisdictional requirements of the Exchange Act, but the reality that the Commission's interpretation of the meaning of Section 14(a), its views on the purpose of Rule 14a-8, and the means it undertook to achieve that purpose are critical to any analysis of the statutory and constitutional claims they raise. The Commission should be permitted to address such arguments in the first instance through the regular administrative process.

**D.    In any event, NAM's claims are meritless on their face.**

**1.    Rule 14a-8 is authorized by Section 14(a).**

Section 14(a)(1) prohibits the solicitation or use of proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. 78n(a)(1). Despite NAM's protestations

otherwise (NAM Br. 42) Section 14(a) is "worded about as broadly as possible," *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 695 (2d Cir. 1966), evincing Congress's intent that the provision be given "the broadest meaning necessary to effectuate its stated purposes," *Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 796 (8th Cir 1967); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 n.10 (1976) ("broad statutory authority").[12] And it has long been settled that Rule 14a-8 "represents a proper exercise of the authority conferred by Congress on the Commission under Section 14(a)" "to require fair opportunity for the operation of corporate suffrage." *SEC v. Transamerica Corp.*, 163 F.2d 511, 518 (3d Cir. 1947), *cert. denied*, 332 U.S. 847 (1948).[13]

None of NAM's claims to the contrary withstands scrutiny.  Even NAM acknowledges that a "central concern" of Congress (Br. 42) was

---

[12] Contrary to NAM's suggestion, "[t]he Commission's power under § 14(a) is not limited to ensuring full disclosure." IV Louis Loss et al., Securities Regulation 6.C.2 (6th ed. 2020); *Roosevelt*, 958 F.2d at 421 (Congress "did not narrowly train section 14(a) on the interest of stockholders in receiving information"); H.R. Rep. No. 1383 at 13-14 (Section 14(a) authorizes SEC "to control the conditions under which proxies may be solicited"); S. Rep. No. 792 at 12 (under Section 14(a) "the solicitation and issuance of proxies [is] left to regulation by the Commission").

[13] *Transamerica* references Rule 14a-8 by its then-designation, Rule X-14A-7.

ensuring that investors had "adequate knowledge" about the "the major questions of policy, which are decided at stockholders' meetings." S. Rep. No. 792 at 12.[14] While the Commission has not expressed views on NAM's arguments because they were not raised—which, again, precludes evaluating them first in this proceeding—the Commission has in the past explained that Rule 14a-8 "accomplishes this purpose" by requiring "companies to include in their proxy materials full disclosure about and the opportunity to vote on those matters, including qualifying security holder proposals, that management knows will be presented at the annual meeting." Rel. 34-48626, 2003 WL22350515, at *7 (Oct. 14, 2003).

NAM mischaracterizes the rule in arguing that it goes beyond this purpose and represents "a free-range and pervasive authority to determine the substantive measures that should appear on corporate proxy statements." Br. 41. It is shareholders, not the Commission, who decide what proposals they wish to submit for a vote—and their right to do so

---

[14] NAM is thus incorrect in suggesting that Section 14(a) concerns only "false or misleading" disclosure. Br. 44; *see also Borak*, 377 U.S. at 431 ("deceptive *or inadequate* disclosure in proxy solicitation") (emphasis added).

remains governed by state law.  Rule 14a-8 simply facilitates this state law right.  And far from overriding "state law" on "corporate governance," Rule 14a-8 allows companies to exclude proposals that are "not a proper subject for action by shareholders" under "state law."  17 C.F.R. 240.14a-8(i)(1).[15]

Nor does Congress's 2010 authorization of rules requiring the inclusion of shareholder nominees for director positions in proxy materials cast doubt on the Commission's authority.  *Contra* NAM Br. 46.  While Rule 14a-8 has required the inclusion of certain shareholder proposals since 1942, there had been no previous rule concerning shareholder nominees, and the Commission's power to enact such a requirement was disputed. *See, e.g.*, Rel. 34-62764, 2010 WL3343532, at *8 (Aug. 25, 2010).  That Congress did not also re-authorize a regulatory regime that had then been

---

[15] Contrary to NAM's assertion, Rule 14a-8 does not override state law allowing shareholders "to present" their proposals "while attending the shareholder meeting."  NAM Br. 7, 49.  It facilitates that right—which they acknowledge exists—by allowing the proxy vote to approximate what would occur at the meeting and ensuring that shareholders are aware of issues that will be voted on at the meeting.

in place for almost seventy years speaks only to the absence of doubt that

Section 14(a) already authorized Rule 14a-8.

Finally, the canons of statutory construction NAM invokes (Br. 47)

are unavailing.  As discussed below (*infra* at 61) there is no "serious First

Amendment issue" to be avoided under the constitutional avoidance

canon.   Nor does Rule 14a-8 "override state corporation law," making the

federalism canon inapplicable.  *See supra* at 58-59; Rel. 34-89964, 2020

WL5763382, at *35 (Sep. 23, 2020) ("while Rule 14a–8 provides a federal

process for proxy voting and solicitation with respect to a shareholder

proposal, matters of corporate organization such as voting rights and

whether a proposal is a proper subject for action remain governed by state

law"); Rel. 34-95267, 2022 WL2953280, at n.3 (July 27, 2022) ("'The

shareholder proposal rule is a federal mechanism to facilitate state-created

shareholder voting rights'" (quoting Alan Palmiter & Frank Partnoy,

Corporations: A Contemporary Approach 482 (1st ed. 2010))).

And Rule 14a-8 is nothing like the kinds of agency actions warranting

application of the major questions doctrine.  Far from a novel interpretation

of a "rarely" used statutory provision (*West Va. v. EPA*, 142 S. Ct. 2587, 2610

(2022)), the rule has been a recognized component of the Commission's

proxy rules for eighty years.  There is likewise no mismatch between the

scope of the rule and the statutory provision that authorizes it.  *Contra*

*Biden v. Nebraska*, 143 S. Ct. 2355, 2368, 2372-73 (2023)).  Nor is there any

historical, political, or regulatory context calling into question the

Commission's authority (*Alabama Ass'n of Realtors v. Dep't of Health and*

*Human Servs.*, 141 S. Ct. 2485, 2489 (2021)); proxy regulation

unquestionably falls within the Commission's core regulatory functions

and shareholder proposals have been a part of that regulatory scheme

almost since its inception.

## 2.    Rule 14a-8 complies with the First Amendment.

The Supreme Court has long regarded Rule 14a-8 as a paradigmatic

example of permissible regulation under the First Amendment.  *See Ohralik*

*v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) ("Numerous examples could

be cited of communications that are regulated without offending the First

Amendment, such as … corporate proxy statements.").  As the Court has

explained, the rule "allocate[s] shareholder property between management

and certain groups of shareholders" and "[m]anagement has no interest" in

the proxy materials except that which "derives from the shareholders"

themselves.  *Pacific Gas & Elec. Co. v. Public Utils. Comm'n* ("*PG&E*"), 475

U.S. 1, 14 n.10 (1986).  Thus, Rule 14a-8 concerns "speech by a corporation *to itself*" and does "not infringe corporate First Amendment rights."  *Id.*

NAM suggests that this precedent is outdated, arguing that more-recent precedent has expressed a different conception of corporate free speech.  Br. 38.  But the cases NAM cites reinforce, rather than undermine, the Court's reasoning in *PG&E*.  In *Citizens United v. FEC*, for example, the Supreme Court emphasized that corporations are merely "associations of citizens … that have taken on the corporate form" and are governed by "'the procedures of corporate democracy'"—i.e., the shareholder voting process that allows shareholders to express their views on corporate action.  558 U.S. 310, 356, 362 (2010); *see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2317 (2023) ("Nor … do *speakers* [shareholders] shed *their* First Amendment protections by employing the corporate form to disseminate *their* speech.") (emphasis added).  Rather than burden corporate speech, Section 14(a) and Rule 14a-8 ensure full and fair disclosure in the process by which shareholders participate in corporate decision-making.

NAM's argument for strict scrutiny (Br. 28) is also meritless.  Even were the Court to erroneously view Rule 14a-8 as concerning something other than communication among the owners of the corporation itself, the

rule provides neutral standards for the disclosure of qualifying shareholder proposals to be voted on and thus involves "purely factual and noncontroversial" commercial speech concerning corporate decision-making.  It is therefore appropriately reviewed under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626 (1985).  And Rule 14a-8 would meet that—or even a heightened—standard of scrutiny.  Among other things, Rule 14a-8 serves Section 14(a)'s important interest in ensuring that shareholders receive adequate information in the proxy context.  *See supra* at 57-58.  And the rule is carefully tailored to that end, with a variety of exclusions, including for proposals that are improper under state law.

* * *

Given the multiple bars to this Court's jurisdiction, reviewing the Kroger letter would, alone, be unprecedented.  And permitting petitioners and NAM to use that review as a vehicle to raise statutory and constitutional challenges to decades-old rules that far exceed the scope of that letter—without the Commission's views—would defy all norms and expectations for administrative process.

63

As discussed, the Commission does not believe that its staff has engaged in viewpoint discrimination, and Rule 14a-8 falls within the Commission's statutory authority and passes constitutional scrutiny. But there are established routes for litigants to pursue challenges on those bases. A proper party can challenge a company's refusal to include a proposal in district court and obtain judicial review of the validity of that specific exclusion. *See supra* 10. A proper party may also be able to bring a district court action alleging a pattern of improper behavior by Commission staff. *See Cambranis v. Blinken*, 994 F.3d 457, 462-63 (5th Cir. 2021) ("Section 702 of the APA waives the United States' sovereign immunity for [district court] actions seeking non-monetary relief against federal government agencies," subject to certain limitations.).

Moreover, petitioners and NAM can raise their concerns in the administrative process, which could result in a final Commission rule or order subject to judicial review. Indeed, Rule 14a-8 and the various grounds for exclusion of shareholder proposals have been the subject of a number of rulemakings over the years, and interested parties can raise these issues in any such proceeding. IV Loss et al. 6.C.2 ("amendment of the proxy rules" is a "frequent occurrence," with "substantive" revisions in

64

"[1972], 1976, 1983, [1992], and 1998"); *see also e.g.*, Rel. 34-89964, 2020 WL5763382; Rel. 34-95267, 2022 WL2953280 (proposed rule). This process would allow the Commission to take such objections into account while crafting its rules, allow comment by other interested members of the public, and provide the necessary explanations for any subsequent judicial review. Without that, the Court lacks a sufficient record on which to evaluate petitioners' and NAM's claims.

## CONCLUSION

For these reasons, the petition should be dismissed as moot or for lack of subject-matter jurisdiction. If this Court holds otherwise, the Kroger letter should be vacated for failure to comply with the APA. Either action would also dispose of NAM's claims, which should in any event be dismissed for lack of jurisdiction.

Respectfully submitted,

MEGAN BARBERO
*General Counsel*

MICHAEL A. CONLEY
*Solicitor*

TRACEY A. HARDIN
*Assistant General Counsel*

/s/ Theodore J. Weiman
THEODORE J. WEIMAN
*Senior Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202-551-5167 (Weiman)
weimant@sec.gov

September 13, 2023

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,877 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I further certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface—Book Antiqua, 14 point—using Microsoft Word.

/s/ Theodore J. Weiman
Theodore J. Weiman

Dated: September 13, 2023

## CERTIFICATE OF SERVICE AND FILING

I certify that on September 13, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit through the Court's CM/ECF system. Service on counsel of record will be accomplished through the Court's CM/ECF system.

I further certify that this electronic filing is an exact copy of the paper document, that any privacy redactions have been made, and that this electronic filing was scanned for, and found to be free of, viruses.

/s/ Theodore J. Weiman
Theodore J. Weiman

Dated: September 13, 2023